1  EAGAN AVENATTI, LLP
   Michael J. Avenatti, State Bar No. 206929
2  mavenatti@eaganavenatti.com
   Ahmed Ibrahim, State Bar No. 238739
3  aibrahim@eaganavenatti.com
   450 Newport Center Drive, 2nd Floor
4  Newport Beach, CA 92660
   Telephone: 949.706.7000
5  Facsimile: 949.706.7050

6
   Attorneys for Plaintiff, Individually and On
7  Behalf of All Others Similarly Situated

8

9            UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11

12 HRAYR SHAHINIAN, M.D., F.A.C.S.,      CASE NO.:  14-CV-08390
   an individual; on behalf of himself and
13 all others similarly situated,

14              Plaintiffs,              NATIONWIDE AND
                                         CALIFORNIA CLASS ACTION
15       vs.                            COMPLAINT FOR:

16 KIMBERLY-CLARK                       1.   FRAUDULENT
   CORPORATION, a Delaware                   CONCEALMENT/NON-
17 Corporation,                              DISCLOSURE;

18              Defendants.             2.   FRAUD (AFFIRMATIVE
                                            MISREPRESENTATIONS);
19
                                        3.   NEGLIGENT
20                                          MISREPRESENTATION

21                                      4.   UNFAIR BUSINESS
                                            PRACTICES (Cal. Bus. & Prof.
22                                          Code § 17200 *et seq.*)

23                                      5.   FALSE ADVERTISING (Cal.
                                            Bus. & Prof. Code § 17500 *et*
24                                          *seq.*)

25
                                        **DEMAND FOR JURY TRIAL**
26

27

28

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT

Plaintiff Hrayr Shahinian, M.D., F.A.C.S., on behalf of himself and a class of all others similarly situated, hereby alleges as follows:

## I. BACKGROUND

1. This action is brought against Kimberly-Clark Corporation for marketing and selling medical gowns represented to provide the highest level of liquid barrier protection from the transfer of bodily fluids, bacteria, and infection between a patient and health care professional when, in reality, Kimberly-Clark has known since at least as early as 2013 that these gowns failed industry standard tests, are unsafe and do not meet relevant standards. During those tests, ASTM F1671 tests of numerous random samples taken from multiple separate manufacturing lots were conducted. In each of the tests, the High Performance Gowns failed at rates that greatly exceeded failure rates acceptable for satisfying industry standards, with many of the gowns experiencing catastrophic failures. Among other things, the tests revealed that the gowns allowed liquid and bacterial and viral pathogens to penetrate the gowns. And yet from at least as early as 2013 to the present, Kimberly-Clark has continued to sell these gowns and misrepresent to its customers and the general public that these gowns are impermeable and are effective when treating patients with serious diseases such as Ebola, all the while knowing that they are unsafe and pose great risk of bodily harm and possibly death to patients and health care professionals worldwide. Kimberly Clark's recklessness and indifference as to the fact that it is responsible for placing patients and health care professionals at great and unnecessary risk of infection and bodily harm as described below is nothing short of astonishing and utterly reprehensible.

## II. PARTIES

2. Plaintiff Hrayr Shahinian, M.D., F.A.C.S., ("Plaintiff" or "Shahinian") is a citizen of the State of California, and resident of Los Angeles County. Shahinian is a medical doctor and experienced surgeon who practices and resides in the County of Los

Angeles, State of California, within the Central District.  He is a skull base surgeon and founder of the Skull Base Institute (SBI).  Since 1994, he has pioneered numerous new endoscopic surgical techniques to treat a variety of skull base disorders and is nationally and internationally recognized as one of the first surgeons in the world to use and pioneer endoscopic skull base surgery.  He is Board Certified by the American Board of Surgery and has been licensed to practice in California since 1996.  He completed his undergraduate studies at the American University of Beirut in 1981 and earned his M.D. in 1985.  He earned both degrees with distinction and has been an active member of the honor medical society, Alpha Omega Alpha.  In 1986, Dr. Shahinian was recruited to Vanderbilt University Medical Center, where he completed an internship and residency in general surgery.  In 1991, Dr. Shahinian went to New York University's Institute of Reconstructive Plastic Surgery, the premier craniofacial program in the nation where he completed a two-year fellowship in plastic and reconstructive surgery.  Thereafter, in 1993, he completed a fellowship in skull base surgery and neurotology in the Department of Head and Neck Surgery in Zurich, Switzerland under the tutelage of Professor Ugo Fisch, the preeminent skull base surgeon in the world at the time.  In 1994, Dr. Shahinian completed a second fellowship, in craniofacial surgery, at New York University.  He was certified by the American Board of Surgery in 1992, recertified in 2003 and 2014, and is a Fellow of the American College of Surgeons since 2002.  From 1994-1996, Dr. Shahinian served as an Assistant Professor of Surgery and Neurosurgery at the State University of New York at Stonybrook, during which time he was also Co-Director (1994-1995), and then Director (1995-1996) of the University's Skull Base Institute.  In 1996, Dr. Shahinian was recruited by Cedars-Sinai Medical Center to establish and head its Division of Skull Base Surgery and to direct its Skull Base Institute.  Dr. Shahinian accepted the offer, relocated to California and was instrumental in establishing what has become one of the country's largest practices specializing in minimally-invasive endoscopic skull base and brain tumor surgery:   The Skull Base Institute (SBI) in Los Angeles.

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT

1  Neurosurgeons from the United States as well as Barcelona, Marseilles, Brussels,
2  Cairo, Kiev, Rome and Czech republic have travelled to Dr. Shahinian for observation
3  and training in Skull Base Surgery. Patients from around the world and most of the 50
4  states also routinely travel to Los Angeles to be treated by Dr. Shahinian.

5        3.    Dr. Shahinian has received many awards for his work in skull base surgery
6  and has shared his experience and expertise in numerous journal articles, textbook
7  chapters, and national and international presentations. He is also the author of the
8  textbook, "Endoscopic Skull Base Surgery," which was published by Humana Press in
9  2009. Dr. Shahinian holds a number of patents and has thrice received the National
10  Aeronautics and Space Administration (NASA) Innovation Award (in 2008, 2011 and
11  2012) for his work in the field of advanced medical technology.

12        4.    In the course of his practice within the Central District, Dr. Shahinian has
13  made use of the medical gowns manufactured and sold by Defendant Kimberly-Clark
14  Corporation that are at issue in this lawsuit.

