1  ALEXANDER CALFO (State Bar No. 152891)
   acalfo@kslaw.com
2  JULIA ROMANO (State Bar No. 260857)
   jromano@kslaw.com
3  KING & SPALDING LLP
   633 W. 5th, Suite 1700
4  Los Angeles, CA  90071
   Telephone:  (213) 443-4355
5  Facsimile:  (213) 443-4347

6  Attorneys for Defendants
   KIMBERLY-CLARK CORPORATION,
7  a Delaware Corporation, and  HALYARD
   HEALTH, INC., a Delaware Corporation

8                  **UNITED STATES DISTRICT COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10

11  BAHAMAS SURGERY CENTER,            Case No. 2:14-cv-08390-DMG-PLA
    LLC dba Bahamas Surgery Center, a
12  California limited liability company, on   **DECLARATION OF STEPHEN**
    behalf of itself and all others similarly   **DEVEREAUX IN SUPPORT OF**
13  situated;                                   **DEFENDANTS' OPPOSITION TO**
                                                **PLAINTIFF'S MOTION FOR**
14              Plaintiff,                       **CLASS CERTIFICATION**

15       v.

16  KIMBERLY-CLARK
    CORPORATION, a Delaware
17  Corporation; and HALYARD
    HEALTH, INC., a Delaware
18  Corporation,

19              Defendants.

20

21

22

23

24

25

26

27

28

1    I, Stephen Devereaux, declare as follows:

2    1.    I am an attorney licensed to practice law in the State of Georgia. I

3    have been retained by Defendants Kimberly-Clark Corporation ("Kimberly-

4    Clark") and Halyard Health, Inc. ("Halyard") to represent them in connection with

5    this matter. I am admitted pro hac vice to appear and participate in this case on

6    behalf of Kimberly-Clark and Halyard. I have personal knowledge of the

7    following, and if called to testify, could and would testify to the contents of this

8    declaration.

9    2.    I make this declaration in support of Defendants' Opposition to

10   Plaintiff's Motion for Class Certification.

11   3.    Attached hereto as Exhibit 1 is a true and correct copy of an Excel

12   spreadsheet with the file name "(KC-Shahinian) Nationwide Fraud Chart," to be

13   manually lodged with the Court.

14   4.    Attached hereto as Exhibit 2 is a true and correct copy of excerpts

15   from Plaintiffs' Responses to Kimberly-Clark's First Set of Interrogatories, dated

16   February 2, 2016.

17   5.    Attached hereto as Exhibit 3 is a true and correct copy of the May 21,

18   2013 MICROCOOL* ASTM F1671 test report, which was produced by Kimberly-

19   Clark in this matter and identified by Bates numbers KC-Shahinian-0000007134-

20   7141.

21   6.    Attached hereto as Exhibit 4 is a true and correct copy of a request

22   form for the May 21, 2013 MICROCOOL* ASTM F1671 test report, which was

23   produced by Kimberly-Clark in this matter and identified by Bates numbers KC-

24   Shahinian-0001795605-1795607.

25   7.    Attached hereto as Exhibit 5 is a true and correct copy of the

26   Amendment to the Corporate Program Agreement between MedCal Sales, LLC

27

28

1

**DECLARATION OF STEPHEN DEVEREAUX IN SUPPORT OF**
**OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1  and Prime Healthcare dated December 1, 2008, which was produced by Plaintiffs

2  in this matter and identified by Bates numbers PLTF000153-PLTF000162.

3    8.    Attached hereto as Exhibit 6 is a true and correct copy of the

4  transcript of the deposition of Lisa Ottem, 30(b)(6) representative for former

5  named plaintiffs Prime Healthcare Centinela, LLC; Prime Healthcare Services –

6  Garden Grove, LLC; Prime Healthcare Services – Harlingen, LLC; Knapp Medical

7  Center, LLC; and Prime Healthcare Services – Landmark, LLC, which was taken

8  on May 24, 2016 in this matter.

9    9.    Attached hereto as Exhibit 7 is a true and correct copy of the Contract

10  Launch Package between The Broadlane Group and Professional Hospital Supply

11  dated October 21, 2008, which was produced by former named plaintiff Prime

12  Healthcare Services – Harlingen, LLC in this matter and identified by Bates

13  numbers PHSH000060-PHSH000070.

14    10.    Attached hereto as Exhibit 8 is a true and correct copy of an email

15  thread dated February 24, 2016 to March 7, 2016, which was produced by former

16  named plaintiff Prime Healthcare Centinela, LLC in this matter and identified by

17  Bates numbers PHC000017-PHC000021.

18    11.    Attached hereto as Exhibit 9 is a true and correct copy of the Safety

19  Data Sheet for the Prevention Plus Breathable Film Surgical Gowns, which is

20  available on the company website for Medline Industries, Inc.:

21  http://www.medline.com/sku/item/MDPDYNJP2302P;ecomsessionid=8mdY4uyn

22  eeG1-heP5XZO1Q__?skuIndex=S3&question=&flowType=&indexCount=

23  (accessed on July 8, 2016).

24    12.    Attached hereto as Exhibit 10 is a true and correct copy of the Safety

25  Data Sheet for the Sterile Non-Reinforced Sirus Surgical Gowns with Set-in

26  Sleeves, which is available on the company website for Medline Industries, Inc.:

27

28
                                              2
───────────────────────────────────────────────
**DECLARATION OF STEPHEN DEVEREAUX RE OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1  https://www.medline.com/sku/item/MDPDYNJP2002S?skuIndex=S3&question=
2  &flowType=&indexCount= (accessed on July 8, 2016).

3       13.   Attached hereto as Exhibit 11 is a true and correct copy of the
4  deposition of Rashel Campos, 30(b)(6) representative for Plaintiff Bahamas
5  Surgery Center, LLC, which was taken on June 13, 2016 in this matter.

6       14.   Attached hereto as Exhibit 12 is a true and correct copy of Plaintiff
7  Bahamas Surgery Center, LLC's Supplemental Responses to Defendant Kimberly-
8  Clark Corporation's Interrogatories, Set One, dated April 8, 2016.

9       15.   Attached hereto as Exhibit 13 are true and correct copies of various
10 custom procedure tray product packaging, component lists, and product packaging,
11 which were produced by Plaintiff Bahamas Surgery Center, LLC and former
12 named plaintiff Prime Healthcare Services – Harlingen, LLC in this matter and
13 identified by Bates numbers BMC000001-4, BMC000015-21, BMC000034-47,
14 and PHSH000056-92.

15

16     I declare under penalty of perjury that the foregoing is true and correct.
17 Executed on July 8, 2016.

18

19

20                                          Stephen Devereaux, Declarant

21

22

23

24

25

26

27

28
                                    3

# EXHIBIT 1 (Filed Manually)

# EXHIBIT 2

1  EAGAN AVENATTI, LLP
   Michael J. Avenatti, State Bar No. 206929
2  mavenatti@eaganavenatti.com
   Ahmed Ibrahim, State Bar No. 238739
3  aibrahim@eaganavenatti.com
   Andrew Stolper, State Bar No. 205462
4  astolper@eaganavenatti.com
   520 Newport Center Drive, Suite 1400
5  Newport Beach, CA 92660
   Telephone:  949.706.7000
6  Facsimile:  949.706.7050

7  Attorneys for Plaintiff, Individually and On
   Behalf of All Others Similarly Situated
8

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  HRAYR SHAHINIAN, M.D., F.A.C.S.,     CASE NO.:  14-CV-08390 DMG (SHx)
    et al.,
14
                        Plaintiffs,
15        vs.                            **PLAINTIFF BAHAMAS SURGERY
                                         CENTER, LLC'S RESPONSE TO
16                                       DEFENDANT KIMBERLY-
    KIMBERLY-CLARK                       CLARK CORPORATION'S
17  CORPORATION, a Delaware              INTERROGATORIES, SET ONE**
    Corporation, and HALYARD
18  HEALTH, INC., a Delaware
    Corporation,
19
                        Defendants.
20

21

22

23        PROPOUNDING PARTY:      KIMBERLY-CLARK CORPORATION

24        RESPONDING PARTY:       BAHAMAS SURGERY CENTER, LLC

25        SET NO.:                ONE

26

27

28

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff incorporates each of the objections stated above under Roman Numeral II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this interrogatory is unduly burdensome.  Plaintiff further objects that this interrogatory is overbroad, irrelevant, and is unlikely to result in the discovery of admissible information.    Plaintiff  further  objects  that  the  terms  "defect  of  any  kind", "malfunctioned" and "failed to protect" as vague and ambiguous.  Plaintiff further objects to the extent the interrogatory seeks information protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege or protection.

Plaintiff's  investigation  into  the  use  of  the  SUBJECT  GOWNS  continues. Subject  to  and  without  waiving  the  general  and  specific  objections  stated  above, Plaintiff states that it became aware that the SUBJECT GOWNS were not AAMI Level IV and that they posed a safety risk after the lawsuit was filed, but years before Kimberly Clark knew the SUBJECT GOWNS were defective, did not meet AAMI Level IV standards, and were a safety risk.  As a result of Kimberly Clark concealment of these facts, Plaintiff had no cause to examine, and did not examine, whether the SUBJECT  GOWNS  were  defective,  malfunctioned,  or  otherwise  failed  to  protect Plaintiff.  Plaintiff is aware, based on Kimberly Clark's document production in this case, that there were complaints by other users of the SUBJECT GOWNS that they permitted blood from the surgical patients to transfer to the surgical caregiver during the time Kimberly Clark was selling the SUBJECT GOWNS to Plaintiff.

**INTERROGATORY NO. 13:**

If YOU contend that any of the SUBJECT GOWNS YOU purchased failed to protect YOU and/or others, including but not limited to patients and staff, DESCRIBE WITH PARTICULARITY each and every instance in which the SUBJECT GOWN failed to protect YOU and/or others.

**RESPONSE TO INTERROGATORY NO. 13:**

**PLAINTIFF BAHAMAS SURGERY CENTER, LLC'S RESPONSE TO INTERROGATORIES, SET ONE**

1   Plaintiff incorporates each of the objections stated above under Roman Numeral
2   II (GENERAL OBJECTIONS AND QUALIFICATIONS).   Plaintiff objects that this
3   interrogatory is unduly burdensome.   Plaintiff further objects that this interrogatory is
4   overbroad, irrelevant, and is unlikely to result in the discovery of admissible
5   information.   Plaintiff further objects that the term "failed to protect" as vague and
6   ambiguous.

7   Subject to and without waiving the general and specific objections stated above,
8   Plaintiff contends all of the SUBJECT GOWNS were not AAMI Level IV and that they
9   were defective.   Accordingly, PLAINTIFF contends the SUBJECT GOWNS may have
10  failed to protect its employees and contractors during each and every surgery.   Because
11  Kimberly Clark concealed the defects in the SUBJECT GOWNS, Plaintiff was denied
12  an opportunity to determine whether any of the specific SUBJECT GOWNS used by
13  PLAINTIFF failed.

14

15  **INTERROGATORY NO. 14:**

16  DESCRIBE WITH PARTICULARITY each and every injury YOU contend
17  YOU and/or others, including but not limited to patients and staff, sustained as a result
18  of YOUR purchase of the SUBJECT GOWNS.

19  **RESPONSE TO INTERROGATORY NO. 14:**

20  Plaintiff incorporates each of the objections stated above under Roman Numeral
21  II (GENERAL OBJECTIONS AND QUALIFICATIONS).   Plaintiff objects that this
22  interrogatory is unduly burdensome.   Plaintiff further objects that this interrogatory is
23  overbroad, irrelevant, and is unlikely to result in the discovery of admissible
24  information.   Plaintiff further objects that the term "injury" as vague and ambiguous in
25  that it may refer to physical, emotional, financial, and a whole host of other categories
26  of harm.

27  Subject to and without waiving the general and specific objections stated above,
28  Plaintiff states that it lacks sufficient information to determine whether any of its

1  current employees were physically injured by the SUBJECT GOWNS because, among

2  other reasons, Kimberly Clark concealed the SUBJECT GOWNS' shortcomings from

3  it.  Further, Plaintiff suffered financial damages as a result of Kimberly Clark's conduct

4  as alleged in the operative complaint.

5

6  **INTERROGATORY NO. 15:**

7     IDENTIFY the surgical gowns YOU would have purchased and/or used but for

8  the alleged defects and/or misrepresentations described in YOUR COMPLAINT.

9     For purposes of this Interrogatory only, IDENTIFY includes but is not limited to

10  the product name of the surgical gown(s), the manufacturer, supplier and/or distributor

11  of the surgical gown(s), the advertised level of AAMI barrier protection (if any)

12  provided by each surgical gown YOU would have purchased, and the monetary amount

13  YOU would have paid for those surgical gown(s).

14  **RESPONSE TO INTERROGATORY NO. 15:**

15     Plaintiff incorporates each of the objections stated above under Roman Numeral

16  II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this

17  interrogatory calls for speculation.  Plaintiff objects that to answer this interrogatory

18  would require Plaintiff to do historical market research and such research is unduly

19  burdensome.

20

21  **INTERROGATORY NO. 16:**

22     IDENTIFY all PERSONS, including but not limited to YOUR current or former

23  members, officers, directors, employees, and/or independent contractors, hat play(ed)

24  any role in selecting, purchasing, or otherwise obtaining surgical gowns and/or other

25  personal protective equipment used by YOU.

26  **RESPONSE TO INTERROGATORY NO. 16:**

27     Plaintiff incorporates each of the objections stated above under Roman Numeral

28  II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects to the

**RESPONSE TO INTERROGATORY NO. 23:**

Plaintiff incorporates each of the objections stated above under Roman Numeral II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this interrogatory calls for information that is both irrelevant and is unlikely to result in the discovery of admissible evidence as it seeks discovery on surgical gowns other than the SUBJECT GOWNS.  Plaintiff objects that this interrogatory is unduly burdensome for the same reason.   Plaintiff objects that this interrogatory's call for "discrete subparts" circumvents the limitations set forth in Federal Rule of Civil Procedure Rule 33(a)(1).

