1    ALEXANDER CALFO (State Bar No. 152891)
*acalfo@kslaw.com*

2    JULIA ROMANO (State Bar No. 260857)
*jromano@kslaw.com*

3    KING & SPALDING LLP
633 West 5th Street, Suite 1700

4    Los Angeles, CA  90071
Telephone:  (213) 443-4355

5    Facsimile:   (213) 443-4310

6    Attorneys for Defendants KIMBERLY-CLARK
CORPORATION, a Delaware Corporation and

7    HALYARD HEALTH, INC., a Delaware Corporation

8                 **UNITED STATES DISTRICT COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11   BAHAMAS SURGERY CENTER, LLC dba Bahamas Surgery Center, a California limited liability company, on behalf of itself and all others similarly situated <br><br> Plaintiff, <br><br> v. <br><br> KIMBERLY-CLARK CORPORATION, a Delaware Corporation; and HALYARD HEALTH, INC., a Delaware Corporation, <br><br> Defendants. | Case No. 2:14-cv-08390-DMG-PLA <br><br> **UNREDACTED PURSUANT TO COURT ORDER DATED JULY 29, 2016 (DKT. NO. 205)** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Date:   August 19, 2016 <br> Time:   3:00 p.m. <br> Ctrm.:  7 - 2nd Floor <br><br> Non-Exp. Disc. Cut-off:  June 28, 2016 <br> Pretrial Conference:  October 4, 2016 <br> Trial Date:  November 1, 2016 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ............................................................................................1

II.  FACTS ..........................................................................................................2

   A.  Procedural History. .............................................................................2

   B.  Background Information on MICROCOOL* Gowns............................3

       1.  The "AAMI Level 4" Standard.................................................3

       2.  Sales and Distribution of MICROCOOL* Gowns. ..................5

       3.  Performance and Safety of MICROCOOL* Gowns. ...............6

   C.  Bahamas's Alleged Purchase and Use of MICROCOOL* Gowns. .....7

III. ARGUMENT ................................................................................................9

   A.  Bahamas Has Not Suffered an Injury-In-Fact and Lacks Standing to Sue......................9

   B.  Bahamas Would Not Benefit From the Injunction and Declaratory Relief It Seeks and Lacks Standing to Seek Injunctive and Declaratory Relief..........................13

   C.  Bahamas's Claims Fail Because Bahamas Would Not Have Purchased MICROCOOL* Gowns Even If They Complied with the AAMI Level 4 Standard. ..........................................15

   D.  Bahamas's UCL Claim Fails Because Bahamas Has an Adequate Remedy at Law...............................16

   E.  Bahamas's Claims with Respect to Its Purchase of Sterile MICROCOOL* Gowns Are Governed—and Precluded—by a Valid and Enforceable Contract..............................17

       1.  Bahamas's Claims With Respect to Bahamas's Purchase of Sterile Gowns Are Governed By Texas Law. ...................................18

          a)  Texas Has a Substantial Relationship to the Parties and the Transaction. ...................................20

          b)  Applying Texas Law Is Not Contrary to a Fundamental Policy of California. ...................................21

       2.  Bahamas's Claims with Respect to Its Purchase of Sterile Gowns Are Precluded by the Economic Loss Rule. .....................22

       3.  Bahamas's UCL Claim with Respect to Its Purchase of Sterile Gowns Fails As a Matter of Law. .....................23

       4.  Bahamas Cannot Recover Punitive Damages with Respect to its Purchase of Sterile Gowns. .....................23

IV. CONCLUSION............................................................................................24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABF Capital Corp. v. Berglass*,
  130 Cal. App. 4th 825 (2005) ...................................................................................20

*Blue Dolphin Charters, Ltd. v. Night & Carver Yachtcenter, Inc.*,
  No. 11-cv-565-L(WVG), 2012 WL 1185945 (S.D. Cal. Apr. 9, 2012) .................................23

*Brazil v. Dell, Inc.*,
  585 F. Supp. 2d 1158 (N.D. Cal. 2008) ...............................................................21

*Cahen v. Toyota Motor Corp.*,
  ___ F. Supp. 3d ___, 2015 WL 7566806 (N.D. Cal. Nov. 25, 2015) ..............................12, 13

*In re Carroll*,
  464 B.R. 293 (Bankr. N.D. Tex. 2011) .................................................................15

*Chamberlain v. Ford Motor Co.*,
  369 F. Supp. 2d 1138 (N.D. Cal. 2005) ....................................................................9

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010) ........................................................................9, 10

*Continental Airlines, Inc. v. Mundo Travel Corp.*,
  412 F. Supp. 2d 1059 (E.D. Cal. 2006) ..................................................................20

*Davidson v. Kimberly-Clark Corp.*,
  76 F. Supp. 3d 964, 976 (N.D. Cal. 2014) .............................................................13

*Durkee v. Ford Motor Co.*,
  No. C 14-0617 PJH, 2014 WL 4352184 (N.D. Cal. Sept. 2, 2014).................................17

*El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*,
  344 F. Supp. 2d 986 (S.D. Tex. 2004) ..................................................................18

*Gardner v. Safeco Ins. Co. of Am.*,
  No. 14-cv-02024-JCS, 2014 WL 2568895 (N.D. Cal. June 6, 2014)...............................17

*Hatfield v. Halifax PLC and HBOS PLC*,
  564 F.3d 1177 (9th Cir. 2009) ...........................................................................20

*Heil Co. v. Polar Corp.*,
  191 S.W.3d 805 (Tex. App. 2006)........................................................................22

*Hughes Elec. Corp. v. Citibank Del.*,
  120 Cal. App. 4th 251 (2004) ............................................................................21

ii

*Jim Walter Homes, Inc. v. Reed*,
   711 S.W.2d 617 (Tex. 1986)..........................................................................22

*JMP Sec. LLP v. Altair Nanotechnologies, Inc.*,
   880 F. Supp. 2d 1029 (N.D. Cal. 2012) .......................................................18

*Lucas v. Bechtel Corp.*,
   800 F.2d 839 (9th Cir. 1986) .........................................................................20

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988) .........................................................................20

*Mayfield v. United States*,
   599 F.3d 964 (9th Cir. 2010) .........................................................................14

*Medimatch, Inc. v. Lucent Techs., Inc.*,
   120 F. Supp. 2d 842 (N.D. Cal. 2000) .....................................................21, 23

*Myers-Armstrong v. Actavis Totowa, LLC*,
   No. C 08-04741 WHA, 2009 WL 1082026 (N.D. Cal. Apr. 22, 2009)..................13

*Nat'l Seating & Mobility, Inc. v. Parry*,
   No. C 10-02782 JSW, 2012 WL 2911923 (N.D. Cal. July 16, 2012) ....................23

*Nedlloyd Lines B.V. v. Super. Ct.*,
   834 P.2d 1148 (Cal. 1992) .......................................................................18, 19

*O'Shea v. Littleton*,
   414 U.S. 488 (1974).....................................................................................14

*Philips v. Ford Motor Co.*,
   No. 14-CV-02989-LHK, 2015 WL 4111448 (N.D. Cal. July 7, 2015)............16, 17

*Phillips v. Apple Inc.*,
   No. 15-CV-04879-LHK, 2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) .........15, 16

