EAGAN AVENATTI, LLP
Michael J. Avenatti, State Bar No. 206929
mavenatti@eaganavenatti.com
Ahmed Ibrahim, State Bar No. 238739
aibrahim@eaganavenatti.com
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Telephone:  949.706.7000
Facsimile:   949.706.7050

Attorneys for Plaintiffs, Individually and On
Behalf of All Others Similarly Situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HRAYR SHAHINIAN, M.D., F.A.C.S., et al., | CASE NO.:  14-CV-08390 DMG (PLA) |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANTS' EVIDENTIARY OBJECTIONS TO THE DECLARATION OF DENNIS M. MOORE IN SUPPORT OF PLAINTIFFS MOTION FOR CLASS CERTIFICATION** |
| vs. | |
| KIMBERLY-CLARK  CORPORATION, a Delaware Corporation, and HALYARD HEALTH, INC., a Delaware Corporation, | |
| Defendants. | HEARING DATE:  August 26, 2016<br>HEARING TIME:   10:00 a.m.<br>LOCATION:        Courtroom 7 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................ 1

II.  LEGAL STANDARD .................................................................................3

III. ARGUMENT..............................................................................................5

   A.   KC's "Objections" Improperly Attempt to Argue the Merits Under the Guise of a "Daubert" Analysis. .......................................5

   B.   KC's Evidentiary Objections Are Premature Under A Tailored Daubert Analysis. ..................................................................5

   C.   Even If A Full Daubert Analysis Is Performed, Mr. Moore's Declaration is Admissible. ...............................................................8

      1.   Mr. Moore Is Qualified to Testify as a Regulatory Enforcement Expert in This Case. ...........................................8

      2.   Mr. Moore's Opinions Are Reliable. ...................................14

         a)   Mr. Moore Is Not Required to Use a Scientific Method to Reach His Opinions. ..................................14

         b)   The MicroCool Gowns Are Misbranded and Adulterated ...............................................................15

         c)   The Operation of the Market for MicroCool Gowns is Irrelevant to Mr. Moore's Analysis..........19

      3.   Mr. Moore's Opinions Have a Sufficient Factual Basis. ....................................................................................20

         a)   Mr. Moore is Permitted to Use Hypothetical Facts as the Basis for His Opinions............................20

         b)   Which Version of the AAMI Level 4 Standard Applies is Not Relevant to Mr. Moore's Opinion. ..................................................................22

      4.   Mr. Moore's Discussion of State and Federal Laws Does Not Render His Opinions Inadmissible. ....................23

IV.  CONCLUSION.........................................................................................24

**TABLE OF CONTENTS**

# TABLE OF AUTHORITIES

## CASES

Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.,
   738 F.3d 960 (9th Cir. 2013) ................................................................... 4

Allen v. Hyland's Inc.,
   300 F.R.D. 643 (C.D. Cal. 2014) ........................................................ 9, 10

Brooks v. GAF Materials Corp.,
   2014 WL 3495427 (D.S.C. July 11, 2014) ............................................ 20

Circle J Dairy, Inc. v. A.O. Smith Harvestore Products, Inc.,
   790 F.2d 694 (8th Cir. 1986) ............................................................. 9, 10

City of Pomona v. SQM N. Am. Corp.,
   750 F.3d 1036 (9th Cir. 2014) ................................................................ 4

Daubert v. Merrell Dow Pharmaceuticals,
   509 U.S. 579 (1993) ................................................................................ 4

Davis v. United States,
   865 F.2d 164 (8th Cir. 1988) ............................................................. 9, 10

Ellis v. Costco Wholesale Corp.,
   240 F.R.D. 627 (N.D. Cal. 2007) ........................................................... 6

Enyart v. Nat'l Conference of Bar Examiners, Inc.,
   823 F. Supp. 2d 995 (N.D. Cal. 2011) .................................................. 15

Equal Employment Opportunity Comm'n v. Glob. Horizons, Inc.,
   2014 WL 11429302 (E.D. Wash. May 19, 2014) ................................... 20

Florists' Mut. Ins. Co. v. Agstar of New Mexico, Inc.,
   376 F.Supp.2d 1143 (D.N.M. 2004) ...................................................... 13

Friedman v. Medjet Assistance,
   2010 WL 9081271 n. 30 (C.D. Cal. Nov. 8, 2010) ............................. 8, 11

TABLE OF AUTHORITIES

Georges v. Novartis Pharm. Corp.,
    2012 WL 9064768 (C.D. Cal. Nov. 2, 2012) ........................................ 15, 23

Guido v. L'Oreal, USA, Inc.,
    2014 WL 6603730 (C.D. Cal. July 24, 2014) ............................................ 7

Hangarter v. Provident Life & Acc. Ins. Co.,
    373 F.3d 998 (9th Cir. 2004) ................................................................. 14

In re High-Tech Employee Antitrust Litig.,
    2014 WL 1351040 (N.D. Cal. Apr. 4, 2014) ............................................ 10

In re Novatel Wireless Sec. Litig.,
    846 F. Supp. 2d 1104 (S.D. Cal. 2012) ................................................... 18

In Oracle Am., Inc. v. Google Inc.,
    2016 WL 1743129 (N.D. Cal. May 2, 2016) ............................................ 18

In re Silicone Gel Breast Implants Products Liab. Litig.,
    318 F. Supp. 2d 879 (C.D. Cal. 2004) ...................................................... 8

In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.,
    2011 WL 6302287 (S.D. Ill. Dec. 16, 2011) ......................................... 15, 23

In re Zicam Cold Remedy Mktg., Sales Practices, & Products Liab. Litig.,
    2011 WL 798898 (D. Ariz. Feb. 24, 2011) ............................................ 15, 23

In re Zurn Pex Plumbing Products Liab. Litig.,
    644 F.3d 604 (8th Cir.2011) ................................................................ 1, 6

Jerid Enterprises, LLC v. Lloyd's London,
    2012 WL 6115673 (N.D. Ind. Dec. 10, 2012) .......................................... 21

Kleen Products LLC v. International,
    306 F.R.D. 585 (N.D. Ill. 2015) .............................................................. 10

Knight v. Deere & Co.,
    2010 WL 1948311 (E.D. Cal. May 11, 2010) ............................................ 8

Kruszka v. Novartis Pharm. Corp.,
    28 F. Supp. 3d 920 (D. Minn. 2014) ................................................... 15, 23

**TABLE OF AUTHORITIES**

Kumho Tire Co. v. Carmichael,
  526 U.S. 137 (1999)..................................................................................14

Microsoft Corp. v. Motorola, Inc.,
  904 F.Supp.2d 1109 (W.D. Wash. 2012) ...................................................5

Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.,
  308 F. Supp. 2d 1208 (W.D. Wash. 2003) ................................................21

Primiano v. Cook,
  598 F.3d 558 (9th Cir. 2010) ...............................................................5, 22

Rai v. Santa Clara Valley Transp. Auth.,
  308 F.R.D. 245 (N.D. Cal. 2015) ...............................................................6

S.E.C. v. Retail Pro, Inc.,
  2011 WL 589828 (S.D. Cal. Feb. 10, 2011)........................................20, 21

Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.,
  927 F. Supp. 2d 1069 (D. Or. 2013) .........................................................14

Sirko v. Int'l Bus. Machines Corp.,
  2014 WL 4452699 (C.D. Cal. Sept. 3, 2014) ..............................................6