15        5.    Defendant Kimberly-Clark Corporation ("Defendant," "Kimberly-Clark,"
16  or "KC") is a Delaware corporation with its principal executive offices located in
17  Dallas, Texas. KC describes itself as a global company focusing on leading the world
18  in essentials for a better life through product innovation and building its personal care,
19  consumer tissue, K-C Professional, and health care brands. KC is principally engaged
20  in the manufacturing and marketing of a wide range of products mostly made from
21  natural or synthetic fibers using advanced technologies in fibers, nonwovens, and
22  absorbency. KC owns several well-recognized consumer brands in the field of personal
23  care and tissues, including, among others, Huggies, Pull-Ups, Kotex, Depend, Kleenex,
24  Scott, Cottonelle, Viva, and other brand names.

25        6.    Among its business segments, KC operates a health care segment, which it
26  describes as providing "essentials that help restore patients to better health and improve
27  the quality of patients' lives." In 2013, KC reported net sales of over $1.6 billion from
28  its health care segment alone. This segment is focused on the sale of surgical and

infection prevention products for the operating room and other medical supplies, and medical devices focused on pain management, respiratory, and digestive health. KC describes itself as "a global leader in education to prevent healthcare-associated infections." KC's health care products are sold under the "Kimberly-Clark" and "ON-Q" brand names. Its health care products include medical exam gloves, facial masks and respirators, and surgical drapes and gowns. According to its 2013 Annual Report, KC sells its products to, among other entities, "health care establishments and high volume public facilities." On information and belief, during all relevant times, KC's market share of the surgical gown market at issue in this lawsuit exceeded 50%.

7. The true names and capacities of defendants DOES 1 through 100, inclusive, whether individual, plural, corporate, partnership, associate or otherwise, are not known to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as DOE are in some manner responsible for the acts and occurrences set forth herein. Plaintiff will seek leave of court to amend this Complaint to show the true names and capacities of defendants DOES 1 through 100, inclusive, as well as the manner in which each DOE defendant is responsible, when the same have been ascertained.

8. Plaintiff is informed and believes, and upon such basis alleges, that at all times herein mentioned, each of the Defendants herein was an agent, servant, employee, co-conspirator, partner, joint venturer, wholly owned and controlled subsidiary and/or alter ego of each of the remaining Defendants, and was at all times acting within the course and scope of said agency, service, employment, conspiracy, partnership and/or joint venture.

9. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT

1   wrongdoings complained of, each of the Defendants acted with an awareness of its
2   primary wrongdoing and realized that its conduct would substantially assist the
3   accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

4

5   **III.   JURISDICTION AND VENUE**

6           10.    This Court has subject matter jurisdiction over this action pursuant to the
7   Class Action Fairness Act of 2005 and 28 U.S.C. § 1332 because there are over 100
8   members of the proposed class, at least one member of the proposed class has a
9   different citizenship from a defendant and the total matter in controversy exceeds
10  $5,000,000.

11          11.    Venue is proper pursuant to 28 U.S.C. § 1391(b) & (c) because a
12  substantial part of the events or omissions giving rise to the claim occurred in this
13  judicial district, and because Defendant is subject to the Court's personal jurisdiction in
14  this judicial district.

15

16  **IV.   GENERAL ALLEGATIONS**

17          12.    As noted above, this action is brought against KC for marketing and
18  selling medical/surgical gowns represented to be impermeable and to provide the
19  highest level of protection from the transfer of bodily fluids, bacteria, and infection (i.e.
20  Ebola) between patient and health care professional when in reality, Kimberly-Clark
21  has known since at least as early as 2013 that these gowns failed industry tests and do
22  not meet relevant standards.

23          13.    From approximately 2011 to the present and continuing, KC and/or its
24  distributors have promoted, marketed, and offered for sale to consumers, patients,
25  doctors, clinics, and health care facilities worldwide surgical gowns sold under the
26  name "MICROCOOL[*] Breathable High Performance Surgical Gowns" (hereafter, the
27  "High Performance Gowns"). KC claims the High Performance Gowns provide the
28  highest level of liquid barrier protection available.   According to KC, the High

Performance Gowns are "AAMI Level 4" gowns.  Indeed, in a press release introducing the High Performance Gowns, KC stated the gowns met the AAMI Level 4 Standard for liquid barrier protection and represented that the "gown helps prevent blood and other bodily fluids from penetrating through to the clinician's skin during any procedure and is specifically designed for the most demanding and fluid-intensive procedures."  KC's Vice President of Global Sales and Marketing, Mr. John Amat, was quoted as saying "[t]he gown delivers surgeons and surgical staff a full spectrum of protection and the assurance of barrier integrity, allowing them to concentrate solely on patient care during long and stressful procedures and not on their risk of exposure."  Attached as Exhibit A and incorporated herein by this reference is a true and correct copy of the press release dated May 16, 2011.

14.    "AAMI" stands for the Association for the Advancement of Medical Instrumentation.  AAMI developed the liquid barrier standard to assist healthcare personnel in the selection and use of surgical gowns, drapes, and other protective apparel.  "AAMI Level 4" refers to the AAMI Level 4 Liquid Barrier Standard.  AAMI performance levels range from 1 (least protective) to 4 (most protective).  AAMI guidelines are a widely accepted system of classification for protective apparel and drapes based on liquid barrier performance.  Therefore, by claiming the High Performance Gowns are AAMI Level 4 gowns, KC represents that they provide "the highest barrier protection rating available for gowns."  KC further represents that the High Performance Gowns provide "Level 4" liquid barrier protection to "critical zones."  "Critical zones," according to KC, include the front area of the gown from chest to knees and "the sleeves from the cuff to above the elbow."  Attached as Exhibit B and incorporated herein by this reference is a true and correct copy of KC's full description of the High Performance Gowns, available on its website as of the filing date of this Complaint.

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT

1    15.    KC also represents that the High Performance Gowns are impermeable and

2    meet and exceed:   (a) ANSI/AAMI PB70; (b) ASTM F1670 and ASTM F1671

3    standards for resistance of materials used in protective clothing; and (c) the ASTM

4    F1671 standard for bacteriophage penetration, as well as the European Norms (ENISO

5    22610) for resistance to wet microbial penetration.

6    16.    ANSI/AAMI PB70 is set forth in a document published by AAMI entitled

7    "Liquid barrier performance and classification of protective apparel and drapes

8    intended for use in healthcare facilities."   The document discusses a standard

9    establishing minimum barrier performance requirements, a classification system, and

10   associated labeling requirements for protective apparel, surgical drapes, and drape

11   accessories intended for use in health care facilities.