Dated: February 2, 2016                    EAGAN AVENATTI, LLP


                                           By:    /s/ Michael J. Avenatti
                                                  Michael J. Avenatti
                                                  Attorneys for Plaintiff, Individually and
                                                  On Behalf of All Others Similarly Situated

1   EAGAN AVENATTI, LLP
    Michael J. Avenatti, State Bar No. 206929
2   mavenatti@eaganavenatti.com
    Ahmed Ibrahim, State Bar No. 238739
3   aibrahim@eaganavenatti.com
    Andrew Stolper, State Bar No. 205462
4   astolper@eaganavenatti.com
    520 Newport Center Drive, Suite 1400
5   Newport Beach, CA 92660
    Telephone:  949.706.7000
6   Facsimile:  949.706.7050

7   Attorneys for Plaintiff, Individually and On
    Behalf of All Others Similarly Situated
8

9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

13   HRAYR SHAHINIAN, M.D., F.A.C.S.,          CASE NO.:  14-CV-08390 DMG (SHx)
     et al.,
14
                        Plaintiffs,
15                                             **PLAINTIFF KNAPP MEDICAL
            vs.                                CENTER, LLC'S RESPONSE TO
16                                             DEFENDANT KIMBERLY-
     KIMBERLY-CLARK                            CLARK CORPORATION'S
17   CORPORATION, a Delaware                   INTERROGATORIES, SET ONE**
     Corporation, and HALYARD
18   HEALTH, INC., a Delaware
     Corporation,
19
                        Defendants.
20

21

22

23          PROPOUNDING PARTY:     KIMBERLY-CLARK CORPORATION

24          RESPONDING PARTY:      KNAPP MEDICAL CENTER, LLC

25          SET NO.:               ONE

26

27

28

1      IDENTIFY each and every PERSON (other than the parties and counsel of

2    record) who has a financial interest in the recovery sought by YOU in this LAWSUIT.

3    **RESPONSE TO INTERROGATORY NO. 11:**

4      Plaintiff incorporates each of the objections stated above under Roman Numeral

5    II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this

6    interrogatory is unduly burdensome.  Plaintiff further objects that this interrogatory is

7    overbroad, irrelevant, and is unlikely to result in the discovery of admissible

8    information.  Plaintiff further objects to the extent the interrogatory seeks information

9    protected by the attorney-client privilege, work product doctrine, and/or any other

10   applicable privilege or protection.   Plaintiff further objects based on the right to

11   privacy, constitutional and otherwise.

12      Subject to and without waiving the general and specific objections stated above,

13   Plaintiff states that it is not aware of any PERSON other than parties and counsel of

14   record who has a financial interest in this lawsuit.

15

16   **INTERROGATORY NO. 12:**

17     DESCRIBE WITH PARTICULARITY each and every instance where YOU or

18   YOUR staff observed what YOU contend is a defect of any kind in the SUBJECT

19   GOWNS, including but not limited to any visible or tangible evidence that the

20   SUBJECT GOWN(S) YOU or YOUR staff used malfunctioned or otherwise failed to

21   protect YOU and/or others, including but not limited to patients and staff.

22

23   **RESPONSE TO INTERROGATORY NO. 12:**

24     Plaintiff incorporates each of the objections stated above under Roman Numeral

25   II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this

26   interrogatory is unduly burdensome.  Plaintiff further objects that this interrogatory is

27   overbroad, irrelevant, and is unlikely to result in the discovery of admissible

28   information.  Plaintiff further objects that the terms "defect of any kind",

1 "malfunctioned" and "failed to protect" as vague and ambiguous. Plaintiff further

2 objects to the extent the interrogatory seeks information protected by the attorney-client

3 privilege, work product doctrine, and/or any other applicable privilege or protection.

4        Plaintiff's investigation into the use of the SUBJECT GOWNS

5 continues. Subject to and without waiving the general and specific objections stated

6 above, Plaintiff states that it became aware that the SUBJECT GOWNS were not AAMI

7 Level IV and that they posed a safety risk after the lawsuit was filed, but years before

8 Kimberly Clark knew the SUBJECT GOWNS were defective, did not meet AAMI

9 Level IV standards, and were a safety risk. As a result of Kimberly Clark concealment

10 of these facts, Plaintiff had no cause to examine, and did not examine, whether the

11 SUBJECT GOWNS were defective, malfunctioned, or otherwise failed to protect

12 Plaintiff. Plaintiff is aware, based on Kimberly Clark's document production in this

13 case, that there were complaints by other users of the SUBJECT GOWNS that they

14 permitted blood from the surgical patients to transfer to the surgical caregiver during the

15 time Kimberly Clark was selling the SUBJECT GOWNS to Plaintiff.

16

17 **INTERROGATORY NO. 13:**

18        If YOU contend that any of the SUBJECT GOWNS YOU purchased failed to

19 protect YOU and/or others, including but not limited to patients and staff, DESCRIBE

20 WITH PARTICULARITY each and every instance in which the SUBJECT GOWN

21 failed to protect YOU and/or others.

22

23

24 **RESPONSE TO INTERROGATORY NO. 13:**

25        Plaintiff incorporates each of the objections stated above under Roman Numeral

26 II (GENERAL OBJECTIONS AND QUALIFICATIONS). Plaintiff objects that this

27 interrogatory is unduly burdensome. Plaintiff further objects that this interrogatory is

28 overbroad, irrelevant, and is unlikely to result in the discovery of admissible

1  information.  Plaintiff further objects that the term "failed to protect" as vague and
2  ambiguous.

3      Subject to and without waiving the general and specific objections stated above,
4  Plaintiff contends all of the SUBJECT GOWNS were not AAMI Level IV and that they
5  were defective.  Accordingly, PLAINTIFF contends the SUBJECT GOWNS may have
6  failed to protect its employees and contractors during each and every surgery.  Because
7  Kimberly Clark concealed the defects in the SUBJECT GOWNS, Plaintiff was denied
8  an opportunity to determine whether any of the specific SUBJECT GOWNS used by
9  PLAINTIFF failed.

10

11 **INTERROGATORY NO. 14:**

12     DESCRIBE  WITH  PARTICULARITY  each  and  every  injury  YOU  contend
13 YOU and/or others, including but not limited to patients and staff, sustained as a result
14 of YOUR purchase of the SUBJECT GOWNS.

15 **RESPONSE TO INTERROGATORY NO. 14:**

16     Plaintiff incorporates each of the objections stated above under Roman Numeral
17 II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this
18 interrogatory is unduly burdensome.  Plaintiff further objects that this interrogatory is
19 overbroad, irrelevant, and is unlikely to result in the discovery of admissible
20 information.  Plaintiff further objects that the term "injury" as vague and ambiguous in
21 that it may refer to physical, emotional, financial, and a whole host of other categories
22 of harm.

23     Subject to and without waiving the general and specific objections stated above,
24 Plaintiff states that it lacks sufficient information to determine whether any of its
25 current employees were physically injured by the SUBJECT GOWNS because, among
26 other reasons, Kimberly Clark concealed the SUBJECT GOWNS' shortcomings from
27 it.  Further, Plaintiff suffered financial damages as a result of Kimberly Clark's conduct
28 as alleged in the operative complaint.

1  manufacturer of each surgical gown YOU purchased; and the advertised level of AAMI

2  barrier protection (if any) provided by each surgical gown YOU purchased.

3  **RESPONSE TO INTERROGATORY NO. 23:**

4      Plaintiff incorporates each of the objections stated above under Roman Numeral

5  II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this

6  interrogatory calls for information that is both irrelevant and is unlikely to result in the

7  discovery of admissible evidence as it seeks discovery on surgical gowns other than the

8  SUBJECT GOWNS.  Plaintiff objects that this interrogatory is unduly burdensome for

9  the same reason.   Plaintiff objects that this interrogatory's call for "discrete

10  subparts" circumvents the limitations set forth in Federal Rule of Civil Procedure Rule

11  33(a)(1).

14  Dated: February 2, 2016                    EAGAN AVENATTI, LLP

16                                      By:    ____/s/ Michael J. Avenatti____
17                                             Michael J. Avenatti
                                               Attorneys for Plaintiff, Individually and
18                                             On Behalf of All Others Similarly Situated

1  EAGAN AVENATTI, LLP
   Michael J. Avenatti, State Bar No. 206929
2  mavenatti@eaganavenatti.com
   Ahmed Ibrahim, State Bar No. 238739
3  aibrahim@eaganavenatti.com
   Andrew Stolper, State Bar No. 205462
4  astolper@eaganavenatti.com
   520 Newport Center Drive, Suite 1400
5  Newport Beach, CA 92660
   Telephone:  949.706.7000
6  Facsimile:  949.706.7050

7  Attorneys for Plaintiff, Individually and On
   Behalf of All Others Similarly Situated
8

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  HRAYR SHAHINIAN, M.D., F.A.C.S.,      CASE NO.:  14-CV-08390 DMG (SHx)
    et al.,
14
                 Plaintiffs,
15       vs.                            **PLAINTIFF PRIME
                                        HEALTHCARE CENTINELA,**
16  KIMBERLY-CLARK                      **LLC'S RESPONSE TO**
    CORPORATION, a Delaware             **DEFENDANT KIMBERLY-**
17  Corporation, and HALYARD            **CLARK CORPORATION'S**
    HEALTH, INC., a Delaware            **INTERROGATORIES, SET ONE**
18  Corporation,
19               Defendants.
20

21

22      PROPOUNDING PARTY:      KIMBERLY-CLARK CORPORATION

23      RESPONDING PARTY:       PRIME HEALTHCARE CENTINELA, LLC

24      SET NO.:                ONE

25

26

27

28
                                   -1-

1  protected by the attorney-client privilege, work product doctrine, and/or any other

2  applicable privilege or protection.

3

4  **INTERROGATORY NO. 11:**

5      IDENTIFY each and every PERSON (other than the parties and counsel of

6  record) who has a financial interest in the recovery sought by YOU in this LAWSUIT.

7  **RESPONSE TO INTERROGATORY NO. 11:**

8      Plaintiff incorporates each of the objections stated above under Roman Numeral

9  II (GENERAL OBJECTIONS AND QUALIFICATIONS). Plaintiff objects that this

10  interrogatory is unduly burdensome. Plaintiff further objects that this interrogatory is

11  overbroad, irrelevant, and is unlikely to result in the discovery of admissible

12  information. Plaintiff further objects to the extent the interrogatory seeks information

13  protected by the attorney-client privilege, work product doctrine, and/or any other

14  applicable privilege or protection. Plaintiff further objects based on the right to

15  privacy, constitutional and otherwise.

16      Subject to and without waiving the general and specific objections stated above,

17  Plaintiff states that it is not aware of any PERSON other than parties and counsel of

18  record who has a financial interest in this lawsuit.

19

20  **INTERROGATORY NO. 12:**

21      DESCRIBE WITH PARTICULARITY each and every instance where YOU or

22  YOUR staff observed what YOU contend is a defect of any kind in the SUBJECT

23  GOWNS, including but not limited to any visible or tangible evidence that the

24  SUBJECT GOWN(S) YOU or YOUR staff used malfunctioned or otherwise failed to

25  protect YOU and/or others, including but not limited to patients and staff.

26

27  **RESPONSE TO INTERROGATORY NO. 12:**

28

1    Plaintiff incorporates each of the objections stated above under Roman Numeral

2   II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this

3   interrogatory is unduly burdensome.  Plaintiff further objects that this interrogatory is

4   overbroad, irrelevant, and is unlikely to result in the discovery of admissible

5   information.  Plaintiff further objects that the terms "defect of any kind",

6   "malfunctioned" and "failed to protect" as vague and ambiguous.  Plaintiff further

7   objects to the extent the interrogatory seeks information protected by the attorney-client

8   privilege, work product doctrine, and/or any other applicable privilege or protection.

9    Plaintiff's investigation into the use of the SUBJECT GOWNS

10  continues.  Subject to and without waiving the general and specific objections stated

11  above, Plaintiff states that it became aware that the SUBJECT GOWNS were not AAMI

12  Level IV and that they posed a safety risk after the lawsuit was filed, but years before

13  Kimberly Clark knew the SUBJECT GOWNS were defective, did not meet AAMI

14  Level IV standards, and were a safety risk.  As a result of Kimberly Clark concealment

15  of these facts, Plaintiff had no cause to examine, and did not examine, whether the

16  SUBJECT GOWNS were defective, malfunctioned, or otherwise failed to protect

17  Plaintiff.  Plaintiff is aware, based on Kimberly Clark's document production in this

18  case, that there were complaints by other users of the SUBJECT GOWNS that they

19  permitted blood from the surgical patients to transfer to the surgical caregiver during the

20  time Kimberly Clark was selling the SUBJECT GOWNS to Plaintiff.

21

22  **INTERROGATORY NO. 13:**

23    If YOU contend that any of the SUBJECT GOWNS YOU purchased failed to

24  protect YOU and/or others, including but not limited to patients and staff, DESCRIBE

25  WITH PARTICULARITY each and every instance in which the SUBJECT GOWN

26  failed to protect YOU and/or others.

27

28  **RESPONSE TO INTERROGATORY NO. 13:**

1   Plaintiff incorporates each of the objections stated above under Roman Numeral
2   II (GENERAL OBJECTIONS AND QUALIFICATIONS).   Plaintiff objects that this
3   interrogatory is unduly burdensome.   Plaintiff further objects that this interrogatory is
4   overbroad, irrelevant, and is unlikely to result in the discovery of admissible
5   information.   Plaintiff further objects that the term "failed to protect" as vague and
6   ambiguous.

7   Subject to and without waiving the general and specific objections stated above,
8   Plaintiff contends all of the SUBJECT GOWNS were not AAMI Level IV and that they
9   were defective.   Accordingly, PLAINTIFF contends the SUBJECT GOWNS may have
10  failed to protect its employees and contractors during each and every surgery.   Because
11  Kimberly Clark concealed the defects in the SUBJECT GOWNS, Plaintiff was denied
12  an opportunity to determine whether any of the specific SUBJECT GOWNS used by
13  PLAINTIFF failed.

14

15  **INTERROGATORY NO. 14:**

16  DESCRIBE WITH PARTICULARITY each and every injury YOU contend
17  YOU and/or others, including but not limited to patients and staff, sustained as a result
18  of YOUR purchase of the SUBJECT GOWNS.

19  **RESPONSE TO INTERROGATORY NO. 14:**

20  Plaintiff incorporates each of the objections stated above under Roman Numeral
21  II (GENERAL OBJECTIONS AND QUALIFICATIONS).   Plaintiff objects that this
22  interrogatory is unduly burdensome.   Plaintiff further objects that this interrogatory is
23  overbroad, irrelevant, and is unlikely to result in the discovery of admissible
24  information.   Plaintiff further objects that the term "injury" as vague and ambiguous in
25  that it may refer to physical, emotional, financial, and a whole host of other categories
26  of harm.

27  Subject to and without waiving the general and specific objections stated above,
28  Plaintiff states that it lacks sufficient information to determine whether any of its

1  current employees were physically injured by the SUBJECT GOWNS because, among

2  other reasons, Kimberly Clark concealed the SUBJECT GOWNS' shortcomings from

3  it. Further, Plaintiff suffered financial damages as a result of Kimberly Clark's conduct

4  as alleged in the operative complaint.

5

6  **INTERROGATORY NO. 15:**

7      IDENTIFY the surgical gowns YOU would have purchased and/or used but for

8  the alleged defects and/or misrepresentations described in YOUR COMPLAINT.