*Quicksilver Resources, Inc. v. Eagle Drilling, LLC*,
   792 F. Supp. 2d 948 (S.D. Tex. 2011) ...........................................................18

*Slayman v. FedEx Ground Package Sys., Inc.*,
   765 F.3d 1033 (9th Cir. 2014) .......................................................................14

*Sterling Chems., Inc. v. Texaco, Inc.*,
   259 S.W.3d 793 (Tex. App. 2007)..................................................................22

*TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*,
   915 F.2d 1351 (9th Cir. 1990) .......................................................................20

*Tae Hae Lee v. Toyota Motor Sales, Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) ............................................................10

*Trans-Tec Asia v. M/V Harmony Container*,
    435 F. Supp. 2d 1015 (C.D. Cal. 2005) ...................................................................19

*Wallace v. ConAgra Foods, Inc.*,
    747 F.3d 1025 (8th Cir. 2014) ...............................................................10, 11, 12

*Walsh v. Nev. Dep't of Human Resources*,
    471 F.3d 1033 (9th Cir. 2006) ...............................................................14, 15

*Wong v. Tenneco, Inc.*,
    39 Cal. 3d 126 (1985) ...................................................................21

*Yumilicious Franchise, L.L.C. v. Barrie*,
    No. 3:13-CV-4841-L, 2015 WL 1856729 (N.D. Tex. Apr. 23, 2015) ...................................24

**Other Authorities**

Fed. R. Civ. P. 30(b)(6) ............................................................................. *passim*

Fed. R. Civ. P. 56(a) ...................................................................9

## I.     INTRODUCTION

In this putative class action, Plaintiff Bahamas Surgery Center, LLC ("Bahamas"), the only remaining Plaintiff in this case, alleges that Defendants Kimberly-Clark Corporation ("Kimberly-Clark") and Halyard Health, Inc. ("Halyard") falsely represented that MICROCOOL* Breathable High Performance Surgical Gowns comply with the highest level of barrier protection certified by the Association for the Advancement of Medical Instrumentation ("AAMI"). Bahamas asserts claims for fraud, fraudulent concealment, and violation of California's Unfair Competition Law ("UCL").  As explained below, all of Bahamas's claims fail as a matter of law and Defendants are entitled to summary judgment.

*First*, Bahamas has not suffered an injury-in-fact and lacks Article III standing to sue.  There is no evidence that any of the more than 5000 MICROCOOL* gowns Bahamas purchased and used contained even a *potential* barrier protection flaw, much less a flaw that resulted in a barrier protection *failure* during actual use.  Bahamas received the benefit of its bargain and this Court therefore lacks subject matter jurisdiction over all of Bahamas's claims.

*Second*, Bahamas lacks standing to seek injunctive relief and its request for such relief is moot.  Bahamas has no more remaining MICROCOOL* gowns in its inventory and Bahamas's Fed. R. Civ. P. 30(b)(6) designee testified that Bahamas would not purchase MICROCOOL* gowns in the future.  Accordingly, Bahamas has no possible need for the injunctive relief it seeks and faces zero risk of future injury.

*Third*, Bahamas's claims fail as a matter of law because Bahamas would not have purchased MICROCOOL* gowns had Bahamas understood the meaning of the "AAMI Level 4" representation.  Accordingly, that representation was not material to Bahamas's purchasing decision and was not the proximate cause of any injury Bahamas may have suffered.

*Fourth*, Bahamas's UCL claim fails because Bahamas has an adequate remedy at law.

*Finally*, Bahamas's purchase of sterile gowns is governed by a binding and enforceable contract. This contract requires the application of Texas law to claims that relate to purchases of sterile gowns and otherwise precludes Bahamas from recovering with respect to such purchases.

## II.   FACTS

### A.   Procedural History.

This case was initially filed by Dr. Hrayr Shahinian, a local doctor who alleged that he purchased MICROCOOL* gowns from Kimberly-Clark. According to Dr. Shahinian's Complaint, Kimberly-Clark marketed MICROCOOL* gowns as meeting the "AAMI Level 4" standard of protection, when in actuality they did not meet that standard. Compl., Dkt. No. 1, ¶¶ 13, 22–23.

On December 11, 2015, Dr. Shahinian filed the Second Amended Complaint ("SAC"), which is the currently operative Complaint in this case. Dkt. No. 70. The SAC added six hospitals and medical clinics (including Bahamas) as Plaintiffs and added Halyard as a Defendant. *See* SAC. It asserts three causes of action: fraudulent concealment, fraud, and unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. The SAC alleges that the Plaintiffs suffered economic loss because they would not have purchased MICROCOOL* gowns had they known that they purportedly did not comply with the AAMI Level 4 standard.

On February 8, 2016, having failed to produce any evidence that he purchased MICROCOOL* gowns from Kimberly-Clark or Halyard, Dr. Shahinian filed a motion to voluntarily dismiss his claims with prejudice. Dkt. No. 83. The Court granted Dr. Shahinian's motion and dismissed his claims with prejudice on March 10, 2016, leaving only the six hospitals and medical clinics as Plaintiffs.

1  Dkt. No. 105.  Kimberly-Clark and Halyard then moved to dismiss the claims of

2  the non-California Plaintiffs for lack of personal jurisdiction, which the Court

3  granted on May 26, 2016.  Dkt. No. 161.

4       Following this Order, only three Plaintiffs remained in the case:  Prime

5  Healthcare Services – Centinela, LLC, Prime Healthcare Services – Garden Grove,

6  LLC and Bahamas.  On June 8, 2016, Plaintiffs Prime Healthcare Services –

7  Centinela, LLC and Prime Healthcare Services – Garden Grove, LLC filed a

8  motion to voluntarily dismiss their claims with prejudice, which the Court granted

9  on June 14, leaving Bahamas as the only remaining Plaintiff in this case.  Dkt. No.

10  177.

11       **B.**     **Background Information on MICROCOOL* Gowns.**

12            **1.**     **The "AAMI Level 4" Standard.**

13       The "AAMI Level 4" standard was adopted in 2003.  (Decl. of J.D. Hurdle

14  ("Hurdle Decl."), ¶ 6.)  AAMI classifies surgical gowns and other protective

15  apparel and drapes as one of four levels that indicate the amount of barrier

16  protection the product provides.  (*Id.* ¶¶ 7–8.)  Level 4 is the highest level of

17  protection.  It describes surgical gowns that demonstrate the ability to resist liquid

18  and viral penetration in a laboratory test known as the ASTM 1671 testing

19  standard.[1]  (*Id.* ¶ 8.)