Soldo v. Sandoz Pharm. Corp.,
  244 F. Supp. 2d 434 (W.D. Pa. 2003) ......................................................21

Stambolian v. Novartis Pharm. Corp.,
  2013 WL 6345566 (C.D. Cal. Dec. 6, 2013).........................................15, 23

Sullivan v. U.S. Dep't of Navy,
  365 F.3d 827 (9th Cir. 2004) ....................................................................15

Tait v. BSH Home Appliances Corp.,
  289 F.R.D. 466 (C.D. Cal. 2012).......................................................1, 6, 7

Teva Pharm. USA, Inc. v. Sandoz, Inc.,
  2011 WL 4063297 (S.D.N.Y. Aug. 15, 2011) ...........................................10

Thomas v. Newton International Enterprises,
  42 F.3d 1266 (9th Cir. 1994) ......................................................................8

TABLE OF AUTHORITIES

United States v. 789 Cases, More or Less, of Latex Surgeons' Gloves, an Article of Device,
 799 F. Supp. 1275 (D.P.R. 1992) ...................................................................18, 19

United States v. Garcia,
 7 F.3d 885 (9th Cir. 1993) ...................................................................................9

United States v. Hankey,
 203 F.3d 1160 (9th Cir. 2000) .............................................................................14

United States v. Latysheva,
 162 F. App'x 720 (9th Cir. 2006) .........................................................................20

United States v. Smith,
 520 F.3d 1097 (9th Cir. 2008) ......................................................................8, 9, 11

## RULES

Federal Rule of Evidence 702.......................................3, 4, 8, 9, 11, 12, 14, 20

## REGULATIONS

21 C.F.R. § 820 ........................................................................................2, 9, 10

21 C.F.R. § 820.100(b) ..............................................................................16

21 C.F.R. § 820.90(b) ................................................................................17

# I.     INTRODUCTION

Defendants (collectively referred to hereafter as "KC") have filed an "Evidentiary Objection," purportedly based on a "Daubert" analysis, to the Declaration of Dennis M. Moore, Plaintiffs' expert on regulatory enforcement in connection with their Motion for Class Certification.   In reality, KC's "Objection" has very little to do with any legitimate legal challenge Mr. Moore's qualifications or the basis for his opinions. Rather, the Objection is a thinly veiled attempt to find an additional forum to argue the merits of their position relating to class certification.   KC's Objection should be overruled for at least the following reasons:

*First*, contrary to KC's contention, this Court should perform a less stringent "tailored Daubert analysis" because Mr. Moore's declaration is being offered in connection with class certification.   KC's entire motion is inappropriate at this time because under the tailored <u>Daubert</u> analysis at class certification, a court only "scrutinize[s] the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence.'" <u>Tait v. BSH Home Appliances Corp.</u>, 289 F.R.D. 466, 490 (C.D. Cal. 2012) (quoting <u>In re Zurn Pex Plumbing Products Liab. Litig.</u>, 644 F.3d 604, 614 (8th Cir.2011)).   Because "Defendant does not even mention the Rule 23 requirements that are relevant to [Mr. Moore's] testimony, much less explain the purported problems with this testimony in relation to Rule 23," the motion should be denied. <u>Id.</u> at 498.

*Second*, as noted above, KC improperly attempts to argue the merits under the guise of a "Daubert" challenge.   Much of KC's argument that Dr. Williams' opinions are "unreliable" is at base a dispute about the correctness of the allegations of the lawsuit and the factual disputes at the heart of this action.   This is not a proper use of an evidentiary objection or <u>Daubert</u> challenge.

*Third*, KC's Objection rests on the argument that Mr. Moore is not qualified to be a regulatory enforcement expert. However, unlike KC's expert Mr. Philip J. Phillips,[1] Mr. Moore has decades of experience actually *enforcing* the federal statutes and regulations that regulate medical devices. Mr. Moore has extensive work experience dealing with FDA device regulations from his experience working as a Food and Drug Investigator for the State of California for 30 years, as a credentialed Level II FDA Medical Device Investigator, and as the managing partner of a firm that assists FDA regulated firms in maintaining compliance with FDA regulations. [Moore Decl. ¶ 4-7.] Through the years, Mr. Moore has evaluated hundreds of FDA medical devices as a government employee as well as in private industry, including reviewing surgical gown products for fitness to the device GMP (Good Manufacturing Practice) under 21 C.F.R. § 820, *et seq.*, and for regulatory compliance under their 510(k) clearances. [Id. at ¶ 7.]

*Fourth*, despite KC's repeated contention, Mr. Moore does not attempt to testify as an economic expert when he states that no legal market exists and therefore does not need to be qualified as one, or consider factors that could perhaps be relevant to an economic analysis. Rather, he uses his knowledge of the applicable statutes and regulations to conclude that any attempt to buy or sell the MicroCool gowns would be prohibited (i.e. illegal).

*Fifth*, Mr. Moore does not offer an opinion as to which version of the AAMI Level 4 standard applies.

*Sixth*, KC's position that there is no "one size fits all" approach to regulation does not alter Mr. Moore's analysis and, more to the point, does not really say anything. To

---

[1] KC submits declarations from the following purported experts in connection with its evidentiary objections and relies upon them therein: Mr. Phillips, Dr. Duane Steffey, and Dr. Laurence Baker. Plaintiffs do not concede the admissibility, under Daubert, of any of the opinions expressed in these declarations for any purposes - most notably at trial or to the extent that KC relies on these declarations in connection with its Motion for Summary Judgment. However, for purposes of deciding class certification, because a full Daubert analysis is not appropriate, Plaintiffs do not raise these issues with the Court now. Plaintiffs, however, reserve the right to raise any argument at a later time in connection with trial in this action or KC's Motion for Summary Judgment.

PLAINTIFFS' RESPONSE TO EVIDENTIARY OBJECTIONS TO
DECLARATION OF DENNIS MOORE

the extent KC's argument is that surgical gowns are subject to less scrutiny or are less important than other medical devices and thus that KC is relieved from complying with their obligations under the law and regulations relating to surgical gowns, KC is wrong. While the FDA may not regulate all medical devices the same way, products remain subject to the common set of background statutes that regulate all devices.

*Seventh*, Mr. Moore's analysis is not affected by the fact the FDA has a number of tools available to enforce violations. The MicroCool Gowns are misbranded and adulterated if they do not meet the AAMI Level 4 standard regardless of whether the FDA chooses to exercise its discretion to enforce, send a warning, or do nothing. This is no different from any crime or violation of the law.

*Finally*, Mr. Moore's opinion is not contradicted by the fact that the FDA has not yet taken action against KC.[2]   As noted above, the gowns are misbranded and adulterated if they do not meet the standard under which they were cleared. KC's position in effect is that their conduct was lawful because they "did not get caught." This is not a tenable position, particularly where, as here, the FDA could not have even known about KC's violations because KC concealed them for years.

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

---

[2] As publically disclosed previously, Defendants are presently under a multi-tiered governmental investigation relating to their misconduct concerning the gowns. Defendants have yet to be "cleared" of anything and any suggestion that serious consequences will not result from Defendants' conduct is hopeful speculation at best.

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Ninth Circuit has noted that under the Supreme Court's decision in <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993), and its progeny, a court must:

> assess [an expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance, but the inquiry is a flexible one. Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion. In sum, the trial court must assure that the expert testimony both rests on a reliable foundation and is relevant to the task at hand.
>
> Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.