12   17.    ASTM F1670 and ASTM F1671 refer to standard test methods for the

13   resistance of materials used in protective clothing to penetration by synthetic blood and

14   blood-borne pathogens.   The methods are based on a test method for measuring

15   resistance of chemical protective clothing materials to penetration by liquids.  They are

16   normally used to evaluate specimens from individual finished items of protective

17   clothing, including gowns and their seamed and other discontinuous regions, and

18   individual samples of materials that are candidates for items of protective clothing.

19   18.    From a regulatory perspective, KC knew at all relevant times that surgical

20   gowns such as the High Performance Gowns at issue, are "class II" devices that fall

21   under the classification of "Surgical apparel" pursuant to 21 C.F.R.§ 878.4040.  The

22   regulation describes surgical apparel as follows:

23

24       Surgical apparel are devices that are intended to be worn by
         operating room personnel during surgical procedures **to**
25       **protect both the surgical patient and the operating room**
         **personnel from transfer of microorganisms, body fluids,**
26       **and particulate material**. Examples include surgical caps,
         hoods, masks, gowns, operating room shoes and shoe covers,
27       and isolation masks and gowns. Surgical suits and dresses,

28

commonly known as scrub suits, are excluded.  21 C.F.R. § 878.4040 (emphasis added).

19.  Thus, in its submission to the FDA in connection with the gowns at issue, KC described the intended use of the gowns as follows:

> The Kimberly-Clark* MicroCOOL* Breathable High Performance Surgical Gowns, are sterile, single use surgical apparel intended to be worn by healthcare professionals to **help protect both the patient and the healthcare worker from the transfer of microorganisms, body fluids, and particulate matter**.  The MicroCool Breathable High Performance Surgical Gowns meet the Level 4 requirements of the AAMI Liquid Barrier classifications.  (emphasis added).

20.  With respect to testing of the High Performance Gowns, KC represented to the FDA as follows:

> The Kimberly-Clark* MicroCool* Breathable High Performance Surgical Gown, has been tested in compliance with the requirements of Level 4 liquid barrier performance requirements of ANSI/AAMI PB70:2003 *"Liquid barrier performance and classification of protective apparel and drapes intended for use in health care facilities."*  The MicroCool* Breathable High Performance Surgical Gown also meets the requirements of ASTM1671:2003 *Standard test method for resistance of materials used in protective clothing to penetration by blood-borne pathogens using Phi-X174 bacteriophage penetration as a test system.*  The MicroCool* Breathable High Performance Surgical Gown also meets the requirements of Flame Resistant CPSC 1610 Class 1.  The MicroCool* Breathable High Performance Surgical Gown has also been tested in compliance with the biocompatibility requirements of ISO 10993 for surface devices with limited contact with breached or compromised surfaces. All results of testing met acceptance criteria.

21.  On information and belief, KC's representations concerning the level of protection of the High Performance Gowns are not true, and KC has known they are not true since at least 2013.  Despite this knowledge, KC has not corrected its

8

1  representations, has not stopped selling the High Performance Gowns, has not recalled
2  the High Performance Gowns it has already sold and/or caused to be placed in the
3  distribution channel, has not reported the truth to the FDA, and has not alerted its
4  customers that have purchased these gowns that the gowns were not and are not as
5  represented.  In fact, not only do the High Performance Gowns not *meet* the relevant
6  standards for liquid barrier protection, KC has known since at least 2013 that its High
7  Performance Gowns have *failed* the relevant tests, do not meet AAMI Level 4 and,
8  thus, are at serious risk of causing physicians, health care professionals and patients to
9  be unknowingly exposed to serious bacteria, viruses and illness, including but not
10 limited to Ebola, and further causing such individuals to contract such diseases without
11 warning.

12      22.    In or around 2013 at the latest, KC became aware of failed test results for
13 the High Performance Gowns.  During those tests, ASTM F1671 tests of numerous
14 random samples taken from multiple separate manufacturing lots were conducted.  In
15 each of the tests, the High Performance Gowns failed at rates that greatly exceeded
16 failure rates acceptable for satisfying AAMI Level 4 standards, with many of the gowns
17 experiencing catastrophic failures.  Among other things, the tests revealed that the
18 gowns allowed liquid and bacterial and viral pathogens to penetrate the gowns, thus
19 placing physicians, health care professionals and patients at considerable risk.

20      23.    As a result of these failed test results, KC knew that it could no longer
21 honestly represent the High Performance Gowns as being "impermeable," of meeting
22 AAMI Level 4, of meeting ASTM F1670 and F1671 testing standards, and/or of
23 satisfying ANSI/AAMI PB70.  It also knew that certain of its representations to the
24 FDA regarding the gowns were false.  KC also knew it should take immediate action to
25 announce that the High Performance Gowns did not meet appropriate standards; recall
26 the gowns; alert Federal, State and local governments and the FDA; alert physicians,
27 health care professionals and patients worldwide; and undertake efforts to immediately
28 cause the gowns to be removed from the shelves and distribution channels of health

1   care facilities and distributors worldwide.  In short, KC knew as of 2013 at the latest

2   and likely well over a year earlier, that the High Performance Gowns are not safe for

3   the intended uses and place both patients *and* health care professionals at risk of serious

4   infection and bodily harm.

5       24.    However, instead of taking appropriate and immediate action to protect

6   health care professionals and the public at large, KC did nothing of the sort.  Kimberly

7   Clark did not recall the gowns; did not alert Federal, State and local governments and

8   the FDA; did not alert physicians, health care professionals and patients worldwide; and

9   did not undertake efforts to immediately cause the gowns to be removed from the

10  shelves and distribution channels of health care facilities and distributors worldwide.

11  Indeed, on information and belief, in an effort to place their own monetary self interest

12  ahead of the welfare of the general public and health care professionals worldwide, KC

13  together with certain of its employees, executives, agents, distributors and others took

14  affirmative steps to conceal, not disclose and cover-up their knowledge and purposely

15  avoid and/or delay the disclosure of the problems with its gowns.