9      For purposes of this Interrogatory only, IDENTIFY includes but is not limited to

10 the product name of the surgical gown(s), the manufacturer, supplier and/or distributor

11 of the surgical gown(s), the advertised level of AAMI barrier protection (if any)

12 provided by each surgical gown YOU would have purchased, and the monetary amount

13 YOU would have paid for those surgical gown(s).

14 **RESPONSE TO INTERROGATORY NO. 15:**

15     Plaintiff incorporates each of the objections stated above under Roman Numeral

16 II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this

17 interrogatory calls for speculation.  Plaintiff objects that to answer this interrogatory

18 would require Plaintiff to do historical market research and such research is unduly

19 burdensome.

20

21 **INTERROGATORY NO. 16:**

22     IDENTIFY all PERSONS, including but not limited to YOUR current or former

23 members, officers, directors, employees, and/or independent contractors, hat play(ed)

24 any role in selecting, purchasing, or otherwise obtaining surgical gowns and/or other

25 personal protective equipment used by YOU.

26

27 **RESPONSE TO INTERROGATORY NO. 16:**

28

-12-

1        For purposes of this Interrogatory only, DESCRIBE WITH PARTICULARITY

2   means to provide: the date on which YOU purchased each surgical gown; the monetary

3   amount paid for each surgical gown YOU purchased; the product name and

4   manufacturer of each surgical gown YOU purchased; and the advertised level of AAMI

5   barrier protection (if any) provided by each surgical gown YOU purchased.

6   **RESPONSE TO INTERROGATORY NO. 23:**

7        Plaintiff incorporates each of the objections stated above under Roman Numeral

8   II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this

9   interrogatory calls for information that is both irrelevant and is unlikely to result in the

10  discovery of admissible evidence as it seeks discovery on surgical gowns other than the

11  SUBJECT GOWNS.  Plaintiff objects that this interrogatory is unduly burdensome for

12  the same reason.  Plaintiff objects that this interrogatory's call for "discrete

13  subparts" circumvents the limitations set forth in Federal Rule of Civil Procedure Rule

14  33(a)(1).

15

16  Dated: February 2, 2016         EAGAN AVENATTI, LLP

17

18                 By:      /s/ Michael J. Avenatti

19                       Michael J. Avenatti
                     Attorneys for Plaintiff, Individually and

20                       On Behalf of All Others Similarly Situated

21

22

23

24

25

26

27

28

PLAINTIFF PRIME HEALTHCARE CENTINELA, LLC'S RESPONSE TO
INTERROGATORIES, SET ONE

EAGAN AVENATTI, LLP
Michael J. Avenatti, State Bar No. 206929
mavenatti@eaganavenatti.com
Ahmed Ibrahim, State Bar No. 238739
aibrahim@eaganavenatti.com
Andrew Stolper, State Bar No. 205462
astolper@eaganavenatti.com
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Telephone:  949.706.7000
Facsimile:   949.706.7050

Attorneys for Plaintiff, Individually and On
Behalf of All Others Similarly Situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HRAYR SHAHINIAN, M.D., F.A.C.S., et al.,<br><br>                    Plaintiffs,<br><br>   vs.<br><br>KIMBERLY-CLARK CORPORATION, a Delaware Corporation, and HALYARD HEALTH, INC., a Delaware Corporation,<br><br>                    Defendants. | CASE NO.:  14-CV-08390 DMG (SHx)<br><br>**PLAINTIFF PRIME HEALTHCARE SERVICES - GARDEN GROVE, LLC'S RESPONSE TO DEFENDANT KIMBERLY-CLARK CORPORATION'S INTERROGATORIES, SET ONE** |

PROPOUNDING PARTY:     KIMBERLY-CLARK CORPORATION

RESPONDING PARTY:      PRIME    HEALTHCARE    SERVICES    -
GARDEN GROVE, LLC

SET NO.:                        ONE

1  protected by the attorney-client privilege, work product doctrine, and/or any other
2  applicable privilege or protection.

3

4  **INTERROGATORY NO. 11:**

5      IDENTIFY each and every PERSON (other than the parties and counsel of
6  record) who has a financial interest in the recovery sought by YOU in this LAWSUIT.

7  **RESPONSE TO INTERROGATORY NO. 11:**

8      Plaintiff incorporates each of the objections stated above under Roman Numeral
9  II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this
10 interrogatory is unduly burdensome.  Plaintiff further objects that this interrogatory is
11 overbroad, irrelevant, and is unlikely to result in the discovery of admissible
12 information.  Plaintiff further objects to the extent the interrogatory seeks information
13 protected by the attorney-client privilege, work product doctrine, and/or any other
14 applicable privilege or protection.  Plaintiff further objects based on the right to
15 privacy, constitutional and otherwise.

16     Subject to and without waiving the general and specific objections stated above,
17 Plaintiff states that it is not aware of any PERSON other than parties and counsel of
18 record who has a financial interest in this lawsuit.

19

20 **INTERROGATORY NO. 12:**

21     DESCRIBE WITH PARTICULARITY each and every instance where YOU or
22 YOUR staff observed what YOU contend is a defect of any kind in the SUBJECT
23 GOWNS, including but not limited to any visible or tangible evidence that the
24 SUBJECT GOWN(S) YOU or YOUR staff used malfunctioned or otherwise failed to
25 protect YOU and/or others, including but not limited to patients and staff.

26

27 **RESPONSE TO INTERROGATORY NO. 12:**

28

1    Plaintiff incorporates each of the objections stated above under Roman Numeral

2  II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this

3  interrogatory is unduly burdensome.  Plaintiff further objects that this interrogatory is

4  overbroad, irrelevant, and is unlikely to result in the discovery of admissible

5  information.  Plaintiff further objects that the terms "defect of any kind",

6  "malfunctioned" and "failed to protect" as vague and ambiguous.  Plaintiff further

7  objects to the extent the interrogatory seeks information protected by the attorney-client

8  privilege, work product doctrine, and/or any other applicable privilege or protection.

9    Plaintiff's investigation into the use of the SUBJECT GOWNS

10 continues.  Subject to and without waiving the general and specific objections stated

11 above, Plaintiff states that it became aware that the SUBJECT GOWNS were not AAMI

12 Level IV and that they posed a safety risk after the lawsuit was filed, but years before

13 Kimberly Clark knew the SUBJECT GOWNS were defective, did not meet AAMI

14 Level IV standards, and were a safety risk.  As a result of Kimberly Clark concealment

15 of these facts, Plaintiff had no cause to examine, and did not examine, whether the

16 SUBJECT GOWNS were defective, malfunctioned, or otherwise failed to protect

17 Plaintiff.  Plaintiff is aware, based on Kimberly Clark's document production in this

18 case, that there were complaints by other users of the SUBJECT GOWNS that they

19 permitted blood from the surgical patients to transfer to the surgical caregiver during the

20 time Kimberly Clark was selling the SUBJECT GOWNS to Plaintiff.

21

22 **INTERROGATORY NO. 13:**

23    If YOU contend that any of the SUBJECT GOWNS YOU purchased failed to

24 protect YOU and/or others, including but not limited to patients and staff, DESCRIBE

25 WITH PARTICULARITY each and every instance in which the SUBJECT GOWN

26 failed to protect YOU and/or others.

27

28 **RESPONSE TO INTERROGATORY NO. 13:**

1    Plaintiff incorporates each of the objections stated above under Roman Numeral

2  II (GENERAL OBJECTIONS AND QUALIFICATIONS).   Plaintiff objects that this

3  interrogatory is unduly burdensome.   Plaintiff further objects that this interrogatory is

4  overbroad, irrelevant, and is unlikely to result in the discovery of admissible

5  information.   Plaintiff further objects that the term "failed to protect" as vague and

6  ambiguous.

7    Subject to and without waiving the general and specific objections stated above,

8  Plaintiff contends all of the SUBJECT GOWNS were not AAMI Level IV and that they

9  were defective.   Accordingly, Plaintiff contends the SUBJECT GOWNS may have

10 failed to protect its employees and contractors during each and every surgery.   Because

11 Kimberly Clark concealed the defects in the SUBJECT GOWNS, Plaintiff was denied

12 an opportunity to determine whether any of the specific SUBJECT GOWNS used by

13 PLAINTIFF failed.

14

15 **INTERROGATORY NO. 14:**

16    DESCRIBE WITH PARTICULARITY each and every injury YOU contend

17 YOU and/or others, including but not limited to patients and staff, sustained as a result

18 of YOUR purchase of the SUBJECT GOWNS.

19 **RESPONSE TO INTERROGATORY NO. 14:**

20    Plaintiff incorporates each of the objections stated above under Roman Numeral

21 II (GENERAL OBJECTIONS AND QUALIFICATIONS).   Plaintiff objects that this

22 interrogatory is unduly burdensome.   Plaintiff further objects that this interrogatory is

23 overbroad, irrelevant, and is unlikely to result in the discovery of admissible

24 information.  Plaintiff further objects that the term "injury" as vague and ambiguous in

25 that it may refer to physical, emotional, financial, and a whole host of other categories

26 of harm.

27    Subject to and without waiving the general and specific objections stated above,

28 Plaintiff states that it lacks sufficient information to determine whether any of its

1    current employees were physically injured by the SUBJECT GOWNS because, among

2    other reasons, Kimberly Clark concealed the SUBJECT GOWNS' shortcomings from

3    it.  Further, Plaintiff suffered financial damages as a result of Kimberly Clark's conduct

4    as alleged in the operative complaint.

5

6    **INTERROGATORY NO. 15:**

7         IDENTIFY the surgical gowns YOU would have purchased and/or used but for

8    the alleged defects and/or misrepresentations described in YOUR COMPLAINT.

9         For purposes of this Interrogatory only, IDENTIFY includes but is not limited to

10   the product name of the surgical gown(s), the manufacturer, supplier and/or distributor

11   of the surgical gown(s), the advertised level of AAMI barrier protection (if any)

12   provided by each surgical gown YOU would have purchased, and the monetary amount

13   YOU would have paid for those surgical gown(s).

14   **RESPONSE TO INTERROGATORY NO. 15:**

15        Plaintiff incorporates each of the objections stated above under Roman Numeral

16   II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this

17   interrogatory calls for speculation.  Plaintiff objects that to answer this interrogatory

18   would require Plaintiff to do historical market research and such research is unduly

19   burdensome.

20

21   **INTERROGATORY NO. 16:**

22        IDENTIFY all PERSONS, including but not limited to YOUR current or former

23   members, officers, directors, employees, and/or independent contractors, hat play(ed)

24   any role in selecting, purchasing, or otherwise obtaining surgical gowns and/or other

25   personal protective equipment used by YOU.

26

27   **RESPONSE TO INTERROGATORY NO. 16:**

28

-12-

1   For purposes of this Interrogatory only, DESCRIBE WITH PARTICULARITY

2   means to provide: the date on which YOU purchased each surgical gown; the monetary

3   amount paid for each surgical gown YOU purchased; the product name and

4   manufacturer of each surgical gown YOU purchased; and the advertised level of AAMI

5   barrier protection (if any) provided by each surgical gown YOU purchased.

6   **RESPONSE TO INTERROGATORY NO. 23:**

7   Plaintiff incorporates each of the objections stated above under Roman Numeral

8   II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this

9   interrogatory calls for information that is both irrelevant and is unlikely to result in the

10  discovery of admissible evidence as it seeks discovery on surgical gowns other than the

11  SUBJECT GOWNS.  Plaintiff objects that this interrogatory is unduly burdensome for

12  the same reason.  Plaintiff objects that this interrogatory's call for "discrete

13  subparts" circumvents the limitations set forth in Federal Rule of Civil Procedure Rule

14  33(a)(1).

15

16  Dated:  February 2, 2016            EAGAN AVENATTI, LLP

17

18                                     By:      /s/ Michael J. Avenatti
19                                           Michael J. Avenatti
                                             Attorneys for Plaintiff, Individually and
20                                           On Behalf of All Others Similarly Situated

21

22

23

24

25

26

27

28

1   EAGAN AVENATTI, LLP
    Michael J. Avenatti, State Bar No. 206929
2   mavenatti@eaganavenatti.com
    Ahmed Ibrahim, State Bar No. 238739
3   aibrahim@eaganavenatti.com
    Andrew Stolper, State Bar No. 205462
4   astolper@eaganavenatti.com
    520 Newport Center Drive, Suite 1400
5   Newport Beach, CA 92660
    Telephone:  949.706.7000
6   Facsimile:  949.706.7050

7   Attorneys for Plaintiff, Individually and On
8   Behalf of All Others Similarly Situated

9

10                   UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12

13  HRAYR SHAHINIAN, M.D., F.A.C.S.,      CASE NO.:  14-CV-08390 DMG (SHx)
    et al.,
14
                        Plaintiffs,
15                                         **PLAINTIFF PRIME**
          vs.                              **HEALTHCARE SERVICES -**
16                                         **HARLINGEN, LLC'S RESPONSE**
    KIMBERLY-CLARK                         **TO DEFENDANT KIMBERLY-**
17  CORPORATION, a Delaware                **CLARK CORPORATION'S**
    Corporation, and HALYARD               **INTERROGATORIES, SET ONE**
18  HEALTH, INC., a Delaware
    Corporation,
19
                        Defendants.
20

21

22      PROPOUNDING PARTY:        KIMBERLY-CLARK CORPORATION

23      RESPONDING PARTY:         PRIME    HEALTHCARE    SERVICES    -

24                                HARLINGEN, LLC

25      SET NO.:                  ONE

26

27

28

---

PLAINTIFF PRIME HEALTHCARE SERVICES - HARLINGEN, LLC'S RESPONSE TO
INTERROGATORIES, SET ONE

1    IDENTIFY each and every PERSON (other than the parties and counsel of

2    record) who has a financial interest in the recovery sought by YOU in this LAWSUIT.

3    **RESPONSE TO INTERROGATORY NO. 11:**

4    Plaintiff incorporates each of the objections stated above under Roman Numeral

5    II (GENERAL OBJECTIONS AND QUALIFICATIONS). Plaintiff objects that this

6    interrogatory is unduly burdensome. Plaintiff further objects that this interrogatory is

7    overbroad, irrelevant, and is unlikely to result in the discovery of admissible

8    information. Plaintiff further objects to the extent the interrogatory seeks information

9    protected by the attorney-client privilege, work product doctrine, and/or any other

10    applicable privilege or protection. Plaintiff further objects based on the right to

11    privacy, constitutional and otherwise.

12    Subject to and without waiving the general and specific objections stated above,

13    Plaintiff states that it is not aware of any PERSON other than parties and counsel of

14    record who has a financial interest in this lawsuit.