20       Importantly, the representation that a gown complies with the AAMI Level 4

21  standard ***does not mean that every single gown manufactured and sold would***

22  ***pass the ASTM 1671 test if individually tested.***  Instead, the initial 2003 AAMI

23  standard specified that to be considered AAMI Level 4, all critical zone

24  components of a surgical gown "shall demonstrate passing results [on the ASTM

---

[1] The ASTM 1671 testing standard is used to measure the resistance of materials used in protective clothing to penetration by blood-borne pathogens using a surrogate microbe under conditions of continuous liquid contact.  (Hurdle Decl., ¶ 9.)  Protective clothing material pass/fail determinations are based on the detection of viral penetration of the fabric.  (*Id.*)

1671 test] with an [Acceptable Quality Limit ("AQL")] of 4%."  (Decl. of Duane
Steffey ("Steffey Decl."), ¶ 29.)  AQL is defined as "the worst tolerable process
average when a continuing series of lots is submitted for acceptance sampling."
(*Id.* ¶ 6.)  In other words, the 4% AQL contemplated by PB70 means that a
manufacturer can be confident that 96% of the time the manufacturer's testing
procedure is accepting lots that have 4% or fewer defects as measured by the
ASTM 1671 test.  (*Id.* ¶¶ 24, 27.)  It does not, however, mean that no more than
4% of the gowns manufactured and sold—if individually tested—would fail the
ASTM 1671 test.  (*Id.* ¶ 26.)  On the contrary, because each of the three critical
zones must independently satisfy the AQL requirement, a randomly selected gown
subjected to testing under ASTM 1671 will have a 12% chance of failing the test in
at least one of the three critical zones.  (*Id.* ¶ 27.)  Put another way, out of 5000
randomly selected gowns manufactured to the required AQL, up to 600 would be
expected to fail if individually tested.[2]

        In short, the representation that a surgical gown complies with the AAMI
Level 4 standard does not imply that every single gown passes ASTM 1671
testing.  (*Id.* ¶ 26.)  Instead, a purchaser of an "AAMI Level 4" gown, by
definition, makes its purchasing decision based upon the ***assumed risk*** that a

---

[2] There are several critical facts to keep in mind concerning the rate of testing
failures contemplated by the AAMI PB70 standard.  First, the U.S. Food and
Drug Administration has long recognized the standard as a consensus standard
for the barrier protection of surgical gowns.  (Decl. of Philip Phillips ("Phillips
Decl."), ¶ 30.)  Indeed, the FDA's clearance of MICROCOOL* gowns (as with
many other surgical gowns) was explicitly based on this standard.  (*Id.* ¶ 36.)
Second, the standard reflects the fact that the background safety risk associated
with the use of a gown that fails the ASTM 1671 test is essentially zero.  (Decl.
of William Rutala ("Rutala Decl."), ¶ 31.)  The standard reflects the fact that
there is a marked difference between performance on a laboratory test (which
presents an "extreme challenge") and real-world performance.  (*Id.* ¶ 32.)
Indeed, as shown by real world data, the mere fact that a gown would not
individually pass the ASTM 1671 test does not mean that the gown will fail to
provide effective barrier protection during actual clinical use.  (*Id.* ¶¶ 13, 32, 50.)

1    *material percentage* of the gowns purchased—as many as 12%—would

2    individually *fail* the ASTM 1671 test.

3            On July 10, 1998, the FDA cleared Kimberly-Clark to market the first

4    version of a surgical gown under the MICROCOOL* name.  (Decl. of Judson

5    Boothe ("Boothe Decl."), ¶ 6.)  That version of the gown is not at issue in this case.

6    On October 7, 2010, Kimberly-Clark submitted a 510(k) premarket notification for

7    a new version of the MICROCOOL* line, known as "MICROCOOL* Breathable

8    High Performance Gowns with AAMI Liquid Barrier Level Claim."  (Hurdle

9    Decl., ¶ 10.)  These gowns were designed as "sterile, single use surgical apparel

10   intended to be worn by healthcare professionals to help protect both the patient and

11   healthcare worker from the transfer of microorganisms, body fluid, and particulate

12   matter."  (Ex. A to Devereaux Decl., at 2.)  The application also included the claim

13   that "[t]he [gowns] meet the Level 4 requirements of the AAMI PB70:  2003

14   Liquid Barrier classifications."  (*Id.*)  To support this claim, Kimberly-Clark

15   submitted third-party test data demonstrating compliance with the requirements of

16   the 2003 standard.  (Hurdle Decl. ¶ 12.)  On December 23, 2010, FDA cleared

17   Kimberly-Clark to market the new version of MICROCOOL* gowns as an AAMI

18   Level 4 gown.  (*Id.* ¶ 10.)  The new MICROCOOL* gowns were first released to

19   the market in small quantities in late 2011.  (Boothe Decl., ¶ 7.)  By the end of the

20   first quarter of 2012, Kimberly-Clark had largely stopped manufacturing the old

21   version of MICROCOOL* gowns in favor of the AAMI Level 4 version.  (*See id.* ¶

22   14.)

23            **2.     Sales and Distribution of MICROCOOL* Gowns.**

24            MICROCOOL* gowns are sold in two forms:  "sterile" and "non-sterile."

25   (Decl. of Ty Hare ("Hare Decl."), ¶ 5.)  "Sterile" gowns are sold as stand-alone

26   products that, as their name suggests, are ready for use in sterile environments such

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

as operating rooms.  (*Id.*)  "Non-sterile" gowns, by contrast are sold largely in pre-

packaged "custom procedure trays" ("CPTs").[3]  (*Id.*)

The price that each purchaser pays for MICROCOOL* gowns and the terms

and conditions that govern each purchase depend on many different factors.  One

such factor (at least with respect to sterile gowns) is whether the purchaser is a

member of a Group Purchasing Organization ("GPO").  A GPO is an entity that

negotiates discounts with manufacturers, distributors, and other vendors for

products on behalf of its members by leveraging the aggregated purchasing volume

ensured by its membership.  (*Id.* ¶ 12.)  Members of a GPO are entitled to purchase

products at the GPO's negotiated prices, but do not purchase the gowns directly

from the GPO.  (*Id.* ¶ 13.)  Instead, they purchase the gowns through a distributor

or from Defendants directly.  (*Id.*)

### 3.    Performance and Safety of MICROCOOL* Gowns.

The MICROCOOL* gowns at issue in this case were thoroughly tested and

shown to be both safe and effective and compliant with all liquid barrier protection

standards at the time they were cleared by the FDA under the 2003 standard in

2010.  Since that time, MICROCOOL* gowns have had an exceptional safety

record.  During the putative class period alone, more than ***42 million***

MICROCOOL* gowns were sold around the world.  (Hurdle Decl. ¶ 65.)  There is

no report—not one—of any healthcare worker claiming to have contracted an

infection as a result of an alleged barrier protection flaw in the gowns.  (Rutala

Decl., ¶ 51.)  Moreover, there are very few complaints actually correlated to barrier

protection (*i.e.*, reports of blood "strike-through").  (Hurdle Decl., ¶¶ 62–65.)  In

fact, the rate of such complaints during the putative class period is ***less than one***

***per million gowns sold.***  (*Id.* ¶ 65.)

---

[3] A CPT is a bundle of medical devices that is shipped in a single pack to provide
all of the disposable items required for a specific surgical procedure.  (Hare
Decl., ¶ 29.)  CPTs include items other than the surgical gown, such as drapes,
gauze, bandages, and towels.  (*See id.*)

**C.    Bahamas's Alleged Purchase and Use of MICROCOOL* Gowns.**

Bahamas obtained MICROCOOL* gowns—more than 5000 in all—primarily by purchasing CPTs that contained MICROCOOL* gowns.  (Decl. of Lori Hand ("Hand Decl."), ¶ 14; Ex. B to Devereaux Decl., Campos Dep., at 45:23–46:1.)  Although most of Bahamas's purchases were CPTs, there is evidence that Bahamas purchased one case of sterile MICROCOOL* gowns that were not part of a CPT, on April 4, 2012.  (Ex. B to Devereaux Decl., Campos Dep. at 46:2–10; Ex. C to Devereaux Decl.)