<u>Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.</u>, 738 F.3d 960, 969 (9th Cir. 2013) (internal quotations and citations omitted).  As discussed herein, however, this standard can be modified both depending on the nature of the witness' expertise and the stage in the proceedings in which the Court is required to evaluated it.  As such, the standard is a flexible one.

Consequently, "[t]he trial court is a gatekeeper, not a fact finder."  <u>City of Pomona v. SQM N. Am. Corp.</u>, 750 F.3d 1036, 1043 (9th Cir. 2014) (citation and quotation marks omitted).  Where two credible experts disagree, it is the job of the fact finder, not the trial court, to determine which source is more credible and reliable."  <u>Pomona</u>, 750 F.3d at 1049.

## III.   ARGUMENT

### A.   KC's "Objections" Improperly Attempt to Argue the Merits Under the Guise of a "Daubert" Analysis.

As a preliminary matter, KC's "Objections" are by and large a transparent effort to argue the merits of the action and the correctness of Plaintiffs' factual allegations. This is not a proper use of an evidentiary objection or Daubert challenge. As the Ninth Circuit has emphasized, the "test under Daubert is not the correctness of the expert's conclusions…" Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010). Yet, much of KC's argument that Mr. Moore's opinions are "unreliable" is at base a dispute about the correctness of the allegations and the factual disputes at the heart of this action. Under Daubert, as noted, "the district judge is 'a gatekeeper, not a fact finder'" and by this standard, KC's arguments do not fall within the purview of a proper Daubert analysis. Id.; see also Microsoft Corp. v. Motorola, Inc., 904 F.Supp.2d 1109, 1115-16 (W.D. Wash. 2012). Indeed, a review of KC's papers leads to the inescapable conclusion that KC is using its so-called "evidentiary objections" and the hundreds of pages of briefing and other documents associated with these "objections" as a basis to argue the merits of the action. The effect of this is to circumvent the page limitations the Court afforded the parties relating to class certification. The Court's own Initial Standing Order specifies that a party "shall not attempt to evade the page limitations for briefs by filing multiple motions." [Dkt. #7, ¶ 5d.] KC not only does this with regard to its evidentiary objections, but by cross-referencing arguments between its Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Class Certification. As a result, the Court should simply decline to consider these objections and arguments as improper merits arguments that flout the Court's Order as to the briefing page limits.

### B.   KC's Evidentiary Objections Are Premature Under A Tailored Daubert Analysis.

Insofar as KC's objections contemplate a full Daubert analysis, the objections are premature. Instead, the Court should engage in a tailored Daubert analysis at the class

5

certification stage.  Under this inquiry, because the specific requirements of Rule 23 are not directly implicated by Mr. Moore's opinions, but rather are offered as evidentiary support on the merits of Plaintiffs' claims, the objections should be overruled.

Courts in the Ninth Circuit, relying upon decisions of this Circuit and of other circuit court decisions, perform a "tailored <u>Daubert</u> analysis" for class certification. <u>See, e.g.</u>, <u>Rai v. Santa Clara Valley Transp. Auth.</u>, 308 F.R.D. 245, 264 (N.D. Cal. 2015); <u>Sirko v. Int'l Bus. Machines Corp.</u>, No. CV 13-03192 DMG SSX, 2014 WL 4452699, at *6 (C.D. Cal. Sept. 3, 2014) (Gee, J.) (recognizing standard applies); <u>Tait v. BSH Home Appliances Corp.</u>, 289 F.R.D. 466, 490 (C.D. Cal. 2012) (same).  At class certification, the "requirements of relevance and reliability set forth in <u>Daubert</u> . . . serve as useful guideposts but the court retains discretion in determining how to test reliability as well as which expert's testimony is both relevant and reliable."  <u>Id.</u> at 495 (quoting <u>Ellis v. Costco Wholesale Corp.</u>, 240 F.R.D. 627, 635-36 (N.D. Cal. 2007), affirmed on this point by <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 982 (9th Cir. 2011) (holding the district court "correctly applied the evidentiary standard set forth in <u>Daubert</u>")).

Thus, in the context of a motion for class certification, "robust gatekeeping of expert evidence is not required; rather, the court should ask only if expert evidence is 'useful in evaluating whether class certification requirements have been met.'"  <u>Id.</u> (quoting <u>Ellis</u> 240 F.R.D. at 635-36).  "[A] district court need only conduct a 'tailored <u>Daubert</u> analysis' which 'scrutinize[s] the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence.'"  <u>Id.</u> (quoting <u>In re Zurn Pex Plumbing Products Liab. Litig.</u>, 644 F.3d 604, 614 (8th Cir. 2011)). "[W]hen considering expert testimony in relation to the predominance requirement, the central question is whether Plaintiffs have met their burden to show that damages can be calculated on a classwide basis.  Accordingly, the relevant inquiry is a 'tailored <u>Daubert</u> analysis which 'scrutinize[s] the reliability of the expert testimony in light of the criteria

**PLAINTIFFS' RESPONSE TO EVIDENTIARY OBJECTIONS TO DECLARATION OF DENNIS MOORE**

1  for class certification and the current state of the evidence.'" Rai v. Santa Clara Valley

2  Transp. Auth., 308 F.R.D. 245, 264 (N.D. Cal. 2015) (quoting Tait 289 F.R.D. at 466).

3      In Tait, for example, the defendant sought to exclude portions of two experts'

4  testimony at class certification.  289 F.R.D. at 496-98.  The defendant attacked both

5  experts' qualifications and methodology.    Id.    The Court denied the defendant's

6  motion and explained that some of the defendant's arguments about one expert's

7  testimony in reality pertained to a defense, which is not a Rule 23 requirement. Id.  It

8  also rejected the attempt to exclude the second expert, stating "Defendant does not even

9  mention the Rule 23 requirements that are relevant to [the expert's] testimony, much

10  less explain the purported problems with this testimony in relation to Rule 23." Id. at

11  498.

12      Here, Mr. Moore's declaration serves a very limited purpose.  He establishes that

13  if the MicroCool Gowns did not meet the AAMI Level 4 standard as KC had claimed,

14  then they were misbranded, adulterated, and/or noncompliant and therefore could not be

15  sold, held or used.  [Moore Decl. ¶ 25.]  As a consequence, there would be no legal

16  market for the defective gowns.  [Id. at ¶ 29.]  His declaration supports the full refund

17  model Dr. Michael Williams, Plaintiffs' economist, developed for class-wide damages.

18  However, his declaration does not deal with any of the Rule 23 requirements for class

19  certification itself.  It does not touch on the issue of whether individual questions of

20  damages will predominate.  Rather, that issue is addressed by the damages models Dr.

21  Williams developed.  If Mr. Moore is incorrect, then it simply impacts one of the three

22  alternative bases supporting the full refund model.  [See Williams Rebuttal Decl. ¶ 59.]

23  However, that would not defeat predominance.  Guido v. L'Oreal, USA, Inc., No. 2:11-

24  CV-01067-CAS, 2014 WL 6603730, at *9 (C.D. Cal. July 24, 2014) (explaining that for

25  commonality and predominance purposes it is irrelevant that a damages model may turn

26  out to yield damages of zero).

27      Mr. Moore's declaration does not remotely touch any of the other elements of

28  class certification and KC makes no attempt to connect its objections to any of them.

7

Tait, 289 F.R.D. at 498 (denying motion to exclude where "Defendant does not even mention the Rule 23 requirements that are relevant to [the expert's] testimony, much less explain the purported problems with this testimony in relation to Rule 23."). Because KC's evidentiary objections do not touch on issues related to class certification, they are premature and should be denied.