16      25.    Moreover, despite its knowledge as described above, in recent public

17  statements, KC has nevertheless represented that the High Performance Gowns are *safe*

18  *to use in connection with patients suspected of contracting the Ebola virus*.  KC's

19  website states as follows:

20          As concerns around the spread of the Ebola virus continue to
21          grow, the number of inquiries we receive regarding
            recommendations for PPE [i.e., "Personal Protective
22          Equipment"] and our plans for Pandemic Preparedness are
23          growing in tandem.   Therefore, we want to proactively
            provide you with guidance on preparing for a pandemic **as**
24          **well as solutions for proper PPE**.  We are providing you
25          with a clinical Kimberly-Clark Ebola Virus Precautions Brief
            and a Kimberly-Clark Personal Protection Solutions guide as
26          well as other resources to answer questions you have about
27          the Ebola Virus Disease.

28

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT

26.     Below this statement on its website, KC shares a link inviting visitors to download the "Kimberly-Clark Personal Protection Solutions Guide," which advises health care facilities to use the High Performance Gowns in connection with treating patients who may be infected with the Ebola virus.  The link to this list of KC products, which includes the High Performance Gowns, is also available on KC's letter to customers entitled the "Kimberly-Clark Pandemic Preparedness Customer Letter" dated August 14, 2014.   Attached hereto as Exhibit C and incorporated herein by this reference is a true and correct copy of a page relating to Ebola preparedness available on KC's website.  Attached hereto as Exhibit D is a true and correct copy of KC's August 14, 2014 letter posted on its website.   Attached hereto as Exhibit E and incorporated herein by this reference is a true and correct copy of the list of KC "Personal Protective Equipment" products, which include the High Performance Gowns and which KC recommends in connection with the treatment of suspected or confirmed Ebola patients.

27.     Further, on September 19, 2014, KC issued a document entitled "Kimberly-Clark Ebola Virus Disease (EVD) Precautions Brief."  In this document, KC provides a list of recommendations for "Personal Protection" from the Ebola virus, as well as the use of "appropriate personal protective equipment (PPE)."  With respect to surgical gowns, KC advises health care professionals to use "Level 4" gowns—the represented clearance level for the High Performance Gowns—for working with Ebola patients.  Attached hereto as Exhibit F and incorporated herein by this reference is a true and correct copy of this document.

28.     In short, despite knowing since at least 2013 that its High Performance Gowns failed industry tests and were at risk for allowing bodily fluid, bacteria, and other harmful matter to pass between patients and health care professionals, KC has recommended these gowns are safe for use in high-risk medical environments, including when treating Ebola.  KC's recklessness and indifference to the prospect that it is responsible for placing patients and health care professionals at great and

11

**NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT**

1   unnecessary risk of infection and bodily harm is nothing short of astonishing and, more
2   to the point, utterly reprehensible.

3       29.   On October 10, 2014, AAMI issued a press release entitled "Surgery
4   Protocol for Ebola Includes AAMI Gown Standard." In the press release, AAMI
5   recommends that surgeons and health care professionals wear "AAMI Level 4" surgical
6   gowns and drapes when operating on suspected or confirmed Ebola patients. On
7   October 21, 2014, the American College of Surgeons issued a statement echoing the
8   AAMI guidance by advising that due to the significant risk of exposure to blood or
9   bodily fluids, all operating room personnel should wear "AAMI Level 4" impervious
10  surgical gowns. Again, while the public and the health care community is being led to
11  believe that "AAMI Level 4" gowns manufactured and distributed by KC are safe for
12  Ebola patients or other sensitive operations, and KC's gowns have met critical industry
13  standards and are "impermeable," KC together with certain of its employees,
14  executives, agents, distributors, and others have been silent in disclosing the truth.

15

16  **V.   CLASS ACTION ALLEGATIONS**
17  <u>**Fed. R. Civ. Proc. 23(b)(2)**</u>

18      30.   Plaintiff brings this action pursuant to Rule 23(b)(2) of the Federal Rules
19  of Civil Procedure on behalf of himself and all purchasers and users, including entities
20  and natural persons, in the United States who purchased or used the KC High
21  Performance Gowns from 2011 to the present (the "Injunctive Relief Class"), with the
22  following subclass:

23            (a)   All purchasers and users, including entities and natural persons in
24                 California, who purchased or used the High Performance Gowns
25                 from 2011 to the present (the "California Injunctive Relief
26                 Subclass").

27      31.   Excluded from the Injunctive Relief Class is any governmental entity and
28  any person or entity in which any judge, justice, or judicial officer presiding over this

1 matter and members of their immediate families and judicial staff, have any controlling
2 interest. Excluded from the Injunctive Relief Class is any partner or employee of Class
3 Counsel. Plaintiff reserves the right to modify the Class description and the Class
4 based on the results of discovery.

5      32.    Class certification is proper under Rule 23 of the Federal Rules of Civil
6 Procedure because KC has acted (or refused to act) on grounds generally applicable to
7 the Injunctive Relief Class thereby making appropriate injunctive relief with respect to
8 the Injunctive Relief Class as a whole.

9      33.    Plaintiff reserves the right to modify the definition of the Injunctive Relief
10 Class after further discovery, and further reserve the right to only seek class
11 certification under Rule 23(b)(2) for injunctive relief and not to seek class certification
12 under Rule 23(b)(3) for monetary damages.

13 **Fed. R. Civ. Proc. 23(b)(3)**

14      34.    Plaintiff separately brings this action pursuant to Rule 23(b)(3) of the
15 Federal Rules of Civil Procedure on behalf of himself and all purchasers and users,
16 including entities and natural persons, in the United States who purchased or used the
17 KC High Performance Gowns from 2011 to the present (the "Damages Class"), with
18 the following subclass:

19           (a)    All purchasers and users, including entities and natural persons in
20                California, who purchased or used the High Performance Gowns from
21                2011 to the present (the "California Damages Subclass").

22      35.    Excluded from the Damages Class is any governmental entity and any
23 person or entity in which any judge, justice, or judicial officer presiding over this matter
24 and members of their immediate families and judicial staff, have any controlling
25 interest. Excluded from the Damages Class is any partner or employee of Class
26 Counsel. Plaintiff reserves the right to modify the class description and the class based
27 on the results of discovery.

28

36.     Questions of law or fact common to Damages Class members predominate over any questions affecting only individual Damages Class members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

37.     Plaintiffs reserve the right to modify the definition of the Damages Class after further discovery and further reserve the right to only seek class certification under Rule 23(b)(2) for injunctive relief and not to seek class certification under Rule 23(b)(3) for monetary damages.

### Fed. R. Civ. Proc. 23(a) Prerequisites

38.     The Injunctive Relief Class and Damages Class are sometimes referred to collectively herein as the "Class" and the members of the Class as "Class Members."