15

16    **INTERROGATORY NO. 12:**

17    DESCRIBE WITH PARTICULARITY each and every instance where YOU or

18    YOUR staff observed what YOU contend is a defect of any kind in the SUBJECT

19    GOWNS, including but not limited to any visible or tangible evidence that the

20    SUBJECT GOWN(S) YOU or YOUR staff used malfunctioned or otherwise failed to

21    protect YOU and/or others, including but not limited to patients and staff.

22

23    **RESPONSE TO INTERROGATORY NO. 12:**

24    Plaintiff incorporates each of the objections stated above under Roman Numeral

25    II (GENERAL OBJECTIONS AND QUALIFICATIONS). Plaintiff objects that this

26    interrogatory is unduly burdensome. Plaintiff further objects that this interrogatory is

27    overbroad, irrelevant, and is unlikely to result in the discovery of admissible

28    information. Plaintiff further objects that the terms "defect of any kind",

1 | "malfunctioned" and "failed to protect" as vague and ambiguous. Plaintiff further
2 | objects to the extent the interrogatory seeks information protected by the attorney-client
3 | privilege, work product doctrine, and/or any other applicable privilege or protection.
4 | Plaintiff's investigation into the use of the SUBJECT GOWNS
5 | continues. Subject to and without waiving the general and specific objections stated
6 | above, Plaintiff states that it became aware that the SUBJECT GOWNS were not AAMI
7 | Level IV and that they posed a safety risk after the lawsuit was filed, but years before
8 | Kimberly Clark knew the SUBJECT GOWNS were defective, did not meet AAMI
9 | Level IV standards, and were a safety risk. As a result of Kimberly Clark concealment
10 | of these facts, Plaintiff had no cause to examine, and did not examine, whether the
11 | SUBJECT GOWNS were defective, malfunctioned, or otherwise failed to protect
12 | Plaintiff. Plaintiff is aware, based on Kimberly Clark's document production in this
13 | case, that there were complaints by other users of the SUBJECT GOWNS that they
14 | permitted blood from the surgical patients to transfer to the surgical caregiver during the
15 | time Kimberly Clark was selling the SUBJECT GOWNS to Plaintiff.

16 |

17 | **INTERROGATORY NO. 13:**

18 | If YOU contend that any of the SUBJECT GOWNS YOU purchased failed to
19 | protect YOU and/or others, including but not limited to patients and staff, DESCRIBE
20 | WITH PARTICULARITY each and every instance in which the SUBJECT GOWN
21 | failed to protect YOU and/or others.

22 |

23 | **RESPONSE TO INTERROGATORY NO. 13:**

24 | Plaintiff incorporates each of the objections stated above under Roman Numeral
25 | II (GENERAL OBJECTIONS AND QUALIFICATIONS). Plaintiff objects that this
26 | interrogatory is unduly burdensome. Plaintiff further objects that this interrogatory is
27 | overbroad, irrelevant, and is unlikely to result in the discovery of admissible
28 |

1    information.   Plaintiff further objects that the term "failed to protect" as vague and

2    ambiguous.

3        Subject to and without waiving the general and specific objections stated above,

4    Plaintiff contends all of the SUBJECT GOWNS were not AAMI Level IV and that they

5    were defective.   Accordingly, PLAINTIFF contends the SUBJECT GOWNS may have

6    failed to protect its employees and contractors during each and every surgery.   Because

7    Kimberly Clark concealed the defects in the SUBJECT GOWNS, Plaintiff was denied

8    an opportunity to determine whether any of the specific SUBJECT GOWNS used by

9    PLAINTIFF failed.

10

11    **INTERROGATORY NO. 14:**

12        DESCRIBE WITH PARTICULARITY each and every injury YOU contend

13    YOU and/or others, including but not limited to patients and staff, sustained as a result

14    of YOUR purchase of the SUBJECT GOWNS.

15    **RESPONSE TO INTERROGATORY NO. 14:**

16        Plaintiff incorporates each of the objections stated above under Roman Numeral

17    II (GENERAL OBJECTIONS AND QUALIFICATIONS).   Plaintiff objects that this

18    interrogatory is unduly burdensome.   Plaintiff further objects that this interrogatory is

19    overbroad, irrelevant, and is unlikely to result in the discovery of admissible

20    information.   Plaintiff further objects that the term "injury" as vague and ambiguous in

21    that it may refer to physical, emotional, financial, and a whole host of other categories

22    of harm.

23        Subject to and without waiving the general and specific objections stated above,

24    Plaintiff states that it lacks sufficient information to determine whether any of its

25    current employees were physically injured by the SUBJECT GOWNS because, among

26    other reasons, Kimberly Clark concealed the SUBJECT GOWNS' shortcomings from

27    it.  Further, Plaintiff suffered financial damages as a result of Kimberly Clark's conduct

28    as alleged in the operative complaint.

1  manufacturer of each surgical gown YOU purchased; and the advertised level of AAMI

2  barrier protection (if any) provided by each surgical gown YOU purchased.

3  **RESPONSE TO INTERROGATORY NO. 23:**

4        Plaintiff incorporates each of the objections stated above under Roman Numeral

5  II (GENERAL OBJECTIONS AND QUALIFICATIONS). Plaintiff objects that this

6  interrogatory calls for information that is both irrelevant and is unlikely to result in the

7  discovery of admissible evidence as it seeks discovery on surgical gowns other than the

8  SUBJECT GOWNS. Plaintiff objects that this interrogatory is unduly burdensome for

9  the same reason. Plaintiff objects that this interrogatory's call for "discrete

10 subparts" circumvents the limitations set forth in Federal Rule of Civil Procedure Rule

11 33(a)(1).

12

13

14 Dated: February 2, 2016          EAGAN AVENATTI, LLP

15

16                     By:       /s/ Michael J. Avenatti

17                         Michael J. Avenatti
                        Attorneys for Plaintiff, Individually and

18                         On Behalf of All Others Similarly Situated

19

20

21

22

23

24

25

26

27

28

1  EAGAN AVENATTI, LLP
   Michael J. Avenatti, State Bar No. 206929
2  mavenatti@eaganavenatti.com
   Ahmed Ibrahim, State Bar No. 238739
3  aibrahim@eaganavenatti.com
   Andrew Stolper, State Bar No. 205462
4  astolper@eaganavenatti.com
   520 Newport Center Drive, Suite 1400
5  Newport Beach, CA 92660
   Telephone:  949.706.7000
6  Facsimile:  949.706.7050

7  Attorneys for Plaintiff, Individually and On
   Behalf of All Others Similarly Situated
8

9

10             UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  HRAYR SHAHINIAN, M.D., F.A.C.S.,      CASE NO.:  14-CV-08390 DMG (SHx)
    et al.,
14
                    Plaintiffs,
15        vs.                             **PLAINTIFF PRIME
                                          HEALTHCARE SERVICES -
16  KIMBERLY-CLARK                        LANDMARK, LLC'S RESPONSE
    CORPORATION, a Delaware              TO DEFENDANT KIMBERLY-
17  Corporation, and HALYARD              CLARK CORPORATION'S
    HEALTH, INC., a Delaware             INTERROGATORIES, SET ONE**
18  Corporation,
19                  Defendants.
20

21

22

23        PROPOUNDING PARTY:      KIMBERLY-CLARK CORPORATION

24        RESPONDING PARTY:       PRIME    HEALTHCARE    SERVICES    -

25                                LANDMARK, LLC

26        SET NO.:                ONE

27

28

1   IDENTIFY each and every PERSON (other than the parties and counsel of

2   record) who has a financial interest in the recovery sought by YOU in this LAWSUIT.

3   **RESPONSE TO INTERROGATORY NO. 11:**

4   Plaintiff incorporates each of the objections stated above under Roman Numeral

5   II (GENERAL OBJECTIONS AND QUALIFICATIONS). Plaintiff objects that this

6   interrogatory is unduly burdensome. Plaintiff further objects that this interrogatory is

7   overbroad, irrelevant, and is unlikely to result in the discovery of admissible

8   information. Plaintiff further objects to the extent the interrogatory seeks information

9   protected by the attorney-client privilege, work product doctrine, and/or any other

10  applicable privilege or protection. Plaintiff further objects based on the right to

11  privacy, constitutional and otherwise.

12  Subject to and without waiving the general and specific objections stated above,

13  Plaintiff states that it is not aware of any PERSON other than parties and counsel of

14  record who has a financial interest in this lawsuit.

15

16  **INTERROGATORY NO. 12:**

17  DESCRIBE WITH PARTICULARITY each and every instance where YOU or

18  YOUR staff observed what YOU contend is a defect of any kind in the SUBJECT

19  GOWNS, including but not limited to any visible or tangible evidence that the

20  SUBJECT GOWN(S) YOU or YOUR staff used malfunctioned or otherwise failed to

21  protect YOU and/or others, including but not limited to patients and staff.

22

23  **RESPONSE TO INTERROGATORY NO. 12:**

24  Plaintiff incorporates each of the objections stated above under Roman Numeral

25  II (GENERAL OBJECTIONS AND QUALIFICATIONS). Plaintiff objects that this

26  interrogatory is unduly burdensome. Plaintiff further objects that this interrogatory is

27  overbroad, irrelevant, and is unlikely to result in the discovery of admissible

28  information. Plaintiff further objects that the terms "defect of any kind",

-9-

1 "malfunctioned" and "failed to protect" as vague and ambiguous.  Plaintiff further

2 objects to the extent the interrogatory seeks information protected by the attorney-client

3 privilege, work product doctrine, and/or any other applicable privilege or protection.

4      Plaintiff's   investigation   into   the   use   of   the   SUBJECT   GOWNS

5 continues.  Subject to and without waiving the general and specific objections stated

6 above, Plaintiff states that it became aware that the SUBJECT GOWNS were not AAMI

7 Level IV and that they posed a safety risk after the lawsuit was filed, but years before

8 Kimberly Clark knew the SUBJECT GOWNS were defective, did not meet AAMI

9 Level IV standards, and were a safety risk.  As a result of Kimberly Clark concealment

10 of these facts, Plaintiff had no cause to examine, and did not examine, whether the

11 SUBJECT GOWNS were defective, malfunctioned, or otherwise failed to protect

12 Plaintiff.  Plaintiff is aware, based on Kimberly Clark's document production in this

13 case, that there were complaints by other users of the SUBJECT GOWNS that they

14 permitted blood from the surgical patients to transfer to the surgical caregiver during the

15 time Kimberly Clark was selling the SUBJECT GOWNS to Plaintiff.

16

17 **INTERROGATORY NO. 13:**

18      If YOU contend that any of the SUBJECT GOWNS YOU purchased failed to

19 protect YOU and/or others, including but not limited to patients and staff, DESCRIBE

20 WITH PARTICULARITY each and every instance in which the SUBJECT GOWN

21 failed to protect YOU and/or others.

22

23 **RESPONSE TO INTERROGATORY NO. 13:**

24      Plaintiff incorporates each of the objections stated above under Roman Numeral

25 II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this

26 interrogatory is unduly burdensome.  Plaintiff further objects that this interrogatory is

27 overbroad, irrelevant, and is unlikely to result in the discovery of admissible

28

information.  Plaintiff further objects that the term "failed to protect" as vague and ambiguous.

Subject to and without waiving the general and specific objections stated above, Plaintiff contends all of the SUBJECT GOWNS were not AAMI Level IV and that they were defective.  Accordingly, PLAINTIFF contends the SUBJECT GOWNS may have failed to protect its employees and contractors during each and every surgery.  Because Kimberly Clark concealed the defects in the SUBJECT GOWNS, Plaintiff was denied an opportunity to determine whether any of the specific SUBJECT GOWNS used by PLAINTIFF failed.

**INTERROGATORY NO. 14:**

DESCRIBE WITH PARTICULARITY each and every injury YOU contend YOU and/or others, including but not limited to patients and staff, sustained as a result of YOUR purchase of the SUBJECT GOWNS.

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiff incorporates each of the objections stated above under Roman Numeral II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this interrogatory is unduly burdensome.  Plaintiff further objects that this interrogatory is overbroad, irrelevant, and is unlikely to result in the discovery of admissible information.  Plaintiff further objects that the term "injury" as vague and ambiguous in that it may refer to physical, emotional, financial, and a whole host of other categories of harm.

Subject to and without waiving the general and specific objections stated above, Plaintiff states that it lacks sufficient information to determine whether any of its current employees were physically injured by the SUBJECT GOWNS because, among other reasons, Kimberly Clark concealed the SUBJECT GOWNS' shortcomings from it.  Further, Plaintiff suffered financial damages as a result of Kimberly Clark's conduct as alleged in the operative complaint.

-11-

1   manufacturer of each surgical gown YOU purchased; and the advertised level of AAMI

2   barrier protection (if any) provided by each surgical gown YOU purchased.

3   **RESPONSE TO INTERROGATORY NO. 23:**

4         Plaintiff incorporates each of the objections stated above under Roman Numeral

5   II (GENERAL OBJECTIONS AND QUALIFICATIONS).  Plaintiff objects that this

6   interrogatory calls for information that is both irrelevant and is unlikely to result in the

7   discovery of admissible evidence as it seeks discovery on surgical gowns other than the

8   SUBJECT GOWNS.  Plaintiff objects that this interrogatory is unduly burdensome for

9   the   same   reason.   Plaintiff   objects   that   this   interrogatory's   call   for   "discrete

10   subparts" circumvents the limitations set forth in Federal Rule of Civil Procedure Rule

11   33(a)(1).

12

13   Dated:  February 2, 2016          EAGAN AVENATTI, LLP

14

15                        By:      /s/ Michael J. Avenatti

16                            Michael J. Avenatti
                              Attorneys for Plaintiff, Individually and

17                            On Behalf of All Others Similarly Situated

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 3



3933 US Route 11
Cortland, NY 13045

Telephone: 607-758-6357
Facsimile: 607-758-4173
www.intertek.com

May 21, 2013

Letter Report No. G101034564CRT-010
Project No. G101034564

Kimberly-Clark Corporation
1400 Holcomb Bridge
Roswell, GA 30076

Ph: (770) 587-7148
Fx: (920) 380-6495
email: jrmarmes@kcc.com

Subject:  ASTM F1671-07

Dear Jeffery Marmes,

This letter represents the test results of the six materials received on 04/03/13. They came in 12 boxes as pristine surgical gowns. Per request we cut only the front tie tape, 3 x 3 inch sample (picture 1)
Sample log No: CRT1304031032-001 to -012.

**Standard Used:**  ASTM F1671-07, Standard Test Method for Resistance of Materials Used in Protective Clothing to Penetration by Blood-Borne Pathogens Using Phi-X174 Bacteriophage Penetration as a Test System.