Bahamas is a member of a GPO called MedAssets.  (Ex. D to Devereaux Decl., Pl.'s Supp. Resp. to First Interrogatories, No. 3; Ex. B to Devereaux Decl., Campos Dep., at 42:19–23.)  As a member of the MedAssets GPO, Bahamas was entitled to take advantage of the terms and conditions of the vendor agreement MedAssets negotiated on its behalf with Kimberly-Clark (the "GK-164 Agreement").[4]  (Ex. D to Decl. of Ty Hare ("Hare Decl."), § 1.3; Ex. E to Hare Decl., ¶¶ 1–2.)  At least with respect to its purchase of sterile gowns, that is exactly what Bahamas did.  (Hand Decl., ¶ 14.)

Under the GK-164 Agreement, Bahamas was an express "intended third-party beneficiary of the Agreement" and was expressly "bound to the terms and conditions of [the] Agreement."  (Ex. D to Hare Decl., § 2.1.)  Among these terms and conditions is a choice-of-law provision, which states that:  "This Agreement must be construed and its performance enforced under Texas law."  (Ex. D to Hare Decl., Ex. C, § VI.)  Another such term is the Agreement's merger clause, which provides that:  "This Agreement . . . constitutes the entire agreement on this subject and supersedes all previous and contemporaneous communications, representations, or agreements . . . regarding the referenced subject matter."  (*Id.* §

---

[4]  The GK-164 Agreement and its amendments are attached as Exhibits D, E, and F to the Declaration of Ty Hare.

1   8.4.)  Bahamas also accepted the following limited warranty when making

2   purchases through MedAssets:

3       Supplier warrants that the Products shall be in accordance with
        Supplier's standard specifications upon the date of delivery.  EXCEPT
4       AS PROVIDED IN THE INDEMNIFICATION SECTION OF THIS
        AGREEMENT, SUPPLIER SHALL NOT BE LIABLE UNDER
5       THIS WARRANTY FOR ANY SPECIAL, CONSEQUENTIAL, OR
        INCIDENTAL DAMAGES OF ANY NATURE WHATSOEVER,
6       AND IN NO EVENT SHALL SUPPLIER'S LIABILITY UNDER
        THIS WARRANTY FOR BREACH OF CONTRACT, TORT, OR
7       OTHERWISE EXCEED THE AMOUNT OF THE PURCHASE
        PRICE OF THE PRODUCTS WITH RESPECT TO WHICH
8       DAMAGES ARE CLAIMED.  THE WARRANTIES SET FORTH
        IN THIS AGREEMENT ARE IN LIEU OF ALL OTHER
9       WARRANTIES, EXPRESSED OR IMPLIED, ORAL OR WRITTEN
        (INCLUDING ANY WARRANTY OF MERCHANTABILITY OR
10      FITNESS FOR A PARTICULAR PURPOSE).

11  (*Id.* Ex. F.)

12      Bahamas has not had any reported incidents of injury resulting from the use

13  of MICROCOOL* gowns.  During her deposition, Bahamas's Fed. R. Civ. P.

14  30(b)(6) designee testified as follows:

15      Q:    As you sit here today, are you aware of any reports reflecting
        any injuries associated with the use of the MICROCOOL* surgical
16      gowns [at Bahamas]?

17      . . .

18      A:    No.

19      Q:    Are you able to identify any incidents in which a
        [MICROCOOL* gown] used [at Bahamas] resulted in injury to
20      anyone?

21      . . .

22      A:    No.

23      Q:    Are you able to identify any incidents in which a
        [MICROCOOL* gown] used at [Bahamas] resulted in illness to
24      anyone?

25      . . .

26      A:    No.

27  (Ex. B to Devereaux Decl., Campos Dep., at 153:25–154:19.)  Although Bahamas

28  purchased and used more than 5000 MICROCOOL* gowns, Bahamas's Fed. R.

Civ. P. 30(b)(6) designee was unable to identify a single example where the gowns reportedly experienced a strike-through or other barrier protection failure.  (*See id.* at 154:21–155:10)  Moreover, when Kimberly-Clark asked Bahamas in its interrogatories to identify "each and every instance" where any member of its staff observed a "defect of any kind" in the gowns, Bahamas once again came up empty. (*See* Ex. D to Devereaux Decl., Resp. to Int. No. 12.)

## III.   ARGUMENT

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that 'there is an absence of evidence to support the nonmoving party's case.'"  *Chamberlain v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1143 (N.D. Cal. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  "If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce 'specific evidence, through affidavits or admissible discovery material, to show that the dispute exists.'"  *Id.* (quoting *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  "A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  *Id.* (citing *Celotex*, 477 U.S. at 323).

### A.   Bahamas Has Not Suffered an Injury-In-Fact and Lacks Standing to Sue.

The case or controversy requirement of Article III "limits federal courts' subject matter jurisdiction by requiring, *inter alia*, that plaintiffs have standing." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). "'The irreducible constitutional minimum of standing contains three elements, all of which the party invoking federal jurisdiction bears the burden of establishing." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)

1    (alteration omitted).  "First, the plaintiff must prove that he suffered an 'injury in

2    fact,' *i.e.* an 'invasion of a legally protected interest which is (a) concrete and

3    particularized, and (b) actual or imminent, not conjectural or hypothetical.'"  *Id.*

4    (quoting *Lujan*, 504 U.S. at 560).  Second, the plaintiff must establish that the

5    injury "is fairly traceable to the conduct of the defendant."  Finally, "the plaintiff

6    must show that [the] injury will likely be redressed by a favorable decision."  *Id.*

7          Here, Bahamas cannot establish that it has suffered an injury in fact and

8    therefore cannot show that it has standing to sue.[5]  Although Bahamas has

9    alleged—and its Fed. R. Civ. P. 30(b)(6) designee has testified—that it would not

10   have purchased MICROCOOL* gowns had it known that they were supposedly

11   non-compliant with the AAMI Level 4 standard, Bahamas has not presented any

12   evidence that this alleged defect has manifested itself in ***any*** of the MICROCOOL*

13   gowns that Bahamas purchased.  Nor is there any evidence that Bahamas's

14   purchase or use of MICROCOOL* gowns caused personal injury or property

15   damage.  In other words, there is no genuine dispute of material fact that Bahamas

16   received anything other than exactly what it bargained for:  a gown that provided

17   barrier protection for its users and prevented personal injury both to health care

18   providers who used the gown and their patients.

19         "There can be no serious dispute that a purchaser of a product who receives

20   the benefit of his bargain has not suffered [an] Article III injury-in-fact traceable to

21   the defendant's conduct."  *Tae Hae Lee v. Toyota Motor Sales, Inc.*, 992 F. Supp.

22   2d 962 (C.D. Cal. 2014).  For example, in *Wallace v. ConAgra Foods, Inc.*, 747

23   F.3d 1025 (8th Cir. 2014), a group of plaintiffs who purchased meat products

24

25   _____
     [5] The Court previously ruled that—taking the allegations in the Complaint as
26   true—former Plaintiff Hrayr Shahinian had pleaded a sufficient injury in fact to
     establish standing.  Dkt. No. 40.  No such ruling has been made as to Bahamas.
27   More importantly, the Court retains the obligation to re-evaluate subject matter
     jurisdiction throughout the case and the record is now complete and clear that
28   Bahamas cannot satisfy its burden to establish standing as a matter of law.