**C.     Even If A Full Daubert Analysis Is Performed, Mr. Moore's Declaration is Admissible.**

While the Court need not perform a full <u>Daubert</u> analysis, even if it does, Mr. Moore's Declaration and opinions are admissible.  KC's arguments to the contrary should be rejected.

**1.     Mr. Moore Is Qualified to Testify as a Regulatory Enforcement Expert in This Case.**

KC argues Mr. Moore is not qualified render his opinions.  KC is incorrect.

"Because [Rule 702] contemplates a broad conception of expert qualifications, only a minimal foundation of knowledge, skill, and experience is required.  A lack of particularized expertise goes to the weight of the testimony, not its admissibility." <u>Knight v. Deere & Co.</u>, No. 2:08-cv-01903-GEB-EFB, 2010 WL 1948311 at *7 (E.D. Cal. May 11, 2010); <u>Thomas v. Newton International Enterprises</u>, 42 F.3d 1266, 1269 (9th Cir. 1994) (Federal Rule of Evidence 702 "contemplates a broad conception of expert qualifications.").  Further, "[a] lack of specialization affects the weight of the expert's testimony, not its admissibility."  <u>In re Silicone Gel Breast Implants Products Liab. Litig.</u>, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004).

Indeed, Rule 702 "refers only to a witness qualified as an expert by knowledge, skill, experience, training, or education" and "[n]o specific credentials are mentioned." <u>United States v. Smith</u>, 520 F.3d 1097, 1105 (9th Cir. 2008).  Thus, so long as an expert has "general knowledge" sufficient to testify on an issue, "particular expertise" on that issue is unnecessary.  See, e.g., <u>Friedman v. Medjet Assistance</u>, No. CV 09-07585 MMM VBKX, 2010 WL 9081271 at *4 n. 30 (C.D. Cal. Nov. 8, 2010) ("Because

8

Kowell has a sufficient basis of general knowledge to testify regarding the issues in this case, the fact that he has particular expertise regarding epilepsy and dementia, rather than hematomas and vertebral fractures, goes to the weight of the evidence, not its admissibility."); Smith, 520 F.3d at 1105 ("[A]n expert need not have official credentials in the relevant subject matter to meet Rule 702's requirements."); United States v. Garcia, 7 F.3d 885, 890 (9th Cir. 1993) (noting that an expert's "lack of particularized expertise [went] to the weight accorded her testimony, not to the admissibility of her opinion as an expert").

Further, an expert may offer opinions on a subject even if he or she does not have a background in that precise subject. Allen v. Hyland's Inc., 300 F.R.D. 643, 655 (C.D. Cal. 2014) (Gee, J.) (rejecting challenge to physician offered as expert at class certification stage because while he "has not demonstrated that he is an expert in homeopathy specifically, he has demonstrated that he has substantial training and experience in medicine and the treatment of disease generally."). In fact, a person may be an expert even if he or she does not have any background in the field one might expect an expert in a subject to have a background in. Davis v. United States, 865 F.2d 164, 168 (8th Cir. 1988) (affirming district court's decision to admit testimony of gonorrhea expert who had not attended medical school and only had a degree in journalism when he had worked for the Center for Disease Control as an investigator for several years); Circle J Dairy, Inc. v. A.O. Smith Harvestore Products, Inc., 790 F.2d 694, 700 (8th Cir. 1986) (affirming district court's decision to allow owner of soil and feed testing service who was not a veterinarian and did not have advanced degrees to testify on feed-related health problems in dairy cattle because he had practical experience).

Here, Mr. Moore has extensive work experience dealing with FDA device regulations. While he worked as a Food and Drug Investigator for the State of California for 30 years, he was responsible for prosecuting medical device firms under 21 C.F.R. § 820, et seq., as well as California's Sherman Food, Drug, and Cosmetic

Law.  [Moore Decl. ¶¶ 5-6.]  He was also a credentialed Level II FDA Medical Device Investigator under a reciprocal agreement between the FDA and the state of California. [Id. ¶ 6; Moore Rebuttal Decl. ¶ 5.][3]  After moving to private industry, Mr. Moore became the managing partner of a firm that assists FDA regulated firms in maintaining compliance with FDA regulations.  [Id. ¶¶ 8-11.]  In his work at his firm, he has continued dealing with FDA regulations and statutes in the course of performing mock compliance review and inspections for his clients. [Moore Rebuttal Decl. ¶ 8.]  He has also advised clients about FDA investigations. [Id. ¶ 9.]

Mr. Moore has evaluated hundreds of FDA medical devices as a government employee as well as in private industry.  [Id. ¶ 5-11.]  He has reviewed surgical gown products for fitness to the device GMP under 21 C.F.R. § 820 *et seq.*, and for regulatory compliance under their 510k clearances.  [Id. ¶ 12.]  He also has experience and familiarity with numerous consensus standards that apply to surgical gowns. [Moore Decl. ¶ 8.]

Despite Mr. Moore's extensive qualifications, KC attacks him because "he has never worked for any medical device company or for FDA." [Evidentiary Objections at 8.]  However, Mr. Moore has worked for numerous medical device companies as an expert consultant and has, in effect, worked for the FDA as a Level II FDA Medical Device Investigator.  [Moore Rebuttal Decl., ¶¶ 5-8, 13.]  Further, as discussed above, there is no requirement that an expert on FDA regulations must work for the FDA before becoming an expert because experts can testify about subjects even if they do not

---

[3] Plaintiffs are permitted to submit a rebuttal expert declaration with the class certification reply brief when it serves "to refute a defendant's expert's arguments and to provide further support, rather than abandoning, [the expert's] initial opinions." Kleen Products LLC v. International PaperEyeglasses, 306 F.R.D. 585, 592 (N.D. Ill. 2015); see also Teva Pharm. USA, Inc. v. Sandoz, Inc., No. 08 CIV. 7611 BSJ AJP, 2011 WL 4063297, at *2 (S.D.N.Y. Aug. 15, 2011) (finding nothing improper about plaintiff's experts stating opinions in reply reports that respond directly to defendant's expert's rebuttal reports).  Among other things, an expert may "explain in detail greater than his opening report" the portions of his argument that the defendant's expert contests.  In re High-Tech Employee Antitrust Litig., No. 11-CV-02509-LHK, 2014 WL 1351040, at *13 (N.D. Cal. Apr. 4, 2014).

have experience in the profession most related to the subject.  <u>Allen,</u> 300 F.R.D. at 655 (doctor could testify about homeopathy); <u>Davis,</u> 865 F.2d at 168 (investigator with journalism degree could testify about gonorrhea); <u>Circle J Dairy, Inc.,</u> 790 F.2d at 700 (owner of feed testing service could testify about feed related health problems).  KC does not deny that someone who has worked as a Food and Drug Investigator for the State of California for 30 years would acquire extensive practical experience with federal laws and regulations.  Nor could they do so plausibly, when California's Sherman Food, Drug, and Cosmetic Law enmeshes the Federal Food, Drug, and Cosmetic Act within itself and refers to the federal act more than 50 times.  <u>See</u>, <u>e.g.</u>, Health and Safety Code §§ 111245, 111245, 111355, 111375, 111470, 111550.  Mr. Moore gained extensive regulatory enforcement expertise and has developed and applied a deep understanding of federal regulatory law.  [Moore Rebuttal Decl. ¶¶ 3-11.]  KC does not make any attempt to dispute Mr. Moore's qualifications to testify about *California* medical device statutes even though they too provide a basis for his conclusion that there is no legal market for the gowns – especially seeing as Plaintiffs attempt to certify a California class of purchasers.   Therefore, even if Mr. Moore could not testify as a federal regulatory expert, his conclusion would still stand.  [Moore Rebuttal Decl. ¶¶ 13-19.]