39.     The California Injunctive Relief Class and California Damages Class are sometimes referred to collectively herein as the "California Class".

40.     <u>Numerosity of the Class</u>.  The Injunctive Relief Class is so numerous that joinder of all members in one action is impracticable.  While the exact number and identities of Injunctive Relief Class Members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes and therefore alleges that there are in excess of 500,000 members of the Injunctive Relief Class.  The Damages Class is so numerous that joinder of all members in one action is impracticable.  While the exact number and identities of Damages Class Members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes and therefore alleges that there are in excess of 500,000 members of the Damages Class.

41.     <u>Typicality of Claims</u>.  Plaintiff's claims are typical of those of other Injunctive Relief Class Members and also of other Damages Class Members, all of whom have suffered similar harm due to KC and/or its distributors' course of conduct as described herein.

**NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT**

42.   Adequacy of Representation.  Plaintiff is an adequate representative of the Injunctive Relief Class and the Damages Class and will fairly and adequately protect the interests of both Classes and have retained attorneys who are highly experienced in the handling of class actions, and Plaintiffs and their counsel intend to prosecute this action vigorously.

43.   Predominance of Common Questions of Law or Fact.  Common questions of fact and law exist as to all Class Members that predominate over any questions affecting only individual Class Members.  These common legal and factual questions, which do not vary among Class Members, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

    (a)   Whether KC and/or its distributors represented that the High Performance Gowns are impermeable and protect both the surgical patient and the operating room personnel from transfer of microorganisms, body fluids, and particulate material;

    (b)   Whether KC and/or its distributors represented that the High Performance Gowns meet AAMI Level 4 Liquid Barrier Standards;

    (c)   Whether KC and/or its distributors represented that the High Performance Gowns provide "Level 4" liquid barrier protection to "critical zones," which include "the sleeves from the cuff to above the elbow";

    (d)   Whether and when KC and/or its distributors learned that the above representations were false;

    (e)   Whether KC and/or its distributors disclosed to their customers, patients the government, health care professionals, and/or the general public that the above representations were false;

    (f)   Whether the above representations were material;

(g)  Whether KC and/or its distributors intentionally or recklessly concealed that the High Performance Gowns were not impermeable, did not meet AAMI Level 4 Liquid Barrier Standards, and did not provide "Level 4" liquid barrier protection to all "critical zones";

(h)  Whether KC and/or its distributors had any reasonable grounds for believing the representations described above were true when they made them;

(i)  Whether KC and/or its distributors' conduct was undertaken with conscious disregard of the rights of the members of the Class, and was done with fraud, oppression, and/or malice;

(j)  Whether injunctive relief is appropriate and necessary to enjoin KC and/or its distributors from selling the High Performance Gowns;

(k)  Whether KC and/or its distributors' disclosures regarding the lack of liquid barrier protection afforded by the High Performance Gowns were inadequate so as to be false, deceptive, and/or unfair;

(l)  Whether KC and/or its distributors' conduct was an "unfair practice," within the meaning of California Unfair Competition Laws;

(m)  Whether KC and/or its distributors' conduct was an "unlawful" practice within the meaning of the UCL;

(n)  Whether KC and/or its distributors' conduct was a "fraudulent practice" within the meaning of the UCL in that it is likely to mislead consumers;

(o)  Whether KC and/or its distributors engaged in untrue and/or misleading marketing and/or advertising by marketing and/or advertising the High Performance Gowns as being impermeable, meeting AAMI Level 4 Liquid Barrier Standards, and meeting other standards as represented;

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT

(p)   Whether KC and/or its distributors' conduct caused harm to the Class;

(q)   Whether the members of the Class are entitled to restitution and/or suffered damages.

44.   <u>Superiority</u>.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because individual litigation of the claims of all Class Members is impracticable.  Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered.   Even if every Class Member could afford individual litigation, the adjudication of hundreds of thousands of identical claims would be unduly burdensome to the courts.   Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the Class Members.  Plaintiff anticipates no difficulty in the management of this action as a class action.  The prosecution of separate actions by individual Class Members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

# VI.   CLAIMS FOR RELIEF

## <u>COUNT ONE</u>

### FRAUD (AFFIRMATIVE MISREPRESENTATIONS)

45.   Plaintiff restates and re-alleges paragraphs 1 through 44 as if fully set forth herein.

46. KC and/or its distributors uniformly represented that the High Performance Gowns:

    (a)    are impermeable and protect both the surgical patient and the operating room personnel from transfer of microorganisms, body fluids, and particulate material;

    (b)    meet AAMI Level 4 Liquid Barrier Standards;

    (c)    meet ASTM F1670 and ASTM F1671 standards for resistance of materials used in protective clothing;

    (d)    meet ASTM F1671 standards for bacteriophage penetration, as well as the European Norms (ENISO 22610) for resistance to wet microbial penetration;

    (e)    provide "Level 4" liquid barrier protection to "critical zones," which include the front area of the gown from chest to knees and "the sleeves from the cuff to above the elbow";

    (f)    will not leak bodily fluids or pass bacterial organisms either from the health care worker to the patient, or vice versa, and are safe for use in the treatment of patients with infectious diseases or whose treatment require a sterile environment; and/or

    (g)    provide the highest level of liquid barrier protection such that the gowns are recommended in the treatment of suspected or confirmed Ebola patients.

47. KC's and/or its distributors' representations described above were false. KC and/or its distributors intentionally and/or recklessly misrepresented the material facts set forth above. The true facts include, among other things, that the High Performance Gowns:

    (a)    failed ASTM F1671 tests at rates that exceeded failure rates acceptable for satisfying AAMI Level 4 standards, and the tests revealed that liquid and bacterial matter penetrated the gowns.