**Authorization:** This evaluation was authorized by a PO # 13701506. Request number 47865.

**Specimen description:** The test was performed on specimens identified by the client as:

1. 92340-02 MICROCOOL Lot 1
2. 92340-02 MICROCOOL Lot 2
3. 92340-02 MICROCOOL Lot 3
4. 95421-35 ULTRA Film Reinf Lot 1
5. 95421-35 ULTRA Film Reinf Lot 2
6. 95421-35 ULTRA Film Reinf Lot 3

Test was conducted at Intertek located in Cortland, NY between 5/13/13 and 5/21/13.

Note: (TMTC) too many to count (colonies)= fail

(Test terminated due to liquid penetration) = fail

(any number other than zero) means number of plaques counted = fail;

( 0 ) means no plaques, no virus penetration = pass

Page 1 of 8

This report is for the exclusive use of Intertek's Client and is provided pursuant to the agreement between Intertek and its Client. Intertek's responsibility and liability are limited to the terms and conditions of the agreement. Intertek assumes no liability to any party, other than to the Client in accordance with the agreement, for any loss, expense or damage occasioned by the use of this report. Only the Client is authorized to permit copying or distribution of this report and then only in its entirety. Any use of the Intertek name or one of its marks for the sale or advertisement of the tested material, product or service must first be approved in writing by Intertek. The observations and test results in this report are relevant only the sample tested. This report by itself does not imply that the material, product or service is or has ever been under an Intertek certification program.

      

Intertek Testing Services NA, Inc.

KC-Shahinian-0000007134



Letter Report G101034564CRT-010
5/21/13

| Sample # | 92340-02 MICROCOOL Lot 1 | | | | | |
| | Thickness, mils | Weight, g | g/m2 | # of Plaques Plate 1 | Plate 2 | Assay Titer, pfu/ml |
|---|---|---|---|---|---|---|
| 1 | 41 | 1.1428 | 225.94 | TMTC | TMTC | TMTC |
| 2 | 40 | 1.1198 | 221.39 | 0 | 0 | 0 |
| 3 | 40 | 1.1048 | 218.43 | 31 | 25 | 56 |
| 4 | 42 | 1.1063 | 218.72 | TMTC | TMTC | TMTC |
| 5 | 40 | 1.1327 | 223.94 | TMTC | TMTC | TMTC |
| 6 | 39 | 1.0822 | 213.96 | 33 | 30 | 63 |
| 7 | 43 | 1.1648 | 230.29 | 0 | 0 | 0 |
| 8 | 40 | 1.1249 | 222.40 | 15 | 10 | 25 |
| 9 | 40 | 1.0908 | 215.66 | TMTC | TMTC | TMTC |
| 10 | 40 | 1.1036 | 218.19 | 0 | 0 | 0 |
| 11 | 38 | 1.1025 | 217.97 | 0 | 0 | 0 |
| 12 | 42 | 1.1472 | 226.81 | TMTC | TMTC | TMTC |
| 13 | 41 | 1.1712 | 231.55 | TMTC | TMTC | TMTC |
| 14 | 42 | 1.1475 | 226.87 | TMTC | TMTC | TMTC |
| 15 | 38 | 1.0858 | 214.67 | TMTC | TMTC | TMTC |
| 16 | 41 | 1.1180 | 221.04 | TMTC | TMTC | TMTC |
| 17 | 41 | 1.1389 | 225.17 | TMTC | TMTC | TMTC |
| 18 | 38 | 1.0920 | 215.90 | TMTC | TMTC | TMTC |
| 19 | 42 | 1.0718 | 211.90 | 0 | 0 | 0 |
| 20 | 38 | 1.1203 | 221.49 | TMTC | TMTC | TMTC |
| 21 | 38 | 1.1311 | 223.63 | 3 | 8 | 11 |
| 22 | 40 | 1.1403 | 225.44 | TMTC | TMTC | TMTC |
| 23 | 41 | 1.1769 | 232.68 | 0 | 0 | 0 |
| 24 | 40 | 1.1136 | 220.17 | TMTC | TMTC | TMTC |
| 25 | 41 | 1.1422 | 225.82 | TMTC | TMTC | TMTC |
| 26 | 42 | 1.1704 | 231.40 | TMTC | TMTC | TMTC |
| 27 | 42 | 1.1569 | 228.73 | TMTC | TMTC | TMTC |
| 28 | 43 | 1.1360 | 224.59 | TMTC | TMTC | TMTC |
| 29 | 41 | 1.1296 | 223.33 | 0 | 0 | 0 |
| 30 | 38 | 1.1004 | 217.56 | 30 | 30 | 60 |
| 31 | 42 | 1.1101 | 219.47 | 20 | 14 | 34 |
| 32 | 42 | 1.1473 | 226.83 | 0 | 0 | 0 |
| 33 | 43 | 1.1289 | 223.19 | 15 | 21 | 36 |
| 34 | 44 | 1.1308 | 223.57 | TMTC | TMTC | TMTC |
| 35 | 43 | 1.1400 | 225.39 | 0 | 0 | 0 |
| 36 | 44 | 1.1125 | 219.95 | TMTC | TMTC | TMTC |

Intertek Testing Services NA, Inc.

KC-Shahinian-0000007135



| Sample # | 92340-02 MICROCOOL Lot 2 | | | | | |
| | | | | # of Plaques | | |
| | | | | Plate 1 | Plate 2 | |
| | Thickness, mils | Weight, g | g/m2 | | | Assay Titer, pfu/ml |
|---|---|---|---|---|---|---|
| 1 | 45 | 1.1128 | 220.01 | 0 | 0 | 0 |
| 2 | 44 | 1.1302 | 223.45 | 0 | 0 | 0 |
| 3 | 42 | 1.1704 | 231.40 | 0 | 0 | 0 |
| 4 | 43 | 1.1401 | 225.41 | 0 | 0 | 0 |
| 5 | 40 | 1.1161 | 220.66 | 0 | 0 | 0 |
| 6 | 42 | 1.2340 | 243.97 | Test terminated due to liquid penetration | | |
| 7 | 45 | 1.1363 | 224.65 | 0 | 0 | 0 |
| 8 | 42 | 1.1313 | 223.67 | 0 | 0 | 0 |
| 9 | 38 | 1.1125 | 219.95 | 0 | 0 | 0 |
| 10 | 39 | 1.1179 | 221.02 | Test terminated due to liquid penetration | | |
| 11 | 38 | 1.1442 | 226.22 | 0 | 0 | 0 |
| 12 | 38 | 1.0855 | 214.61 | 0 | 0 | 0 |
| 13 | 42 | 1.1349 | 224.38 | 0 | 0 | 0 |
| 14 | 41 | 1.1009 | 217.66 | 0 | 0 | 0 |
| 15 | 41 | 1.1645 | 230.23 | TMTC | TMTC | TMTC |
| 16 | 41 | 1.1090 | 219.26 | 0 | 0 | 0 |
| 17 | 42 | 1.1387 | 225.13 | 0 | 0 | 0 |
| 18 | 39 | 1.1162 | 220.68 | 26 | 30 | 56 |
| 19 | 38 | 1.1177 | 220.98 | 0 | 0 | 0 |
| 20 | 38 | 1.0791 | 213.35 | 0 | 0 | 0 |
| 21 | 40 | 1.0913 | 215.76 | Test terminated due to liquid penetration | | |
| 22 | 40 | 1.0906 | 215.62 | 0 | 0 | 0 |
| 23 | 38 | 1.0947 | 216.43 | 0 | 0 | 0 |
| 24 | 41 | 1.1429 | 225.96 | 0 | 0 | 0 |
| 25 | 41 | 1.1014 | 217.75 | 0 | 0 | 0 |
| 26 | 40 | 0.8794 | 173.86 | 0 | 0 | 0 |
| 27 | 38 | 1.0540 | 208.38 | 0 | 0 | 0 |
| 28 | 42 | 1.1521 | 227.78 | 0 | 0 | 0 |
| 29 | 42 | 1.1418 | 225.74 | 0 | 0 | 0 |
| 30 | 41 | 1.0845 | 214.41 | 0 | 0 | 0 |
| 31 | 39 | 1.1375 | 224.89 | TMTC | TMTC | TMTC |
| 32 | 41 | 1.0867 | 214.85 | 0 | 0 | 0 |
| 33 | 38 | 1.0919 | 215.88 | 0 | 0 | 0 |
| 34 | 41 | 1.1046 | 218.39 | 0 | 0 | 0 |
| 35 | 38 | 1.0916 | 215.82 | 0 | 0 | 0 |
| 36 | 41 | 1.1278 | 222.97 | 0 | 0 | 0 |

KC-Shahinian-0000007136



Letter Report G101034564CRT-010
5/21/13

| Sample # | 92340-02 MICROCOOL Lot 3 | | | | | |
| | Thickness, mils | Weight, g | g/m2 | # of Plaques | | Assay Titer, pfu/ml |
| | | | | Plate 1 | Plate 2 | |
| 1 | 40 | 1.1024 | 217.95 | TMTC | TMTC | TMTC |
| 2 | 37 | 1.0794 | 213.40 | 22 | 17 | 39 |
| 3 | 38 | 1.0934 | 216.17 | 0 | 0 | 0 |
| 4 | 44 | 1.1359 | 224.57 | TMTC | TMTC | TMTC |
| 5 | 39 | 1.1187 | 221.17 | TMTC | TMTC | TMTC |
| 6 | 40 | 1.0812 | 213.76 | 15 | 15 | 30 |
| 7 | 42 | 1.1037 | 218.21 | 0 | 0 | 0 |
| 8 | 38 | 1.0676 | 211.07 | 0 | 0 | 0 |
| 9 | 35 | 1.0672 | 210.99 | TMTC | TMTC | TMTC |
| 10 | 36 | 1.0829 | 214.10 | TMTC | TMTC | TMTC |
| 11 | 38 | 1.0917 | 215.84 | TMTC | TMTC | TMTC |
| 12 | 38 | 1.0938 | 216.25 | 20 | 20 | 40 |
| 13 | 40 | 1.1131 | 220.07 | 0 | 0 | 0 |
| 14 | 38 | 1.0700 | 211.55 | TMTC | TMTC | TMTC |
| 15 | 38 | 1.0891 | 215.32 | TMTC | TMTC | TMTC |
| 16 | 35 | 1.0916 | 215.82 | TMTC | TMTC | TMTC |
| 17 | 40 | 1.0737 | 212.28 | TMTC | TMTC | TMTC |
| 18 | 40 | 1.0963 | 216.75 | TMTC | TMTC | TMTC |
| 19 | 41 | 1.0991 | 217.30 | 33 | 27 | 60 |
| 20 | 39 | 1.0796 | 213.44 | TMTC | TMTC | TMTC |
| 21 | 37 | 1.0737 | 212.28 | 0 | 0 | 0 |
| 22 | 38 | 1.0970 | 216.88 | TMTC | TMTC | TMTC |
| 23 | 39 | 1.0697 | 211.49 | 12 | 12 | 24 |
| 24 | 40 | 1.0856 | 214.63 | 0 | 0 | 0 |
| 25 | 40 | 1.1645 | 230.23 | TMTC | TMTC | TMTC |
| 26 | 39 | 1.0708 | 211.70 | 18 | 20 | 38 |
| 27 | 39 | 1.0789 | 213.31 | 0 | 0 | 0 |
| 28 | 36 | 1.0836 | 214.23 | TMTC | TMTC | TMTC |
| 29 | 38 | 1.0848 | 214.47 | TMTC | TMTC | TMTC |
| 30 | 38 | 1.1053 | 218.53 | 15 | 21 | 36 |
| 31 | 39 | 1.0964 | 216.77 | 0 | 0 | 0 |
| 32 | 39 | 1.0789 | 213.31 | 0 | 0 | 0 |
| 33 | 38 | 1.1021 | 217.89 | 22 | 27 | 49 |
| 34 | 38 | 1.0985 | 217.18 | TMTC | TMTC | TMTC |
| 35 | 37 | 1.0781 | 213.15 | TMTC | TMTC | TMTC |
| 36 | 38 | 1.0844 | 214.39 | TMTC | TMTC | TMTC |

Intertek Testing Services NA, Inc.

KC-Shahinian-0000007137



Letter Report G101034564CRT-010
5/21/13

| Sample # | 95421-35 ULTRA Film Reinf Lot 1 | | | | | |
|---|---|---|---|---|---|---|
| | | | | # of Plaques | | |
| | Thickness, mils | Weight, g | g/m2 | Plate 1 | Plate 2 | Assay Titer, pfu/ml |
| 1 | 44 | 1.1326 | 223.92 | TMTC | TMTC | TMTC |
| 2 | 45 | 1.1317 | 223.74 | TMTC | TMTC | TMTC |
| 3 | 44 | 1.1226 | 221.95 | TMTC | TMTC | TMTC |
| 4 | 45 | 1.1119 | 219.83 | 0 | 0 | 0 |
| 5 | 46 | 1.1356 | 224.52 | TMTC | TMTC | TMTC |
| 6 | 46 | 1.1148 | 220.40 | TMTC | TMTC | TMTC |
| 7 | 44 | 1.1745 | 232.21 | TMTC | TMTC | TMTC |
| 8 | 47 | 1.1378 | 224.95 | TMTC | TMTC | TMTC |
| 9 | 46 | 1.1360 | 224.59 | TMTC | TMTC | TMTC |
| 10 | 44 | 1.1258 | 222.58 | TMTC | TMTC | TMTC |
| 11 | 45 | 1.1256 | 222.54 | 4 | 7 | 11 |
| 12 | 44 | 1.1261 | 222.64 | TMTC | TMTC | TMTC |
| 13 | 45 | 1.1264 | 222.70 | TMTC | TMTC | TMTC |
| 14 | 44 | 1.1251 | 222.44 | TMTC | TMTC | TMTC |
| 15 | 44 | 1.1105 | 219.55 | TMTC | TMTC | TMTC |
| 16 | 43 | 1.1352 | 224.44 | TMTC | TMTC | TMTC |
| 17 | 44 | 1.1169 | 220.82 | TMTC | TMTC | TMTC |
| 18 | 45 | 1.1175 | 220.94 | 0 | 0 | 0 |
| 19 | 45 | 1.1068 | 218.82 | 23 | 20 | 43 |
| 20 | 45 | 1.1133 | 220.11 | TMTC | TMTC | TMTC |
| 21 | 43 | 1.1904 | 235.35 | TMTC | TMTC | TMTC |
| 22 | 43 | 1.1306 | 223.53 | TMTC | TMTC | TMTC |
| 23 | 43 | 1.1512 | 227.60 | TMTC | TMTC | TMTC |
| 24 | 46 | 1.1249 | 222.40 | TMTC | TMTC | TMTC |
| 25 | 42 | 1.1398 | 225.35 | TMTC | TMTC | TMTC |
| 26 | 45 | 1.1077 | 219.00 | TMTC | TMTC | TMTC |
| 27 | 45 | 1.1626 | 229.85 | TMTC | TMTC | TMTC |
| 28 | 46 | 1.1392 | 225.23 | TMTC | TMTC | TMTC |
| 29 | 45 | 1.1197 | 221.37 | TMTC | TMTC | TMTC |
| 30 | 39 | 1.1452 | 226.41 | TMTC | TMTC | TMTC |
| 31 | 44 | 1.1329 | 223.98 | TMTC | TMTC | TMTC |
| 32 | 46 | 1.1493 | 227.22 | TMTC | TMTC | TMTC |
| 33 | 45 | 1.1364 | 224.67 | TMTC | TMTC | TMTC |
| 34 | 43 | 1.1370 | 224.79 | TMTC | TMTC | TMTC |
| 35 | 44 | 1.1285 | 223.11 | TMTC | TMTC | TMTC |
| 36 | 44 | 1.1312 | 223.65 | TMTC | TMTC | TMTC |

Intertek Testing Services NA, Inc.