1  marketed as kosher sued the manufacturer, alleging that some of the products that

2  manufacturer sold were not actually kosher.  747 F.3d at 1027–28.  The plaintiffs

3  had not alleged, however, that the specific meat products they had purchased were

4  not kosher.  *Id.* at 1030.  In other words, the plaintiffs could not exclude the

5  possibility that each plaintiff had purchased a product that was exactly what that

6  plaintiff had bargained for.

7        The Eighth Circuit held that the plaintiffs lacked Article III standing to sue,

8  stating that "[i]n the context of defective products, 'it is not enough' for a plaintiff

9  'to allege that a product line contains a defect or that a product is at risk for

10  manifesting this defect; rather, the plaintiffs must allege that **their** product **actually**

11  **exhibited** the alleged defect.'"  *Id.* (quoting *In re Zurn Pex Plumbing Prods. Liab.*

12  *Litig.*, 644 F.3d 604, 616 (8th Cir. 2011)).  Without such an allegation, it would be

13  "pure speculation" to conclude that the products in question were defective, and it

14  is "quite plausible [the defendant] sold the consumers **exactly what was promised**."

15  *Id.* at 1031.

16        Here, there is no evidence that **a single MICROCOOL* gown that**

17  **Bahamas purchased** experienced a failure of any kind or performed in any way

18  other than how it was expected to perform.  During her deposition, Bahamas's Fed.

19  R. Civ. P. 30(b)(6) designee admitted that no healthcare professional, patient, or

20  anyone else had suffered any personal injury resulting from a failure of a

21  MICROCOOL* gown.  (Ex. B to Devereaux Decl., Campos Dep., at 153:25–

22  154:19.)  Nor has Bahamas been able to cite a single example where a

23  MICROCOOL* gown failed in any way at all.  (*See id.* at 154:21–155:10, Ex. D to

24  Devereaux Decl., Resp. to Int. No. 12.)  Considering that Bahamas is a

25  sophisticated user of surgical gowns, used the gowns repeatedly (more than 5000

26  times in all) and without reported incident over an extended period of time, this is a

27  remarkable record of performance.  As *Wallace* illustrates, there can be no Article

28  III standing where, as here, the purchaser of the product received the benefit of his

or her bargain and is unable to identify a single example where the product failed to perform as intended.

This is particularly true given the nature of the representation at issue in this case (*i.e.* that MICROCOOL* gowns comply with the AAMI Level 4 standard).  In *Wallace*, 100% of the products purchased were claimed to be kosher.  No such sweeping promise was made here.  As explained in more detail above, a representation that a gown complies with the AAMI Level 4 standard is ***not*** a representation that every gown purchased would pass the ASTM 1671 test if individually tested.  (Steffey Decl., ¶ 26.)  Indeed, buyers of AAMI Level 4 gowns assume the risk that a substantial percentage (*i.e.*, 12%) of the gowns they purchase would fail the test in one or more critical zones.  (*Id.* ¶ 27.)  Despite this, Bahamas has not offered evidence that ***any*** of the more than 5000 gowns it purchased would have failed the ASTM 1671 test, much less that more than 12% (or 600) of them did so.  Nor has Bahamas pointed to any evidence of even a single barrier protection failure.  At most, it has speculated that some unquantified fraction of the gowns it purchased ***might*** not have passed the ASTM 1671 test and that some subset of those ***might*** have failed to block fluids during actual use.  This is not nearly enough to satisfy Article III.

The mere fact that Bahamas ***might*** have purchased an unknown fraction of gowns that, if individually tested, would not have passed the ASTM 1671 test and ***might*** therefore have experienced a barrier protection failure is simply too speculative to constitute an injury in fact.  Indeed, that would be true even where (unlike here) the plaintiff indisputably purchased a product containing an unmanifested defect, continues to possess the product, and ***remains*** exposed to a risk of future failure.  For example, in *Cahen v. Toyota Motor Corp.*, ___ F. Supp. 3d ___, 2015 WL 7566806 (N.D. Cal. Nov. 25, 2015), the plaintiffs filed suit against several car manufacturers, alleging that the vehicles they purchased contained computer software that was susceptible to being hacked.  2015 WL

7566806, at *1.  The plaintiffs, however, "[did] not allege that any of their vehicles have actually been hacked . . . but instead allege[d] that hacking is an 'imminent eventuality.'"  *Id.*  The court held that the plaintiffs had not suffered a concrete and particularized injury in fact and therefore lacked standing to sue, noting that courts in the Ninth Circuit "regularly deny standing in product liability cases where there has been no actual injury and the injury in fact theory rests only on an unproven risk of future harm."  *Id.* at *10; *see also Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d 964, 976 (N.D. Cal. 2014) ("[W]here—as here—a consumer fails to allege facts showing that he/she experienced any harm resulting from product use, the consumer has failed to allege damage under the UCL . . . or common law fraud."); *Myers-Armstrong v. Actavis Totowa, LLC*, No. C 08-04741 WHA, 2009 WL 1082026, at *4 (N.D. Cal. Apr. 22, 2009), *aff'd*, 382 F. App'x 545 (9th Cir. 2010). ("A plaintiff must allege an actual *manifestation* of a defect *that results in some injury or rational fear of future injury* in order to state cognizable claims.").

The showing of injury here is even weaker than it was in *Cahen* where at least the products in question all allegedly contained a defect and presented at least a theoretical risk of future injury to the plaintiff.  There is no evidence that the MICROCOOL* gowns actually purchased and used by Bahamas contained a defect of any kind (much less at a rate in excess of that permitted by the standard), no evidence that any such defect ever manifested itself during actual use, and no evidence that Bahamas faces any risk (much less an imminent risk) that the defect will manifest itself in the future (as Bahamas long ago used and disposed of the gowns it purchased).  Accordingly, Bahamas has not suffered an injury in fact and lacks standing to sue.  Its claims must be dismissed.

## B. Bahamas Would Not Benefit From the Injunction and Declaratory Relief It Seeks and Lacks Standing to Seek Injunctive and Declaratory Relief.

In its motion for class certification, Bahamas seeks "injunctive relief requiring Defendants to make corrective disclosures" to purchasers of

1  MICROCOOL* gowns and to "ensure that no previously produced gowns are at

2  risk of being utilized." (Dkt. No. 169-1, Bahamas's Mtn. for Class Cert., at 38.)

3  As explained below, Bahamas lacks standing to seek injunctive or declaratory

4  relief and Defendants are entitled to summary judgment as to that claim.

5      To establish standing to seek a particular type of relief, a plaintiff "must

6  show," among other things, "a 'substantial likelihood' that the relief sought would

7  redress the injury." *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010).

8  Where a plaintiff "would not stand to benefit" from the injunction or declaratory

9  relief it seeks, the plaintiff cannot show that its injury is "likely to be redressed by

10  the relief [it] seeks" and cannot establish standing as a matter of law. *Walsh v.*

11  *Nev. Dep't of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006). Stated

12  another way, Bahamas's request for injunctive relief is now moot. *Slayman v.*

13  *FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014) (holding

14  that a plaintiff's "claims for prospective relief became moot because he could no

15  longer benefit from such relief"); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–

16  96 (1974) ("Past exposure to illegal conduct does not in itself show a present case

17  or controversy regarding injunctive relief…if unaccompanied by any continuing,

18  present adverse effects.").