Second, KC claims that Mr. Moore is not qualified to offer opinions related to FDA's clearance of MicroCool gowns in 2010.  KC's argument is without merit.  Mr. Moore may properly testify based on his general knowledge of medical device regulations.  <u>See</u>, <u>e.g.</u>, <u>Friedman,</u> 2010 WL 9081271 at *4 n. 30 (when expert has sufficient knowledge about general issues of case, he is able to testify even if his particular expertise is differs slightly from what he is testifying about); <u>Smith,</u> 520 F.3d at 1105 ("[A]n expert need not have official credentials in the relevant subject matter to meet Rule 702's requirements."); <u>Garcia,</u> 7 F.3d at 890 (9th Cir. 1993) (noting that an expert's "lack of particularized expertise [went] to the weight accorded her testimony, not to the admissibility of her opinion as an expert").  Further, in any event, Mr. Moore

**PLAINTIFFS' RESPONSE TO EVIDENTIARY OBJECTIONS TO DECLARATION OF DENNIS MOORE**

*does* have extensive experience dealing with 510(k) submissions.  [Moore Rebuttal Decl. ¶¶ 6, 10-12.]  Moreover, the *clearance* of MicroCool gowns is not the focus of Mr. Moore's declaration, which is about the *consequences* of the MicroCool gowns not meeting the AAMI Level 4 standard when KC claimed they did.

Third, KC also disingenuously notes that Mr. Moore's curriculum vitae does not explicitly mention his work with surgical gowns, yet it calls paragraphs he spends in his declaration describing that precise experience "very general."  [Evidentiary Objections at 8.]  To begin with, it is unclear why KC believes that an expert must state his relevant experience in his resume rather than the body of his declaration, seeing as that requirement is not found in Rule 702.  In addition, Mr. Moore inspected surgical gown firms as a Food and Drug Investigator and Level II FDA Medical Device Investigator to determine whether they complied with the applicable federal and state regulations.  [Moore Rebuttal Decl. ¶ 12.]  But most importantly, whether or not Mr. Moore has specific experience with the particular product category of surgical gowns is beside the point.  Mr. Moore has the general knowledge and experience needed to testify and KC's arguments at most go to weight, rather than admissibility.

Fourth, KC argues Mr. Moore is not qualified because it claims he makes erroneous assumptions that the FDA regulates all medical devices in the same way, has a mandatory performance standard for surgical gowns, that the 2003 and 2012 version of the AAMI PB71 do not materially differ, and that a manufacturer is prohibited from selling a nonconforming product.  [Evidentiary Objections at 8-9.]  As described in greater detail below, KC misstates Mr. Moore's testimony, discusses matters that are irrelevant, and is itself mistaken on the law and regulations.  Mr. Moore did not make "erroneous assumptions."

Fifth, KC also claims that Mr. Moore is incorrect that surgical gowns are reviewed by the General & Plastic Surgery Review Panel because premarket 510(k) submissions for surgical gowns are reviewed by the FDA's Office of Device Evaluation, Division of Anesthesiology, General Hospital, Infection Control and Dental

1  Devices. [Opp. at 8:16-24.] KC purposely distorts Mr. Moore's declaration. Nowhere

2  in Mr. Moore's declaration does he state that the General & Plastic Surgery Review

3  Panel provides the ultimate approval for clearance of surgical gown 510(k) submissions.

4  He merely states that they are reviewed by the General & Plastic Surgery Review

5  Panel—which is true.      [Moore Rebuttal Decl. ¶ 28 & n.4 (citing

6  http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpcd/classification.cfm?ID=5226.)]

7  Curiously, KC cites its own expert, Mr. Phillips, who makes no statement that the panel

8  does not *also* review the submission. [Evidentiary Objections at 8; Phillips Decl. at ¶

9  16.]

10     KC cites Florists' Mut. Ins. Co. v. Agstar of New Mexico, Inc., in their argument

11  that Mr. Moore is unqualified, but that case is distinguishable.  376 F.Supp.2d 1143

12  (D.N.M. 2004).  In that case, the plaintiff's expert did not know whether Pythium was a

13  bacteria or fungus even though the court stated it was undisputed that Pythium was a

14  fungus. Id.  Here, even KC's expert does not actually claim Mr. Moore is incorrect.

15  Also, in Florists' Mut. Ins. Co., whether the plants that were the subject of the lawsuit

16  were infected with Pythium was the central question the expert was testifying about and

17  thus lack of knowledge was of great significance because the differences between

18  viruses, bacteria, and fungi impact their transmission and treatment.  Id. at 1147-48.

19  Here, the specific name of the particular subdivision of the FDA that actually approved

20  the MicroCool Gowns is of little consequence to his overall opinion.  All that matters is

21  whether violation of the AAMI Level 4 standard would result in no lawful market for

22  the gowns.

23     Sixth, KC also claims that Mr. Moore "is not qualified to offer opinions about the

24  market for surgical gowns," which they believe is a topic solely within the field of

25  economics. [Evidentiary Objections at 10.]  However, Mr. Moore, after explaining that

26  the MicroCool Gowns could not be lawfully sold, held, distributed, or used, simply

27  stated that "[a]s a result, there would be no lawful market for this adulterated and

28  misbranded product." [Moore Decl. ¶ 27.]  Mr. Moore did not attempt to provide an

13

economic expert's opinion.   [Moore Rebuttal Decl. ¶ 39.]   Instead he stated a conclusion as a regulatory expert that there was no *lawful* market, since all transactions involving the gowns would violate the law.   When Moore called the gowns "essentially worthless," he was not offering an economic opinion, but was instead using his knowledge as a regulatory expert to conclude that the gowns could not lawfully be used for anything.

In sum, KC's contentions that Mr. Moore is not qualified to offer an opinion in connection with Plaintiffs' class certification motion must be rejected.

2.      **Mr. Moore's Opinions Are Reliable.**

a)      **Mr. Moore Is Not Required to Use a Scientific Method to Reach His Opinions.**

KC attacks Mr. Moore's opinions for not being based upon "a scientific method." [Evidentiary Objections at 12.]   However, this is not the appropriate standard to be applied to Mr. Moore's opinions – even assuming that a full Daubert analysis is conducted.   An expert's testimony, such as Mr. Moore's, that is based on "specialized knowledge" is properly evaluated based on the expert's *experience* and *knowledge* of *the relevant field*, not the "methodology" employed.

Because Rule 702 permits experts with "scientific, technical, *or* other specialized knowledge" to testify, the expert's methodology often cannot be based on anything that could readily be called a "scientific method."   In such circumstances, "Daubert factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it."   Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1017 (9th Cir. 2004) (emphasis in original); United States v. Hankey, 203 F.3d 1160, 1169 (9th Cir. 2000) (same); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999) ("Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases. . . . In other cases, the relevant reliability concerns may focus upon *personal knowledge or experience*.")