(b)     were not impermeable and did not protect both the surgical patient and the operating room personnel from transfer of microorganisms, body fluids, and particulate material;

(c)     did not meet AAMI Level 4 Liquid Barrier Standards;

(d)     did not meet ASTM F1670 and ASTM F1671 standards for resistance of materials used in protective clothing;

(e)     did not meet ASTM F1671 standards for bacteriophage penetration, as well as the European Norms (ENISO 22610) for resistance to wet microbial penetration;

(f)     did not provide "Level 4" liquid barrier protection to the "critical zone" of "the sleeves from the cuff to above the elbow";

(g)     did not prevent the leakage of bodily fluids or the passing of bacterial organisms between health care professionals and patients, and was not safe for use in the treatment of patients with infectious diseases or whose treatment require a sterile environment; and/or

(h)     did not provide the highest level of liquid barrier protection such that the gowns are recommended in the treatment of suspected or confirmed Ebola patients

48.     KC and/or its distributors' statements were made with the intent to deceive Plaintiff and the Class.

49.     Plaintiff and the Class, at the time these representations were made by KC and/or its distributors, and at the time Plaintiff and the Class took the actions herein alleged, were ignorant of the falsity of KC and/or its distributors' representations and believed them to be true.  Plaintiff and the Class relied on KC and/or its distributors' representations and had Plaintiff and the Class known of the actual facts, Plaintiff and the Class would not have taken the actions they did, including but not limited to purchasing the High Performance Gowns and using the High Performance Gowns in

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT

1   the treatment of patients.  Plaintiff and the Class' reliance on KC and/or its distributors'

2   representations was justified.

3       50.    As a direct and proximate result of the above, Plaintiff and the Class have

4   suffered economic and non-economic damages in an amount to be proven at trial.

5       51.    KC undertook the aforesaid illegal acts intentionally or with conscious

6   disregard of the rights of Plaintiff and the Class, and did so with fraud, oppression,

7   and/or malice.  This despicable conduct subjected Plaintiff and the Class to cruel and

8   unjust hardship so as to justify an award of punitive damages in an amount sufficient to

9   deter such wrongful conduct in the future.  Therefore, Plaintiff and the Class are also

10   entitled to punitive damages against KC in an amount to be determined at trial.

11

12   **COUNT TWO**

13   **FRAUDULENT CONCEALMENT/NON-DISCLOSURE**

14       52.    Plaintiff restates and re-alleges paragraphs 1 through 51 as if fully set forth

15   herein

16       53.    As alleged above, KC and/or its distributors made a number of

17   representations concerning the High Performance Gowns, including that the High

18   Performance Gowns are impermeable, meet AAMI Level 4 Liquid Barrier Standards,

19   meet ASTM F1670 and ASTM F1671 standards, and provide "Level 4" liquid barrier

20   protection to "critical zones," which include "the sleeves from the cuff to above the

21   elbow."

22       54.    KC and/or its distributors' representations described above were false.

23   However, despite knowing of the falsity of their representations at least as of 2013, KC

24   and/or its distributors concealed, and/or failed to disclose material and contrary facts set

25   forth above, including, among other things, that the High Performance Gowns:

26       (a)    failed ASTM F1671 tests at rates that exceeded failure rates

27       acceptable for satisfying AAMI Level 4 standards, and the tests

28       revealed that liquid and bacterial matter penetrated the gowns.

(b) were not impermeable and did not protect both the surgical patient and the operating room personnel from transfer of microorganisms, body fluids, and particulate material;

(c) did not meet AAMI Level 4 Liquid Barrier Standards;

(d) did not meet ASTM F1670 and ASTM F1671 standards for resistance of materials used in protective clothing;

(e) did not meet ASTM F1671 standards for bacteriophage penetration, as well as the European Norms (ENISO 22610) for resistance to wet microbial penetration;

(f) did not provide "Level 4" liquid barrier protection to the "critical zone" of "the sleeves from the cuff to above the elbow";

(g) did not prevent the leakage of bodily fluids or the passing of bacterial organisms between health care professionals and patients, and was not safe for use in the treatment of patients with infectious diseases or whose treatment require a sterile environment; and/or

(h) did not provide the highest level of liquid barrier protection such that the gowns are recommended in the treatment of suspected or confirmed Ebola patients

55. KC and/or its distributors concealed and failed to disclose these material facts with the intent to deceive Plaintiff and the Class.

56. KC and/or its distributors' concealments and non-disclosure of material facts as set forth above were made with the intent to induce Plaintiff and the Class to act in the manner herein alleged in reliance thereon.

57. Plaintiff and the Class, at the time these failures to disclose and suppressions of facts occurred, and at the time Plaintiff and the Class took the actions herein alleged, were ignorant of the existence of the facts that KC and/or its distributors suppressed and failed to disclose. If Plaintiff and the Class had known of KC and/or its distributors' concealments and failures to disclose material facts, they would not have

1   taken the actions they did, including but not limited to purchasing the High

2   Performance Gowns and using the High Performance Gowns in the treatment of

3   patients.  Plaintiff and the Class' reliance was justified and reasonable as they had no

4   basis to doubt the original representations made to them, nor did they have reason to

5   believe they were being misled or material facts were being concealed from them.

6       58.    As a direct and proximate result of the above, Plaintiff and the Class have

7   suffered economic and non-economic damages in an amount to be proven at trial.

8       59.    KC undertook the aforesaid illegal acts intentionally or with conscious

9   disregard of the rights of Plaintiff and the Class, and did so with fraud, oppression,

10  and/or malice.  This despicable conduct subjected Plaintiff and the Class to cruel and

11  unjust hardship so as to justify an award of punitive damages in an amount sufficient to

12  deter such wrongful conduct in the future.  Therefore, Plaintiff and the Class are also

13  entitled to punitive damages against KC in an amount to be determined at trial.

14

15                          **COUNT THREE**

16                  **NEGLIGENT MISREPRESENTATION**

17      60.    Plaintiff restates and re-alleges paragraphs 1 through 59 as if fully set forth

18  herein.

19      61.    KC and/or its distributors uniformly represented that the High Performance

20  Gowns:

21          (a)    are impermeable and protect both the surgical patient and the

22                 operating room personnel from transfer of microorganisms, body

23                 fluids, and particulate material;

24          (b)    meet AAMI Level 4 Liquid Barrier Standards;

25          (c)    meet ASTM F1670 and ASTM F1671 standards for resistance of

26                 materials used in protective clothing;

27

28

**NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT**

(d)  meet ASTM F1671 standards for bacteriophage penetration, as well as the European Norms (ENISO 22610) for resistance to wet microbial penetration;

(e)  provide "Level 4" liquid barrier protection to "critical zones," which include the front area of the gown from chest to knees and "the sleeves from the cuff to above the elbow";

(f)  will not leak bodily fluids or pass bacterial organisms either from the health care worker to the patient, or vice versa, and are safe for use in the treatment of patients with infectious diseases or whose treatment require a sterile environment; and/or

(g)  provide the highest level of liquid barrier protection such that the gowns are recommended in the treatment of suspected or confirmed Ebola patients.