KC-Shahinian-0000007138



Letter Report G101034564CRT-010
5/21/13

| Sample # | Thickness, mils | Weight, g | g/m2 | Plate 1 | Plate 2 | Assay Titer, pfu/ml |
|---|---|---|---|---|---|---|
| | | | | | | |

95421-35 ULTRA Film Reinf Lot 2

| Sample # | Thickness, mils | Weight, g | g/m2 | Plate 1 | Plate 2 | Assay Titer, pfu/ml |
|---|---|---|---|---|---|---|
| 1 | 41 | 1.0977 | 217.02 | 0 | 0 | 0 |
| 2 | 40 | 1.1206 | 221.55 | 0 | 0 | 0 |
| 3 | 43 | 1.1329 | 223.98 | 0 | 0 | 0 |
| 4 | 40 | 1.1198 | 221.39 | TMTC | TMTC | TMTC |
| 5 | 43 | 1.1325 | 223.90 | TMTC | TMTC | TMTC |
| 6 | 43 | 1.1380 | 224.99 | 0 | 0 | 0 |
| 7 | 42 | 1.1269 | 222.80 | 20 | 20 | 40 |
| 8 | 43 | 1.1005 | 217.58 | 0 | 0 | 0 |
| 9 | 44 | 1.1415 | 225.68 | TMTC | TMTC | TMTC |
| 10 | 40 | 1.1266 | 222.74 | TMTC | TMTC | TMTC |
| 11 | 43 | 1.1357 | 224.54 | TMTC | TMTC | TMTC |
| 12 | 42 | 1.1107 | 219.59 | TMTC | TMTC | TMTC |
| 13 | 45 | 1.1457 | 226.51 | 11 | 14 | 25 |
| 14 | 46 | 1.1230 | 222.02 | TMTC | TMTC | TMTC |
| 15 | 45 | 1.1088 | 219.22 | 0 | 0 | 0 |
| 16 | 42 | 1.1264 | 222.70 | 23 | 25 | 48 |
| 17 | 41 | 1.1552 | 228.39 | TMTC | TMTC | TMTC |
| 18 | 42 | 1.1457 | 226.51 | TMTC | TMTC | TMTC |
| 19 | 43 | 1.1403 | 225.44 | TMTC | TMTC | TMTC |
| 20 | 42 | 1.1232 | 222.06 | 30 | 30 | 60 |
| 21 | 44 | 1.1219 | 221.81 | 20 | 18 | 38 |
| 22 | 43 | 1.1377 | 224.93 | TMTC | TMTC | TMTC |
| 23 | 44 | 1.1452 | 226.41 | 15 | 17 | 32 |
| 24 | 43 | 1.1402 | 225.43 | TMTC | TMTC | TMTC |
| 25 | 44 | 1.1146 | 220.36 | TMTC | TMTC | TMTC |
| 26 | 43 | 1.1198 | 221.39 | TMTC | TMTC | TMTC |
| 27 | 45 | 1.1010 | 217.67 | TMTC | TMTC | TMTC |
| 28 | 42 | 1.1090 | 219.26 | 27 | 18 | 45 |
| 29 | 44 | 1.0920 | 215.90 | 0 | 0 | 0 |
| 30 | 45 | 1.1309 | 223.59 | TMTC | TMTC | TMTC |
| 31 | 44 | 1.1329 | 223.98 | TMTC | TMTC | TMTC |
| 32 | 45 | 1.1345 | 224.30 | TMTC | TMTC | TMTC |
| 33 | 44 | 1.1253 | 222.48 | TMTC | TMTC | TMTC |
| 34 | 44 | 1.1358 | 224.56 | TMTC | TMTC | TMTC |
| 35 | 45 | 1.1318 | 223.76 | TMTC | TMTC | TMTC |
| 36 | 42 | 1.1409 | 225.56 | TMTC | TMTC | TMTC |

(# of Plaques: Plate 1, Plate 2)

Intertek Testing Services NA, Inc.

KC-Shahinian-0000007139



Letter Report G101034564CRT-010
5/21/13

| Sample # | 95421-35 ULTRA Film Reinf Lot 3 | | | | | |
| | | | | # of Plaques | | |
| | | | | Plate 1 | Plate 2 | |
| | Thickness, mils | Weight, g | g/m2 | | | Assay Titer, pfu/ml |
| 1 | 42 | 1.1388 | 225.15 | 0 | 0 | 0 |
| 2 | 41 | 1.1181 | 221.06 | 0 | 0 | 0 |
| 3 | 42 | 1.1210 | 221.63 | 0 | 0 | 0 |
| 4 | 44 | 1.1387 | 225.13 | 0 | 0 | 0 |
| 5 | 44 | 1.1131 | 220.07 | 0 | 0 | 0 |
| 6 | 43 | 1.1572 | 228.79 | 0 | 0 | 0 |
| 7 | 43 | 1.1484 | 227.05 | 0 | 0 | 0 |
| 8 | 46 | 1.1346 | 224.32 | 0 | 0 | 0 |
| 9 | 42 | 1.1288 | 223.17 | TMTC | TMTC | TMTC |
| 10 | 40 | 1.1103 | 219.51 | 0 | 0 | 0 |
| 11 | 44 | 1.1329 | 223.98 | 0 | 0 | 0 |
| 12 | 45 | 1.1829 | 233.87 | 0 | 0 | 0 |
| 13 | 42 | 1.1478 | 226.93 | 0 | 0 | 0 |
| 14 | 44 | 1.1326 | 223.92 | 0 | 0 | 0 |
| 15 | 45 | 1.1367 | 224.73 | 0 | 0 | 0 |
| 16 | 43 | 1.1537 | 228.09 | 0 | 0 | 0 |
| 17 | 40 | 1.1143 | 220.30 | 0 | 0 | 0 |
| 18 | 45 | 1.1190 | 221.23 | 0 | 0 | 0 |
| 19 | 43 | 1.1431 | 226.00 | 0 | 0 | 0 |
| 20 | 43 | 1.1284 | 223.09 | 0 | 0 | 0 |
| 21 | 42 | 1.1166 | 220.76 | 0 | 0 | 0 |
| 22 | 42 | 1.1495 | 227.26 | 0 | 0 | 0 |
| 23 | 44 | 1.1389 | 225.17 | 0 | 0 | 0 |
| 24 | 42 | 1.1520 | 227.76 | 0 | 0 | 0 |
| 25 | 43 | 1.1706 | 231.44 | 0 | 0 | 0 |
| 26 | 44 | 1.1400 | 225.39 | 17 | 14 | 31 |
| 27 | 45 | 1.1451 | 226.39 | 0 | 0 | 0 |
| 28 | 46 | 1.1266 | 222.74 | 0 | 0 | 0 |
| 29 | 46 | 1.1035 | 218.17 | 0 | 0 | 0 |
| 30 | 45 | 1.1055 | 218.56 | 0 | 0 | 0 |
| 31 | 43 | 1.1077 | 219.00 | 0 | 0 | 0 |
| 32 | 45 | 1.1528 | 227.92 | 0 | 0 | 0 |
| 33 | 45 | 1.1564 | 228.63 | 0 | 0 | 0 |
| 34 | 42 | 1.1393 | 225.25 | 0 | 0 | 0 |
| 35 | 45 | 1.1117 | 219.79 | 0 | 0 | 0 |
| 36 | 45 | 1.1049 | 218.45 | 0 | 0 | 0 |

Intertek Testing Services NA, Inc.

KC-Shahinian-0000007140









| Completed by: | Adrian Buzea | | Reviewed by: | |
|---|---|---|---|---|
| Title: | Microbiologist | | Title: | Engineer-Reviewer |
| Signature: | | | Signature | |

KC-Shahinian-0000007141

# EXHIBIT 4

Print  |  Close

## Request Number:  47865
Technical Services : S&IP Testing

| Group Name | Date Received | Assigned To | Current Status |
|---|---|---|---|
| Physical Testing | 27 MAR 2013 | Marmes, Jeff | Complete |

| | |
|---|---|
| **Requestor Name** | Mary Weber |
| **Requestor ID** | B84287 |
| **Requestor Phone** | +1 (770) 587 7438 |
| **Requestor Location** | Ros-Pointe |
| **Service Category** | S&IP Testing |
| **WBS Number** | |
| **Cost Center** | 0000090211 |

**Sample/Material Drop off Location**
Roswell send to 300/1 lab 31006 or Jeff's office 31013A.
Neenah send to "Work Directors" Compliance Testing Facility for product not on a skid  Product on a skid - please call

For Neenah Physical Testing requests please contact Michelle Schramm and for Aging requests please contact Betty Lehmann.

○ Neenah

◉ Roswell

**What date can Physical Testing expect the samples?**

3/29/2013

**Business Impact**
What specific impact will successful completion of this work have on K-C business and how will the results be used? Please add as much detail as possible to help prioritize the work load.

Completion of testing of Innovise Pre-Cut Tape for AAMI 4 Surgical Gowns is a cost savings for the Health Care Business Unit. Work is conducted for HC-CM-000129.

**What group should this be billed to?**

Health Care ▾

**Date Results Needed By?**
Note: The contract lab has until midnight on the due date to supply data. Depending on the business need and objective the date may not be met.

4/30/2013

**Is this testing business critical and is testing needed to make a decision that will impact the global business plan. This would include high dollar savings, BFC, Quality Issues or Safety issues? (Non-critical testing may be moved out to allow for critical testing to be completed)**

◉ Yes

○ No

**Is this an ongoing (multiple days, weeks) aging study request?**

○ Yes

◉ No

**Please enter your Project Number (R-xxxxxx)**

R-002289

**Select Project Name**

CONFIDENTIAL - SUBJECT TO CONFIDENTIALITY ORDER IN SHAHINIAN V.          KC-Shahinian-0001795605
KIMBERLY-CLARK CORP., NO. 2:14-CV-08390-DMG-SH (C.D. CAL.)

Sample 1 - 92340-02 MCIROCOOL Lot 1

| | |
|---|---|
| CPITS #: | |
| Pant/Diaper Size: | |
| Qty Submitted: | 101 |
| # of Plies to test: | |
| Chemical Addition: | |
| Treatment· | |
| Chemical Name: | |
| Type | Surgical Gowns |
| Mix Time: | |
| Notes: | 36 gowns for ASTM F1671 at Intertek 35 gowns for AATCC 42:2007 at IPS 30 gowns for STM-00370/STM-5709 |

| | |
|---|---|
| Sample Number: | 2 |
| Name: | Sample 2 - 92340-02 MCIROCOOL Lot 2 |
| CPITS #: | |
| Pant/Diaper Size: | |
| Qty Submitted: | 101 |
| # of Plies to test: | |
| Chemical Addition: | |
| Treatment: | |
| Chemical Name· | |
| Type: | Surgical Gowns |
| Mix Time· | |
| Notes: | 36 gowns for ASTM F1671 at Intertek 35 gowns for AATCC 42:2007 at IPS 30 gowns for STM-00370/STM-5709 |

| | |
|---|---|
| Sample Number: | 3 |
| Name: | Sample 3 - 92340-02 MCIROCOOL Lot 3 |
| CPITS #: | |
| Pant/Diaper Size: | |
| Qty Submitted: | 101 |
| # of Plies to test: | |
| Chemical Addition: | |
| Treatment: | |
| Chemical Name: | |
| Type: | Surgical Gowns |
| Mix Time: | |
| Notes. | 36 gowns for ASTM F1671 at Intertek 35 gowns for AATCC 42:2007 at IPS 30 gowns for STM-00370/STM-5709 |

| | |
|---|---|
| Sample Number: | 4 |
| Name: | Sample 4 - 95421-35 ULTRA Film Reinf Lot 1 |
| CPITS #: | |
| Pant/Diaper Size: | |
| Qty Submitted: | 101 |
| # of Plies to test· | |
| Chemical Addition: | |

CONFIDENTIAL - SUBJECT TO CONFIDENTIALITY ORDER IN SHAHINIAN V.                    KC-Shahinian-0001795606
KIMBERLY-CLARK CORP., NO. 2:14-CV-08390-DMG-SH (C.D. CAL.)

6 - Sample 6 -95421-35 ULTRA Film Reinf Lot 3

| Test Method Number: | 2 |
|---|---|
| Assigned To: | Intertek 2 |
| Test Method Name: | ASTM F1671 - Viral Penetration |
| Units: | p/F |
| Specimens: | 36 |
| Additional Info: | Test front tie attachment only. 36 from each of 3 lots. |
| Samples Assigned· | 1 - Sample 1 - 92340-02 MCIROCOOL Lot 1 |
| | 2 - Sample 2 - 92340-02 MCIROCOOL Lot 2 |
| | 3 - Sample 3 - 92340-02 MCIROCOOL Lot 3 |
| | 4 - Sample 4 - 95421-35 ULTRA Film Reinf Lot 1 |
| | 5 - Sample 5 -95421-35 ULTRA Film Reinf Lot 2 |
| | 6 - Sample 6 -95421-35 ULTRA Film Reinf Lot 3 |

| Test Method Number: | 3 |
|---|---|
| Assigned To: | IPS |
| Test Method Name: | STM 00370 / STM 5709 - Surgical Gown Tie-Shear Test |
| Units: | lbf |
| Specimens: | 30 |
| Additional Info: | Test front tie attachment as in test method testing 30 specimens per lot. |
| Samples Assigned: | 1 - Sample 1 - 92340-02 MCIROCOOL Lot 1 |
| | 2 - Sample 2 - 92340-02 MCIROCOOL Lot 2 |
| | 3 - Sample 3 - 92340-02 MCIROCOOL Lot 3 |
| | 4 - Sample 4 - 95421-35 ULTRA Film Reinf Lot 1 |
| | 5 - Sample 5 -95421-35 ULTRA Film Reinf Lot 2 |
| | 6 - Sample 6 -95421-35 ULTRA Film Reinf Lot 3 |

Physical Testing Cost Estimator

CONFIDENTIAL - SUBJECT TO CONFIDENTIALITY ORDER IN SHAHINIAN V.          KC-Shahinian-0001795607
KIMBERLY-CLARK CORP., NO. 2:14-CV-08390-DMG-SH (C.D. CAL.)