19      For example, in *Walsh v. Nevada Department of Human Resources*, the

20  plaintiff sued her former employer for wrongful termination in violation of the

21  Americans with Disabilities Act. 471 F.3d at 1035. Among other relief, she

22  sought an injunction requiring her former employer "to adopt and enforce lawful

23  policies regarding discrimination based on disability." *Id.* at 1036 (quotation

24  marks omitted). The Ninth Circuit held that the plaintiff lacked standing to seek

25  this injunction, explaining that:

26          There is no indication in the complaint that [plaintiff] has any interest
           in returning to work for [her former employer]. Therefore, she would
27          not stand to benefit from an injunction requiring the anti-
           discriminatory policies she requests at her former place of work. . . .
28          [Plaintiff], therefore, lacked standing to sue for injunctive relief from
           which she would not likely benefit.

14

1   *Id.* at 1037.

2        The same is true with respect to the injunctive and declaratory relief

3   Bahamas seeks here. Bahamas's Fed. R. Civ. P. 30(b)(6) designee testified during

4   her deposition that Bahamas has no more MICROCOOL* gowns in its inventory

5   and that Bahamas does not plan to purchase MICROCOOL* gowns in the future.

6   (Ex. B to Devereaux Decl., Campos Dep., 110:16–19, 167:22–168:2, 174:4–7.)

7   Because Bahamas does not possess any MICROCOOL* gowns and will not buy

8   them again, Bahamas would in no way benefit from an injunction that requires

9   "corrective disclosures regarding [manufacturing] lots sold" during the putative

10  class period.  (Pl.'s Br., Dkt. No. 169–1, at 38.)  Indeed, the stated purpose of the

11  proposed injunction—to "ensure that no ***previously produced*** gowns are at risk of

12  being utilized"—would be have no effect at all on Bahamas, which no longer

13  possesses even a single "previously produced" gown and has no risk of utilizing

14  one.  Defendants, therefore, are entitled to summary judgment on Bahamas's claim

15  for declaratory and injunctive relief.

16        **C.    Bahamas's Claims Fail Because Bahamas Would Not Have**
17               **Purchased MICROCOOL* Gowns Even If They Complied with**
                **the AAMI Level 4 Standard.**

18        To prevail on its claims, Bahamas must prove that Defendants' alleged

19  "misrepresentation or nondisclosure was an immediate cause of the plaintiff's

20  injury-producing conduct."  *Phillips v. Apple Inc.*, No. 15-CV-04879-LHK, 2016

21  WL 1579693, at *5 (N.D. Cal. Apr. 19, 2016) (quoting *In re Tobacco II Cases*, 46

22  Cal. 4th 298, 326 (2009)).  To meet this requirement, a plaintiff must show that in

23  the absence of the defendant's misrepresentation, "the plaintiff in all reasonable

24  probability would not have engaged in the injury-producing conduct."  *Id.* (quoting

25  *Tobacco II*, 46 Cal. 4th at 326); *see also In re Carroll*, 464 B.R. 293, 316 (Bankr.

26  N.D. Tex. 2011) ("To be a 'material' misrepresentation, the statement must have

27  induced [plaintiff] to enter into a transaction that [it] would not have entered into

28  but for the representations.").  In other words, the plaintiff must prove that had it

1   known the truth, it "would have been aware of it and behaved differently."

2   *Phillips*, 2016 WL 1579693, at *5 (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082,

3   1093 (1993)).

4          Bahamas cannot meet this standard here.  As explained above, the AAMI

5   Level 4 standard does not mean that every gown that Bahamas purchased, if

6   individually tested, would pass the ASTM 1671 test.  Nor does it even guarantee

7   that no more than 4% would pass.  Nevertheless, during her deposition, Bahamas's

8   Fed. R. Civ. P. 30(b)(6) designee testified that Bahamas would not purchase

9   MICROCOOL* gowns unless *no gowns* failed the ASTM 1671 test—an effective

10  AQL of 0%.  (Ex. B to Devereaux Decl., Campos Dep., at 77:25–78:8.)  In other

11  words, regardless of the truth or falsity of the AAMI Level 4 representation,

12  Bahamas *would not have purchased MICROCOOL* gowns because the gowns*

13  *would not have met Bahamas's expectation that 100 percent of them would pass*

14  *the ASTM 1671 test if individually tested*.  Under these circumstances, the AAMI

15  Level 4 representation was not material, Bahamas did not rely on it, and it was not

16  the cause of Bahamas's alleged injury as a matter of law.  Defendants are,

17  therefore, entitled to summary judgment on Bahamas's UCL, fraud, and fraudulent

18  concealment claims.

19          **D.    Bahamas's UCL Claim Fails Because Bahamas Has an Adequate
20                  Remedy at Law.**

21          Bahamas's UCL claim fails for the additional reason that Bahamas has an

22  adequate remedy at law in the form of its common law fraud and fraudulent

23  concealment claims.  Other than civil penalties, which Bahamas does not seek and

24  is not entitled to recover, the UCL entitles a prevailing plaintiff only to equitable

25  relief (*i.e.* restitution and injunctive relief).  *Philips v. Ford Motor Co.*, No. 14-CV-

26  02989-LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015).  "A plaintiff

27  seeking equitable relief in California must establish that there is no adequate

28  remedy at law available."  *Id.* (citing *Knox v. Phoenix Leasing, Inc.*, 29 Cal. App.

4th 1357, 1368 (1994)).  The same is true with respect to a plaintiff who brings a UCL claim:  "Statutory relief under the UCL 'is subject to fundamental equitable principles, including inadequacy of the legal remedy.'"  *Id.* (quoting *Prudential Home Mortg. Co. v. Super. Ct.*, 66 Cal. App. 4th 1236, 1249 (1998)).

Here, Bahamas seeks to recover damages for common law fraud and fraudulent concealment.  *See* SAC.  Because Bahamas has an adequate remedy at law with respect to these claims, Defendants are entitled to summary judgment on Bahamas's UCL claim.  *See Philips*, 2015 WL 4111448, at *16 ("As the UCL provides only equitable remedies, . . . and California Plaintiffs have an adequate remedy at law in the form of their claim for fraudulent concealment, the Court dismisses California Plaintiffs' UCL claims."); *Durkee v. Ford Motor Co.*, No. C 14-0617 PJH, 2014 WL 4352184, at *3 (N.D. Cal. Sept. 2, 2014) ("Because the UCL provides for only equitable remedies, and plaintiffs have an adequate remedy at law . . . plaintiffs' UCL claim must be dismissed."); *Gardner v. Safeco Ins. Co. of Am.*, No. 14-cv-02024-JCS, 2014 WL 2568895, at *7–8 (N.D. Cal. June 6, 2014) (dismissing plaintiff's UCL claim because "the money damages available to [plaintiff] in the event he prevails on his claims for breach of contract and breach of the implied covenant of good faith and fair dealing may provide an adequate remedy").