14

(emphasis added).   In particular, the focus is on "the witness's knowledge of, and experience *within, the [relevant] industry*."   Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ., 927 F. Supp. 2d 1069, 1075 (D. Or. 2013) (brackets in original, emphasis added).   As such, "[t]he key inquiry is whether the witness has sufficient skill or knowledge related to the pertinent field so that his inference will probably be of some assistance to the untrained layman."   Enyart v. Nat'l Conference of Bar Examiners, Inc., 823 F. Supp 2d 995, 1001 (N.D. Cal. 2011).

In this respect, an "expert's knowledge may be derived from experience alone, and there is no per se requirement that a scientific expert have any particular training or license in order to testify."   Id.   In fact, a district court abuses its discretion when it excludes expert testimony on the basis of applying an "an inappropriately rigid Daubert standard" to "technical" and "other specialized knowledge."   Sullivan v. U.S. Dep't of Navy, 365 F.3d 827, 833 (9th Cir. 2004).

Courts routinely admit regulatory experts.   See, e.g., Stambolian v. Novartis Pharm. Corp., No. CV 12-04378 BRO FMOX, 2013 WL 6345566, at *8 (C.D. Cal. Dec. 6, 2013); Georges v. Novartis Pharm. Corp., No. CV 06-5207 SJO VBKX, 2012 WL 9064768, at *10 (C.D. Cal. Nov. 2, 2012); In re Zicam Cold Remedy Mktg., Sales Practices, & Products Liab. Litig., No. 09-MD-2096-PHX-FJM, 2011 WL 798898, at *18-19 (D. Ariz. Feb. 24, 2011); Kruszka v. Novartis Pharm. Corp., 28 F. Supp. 3d 920, 933 (D. Minn. 2014);   In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Products Liab. Litig., No. 3:09-MD-02100-DRH, 2011 WL 6302287, at *15-20 (S.D. Ill. Dec. 16, 2011).

### b)   The MicroCool Gowns Are Misbranded and Adulterated

KC attempts to fault Mr. Moore for not considering various aspects of the FDA regulatory regime, while misstating his testimony and discussing regulations that are irrelevant.

PLAINTIFFS' RESPONSE TO EVIDENTIARY OBJECTIONS TO
DECLARATION OF DENNIS MOORE

First, KC claims that "Mr. Moore also incorrectly assumes the FDA regulates all medical devices in the same way" but then is unable to provide a citation backing up that allegation.  [Evidentiary Objections at 14.]  Nothing in Mr. Moore's declaration suggests he believes this to be necessarily untrue—although KC's observation is rather unremarkable.  [Moore Rebuttal Decl. ¶ 34.]  KC provides an example of how the FDA regulates surgical gloves with specific regulations and contrasts that with surgical gowns and that the AQL for surgical gloves differs from that of surgical gowns.  [Evidentiary Objections at 14-15].  However, none of this matters because it is not relevant to Mr. Moore's analysis.  The absence of special regulations applying to surgical gowns does not negate the fact the MicroCool gowns are misbranded.  [Moore Rebuttal Decl. ¶ 34.]  KC does not claim that Mr. Moore looked at the wrong regulations, or that the general statutes on misbranding and adulteration he cites do not apply to the gowns.  *Notably, KC never refutes Mr. Moore's analysis that the MicroCool Gowns approved during their 510(k) submission under the AAMI PB70 standard that are labeled as a Level 4 gown but do not in fact meet the Level 4 requirements are misbranded or adulterated.*  Instead they simply state that AAMI PB70 is a voluntary standard and that a manufacturer could have chosen to satisfy premarket review requirements in another manner.  [Evidentiary Objections at 15.]  They also never attempt to contradict Mr. Moore's interpretation of the statutes and regulations, where a device submitted in a 510(k) premarket submission using a voluntary standard is subsequently bound to comply with that standard and a deviation results in the device being deemed adulterated or misbranded.  [Moore Rebuttal Decl. ¶¶ 20-21.]

Second, KC states that Mr. Moore does not mention the FDA's Quality System regulations, which they state require device manufacturers to take investigative nonconformance and appropriate actions.  [Evidentiary Objections at 13.]  A remediation requirement for manufacturers, however, does not negate the fact that their medical devices are adulterated or misbranded.  [Moore Rebuttal Decl. ¶ 24.]  KC also

16

claims that "FDA regulations do *not* require the disposition or removal of all nonconforming product from the market.   Rather, FDA regulations specifically contemplate the *use* of nonconforming product." [Evidentiary Objections at 14.]   They cite 21 C.F.R. § 820.100(b), *which they misquote*, claiming it states "Documentation shall include justification for use of nonconforming product…"   [Evidentiary Objections at 14.]  In fact, it states, "All activities required under this section, and their results, shall be documented."  No regulation uses the phrase KC has quoted.  Assuming KC has misquoted a different regulation, 21 C.F.R. § 820.90(b), nothing they have cited negates Mr. Moore's analysis that the gowns would be unable to be sold and subject to destruction.  [Moore Rebuttal Decl. ¶ 25.]  This regulation is simply a red herring; KC concealed the defects in the gowns and does not claim to have created such documentation (which of course would require it to admit that the gowns in fact did not meet AAMI level 4, which they deny).

Third, KC provides extensive information about the recall processes. [Evidentiary Objections at 14.]  Once again, none of this is relevant.  Mr. Moore did not need to consider it because no recall occurred to address the failure of the MicroCool gowns to meet the AAMI Level 4 standard.  Mr. Moore's initial declaration is focused on whether a legal market would exist to sell the MicroCool Gowns if they did not in fact meet the AAMI Level 4 standard as claimed, and he concluded it would not. [Moore Decl. ¶¶ 1, 29.]  Recalls are simply a more aggressive means of addressing defective devices than the default, where they are misbranded and cannot be sold. [Moore Rebuttal Decl. ¶ 26.]  If there was a voluntary or mandatory recall and the gowns were successfully recalled, then the issue of whether they could legally be sold would be moot.  To the extent that gowns were not returned during a recall, those gowns would still be misbranded or adulterated and could not be sold under Mr. Moore's analysis.  Regardless, there was not a recall and KC provides no explanation of how the presence or absence of a recall would affect whether medical devices are misbranded or adulterated.

Fourth, KC argues that Mr. Moore "incorrectly assumes that there is no allowance to offer in commerce product that may be in violation of the FDCA" and cite various options the FDA has to address violations. [Evidentiary Objections at 15-16.] This is a non sequitur. Mr. Moore's conclusion was that there was no lawful market for the MicroCool Gowns if they did not in fact meet the AAMI Level 4 standard. [Moore Decl. ¶ 29.] His conclusion rests on the gowns being misbranded or adulterated. [Id. at ¶ 25.] Nothing KC cites indicates that the gowns' status as misbranded or adulterated hinges on whether, or how, the FDA has enforced the gowns' violation of the law (which it was unable to do because KC concealed the gowns' compliance failures). Gowns are subject to seizure or condemnation even if the seizure or condemnation does not in fact happen. [Moore Rebuttal Decl. ¶ 35.]   A failure to enforce an FDA regulation does not legitimize its violation.   A company "does not obtain a waiver to distribute illegal products because the government has not enforced the law against it previously." United States v. 789 Cases, More or Less, of Latex Surgeons' Gloves, an Article of Device, 799 F. Supp. 1275, 1296-97 (D.P.R. 1992) (ordering surgical gloves destroyed because they were adulterated).   In essence, KC confuses violation of the law and enforcement. [Moore Rebuttal Decl. ¶¶ 35-36.]