62.  KC's and/or its distributors' representations described above were false. The true facts include, among other things, that the High Performance Gowns:

(a)  failed ASTM F1671 tests at rates that exceeded failure rates acceptable for satisfying AAMI Level 4 standards, and the tests revealed that liquid and bacterial matter penetrated the gowns.

(b)  were not impermeable and did not protect both the surgical patient and the operating room personnel from transfer of microorganisms, body fluids, and particulate material;

(c)  did not meet AAMI Level 4 Liquid Barrier Standards;

(d)  did not meet ASTM F1670 and ASTM F1671 standards for resistance of materials used in protective clothing;

(e)  did not meet ASTM F1671 standards for bacteriophage penetration, as well as the European Norms (ENISO 22610) for resistance to wet microbial penetration;

**NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT**

(f)    did not provide "Level 4" liquid barrier protection to the "critical zone" of "the sleeves from the cuff to above the elbow";

(g)    did not prevent the leakage of bodily fluids or the passing of bacterial organisms between health care professionals and patients, and was not safe for use in the treatment of patients with infectious diseases or whose treatment require a sterile environment; and/or

(h)    did not provide the highest level of liquid barrier protection such that the gowns are recommended in the treatment of suspected or confirmed Ebola patients

63.    KC and/or its distributors had no reasonable grounds for believing the representations described above were true when they made them.

64.    KC and/or its distributors intended that Plaintiff and the Class rely on these representations.

65.    Plaintiff and the Class, at the time these representations were made by KC and/or its distributors, and at the time Plaintiff and the Class took the actions herein alleged, were ignorant of the falsity of KC and/or its distributors' representations and believed them to be true.  Plaintiff and the Class relied on KC and/or its distributors' representations and had Plaintiff and the Class known of the actual facts, Plaintiff and the Class would not have taken the actions they did, including but not limited to purchasing the High Performance Gowns and/or using the High Performance Gowns in the treatment of patients.  Plaintiff and the Class' reliance on KC and/or its distributors' representations was justified.

66.    As a direct and proximate result of the above, Plaintiff and the Class have suffered economic and non-economic damages in an amount to be proven at trial.

67.    KC undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, oppression, and/or malice.  This despicable conduct subjected Plaintiff and the Class to cruel and unjust hardship so as to justify an award of punitive damages in an amount sufficient to

1  deter such wrongful conduct in the future.  Therefore, Plaintiff and the Class are also

2  entitled to punitive damages against KC in an amount to be determined at trial.

3

4  ## COUNT FOUR

5  ## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE

6  ## SECTION 17200 *ET SEQ.*

7       68.    Plaintiff restates and re-alleges paragraphs 1 through 67 as if fully set forth

8  herein.

9       69.    California Business and Professions Code section 17200 *et seq.*, also

10  known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair

11  competition," including any unlawful, unfair, fraudulent, or deceptive business act or

12  practice as well as "unfair, deceptive, untrue or misleading advertising."

13       70.    By engaging in the false, deceptive, and misleading conduct alleged above,

14  KC and/or its distributors have engaged in unlawful business acts and practices in

15  violation of the UCL, including by violating state and federal laws, including but not

16  limited to 21 U.S.C. § 360; and 21 C.F.R. §§ 803.1 *et seq.*, 21 C.F.R. § 878.4040, and

17  Cal. Bus. & Prof. Code §§ 17500 *et seq.*

18       71.    KC and/or its distributors' conduct in misleading Plaintiff and the Class

19  through its affirmative misrepresentations and failures to disclose material facts to

20  Plaintiff and the Class, as described above, also constitutes a "fraudulent" and "unfair"

21  business practice within the meaning of the UCL.

22       72.    Plaintiff and each Class Member suffered an injury in fact and lost money

23  or property as a result of KC and/or its distributors' unlawful, unfair, and/or fraudulent

24  business practices.

25       73.    Plaintiff, on behalf of himself and the Class, seeks restitution and

26  disgorgement of all moneys received by KC and/or its distributors through the unlawful

27  and fraudulent conduct described above.

28

**NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT**

1  74.   Plaintiff, on behalf of himself and the Class, seeks a temporary,

2  preliminary, and/or permanent injunction from this Court prohibiting KC and/or its

3  distributors from engaging in the patterns and practices described herein.

4

5  **COUNT FIVE**

6  **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE**

7  **SECTION 17500 *ET SEQ.***

8  75.   Plaintiff restates and re-alleges paragraphs 1 through 74 as if fully set forth

9  herein.

10  76.   California Business and Professions Code section 17500 et seq., also

11  known as the California False Advertising Law, makes it "unlawful for any person, . . .

12  corporation or association, or any employee thereof with intent directly or indirectly to

13  dispose of . . . personal property . . . or anything of any nature whatsoever . . . to make

14  or disseminate or cause to be made or disseminated from this state before the public in

15  any state, in any newspaper or other publication, or any advertising device, or by public

16  outcry or proclamation, or in any other manner or means whatsoever, including over the

17  Internet, any statement, concerning that . . . personal property . . . or concerning any

18  circumstance or matter of fact connected with the proposed performance or disposition

19  thereof, which is untrue or misleading, and which is known, or which by the exercise of

20  reasonable care should be known, to be untrue or misleading . . ." Cal. Bus. & Prof.

21  Code § 17500.

22  77.   As alleged above, KC and/or its distributors disseminated or caused to be

23  disseminated to the general public through various media deceptive advertising

24  regarding the High Performance Gowns. More specifically, as a solicitation to Plaintiff

25  and the Class to patronize the products provided by KC and/or its distributors, and as a

26  material part thereof, KC and/or its distributors made various representations to

27  Plaintiff and the Class concerning the High Performance Gowns that were untrue or

28  misleading, including, among other things, that the High Performance Gowns:

(a)   are impermeable and protect both the surgical patient and the operating room personnel from transfer of microorganisms, body fluids, and particulate material;

(b)   meet AAMI Level 4 Liquid Barrier Standards;

(c)   meet ASTM F1670 and ASTM F1671 standards for resistance of materials used in protective clothing;

(d)   meet ASTM F1671 standards for bacteriophage penetration, as well as the European Norms (ENISO 22610) for resistance to wet microbial penetration;

(e)   provide "Level 4" liquid barrier protection to "critical zones," which include the front area of the gown from chest to knees and "the sleeves from the cuff to above the elbow";

(f)   will not leak bodily fluids or pass bacterial organisms either from the health care worker to the patient, or vice versa, and are safe for use in the treatment of patients with infectious diseases or whose treatment require a sterile environment; and/or

(g)   provide the highest level of liquid barrier protection such that the gowns are recommended in the treatment of suspected or confirmed Ebola patients.