# EXHIBIT 5

## AMENDMENT

This Amendment, dated and effective August 1, 2013, amends the Corporate Program Agreement between MedCal Sales, L.L.C. ("MedCal") and Prime Healthcare ("Prime"), dated and effective December 1, 2008 (the "Agreement"). Prime consists of facilities listed within Exhibit A.

All provisions of the Agreement remain in full force and effect, and unchanged, except the following:

The Agreement will be extended an additional 5 years through December 31, 2018.

Effective 30 days from execution of this Amendment, non-Medline Brand Products will be contract price plus % per the grid below. Prime's aggregate annual purchase volume will define the markup tier achieved.

**Annual Volume Purchase Less Than $24,999,999:**

| PRODUCT | Mark Up Structure |
|---------|-------------------|
| Non-Medline Contract - Bulk | 3.75% |
| Self-Manufactured/Private Label - Bulk | 0.00% |
| Suture/Endomechanical Contract - Bulk | 1.00% |

**Annual Volume Purchase  $25,000,000-34,999,999:**

| PRODUCT | Mark Up Structure |
|---------|-------------------|
| Non-Medline Contract - Bulk | 3.0% |
| Self-Manufactured/Private Label - Bulk | 0.00% |
| Suture/Endomechanical Contract - Bulk | 1.00% |

**Annual Volume Purchase $35,000,000 - $44,999,999:**

| PRODUCT | Mark Up Structure |
|---------|-------------------|
| Non-Medline Contract - Bulk | 2.5% |
| Self-Manufactured/Private Label - Bulk | 0.00% |
| Suture/Endomechanical Contract - Bulk | 1.00% |

**Annual Volume Purchase $45,000,000 +:**

| PRODUCT | Mark Up Structure |
|---------|-------------------|
| Non-Medline Contract - Bulk | 2.0% |
| Self-Manufactured/Private Label - Bulk | 0.00% |
| Suture/Endomechanical Contract - Bulk | 1.00% |

Medline Brand Product purchases to be reviewed each year on the anniversary date of the Agreement.  Any markup changes will be communicated to Prime with a 30 day notice.

The following rebate will replace the rebates described in the Amendment dated and effective August 1, 2011 and sections 1.3 and 1.4 of the Agreement:

MedCal will pay Prime an annual rebate paid quarterly on Medline Brand Products purchased per the following rebate schedule based upon the Medline Brand Sales.  Prime must maintain a 40% Medline Brand ratio at the time of rebate calculation to qualify for the rebate.

**CONFIDENTIAL**                                      PLTF000153

| Medline Brand Sales | Rebate Medline Brand |
|---|---|
| $8M | 5.0% |
| $16M | 5.75% |
| $24M | 6.25% |
| $30M | 6.75% |

Medline Medisiss reprocessing purchases will be counted toward all rebate goals hereunder, but the same value of purchases will be excluded from the basis used to calculate rebate payments.

Rebate will be paid on the aggregate net price based on the table above. The rebate tracking period will be based on a twelve month calendar year from January 1st through December 31st. The first calendar year sales will be prorated thru 12/31/13. Thereafter, the rebate payment schedule will follow a calendar year and will be paid on an annual basis. Net rebates greater than $1,000 per payment will be paid in the form of a credit or direct payment. Net rebates less than $1,000 per payment will be paid in the form of a credit only to the Prime's account. MedCal will pay corporate rebates through this Agreement and all standard GPO fees of which Prime is a member. Should the GPO offer standardization programs requiring additional administrative fees for standardization or compliance programs, MedCal will count the sales of those specific product categories towards the overall sales volume goals and pay the rebate for such Products only under the GPO program. Product categories bid through a regional group purchasing organization or regional contracting office will be exempt from determining the rebate and rebate payments under this Agreement. Product signed as received through a proof of delivery and shown as decremented from MedCal inventory but claimed as not received by the facility will not be counted toward the rebate volume. All of Prime's accounts with MedCal must have been current during the entire rebate period (per section below titled: Payment Terms) in order for Prime to qualify for the rebate. Invoices in dispute, that Prime notified MedCal about in writing within 30 days of invoice date, will not be counted as past due for rebate purposes. MedCal reserves the right to off-set any rebate against any outstanding and overdue account balance. At a minimum, MedCal will deduct outstanding invoices sixty days or greater past payment terms. Additionally, MedCal reserves the right to off-set any rebate to pay for "value added" services, accessories, and software for which a MedCal determines a reasonable charge must be assessed. If no rebate is earned or the rebate is not sufficient to satisfy the value added charges, Prime shall pay MedCal directly for the charges, within 30 days of MedCal's invoice for such charges. At the conclusion of each rebate period, Prime shall receive a statement itemizing any such set offs and charges.

Payment terms described in section 2.5 are replaced with ~~75%~~ 1,00% 15 net 45 days (discount not applicable for monthly service billings). Prime accounts that are 15 days past terms will not be eligible for the quick pay discount described above until Prime accounts are not past terms. Prime shall pay interest of 1 ½% per month on all unpaid invoices over 45 days.

Prime agrees to purchase at least 90% of their Med-Surg Product requirements through MedCal's distribution channel.

PRIME HEALTHCARE

_____
Signature

_Pres;dent of Operations_
Printed Name and Title

_8/5/2013_
Date

MEDCAL SALES ~~L.~~L.C.

_____
Signature

Thomas E Egan-Vice President Corporate Sales
Printed Name and Title

_8/5/2013_
Date

**Medline Industries, Inc./Prime Healthcare**
**Corporate Program Agreement**

This Agreement is between Medline Industries, Inc. ("Medline") and Prime Healthcare, and supersedes all other existing supply or corporate program agreements between Medline and Prime Healthcare.  The term of this agreement will be for five years, beginning December 1, 2008 through December 31, 2013 with two optional three year renewals. The parties agree as follows.

Definitions:

Baseline Pricing:  Prime Healthcare's previous price paid (inclusive of service fee) for products similar to the Products (defined below).

Medline Brand Products: all Products bearing the Medline name or sold under Medline brand names or trade names.

Minimum Purchase Volume:  the minimum dollar volume (net) of Products that must be purchased during a specific period of time to achieve the savings.

Net Price:  Aggregate price adjusted for all quick pay discounts, GPO administrative fees, and all other discounts, fees, credits and offsets that reduce price.

Products:  all Medline and non-Medline brand medical-surgical and other hospital products offered for sale by Medline.

Program: the entire set of Product purchase and service arrangements agreed to hereunder.

1.  <u>**Savings Components**</u>

The specific amount of savings from individual components of the Program may vary from what was estimated or contemplated at the outset of the Program.  Savings may be achieved from the following Program options, which may be elected at any time during the duration of the Program:

*3 [handwritten] $3,875 for 4 days, 4% for 5 days per week*

1.1    <u>Distribution.</u>  Medline will supply non-Medline brand products which are currently being purchased by Prime Healthcare at cost plus basis 3.75% for bulk deliveries *five* days per week, and cost plus 1% for sutures and Endomechanicals (ETH) Ethicon, only.  All other MFG's of Suture and Endomechanicals would be at cost plus 3%.  Medline must be appointed distributor of choice by Prime Healthcare and an authorized distribution agent of Prime Healthcare's group purchasing organization.  Non-Medline brand purchases to be selected and approved jointly by Prime Healthcare and Medline.  Medline agrees to stock products at Prime Healthcare's primary shipping branch provided that the monthly minimum usage is 1/3 of 1 case.  Additional logistical services will be subject to additional cost plus charges per the attached grid.  Prime Healthcare agrees to purchase at least 95% of their current prime vendor spend and 100% of their suture and Endomechanical supplies through Medline Industries.

1.2    <u>Medline Brand.</u>  During the term of this Agreement, should any Medline Brand item transfer from GPO contract to GPO non-contract, Medline Industries, Inc. shall enter into a local agreement with Prime Healthcare on a per item basis or apply the GPO contract pricing to the non contract item should a GPO contract price exist with another Prime facility.  Medline Brand product that is not on contract with any GPO that Prime Healthcare belongs, Medline will offer a guaranteed 7% savings on the acquisition cost and best faith effort to meet or exceed 10%.  Prime Healthcare will continue purchasing Medline Brand SPT's, Packs and Gowns, Surgical Gloves, Hand Hygiene, Briefs and Underpads, and Exam Gloves.

1.3    <u>Medline Brand Rebate.</u>  Medline agrees to pay a rebate on Medline Brand products based upon the ratio of Medline Brand purchases vs. National Brand purchases per the grid below:

**CONFIDENTIAL**                                                                                      **PLTF000155**

| Medline Brand | National Brand | Medline Brand Rebate |
|:---:|:---:|:---:|
| 40% | 60% | 5.0% |
| 45% | 55% | 5.5% |
| 50% | 50% | 6.0% |
| 55% | 45% | 6.5% |

1.4    Rebate Payment Terms.  Rebate will be paid on the aggregate net price based on the table in 1.3.  Each tier will pay the corresponding rebate percentage for the purchase volume in that specific tier.  If multiple tiers are earned, payment will be made for each tier level earned at the appropriate percentage.    The rebate tracking period will be based on a twelve month calendar year from January 1st through December 31st.  Therefore the first rebate period will be prorated based on 13 months from December 1, 2008 through December 31, 2009.  Thereafter, the rebate payment schedule will follow a calendar year and will be paid on an annual or quarterly basis.  Rebates will be paid on an annual basis.  Net rebates greater than $1,000 per payment will be paid in the form of a credit or direct payment.  Net rebates less than $1,000 per payment will be paid in the form of a credit only to the Prime Healthcare's account.  For those categories of Products covered under any type of GPO contract where rebates/fees paid by Medline to the GPO or directly to the member are in excess of existing administration fees, Medline will count the sales toward the overall sales volume goals and pay the rebate for such Products only under the GPO program.  Product signed as received through a proof of delivery and shown as decremented from Medline inventory but claimed as not received by the facility will not be counted toward the rebate volume.  All of Prime Healthcare's accounts with Medline must have been current during the entire rebate period (per section below titled: Payment Terms) in order for Prime Healthcare to qualify for the rebate.  Invoices in dispute, that Prime Healthcare notified Medline about in writing within 30 days of invoice date, will not be counted as past due for rebate purposes.  Medline reserves the right to off-set any rebate against any outstanding and overdue account balance.

1.5    Reports.  Medline will provided quarterly reports (electronic and paper) on:
   1)  Total Spend by Hospital
   2)  EDI total spend by Hospital
   3)  Fill rate by Hospital (not including equipment or non-stock)
   4)  Medline Brand versus non-Medline Brand product penetration report
   5)  A/P payment terms compliance by Hospital

## 2.    Standard Terms and Conditions

2.1    Fill Rate.  Medline will maintain a 97% fill rate on all products which have been identified as stock items or regularly used products between Medline and Prime Healthcare where monthly usages have been communicated between both parties. The fill rate will be determined by line items ordered divided by completed line items filled, first truck.

2.2    Medline Stocking Policy.  Items will be stocked in requested UOM and in Prime Healthcare's primary branch if:

   a.  The item is already set-up in Prime Healthcare's primary shipping plant.
   b.  Usage for each Prime Healthcare facility requesting the item exceeds 1/3 case per month.

2.3    Non-Medline Brand Product Surplus/Return Policy.  As part of Medline's distribution arrangement with Prime Healthcare, Medline is ordering into stock non-Medline and Medline brand products specific for distribution to Prime Healthcare.

Medline will maintain a maximum 60 day inventory level for Prime Healthcare.  Because Medline is bringing products in specifically to Prime Healthcare's branch and specifically for Prime Healthcare, Medline reserves the right to implement the following for any product which after 90 days has not been ordered:

11/24/2008 2:40:00 PM                                                                           2

**CONFIDENTIAL**                                                                    **PLTF000156**

a. Stock transfer Non-Medline brand products to other established accounts.  (Prime Healthcare would be responsible for any associated freight and stock transfer fees), OR

b. Invoice Prime Healthcare for any quantity of goods which after 90 days have not been ordered by Prime Healthcare, OR

c. Return the goods and assess Prime Healthcare any restocking or freight charges that Medline would incur by returning the products to the manufacturer.

2.4    <u>Freight Policy</u>. FOB destination on orders of $750.00 or more on all stock products located at Prime Healthcare's primary shipping branch in the continental United States. Freight charges will be added to emergency overnight shipments and stock products where usage is in excess of 125% of communicated forecast which are required to be stock transferred or shipped overnight.  Manufacturer drop ship charges and FOB shipping point terms of manufacturer's Medline distributes will be assessed the applicable freight charges.

2.5    <u>Payment Terms</u>. Payment terms are 1%/15/net 45 days. Medline will charge Prime Healthcare interest of 1 ½% per month on all unpaid invoices over 45 days.  In addition, Medline reserves the right to increase the price or mark-up on products by ½% for every 30 days Prime Healthcare is over terms.  Prime Healthcare agrees to partially pay all undisputed portions of invoices within the agreed upon terms and not hold entire invoices from payment that contain disputed line items.  Medline will only accept payment by check, money order or wire transfer.

2.6    <u>Price Protection Period</u>. Prices on Medline Brand Products will be firm for one year, with maximum yearly increases thereafter of 4% over the previous year, such increase to be effective on the anniversary date of this agreement.  Medline will provide 30 day advance notice on Medline Brand Product. Non-Medline Brand product distributed by Medline will offer price protection as determined by the specific terms and conditions of the manufacturer. For products which Medline has under contract with a GPO, which Prime Healthcare belongs, Medline will offer pricing/price protection as determined through the GPO contract.

The price of Medline Brand Products will be reviewed twice a year in January and in July.  Medline will give Prime Healthcare 30 days written notice of any proposed price increase.  Prime Healthcare will have the opportunity to either accept or reject the price increase.  Should they reject the dollar increase, Prime Healthcare and Medline agree to meet and discuss the rejection. Medline has the option to decline selling the product to Prime Healthcare and will offer to sell the national Branded product at the agreed upon cost plus mark-up. Pricing on any new Product, a Product that does not have a competitive baseline for reference purposes, will be negotiated by the respective corporate offices or designees.

2.7    <u>Advance Notification Policy for Price Changes.</u> Through the implementation process, Medline will identify the key individual(s) to notify of a price change. Medline's pricing team will directly communicate with this designated person(s) any and all changes related to pricing.

Medline makes a best faith effort to give a 30-day written notice whenever possible, we will provide, at a bare minimum, 7 - day advance notice of price changes to its distribution accounts. This can be done either through an EDI 832-price file or on Excel spreadsheet. Naturally, if we can provide greater notice, then we will and do.