E.   **Bahamas's Claims with Respect to Its Purchase of Sterile MICROCOOL* Gowns Are Governed—and Precluded—by a Valid and Enforceable Contract.**

Although it is not clear from the present record whether Bahamas's purchases of CPTs containing MICROCOOL* gowns were made through MedAssets, it is indisputable that Bahamas's purchase of one case of sterile MICROCOOL* gowns (*i.e.* gowns that were not part of CPTs) was made pursuant to the contract between MedAssets and Kimberly-Clark (*i.e.* the GK-164 Agreement).  (Hand Decl., ¶ 14.)  The claims that relate to this purchase are, therefore, governed by the terms and conditions of the GK-164 Agreement.

### 1. Bahamas's Claims With Respect to Bahamas's Purchase of Sterile Gowns Are Governed By Texas Law.

The GK-164 Agreement contains a choice-of-law provision that requires the application of Texas law.  The provision is broadly worded and is not restricted to certain types of claims.  It expressly provides that "the Agreement . . . *and its performance*" "*must be* construed . . . and . . . enforced" under Texas law. (Emphasis added.)  Under this provision, *all claims* that arise out of or relate to the subject matter of the GK-164 Agreement are governed by Texas law.  *See Nedlloyd Lines B.V. v. Super. Ct.*, 834 P.2d 1148, 1153 (Cal. 1992) ("When two sophisticated, commercial entities agree to a choice-of-law clause . . . the most reasonable interpretation of their actions is that they intended for the clause to apply to *all causes of action* arising from *or related to* their contract.") (emphasis added); *JMP Sec. LLP v. Altair Nanotechnologies, Inc.*, 880 F. Supp. 2d 1029 (N.D. Cal. 2012) ("Under the California approach, all claims 'arising from or related to' a contract are covered by the contract's choice-of-law clause, regardless of whether they are characterized as contract or tort claims."); *Quicksilver Resources, Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 952 (S.D. Tex. 2011) ("[A] contractual provision that applies to the parties' relationship more broadly should be extended to cover tort claims."); *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 989 (S.D. Tex. 2004) (holding that a choice-of-law provision that provided that all disputes that "arise in connection with the performance of this Agreement" encompassed tort claims that were related to the subject matter of the contract).

This includes the claims that arise from Bahamas's purchase of sterile MICROCOOL* gowns.  All of these claims depend on one crucial allegation:  that the gowns were represented to comply with the AAMI Level 4 standard, but in actuality, do not.  This allegation is directly within the scope of the GK-164 Agreement's warranty provision, which is expressly "in lieu of all other warranties, expressed or implied, oral or written," that Kimberly-Clark may have made about

1    MICROCOOL* gowns.  (Ex. D to Hare Decl., Ex. F.)  Whether Bahamas can

2    recover any damages with respect to its purchase of sterile gowns is a question of

3    whether this provision was breached.  By the express terms of the choice-of-law

4    provision, this issue is governed by Texas law.

5         Choice-of-law provisions such as this "are usually respected by California

6    courts."  *Nedlloyd*, 834 P.2d at 1151.  To determine whether the law specified by

7    the parties in the choice-of-law provision applies, the court first determines "(1)

8    whether the chosen state has a substantial relationship to the parties or their

9    transaction, or (2) whether there is any other reasonable basis for the parties'

10   choice of law."  *Id.* at 1152.  "If . . . either test is met, the court must next

11   determine whether the chosen state's law is contrary to a *fundamental* policy of

12   California.  If there is no such conflict, the court shall enforce the parties' choice

13   of law."  *Id.*  Even if there is such a conflict, the court will enforce the parties' choice

14   of law unless "California has a materially greater interest than the chosen state in

15   the determination of the particular issue . . . ."  *Id.* (quotation marks omitted).

16        Although *Nedlloyd* involved the applicability of a choice-of-law clause in

17   the context of a dispute between the two contracting parties, its rationale applies

18   just as forcefully here.  While Bahamas is not a party to the GK-164 Agreement,

19   Bahamas expressly opted-in to its terms—and agreed to be bound by them—by

20   purchasing MICROCOOL* gowns through MedAssets.  (*See* Ex. D to Hare Decl.,

21   § 1.3 ("A Customer is bound to the terms and conditions of this Agreement by

22   purchasing Products under this Agreement."); Ex. E to Hare Decl., ¶¶ 1–2.).

23        Moreover, the GK-164 Agreement itself expressly provides that Bahamas

24   (like any other member of the MedAssets GPO) "is an intended third-party

25   beneficiary of this agreement."  (Ex. D to Hare Decl., § 2.1; Ex. E to Hare Decl., ¶¶

26   1–2.)  It is well-established that an intended third-party beneficiary is "bound to the

27   terms . . . contained in the contract to which it is a beneficiary."  *Trans-Tec Asia v.*

28   *M/V Harmony Container*, 435 F. Supp. 2d 1015,  1028 n.17 (C.D. Cal. 2005); *see*

*also TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990) (holding that third-party beneficiaries were bound by a contract's forum selection clause); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (holding that a third-party beneficiary's tort claims were subject to a contract's forum selection clause because they "relate[d] in some way to rights and duties enumerated in the . . . contract").  Thus, the fact that an intended third-party beneficiary is not a party to the contract does not preclude the application of the contract's choice-of-law provision to claims asserted by the third-party beneficiary that relate to the subject matter of the contract.  *See, e.g.*, *Hatfield v. Halifax PLC and HBOS PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009) (applying California choice-of-law rules to conclude that a third-party beneficiary's claims were governed by English law in accordance with a contractual choice-of-law provision); *ABF Capital Corp. v. Berglass*, 130 Cal. App. 4th 825, 834–36 (2005) (holding that New York law applied to an intended third-party beneficiary's claims pursuant to a choice-of-law clause in the contract that governed the dispute).  Nor does it preclude the application of any of the contract's other terms.  *See Lucas v. Bechtel Corp.*, 800 F.2d 839, 848–49 (9th Cir. 1986) (a third-party beneficiary, "by accepting the benefits of the [contract], also accepted the limitations of the contract").

### a)   Texas Has a Substantial Relationship to the Parties and the Transaction.

In determining whether the law specified in the contract has a substantial relationship to the parties or the transaction, the focus is "on the parties to the contract, not the parties to the action."  *Continental Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1064 (E.D. Cal. 2006).  "If one party resides in the chosen state, that state has a substantial relationship to all of the parties."  *Id.* (citing *Hughes Elec. Corp. v. Citibank Del.*, 120 Cal. App. 4th 251, 258 (2004)).  Kimberly-Clark has its world headquarters and its principal place of business in Irving, Texas.  (Decl. of Drew Alexandrou, Dkt. No. 113–2, ¶ 5.)  "This fact alone

is sufficient to establish a 'substantial relationship' between [Texas] and the parties as well as a 'reasonable basis' for a contractual provision requiring application of [Texas] law." *Hughes Elec. Corp.*, 120 Cal. App. 4th at 258.

### b) Applying Texas Law Is Not Contrary to a Fundamental Policy of California.

Applying a foreign state's law does not offend a fundamental policy of California unless the chosen law is "so offensive to our public policy as to be 'prejudicial to recognized standards of morality and to the general interests of the citizens.'" *Wong v. Tenneco, Inc.*, 39 Cal. 3d 126, 135 (1985) (quoting *Knodel v. Knodel*, 14 Cal. 3d 752, 765 n.15 (1975)).  "The mere fact that the chosen law provides greater or lesser protection than California law, or that in a particular application the chosen law would not provide protection while California law would, are not reasons for applying California law." *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000).