Neither of the cases KC cites hold otherwise. In Oracle Am., Inc. v. Google Inc., a party cited a controlling case that contradicted the findings of the opposing party's expert and the court struck the relevant testimony.   No. C-10-03561, 2016 WL 1743129, at *4 (N.D. Cal. May 2, 2016).   Similarly, in In re Novatel Wireless Sec. Litig., the party sought to have an expert's opinion excluded when it was based on an erroneous interpretation of the law.   846 F. Supp. 2d 1104, 1108 (S.D. Cal. 2012). Here, however, KC has failed to cite any law that states that whether a medical device is adulterated or misbranded turns on whether the FDA has enforced the device's violations.  Nor could KC cite any such law because it does not exist.

Fifth, KC attempts to argue that Mr. Moore should have considered that the FDA has not yet taken enforcement action against the MicroCool Gown and that therefore his

18

opinion is sheer speculation. [Evidentiary Objections at 16.]  However, the FDA could not take action while the KC concealed the fact that the gowns did not meet the AAMI Level 4 standard.  [See Moore Rebuttal Decl. ¶ 37.]  Regardless, Mr. Moore's analysis is appropriate irrespective of whether the FDA has enforced, will enforce in the future, or will never enforce the MicroCool Gowns' failure to meet the AAMI Level 4 standard.   Enforcement by the FDA does not matter for the purposes of class certification.

An individual with Mr. Moore's experience is capable of analyzing the same regulations and laws he dealt with as a Food and Drug Investigator for the State of California for 30 years and as a credentialed Level II FDA Medical Device Investigator under a reciprocal agreement between the FDA and the state of California.  [Moore ¶ 5-6; Moore Rebuttal Decl. ¶¶ 3-11.]  A failure to enforce an FDA regulation does not legitimize its violation.

Sixth, KC complains that Mr. Moore does not address that the AAMI Level 4 standard does not require that every gown within a lot pass the test.  [Evidentiary Objections at 13.]  Once again, this information is not relevant to his opinion since the hypothetical he addresses assumes the gowns did not meet the standard.   [Moore Rebuttal Decl. ¶ 40.]  In addition, when defective medical devices have been seized and destroyed in the past, the FDA has been able to do so even if it cannot be proven that a particular device in a group has violated the law.  United States v. 789 Cases, More or Less, of Latex Surgeons' Gloves, an Article of Device, 799 F. Supp. at 1296 (ordering seized surgical gloves from an entire period to be destroyed when violations were of an ongoing nature).

### c)   The Operation of the Market for MicroCool Gowns is Irrelevant to Mr. Moore's Analysis.

KC criticizes Mr. Moore for not engaging in an analysis of the market for MicroCool gowns, which they call "extremely complex" and conclude that he cannot "offer an opinion that no market exists" without considering the nuances of the market.

19

[Evidentiary Objections at 17.]  Mr. Moore does not engage in an analysis of the market because the specifics do not matter; his conclusion is that "any lawful market for the offending devices would be completely eliminated."  [Moore Decl. ¶ 29.]  He explains that the gowns "could not be lawfully sold, offered for sale, proffered for delivery, distributed, held or used."  [Id. ¶ 25.]  None of the facts KC lists have any relevance.  [Evidentiary Objections at 17.]  Under Mr. Moore's analysis, regardless of whether the gowns are sterile, sold in custom procedure trays, bought through third parties, or anything else, they could not legally be sold and no *legal* market would exist.  [Moore Rebuttal Decl. ¶ 39.]  Any transactions involving the gowns would therefore be part of an *illegal* market.

### 3.   Mr. Moore's Opinions Have a Sufficient Factual Basis.

#### a)   Mr. Moore is Permitted to Use Hypothetical Facts as the Basis for His Opinions.

Experts may "rely on hypothetical facts that are supported by the evidence." S.E.C. v. Retail Pro, Inc., No. 08CV1620-WQH-RBB, 2011 WL 589828, at *5 (S.D. Cal. Feb. 10, 2011) (quoting Fed. R. Evid. 702, advisory committee's cmt. (2000 amd.)); see also Equal Employment Opportunity Comm'n v. Glob. Horizons, Inc., No. CV-11-3045 EFS, 2014 WL 11429302, at *5 (E.D. Wash. May 19, 2014) (quoting same); Brooks v. GAF Materials Corp., No. 8:11-CV-00983-JMC, 2014 WL 3495427, at *2 (D.S.C. July 11, 2014) (quoting same); United States v. Latysheva, 162 F. App'x 720, 725 (9th Cir. 2006) (at trial, expert was properly allowed to testify in response to hypothetical questions).

Mr. Moore's declaration rests on the hypothetical fact that the MicroCool Gowns "did not meet the AAMI Level 4 liquid barrier standard as Defendants claim."  [Moore Decl. ¶ 1.]  As explained above, Mr. Moore is not required to establish that this hypothetical is true.  KC attacks Mr. Moore because he did not "identify *any* record evidence that supports the assumption on which his opinions are based" [Evidentiary Objections at 18], but he is not required to do so.  [Moore Rebuttal Decl. ¶ 40.]  In any

1    event, the record is replete with evidence (testimony and documents) establishing that the

2    gowns did not meet the standard.  See, e.g., P.Ex. 15 (Defendants contemporaneous

3    admission from 2013 and 2014 that **"Microcool Gowns (AAMI 4) are not meeting the**

4    **AAMI Standard requirement for barrier performance as required in ASTM 1670**

5    **and the 510(k).").**

6         KC attacks Mr. Stull's opinion about whether the gowns met the AAMI Level 4

7    standard, but this is irrelevant to *Mr. Moore's* report.  If Plaintiffs establish that the

8    gowns did not meet the AAMI Level 4 standard, the report properly relies on

9    "hypothetical facts that are supported by the evidence." Retail Pro. 2011 WL 589828,

10   at *5.  If they fail to do so, the report is irrelevant.

11        The cases KC cites do not support their position.  In Nautilus Grp., Inc. v. Icon

12   Health & Fitness, Inc., a trademark infringement case, the court struck testimony by a

13   marketing expert witness who erroneously assumed the trademark was CrossBow by

14   Weider rather than CrossBow.  308 F. Supp. 2d 1208, 1214 (W.D. Wash. 2003), aff'd,

15   372 F.3d 1330 (Fed. Cir. 2004).  Therefore, that case simply states that experts cannot

16   base their opinions on erroneous facts.   Here, however, Mr. Moore's declaration is

17   based on a hypothetical that the MicroCool Gowns did not meet the AAMI Level 4

18   standard.   Plaintiffs intend to prove this fact at trial, and, indeed, Plaintiffs have

19   proffered extensive evidence to support this fact in connection with their class

20   certification motion. [See Dkt #175 at 7-14.]

21        KC also quotes the rule in Soldo v. Sandoz Pharm. Corp., 244 F. Supp. 2d 434,

22   562 (W.D. Pa. 2003), stating "[e]xpert testimony based on false assumptions and

23   fictional or random data is inadmissible." That rule is irrelevant here as the declaration

24   relies on a hypothetical.  Despite KC's attempt to do so, "a party cannot disqualify the

25   other side's expert simply by disputing the facts upon which he relied." Jerid

26`  Enterprises, LLC v. Lloyd's London, No. 3:10-CV-435 JD, 2012 WL 6115673, at *4

27   (N.D. Ind. Dec. 10, 2012).

28

**PLAINTIFFS' RESPONSE TO EVIDENTIARY OBJECTIONS TO
DECLARATION OF DENNIS MOORE**

b)    **Which Version of the AAMI Level 4 Standard
Applies is Not Relevant to Mr. Moore's Opinion.**

KC argues that Mr. Moore should have addressed the 2003 PB70 standard.
[Evidentiary Objections at 13.]  Whether the 2003 or 2012 PB70 standard applies is not
relevant to Mr. Moore's analysis and he does not offer an opinion on the issue.  His
opinion is based on the hypothetical that the MicroCool Gowns "did not meet the
AAMI Level 4 liquid barrier standards as Defendants claim." [Moore Decl. ¶ 1.]  His
opinion stands regardless of which version of the standard they did not meet.  [Moore
Rebuttal Decl. ¶ 40.]  As long as the gowns are in violation, they are misbranded or
adulterated and therefore can be destroyed. [Moore Decl. ¶ 21-23.]

KC's argument itself is a red herring, however.  KC's internal documents, test
reports, and deposition testimony of current and former employees readily demonstrate
that the MicroCool Gowns had problems and were not meeting the then applicable
AAMI Level 4 standards.  [See, e.g., P.Exs. 3; 4; 12; 13 at 4; 15; 24; 27; 31; 40; 52; 59;
73 at 228:12-23, 243:5-9, 325:1-24; 83; 84; 85 at 17:13-18:6. 35:19-37:18, 39:6-40:25,
46:3-12, 46:22-47:8, 82:6-83:9, 155:7-22, 156:5-18; 87; 88; 89 at 49:6-13, 50:7-14; 91
at 49:22-50:12, 64:10-19, 71:13-20, 102:4-8; 92 at 5-7; 106.]  KC makes no attempt to
claim the facts revealed by this evidence are inaccurate.  Therefore, there is more than
enough evidence demonstrating that, during the class period, the MicroCool Gowns
were not compliant with then applicable industry standard tests, did not provide the
highest level of fluid barrier protection, and were not AAMI Level 4 gowns.

In its Opposition to Plaintiffs' Motion for Class Certification, KC claims that
there was no problem with the gowns, but rather the testing methodology for AAMI
Level 4 changed in 2012 by becoming more stringent.  It contends it had no obligation
to satisfy the 2012 methodology, but nevertheless voluntarily chose to attempt to
comply anyway.  This argument is not supported by the evidence contemporaneous
with the class period and has been concocted by Defendants as a result of this lawsuit.

**PLAINTIFFS' RESPONSE TO EVIDENTIARY OBJECTIONS TO
DECLARATION OF DENNIS MOORE**

1    As already stated, KC has used their Evidentiary Objections to argue the merits

2    of the case. They have not made a proper evidentiary objection because, as the Ninth

3    Circuit has emphasized, the "test under <u>Daubert</u> is not the correctness of the expert's

4    conclusions . . ." <u>Primiano v. Cook</u>, 598 F.3d 558, 564 (9th Cir. 2010).

5         **4.    Mr. Moore's Discussion of State and Federal Laws Does Not**

6              **Render His Opinions Inadmissible.**

7         Regulatory experts may testify about the regulatory framework governing

8    medical products. <u>Stambolian v. Novartis Pharm. Corp.</u>, No. CV 12-04378 BRO

9    FMOX, 2013 WL 6345566, at *8 (C.D. Cal. Dec. 6, 2013) (rejecting argument that

10   former FDA employee was a "superlawyer" who drew improper legal conclusions);

11   <u>Georges v. Novartis Pharm. Corp.</u>, No. CV 06-5207 SJO VBKX, 2012 WL 9064768, at

12   *10 (C.D. Cal. Nov. 2, 2012) (permitting expert to testify as regulatory expert about

13   FDA regulatory requirements); <u>In re Zicam Cold Remedy Mktg., Sales Practices, &</u>

14   <u>Products Liab. Litig.</u>, No. 09-MD-2096-PHX-FJM, 2011 WL 798898, at *18-19 (D.

15   Ariz. Feb. 24, 2011) (director of pharmaceutical consulting firm who helped prepare

16   drug applications to the FDA permitted to testify as regulatory expert about product

17   labeling requirements); <u>Kruszka v. Novartis Pharm. Corp.</u>, 28 F. Supp. 3d 920, 933 (D.

18   Minn. 2014) (finding expert qualified to testify as regulatory expert to FDA regulations

19   and processes); <u>In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices &</u>

20   <u>Products Liab. Litig.</u>, No. 3:09-MD-02100-DRH, 2011 WL 6302287, at *15-20 (S.D.

21   Ill. Dec. 16, 2011) (finding expert could testify as regulatory expert about regulatory

22   requirements).

23        <u>Yasmin</u>, 2011 WL 6302287, is instructive. There, the defendants sought to

24   exclude testimony from an expert regarding FDA regulations. <u>Id.</u> at *20. The expert

25   had reviewed medical products as an FDA employee and subsequently founded a

26`  consulting company that focused on the regulation of products by the FDA. <u>Id.</u> The

27   Court determined that her methodology was reliable because it was based on the

28   methodology she had used at the FDA. <u>Id.</u> at 17. It also believed the testimony would

**PLAINTIFFS' RESPONSE TO EVIDENTIARY OBJECTIONS TO
DECLARATION OF DENNIS MOORE**

assist the trier of fact because it would help explain "a complicated industry." Id. at *17.  The Court also accepted the plaintiffs' argument that the expert could "provide statements of her understanding, as an expert working in the field, of *what the applicable regulations require* and her expert analysis of the facts." Id. at *20 (emphasis added).

Here, Mr. Moore's background as a Food and Drug Investigator, credentialed Level II FDA Medical Device Investigator, and regulatory consultant tracks that of the Yasmin expert.  [Moore Decl. ¶ ¶ 4-8.]  His declaration discusses whether a lawful market to re-sell or use the MicroCool Gowns exists if they hypothetically did meet the AAMI Level 4 liquid barrier standard.  [Id. at ¶ 10.]  As part of his opinion, he discusses California and federal statutes and regulations that would have an impact on his conclusion.  [Id. at ¶¶ 12-23.]  Based on this information, he concludes that the surgical gowns could not be used or sold in the United States and that therefore no lawful market exists.  [Id. at ¶¶ 25-29.]  Mr. Moore does not merely summarize law as KC claims.  [Evidentiary Objections at 20.]  Instead, he uses his regulatory experience to discuss how the relevant statutes and regulations create a situation where it is not possible to use, possess, or sell the gowns if they do not meet the standard under which they were cleared, which renders them worthless.  The discussion of the relevant laws and regulations simply provides the basis for his opinion.  Therefore, KC's Objections to Mr. Moore's declaration should be OVERRULED.

## IV.  CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that Defendants' Evidentiary Objections to the Declaration of Dennis M. Moore in Support of Plaintiffs' Motion for Class Certification be overruled.

PLAINTIFFS' RESPONSE TO EVIDENTIARY OBJECTIONS TO
DECLARATION OF DENNIS MOORE

Dated:  August 8, 2016

EAGAN AVENATTI, LLP

By:  _____/s/ Michael J. Avenatti_____
Michael J. Avenatti
Ahmed Ibrahim
Attorneys for Plaintiffs, Individually and
On Behalf of All Others Similarly Situated

PLAINTIFFS' RESPONSE TO EVIDENTIARY OBJECTIONS TO
DECLARATION OF DENNIS MOORE