78.   KC and/or its distributors continue to disseminate or cause to be disseminated such untrue and/or misleading representations concerning the High Performance Gowns as alleged above.  Indeed, despite knowing the falsity of their claims at least as of 2013 when KC learned about the failed test results for the High Performance Gowns, KC and/or its distributors failed to disclose the true facts concerning the High Performance Gowns as alleged above.

79.   The untrue and/or misleading statements KC and/or distributors caused to be disseminated concerning the High Performance Gowns as alleged above have deceived Plaintiff and the Class and are likely to deceive the consuming public.

80.    While disseminating or causing to be disseminated the untrue and/or misleading statements concerning the High Performance Gowns as alleged above, KC and/or its distributors knew or should have known that the representations were false, deceptive, and/or misleading.

81.    As a direct and proximate result of KC and/or its distributors' untrue and/or misleading representations concerning the High Performance Gowns as alleged above, KC and/or its distributors knew or should have known that the representations were untrue and/or misleading.

82.    As a direct and proximate result of KC and/or its distributors' untrue and/or misleading representations concerning the High Performance Gowns as alleged above, Plaintiff and the members of the Class have been injured in fact, in that they purchased and/or used the High Performance Gowns in reliance on KC and/or its distributors' untrue and/or misleading representations and would not have purchased had the truth been adequately disclosed.

83.    KC and/or its distributors' untrue and/or misleading representations as alleged above presents a continuing threat to Plaintiff, the Class, and members of the public because KC and/or its distributors continue to disseminate untrue and/or misleading advertising, and will not cease doing so unless and until enjoined or restrained by this Court.

84.    Under California Business and Professions Code section 17535, Plaintiff, on behalf of himself, the Class Members, and members of the general public, seek an order of this Court:

        (a)    For injunctive relief requiring KC and/or its distributors to disclose, on its website and on the packaging of all the High Performance Gowns, that the High Performance Gowns are not impermeable, do not protect both the surgical patient and operating room personnel from transfer of microorganisms, body fluids, and particulate matter,

NATIONWIDE AND CALIFORNIA CLASS ACTION COMPLAINT

1            do <u>not</u> meet AAMI Level 4 Liquid Barrier Standards, and do <u>not</u>

2            meet ASTM F1670 and F1671 standards; and

3     (b)     Restitution of all monies paid to KC and/or its distributors for the

4            High Performance Gowns.

5

6 **VII. PRAYER FOR RELIEF**

7       WHEREFORE, Plaintiff prays for judgment against Defendants, and each of

8 them, as follows:

9

10 **<u>ON THE FIRST CAUSE OF ACTION FOR FRAUD (AFFIRMATIVE</u>**

11 **<u>MISREPRESENTATIONS)</u>**

12     1.     An Order certifying that the action be maintained as a class action under

13 Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

14     2.     An injunction precluding the wrongful conduct described herein.

15     3.     For compensatory damages in an amount that exceeds $500 million, with

16 the exact amount to be proven at trial.

17     4.     For punitive damages in an amount sufficient to punish Defendants and to

18 defer them from engaging in wrongful conduct in the future.

19     5.     For pre and post judgment interest and costs of suit incurred herein.

20     6.     For attorneys' fees incurred herein, to the extent permitted by law.

21     7.     For such other and further relief as the Court may deem just and proper.

22 **<u>ON THE SECOND CAUSE OF ACTION FOR FRAUDULENT</u>**

23 **<u>CONCEALMENT</u>**

24     1.     An Order certifying that the action be maintained as a class action under

25 Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

26     2.     An injunction precluding the wrongful conduct described herein.

27     3.     For compensatory damages in an amount that exceeds $500 million, with

28 the exact amount to be proven at trial.

4.      For punitive damages in an amount sufficient to punish Defendants and to defer them from engaging in wrongful conduct in the future.

5.      For pre and post judgment interest and costs of suit incurred herein.

6.      For attorneys' fees incurred herein, to the extent permitted by law.

7.      For such other and further relief as the Court may deem just and proper.

## ON THE THIRD CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION

1.      An Order certifying that the action be maintained as a class action under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2.      An injunction precluding the wrongful conduct described herein.

3.      For compensatory damages in an amount that exceeds $500 million, with the exact amount to be proven at trial.

4.      For pre and post judgment interest and costs of suit incurred herein.

5.      For attorneys' fees incurred herein, to the extent permitted by law.

6.      For such other and further relief as the Court may deem just and proper.

## ON THE FOURTH CAUSE OF ACTION FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*)

1.      An Order certifying that the action be maintained as a class action under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2.      An injunction precluding the wrongful conduct described herein.

3.      For restitution of moneys paid for property in an amount that exceeds $500 million, with the exact amount to be proven at trial.

4.      An award of equitable and declaratory relief.

5.      For pre and post judgment interest and costs of suit incurred herein.

6.      For attorneys' fees incurred herein, to the extent permitted by law.

7.      For such other and further relief as the Court may deem just and proper.

**ON THE FIFTH CAUSE OF ACTION FOR FALSE ADVERTISING (CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.*)**

1.     An Order certifying that the action be maintained as a class action under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2.     An injunction precluding the wrongful conduct described herein and requiring KC and/or its distributors to disclose, on its website and on the packaging of all the High Performance Gowns, that the High Performance Gowns are <u>not</u> impermeable, do <u>not</u> protect both the surgical patient and operating room personnel from transfer of microorganisms, body fluids, and particulate matter, do <u>not</u> meet AAMI Level 4 Liquid Barrier Standards, and do <u>not</u> meet ASTM F1670 and F1671 standards.

3.     For restitution of moneys paid for property in an amount that exceeds $500 million, with the exact amount to be proven at trial.

4.     An award of equitable and declaratory relief.

5.     For pre and post judgment interest and costs of suit incurred herein.

6.     For attorneys' fees incurred herein, to the extent permitted by law.

7.     For such other and further relief as the Court may deem just and proper.

Dated: October 29, 2014                          EAGAN AVENATTI, LLP


                                                 By: _____
                                                      Michael J. Avenatti
                                                      Attorneys for Plaintiffs

**JURY DEMAND**


Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 29, 2014                          EAGAN AVENATTI, LLP


                                                 By: _____
                                                      Michael J. Avenatti
                                                      Attorneys for Plaintiffs

31