Medline's current policy regarding contract pricing extensions:

- 60 days prior to pricing end date, Medline's Contract Department sends an email request to the vendor requesting replacement pricing or extension on existing price.
- If no response to the above, 30 days prior to the end date, Medline again sends an email request for updated information
- Again if no response is received, Medline will place follow-up calls to the vendor requesting updated information.

**CONFIDENTIAL**                                    **PLTF000157**

- 15 days prior to end date, if no updated information is received, Medline will notify the manufacturer that the current pricing will be extended for an additional 30 days. Medline's Pricing Department will then send the customer notification of non-contracted pricing effective at the end of that extension. At that point, the customer's assistance would be needed to insure resolution and contract continuity.

For non-contracted pricing, Medline will provide as much advance notice of price changes as our vendors allow. Medline requires 45 advance notice of changes, however, some vendors cannot or do not meet that obligation.

Medline, at a bare minimum, will provide its customers 7-day advance notice of price changes on non-Medline brand product. We will also provide information as it relates to these changes. As indicated, please notify Medline of any errors detected or questions within a timely manner.

2.8     Medline Return Goods Policy. This Policy applies to all customers and transactions, unless superseded by a signed written agreement including specific returned goods terms and conditions. Medline reserves the right to reject any return that does not comply with the terms of this Policy. Returns of non-Medline brand items and "vendor directs" are subject to the terms and conditions of the manufacturer and may incur additional charges such as restocking or freight, based on the manufacturer's policy. These charges will be deducted from the credit when issued.

Custom Items, Patient Home Direct, Kaumographed, Embroidered and/or Altered Textiles or Made to Order items can not be returned. Product may be returned for any item that has been shipped in error or found to be defective. Damaged items will require the appropriate inspection and/or documentation that would allow Medline to file the appropriate claim with the carrier. (All other returns may be subject to a restocking fee as listed below).

All returns require a Returned Goods Authorization (RGA). Goods received without prior authorization will be subject to review and credit may be denied. You may obtain an RGA by calling Medline's Return Goods Department at 1-800-307-8386. An RGA Number is valid for 60 days after issuance. All efforts will be made to assist you in meeting the 60 day requirement. Should you decide to keep your product after obtaining your RGA authorization, please advise us by calling the number listed above. We will gladly cancel your authorization.

Returns may be rejected due to the physical condition of the items received in our warehouse or our vendor's warehouse. When returning product that is not defective, damaged, or a Medline shipping error, the following terms and conditions apply, (a) items must be received in unopened cases with original packaging in tact, (b) items with "piggyback labels" will not be accepted (these fall into the made to order category), (c) the expiration date on all nutrients have a shelf life of not less than six months from date received in our warehouse, (d) expired items may not be returned, and (e) items not in salable condition due to improper storage, spoilage, or damaged packaging are not returnable. Returns that are not for defect, damage or error will be subject to the following restocking amounts, based on the date of the original invoice:

| Return from Date of Invoice | Re-Stocking Fee as a % of the Invoice Amount | |
|---|---|---|
| 0 -  30 days | 5% | + Freight* |
| 31 -  60 days | 10% | + Freight* |
| 61 - 120 days | 20% | + Freight* |
| 121 - 180 days | 30% | + Freight* |
| 6 months or greater | not returnable | |

Should you need assistance in scheduling a pick up, we can provide you with the appropriate Call Tags or Bill of Lading. Your RGA authorization will be provided with instructions on contacting the carrier, costs relating to freight and/or restocking fees as applicable. These fees will be deducted from the credit issued. All quality issues, damaged product or returns that are the result of a Medline error, will be returned at Medline's expense.

2.9     Communication and Termination for Convenience.  The parties agree to communicate, at least on a quarterly basis, about the progress and issues raised in performing this agreement. Either party may terminate this

**CONFIDENTIAL**     **PLTF000158**

agreement without cause for its convenience, but only on 90 days prior notification to assist in the operational transition.  In the event of termination, Prime Healthcare will be obligated to pay Medline for Medline's entire inventory of any custom items (i.e., Medline and non-Medline kits and trays).

2.10   Force Majeure. In the event performance of any term or condition of this Agreement is delayed or prevented in whole or in part because of or related to (a) compliance with any law, decree, request, or order of any governmental agency or authority, whether local, state, provincial or federal, (b) riots, war, acts of terrorism, public disturbances, strikes, lockouts, differences with workmen, fires, explosions, storms, floods, acts of God, accidents of navigation, breakdown or failure of transportation, manufacturing, distribution, storage or processing facilities, (c) failure of or interference with the manufacture, receiving, handling, delivery or consumption of the Products, (d) the imposition of new or increased tariffs, taxes, duties and the like, or (e) for any other reason (whether or not of the same class or kind as herein set forth) which is not within the reasonable control of the party whose performance is interfered with and which by the exercise of reasonable diligence said party is unable to prevent (such occurrences referred to herein as "force majeure"), or in the event any force majeure results in an inability to obtain at reasonable prices or in sufficient quantities the Products or the raw materials, chemicals, catalysts, fuel, power, labor, containers or transportation or distribution facilities or equipment, relating thereto, then the party so suffering may at its option suspend deliveries or receipts during the period such cause continues, and no liability will attach against either party on account thereof.  Notwithstanding any other term or condition of this Agreement, in the event of a force majeure affecting Medline as described above, Medline may apportion its available supply of such Products among its purchasers on any basis Medline reasonably considers equitable without incurring any liability and/or adjust the prices of the Products to reasonably offset increased costs relating to the force majeure.  The provisions of this section will not be available to either party who fails to use reasonable diligence to remedy the situation and remove the cause in an adequate manner.

2.11   Credit and Additional Security. This agreement and future extensions of credit hereunder are subject to Medline's standard credit policies, which include the disclosure of necessary financial information, assurances, and the execution of security agreements, if deemed necessary by Medline. In the event such information, assurances and/or agreements are requested, but not received by Medline then Medline reserves the right to terminate this Agreement for cause, discontinue shipping, or reduce applicable credit limits.

2.12   Compliance with the Discount Safe Harbor.  Customer and/or its facilities will report any discounts or rebates earned and paid under this Agreement on its/their institutional cost report(s), or otherwise disclose the amount of the discount or rebate to the appropriate federally funded program, in compliance with the discount safe harbor provisions of the Anti-Kickback Statute and its implementing regulations.  42 CFR § 1001.952(h).  All discounts and rebates will be provided based on purchases of products within a single fiscal year of Customer, and the terms of the discounts and rebates are fixed as set forth in this Agreement.  Medline will provide Customer with notice on invoices of Customer's obligation to fully and accurately report the amount of any earned          discounts     or     rebates     in compliance with the safe harbor provisions and to provide information concerning the discounts and rebates to the Secretary of the United States Department of Health and Human Services or any applicable state Medicaid agency, if requested.  Medline will also disclose the amounts of the discounts and rebates in writing to Customer at the time of purchase on the invoice or at such time as the discounts or rebates are ascertainable.

2.13   Miscellaneous. This agreement may be executed in one or more counterparts, each of which together will constitute one and the same instrument.  This agreement is binding on and inures to the benefit of each party's successors and assigns. This agreement, and all of its terms and conditions, including pricing, rebates, and other economic terms, are to be held in strict confidence by the parties hereto.

PRIME HEALTHCARE                               MEDLINE INDUSTRIES, INC.

11/24/2008 2:40:00 PM                   **CONFIDENTIAL**                      **PLTF000159**

Signature

Allen Stefanek, VP Operations
Printed Name and Title

12/05/2008
Date

Signature

David S. Struve SVP
Printed Name and Title

12/05/2008
Date

| | |
|---|---|
| Desert Valley Hospital, Inc.<br>DBA – Desert Valley Hospital<br>16850 Bear Valley Road<br>Victorville, California 92395<br>Tax ID – 33-0502805 | Prime Healthcare La Palma , LLC<br>DBA – La Palma Intercommunity Hospital<br>7901 Walker Street<br>La Palma, California 90623<br>Tax ID – 20-5253134 |
| Veritas Health Services, Inc.<br>DBA – Chino Valley Medical Center<br>5451 Walnut Avenue<br>Chino, California 91710<br>Tax ID – 33-0928285 | Prime Healthcare Anaheim, LLC<br>DBA – West Anaheim Medical Center<br>3033 West Orange Avenue<br>Anaheim, California 92804<br>Tax ID – 20-5245674 |
| Prime Healthcare Services II, LLC<br>DBA – Sherman Oaks Hospital<br>4929 Van Nuys Boulevard<br>Sherman Oaks, California 91403<br>Tax ID – 20-2546649 | Prime Healthcare Paradise Valley, LLC<br>DBA – Paradise Valley Hospital<br>2400 East 4th Street<br>National City, California 91950<br>Tax ID – 20-5837239 |
| Prime Healthcare Services III, LLC<br>DBA – Montclair Hospital Medical Center<br>5000 San Bernardino Street<br>Montclair, California 91763<br>Tax ID – 20-2898771 | Prime Healthcare Huntington Beach, LLC<br>DBA – Huntington Beach Hospital<br>17772 Beach Boulevard<br>Huntington Beach, CA 92647<br>Tax ID – 20-5252882 |
| Prime Healthcare Centinela, LLC<br>DBA – Centinela Hospital Medical Center<br>555 E. Hardy Street<br>Inglewood, CA 90301<br>Tax ID – 26-1150758 | Prime Healthcare Services – Encino LLC<br>DBA – Encino Hospital Medical Center<br>16237 Ventura Blvd.<br>Encino, CA 91436<br>Tax ID – 26-2128507 |
| Prime Healthcare Services – Garden Grove LLC<br>DBA – Garden Grove Hospital Medical Center<br>12601 Garden Grove Blvd.<br>Garden Grove, CA 92843<br>Tax ID – 26-2583411 | Prime Healthcare Services – San Dimas LLC<br>DBA – San Dimas Community Medical Center<br>1350 W. Covina Blvd<br>San Dimas, CA 91773<br>Tax ID – 26-2583397 |
| Prime Healthcare Services – Shasta LLC<br>DBA – Shasta Regional Medical Center<br>1100 Butte Street/PO Box 496072<br>Redding, CA 96049-6072<br>Tax ID – 26-3487583 | |

**CONFIDENTIAL**                                               **PLTF000160**

*Additional Logistical Services*

| Distribution Services | Distribution Service Fee |
|---|---|
| 1) Customized Invoices (i.e. weekly manifest invoicing) | 0.25% |
| 2) Customized Packing Slip<br>The following services are free of additional fees and not considered custom:<br>  -Packing slips print in hospital PO order<br>  -Packing slips can be faxed automatically or on demand phone of Internet | 0.25% |
| 3) Combined Packing Slip and Invoice<br>    a) multiple ship to account numbers beyond 3. Intended for bulk<br>    accounts with one physical address. The fee is for the 4th and over ship<br>    to account numbers | 0.25%<br>0.50% |
| 4) Pallet Services<br>The following STANDARD services carry no additional fees:<br>  -Orders consolidated by ship-to account<br>  -Box/case labels facing out on the pallets<br>  -Shrink-wrapped pallets<br>  -Pallets arranged to meet customer's weight and/or dimensions requirements<br>  -Pallet report per shipment (this is in addition to the packing slip)<br>  -Packing slip in PO sequence<br>  -Pick labels (PO #, reorder #, hospital item #, hospital storage location)<br><br>The following CUSTOM services carry an additional fee:<br>  -Product picked and palletized by Purchase Order<br>  -Separate pallet for stock vs Non stock items<br>  -Pallet clearly marked with description and internal routing information<br><br>Multiple Internal Ship to account numbers beyond 3. Intended for bulk accounts with one<br>Physical address. The fee applies to the 4th and over ship to account numbers.<br><br>The following ENHANCED CUSTOM services carry their own specific fee:<br>  -   Cart Delivery System – replacing pallets and sorting deliveries by department<br>  -   Corrugate Free OR Service – Custom Packs and trays delivered on carts, de-cased | <br><br><br><br><br><br><br><br><br>0.75%<br><br><br><br><br><br>0.50%<br><br>1.00%<br>1.50% |

| 5) Adjustment to basic fee for delivery reductions or additions (plus or minus) | |
|---|---|
| **Annual Volume** | |
| $20,000,000 or Greater | 0.25% |
| $8,000,000 to $19,999,999 | 0.30% |
| $5,000,000 to $7,999,999 | 0.35% |
| $3,000,000 to $4,999,999 | 0.40% |
| $1,000,000 to $2,999,999 | 0.50% |
| $500,000 to $999,999 | 0.75% |
| Less than $500,000 | 1% |
| 5a)  Weekend Deliveries. Per day cumulative | 0.75% |
| 6) Corrugate Free OR Service – Custom Packs, and Trays delivered on carts, de-cased | 1.50% |
| 7)  Additional exterior delivery points (per incremental) | .50% |
| 8) Bulk breakdown to the next unit of measure | 3.50% |
| 9) LUM Picked by Department Delivered to Dock/Bulk break down to manufacturer next<br>packing unit | 3.75% |
| 10)  LUM Picked by Department Delivered to Department | 1.50% |
| 11) LUM Cart Delivery System | 0.50% |
| 12) LUM Picked by Department Put Stock Away | 2.00% |
| 13)  Affix Patient Label | $0.10 |
| 14)  Bar Codes | Actual cost |
| 15)  Emergency Deliveries | Actual cost |

11/24/2008 2:40:00 PM                                                                                            7

**CONFIDENTIAL**                                        **PLTF000161**

| All Distribution Service Fees are additive to the effected activity. |
|---|
| Distribution Service Fees # 9,10, 11 & 12 are compounded (additive). |

## Non-Traditional Products

Products outside the normal med/surg distribution group of merchandise that we mutually agree to distribute for the facility. The cost plus percentage is added to the normal bulk or LUM cost plus.

| Product Description | Cost Plus% | Cost Plus% | Cost plus% |
|---|---|---|---|
| Total Prime Vendor Annual Spend | Less than 3 Million | 3 Million to 6 Million | Greater than 6 Million |
| Housekeeping Supplies can liners, bleach, detergents, cleaners, disinfectants, cleansers, mops, brooms, brushes, sanitizers, degreasers, safety eye wear, buffer pads, waste receptacles, floor stripper. | 7% | 6% | 5% |
| Paper Products bags, napkins, plates, cups, towels, toilet paper | | | |
| Food Service mugs, carafes, knife/spoon/fork, film wraps, containers & lids, foam cups | | | |
| Office Supplies Labels, forms, envelopes, copy paper, booklets | | | |
| Miscellaneous Tampons, pacifiers, TV speaker pillows, room humidifiers, denture cleaner, lint pick-up rollers, car seats, baby diaper change stations, instant print film | | | |

CONFIDENTIAL

PLTF000162