Applying Texas law to Bahamas's claims is not "so offensive" to California public policy as to prejudice "recognized standards of morality and . . . the general interests of [California] citizens." *Wong*, 39 Cal. 3d at 135.  "To the extent that [California law] emobd[ies] the . . . public policy that '[p]rotection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society,'" that same public policy is reflected in the protections afforded by the Texas Deceptive Trade Practices Act.  *See Brazil v. Dell, Inc.*, 585 F. Supp. 2d 1158, 1166 (N.D. Cal. 2008) (applying Texas law in a putative consumer class action does not contravene a fundamental public policy of California).  There is no public policy reason that justifies disregarding the law that Bahamas agreed to be bound by when it chose to purchase sterile MICROCOOL* gowns through MedAssets.  *See Medimatch*, 120 F. Supp. 2d at 861–62 ("Under California law, a choice of law made by sophisticated commercial parties through arms length negotiation will be enforced unless the chosen law conflicts with a fundamental public policy of California.") (citing *Nedlloyd*, 3 Cal. 4th at 465–66).

### 2. Bahamas's Claims with Respect to Its Purchase of Sterile Gowns Are Precluded by the Economic Loss Rule.

"Under the economic loss rule, if a plaintiff only seeks to recover for the loss or damage to the subject matter of a contract, he cannot maintain a tort action against a defendant." *Sterling Chems., Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 796 (Tex. App. 2007) (quoting *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)). That is, "a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim." *Id.*

Bahamas's only claimed injury is economic: Bahamas claims that it would not have purchased MICROCOOL* gowns had it known that those gowns were supposedly non-compliant with the AAMI Level 4 standard, and seeks to recover the price it paid for those gowns. (Decl. of Rashel Campos on Behalf of Bahamas Surgery Center, LLC, Dkt. No. 169-6, ¶ 10.) Indeed, Bahamas's Fed. R. Civ. P. 30(b)(6) designee has admitted that no physicians, nurses, employees, patients—or anyone else—suffered any personal injury as a result of Bahamas's purchase and use of MICROCOOL* gowns. (Ex. B to Devereaux Decl., Campos Dep., at 153:25–154:19.)

As explained above, the undisputed evidence in the record demonstrates that Bahamas's purchase of sterile gowns was made pursuant to and governed by the terms and conditions of the GK-164 Agreement. Bahamas's claims with respect to sterile gowns relate solely to whether Kimberly-Clark performed its obligations to Bahamas as an express third-party beneficiary of that Agreement.

Because Bahamas seeks to recover only economic losses related to the subject matter of a contract, Bahamas's fraud and fraudulent concealment claims with respect to its purchase of sterile gowns fail as a matter of law. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) ("When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone."); *see also Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 816–87 (Tex. App. 2006) (holding that the economic loss doctrine bars the plaintiff's fraud claims

1    because the plaintiff "neither allege[d] that [defendants] fraudulently *induced* it to

2    enter into the Agreement, nor does [plaintiff] point to any such summary judgment

3    evidence").[6]

4            **3.    Bahamas's UCL Claim with Respect to Its Purchase of Sterile Gowns Fails As a Matter of Law.**

5            Pursuant to the binding and enforceable choice-of-law provision of the GK-

6    164 Agreement, Texas law—not California law—governs Bahamas's purchases of

7    sterile MICROCOOL* gowns.  *See*, *supra*, § E.1.  Because Texas law governs

8    these purchases, Bahamas's UCL claim with respect to them fails as a matter of

9    law.  *See, e.g.*, *Medimatch, Inc. v. Lucent Techs. Inc.*, 120 F. Supp. 2d 842, 861–62

10   (N.D. Cal. 2000) (dismissing the plaintiffs' UCL claim with prejudice because the

11   governing contract contained a choice-of-law provision that required the

12   application of New Jersey law); *Nat'l Seating & Mobility, Inc. v. Parry*, No. C 10-

13   02782 JSW, 2012 WL 2911923, at *4–5 (N.D. Cal. July 16, 2012) (dismissing

14   UCL claim after finding that a contractual choice-of-law provision required the

15   application of Tennessee law).

16           **4.    Bahamas Cannot Recover Punitive Damages with Respect to its Purchase of Sterile Gowns.**

17           The GK-164 Agreement's warranty provision contains a punitive damages

18   waiver that states:

19
20           EXCEPT AS PROVIDED IN THE INDEMNIFICATION SECTION
             OF THIS AGREEMENT, [KIMBERLY-CLARK] SHALL NOT BE

21           LIABLE UNDER THIS WARRANTY FOR ANY SPECIAL,
             CONSEQUENTIAL, OR INCIDENTAL DAMAGES OF ANY

22           NATURE WHATSOEVER, AND IN NO EVENT SHALL
             SUPPLIER'S LIABILITY UNDER THIS WARRANTY FOR

23           BREACH OF CONTRACT, TORT, OR OTHERWISE EXCEED
             THE AMOUNT OF THE PURCHASE PRICE OF THE PRODUCTS

24           WITH RESPECT TO WHICH DAMAGES ARE CLAIMED."

25   _____

26   [6] California also recognizes the economic loss rule.  Where, as here, the claims are
     governed by a contract and the plaintiff does not allege a breach of a duty

27   independent of that contract, the economic loss rule bars a fraud claim.  *See, e.g.*,
     *Blue Dolphin Charters, Ltd. v. Night & Carver Yachtcenter, Inc.*, No. 11-cv-565-

28   L(WVG), 2012 WL 1185945, at *3–4 (S.D. Cal. Apr. 9, 2012).

(Ex. D to Hare Decl., Ex. F (original typeface)).  The text of this waiver appears in all capital letters and conspicuously appears on a page that contains only the applicable warranty provision.  Accordingly, the waiver is binding and enforceable and Bahamas cannot recover punitive damages with respect to the purchases that are governed by the GK-164 Agreement (*e.g.* Bahamas's purchase of sterile MICROCOOL\* gowns).  *See Yumilicious Franchise, L.L.C. v. Barrie*, No. 3:13-CV-4841-L, 2015 WL 1856729, at \*9–10 (N.D. Tex. Apr. 23, 2015) (holding that a conspicuous punitive damages waiver in a binding contract is enforceable).

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion for summary judgment and dismiss all of Bahamas's claims.

DATED:      July 8, 2016                              KING & SPALDING LLP

By:  /s/ Stephen B. Devereaux

Alexander Calfo
Julia Romano
633 W 5th Street, Suite 1700
Los Angeles, CA  90071

Telephone:  (213) 443-4355
Facsimile :  (213) 443-4310

Chilton D. Varner
(admitted *pro hac vice*)
Stephen B. Devereaux
(admitted *pro hac vice*)
Bradley W. Pratt
(admitted *pro hac vice*)
Madison H. Kitchens
(admitted *pro hac vice*)
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521
Telephone:  (404) 572-4600
Facsimile:   (404) 572-5100

Attorneys for Defendants
KIMBERLY-CLARK
CORPORATION, a Delaware

1

Corporation and HALYARD
HEALTH, INC., a Delaware
Corporation

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT