# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

HRAYR SHAHINIAN, et al.,

         Plaintiffs,

      v.

KIMBERLY-CLARK CORP., et al.,

         Defendants.

)
)
)
)
)
)
)
)
)
)

Case No. CV 14-8390 DMG (PLAx)

**ORDER RE PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [169]**

This matter is before the Court on Plaintiff Bahamas Surgery Center, LLC's ("Bahamas Surgery Center") motion for class certification of its fraud claims pertaining to Defendants' surgical gowns. [Doc. # 169.] Having duly considered the parties' written submissions, the Court now renders its decision. For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Bahamas Surgery Center's class certification motion.

## I.
## PROCEDURAL BACKGROUND

On December 11, 2015, Plaintiffs Bahamas Surgery Center, Hrayr Shahinian, M.D., F.A.C.S., Prime Healthcare Centinela, LLC, Prime Healthcare Services – Garden Grove, LLC, Prime Healthcare Services – Harlingen, LLC, Knapp Medical Center, LLC, and Prime Healthcare Services – Landmark, LLC filed the operative Second Amended

Complaint ("SAC") alleging the following class action claims:   (1) fraudulent concealment/nondisclosure; (2) fraud (affirmative misrepresentations); and (3) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* [Doc. # 70.]   Since then, all of the named plaintiffs, with the exception of Bahamas Surgery Center, have been dismissed.  *See* Doc. ## 105, 161, 177.

On June 14, 2016, Bahamas Surgery Center filed a motion for class certification and appointment of class counsel ("Mot."). [Doc. 169.]  On July 8, 2016, Defendants Kimberly-Clark Corporation and Halyard Health, Inc. filed their Opposition. [Doc. # 191.]  On August 8, 2016, Bahamas Surgery Center filed its Reply. [Doc. # 217.]

## II.
## FACTUAL BACKGROUND

### A.    The Parties

Kimberly-Clark is a Delaware corporation that originally manufactured, marketed, and sold the product known as MICROCOOL* Breathable High Performance Surgical Gowns ("MicroCool Gowns") as early as 2012.  Declaration of Judson Boothe ("Boothe Decl.") ¶ 5 [Doc. # 191-10]; SAC ¶¶ 1, 12.

Halyard is a publicly traded spin-off company of Kimberly-Clark's health care division.  Since October 31, 2014, Halyard has manufactured, marketed, and sold the MicroCool Gowns.  Boothe Decl. ¶ 5.

Bahamas Surgery Center is a California limited liability company with its principal place of business in Bakersfield, California.  The company offers surgical services to patients and has purchased MicroCool Gowns from Defendants for use by doctors and nurses in surgical procedures.  Declaration of Rashel Campos ("Campos Decl.") ¶¶ 5, 8-9. [Doc. # 169-6.]

### B.    Bahamas Surgery Center's Allegations and Proposed Classes

Bahamas Surgery Center alleges Defendants committed fraud.  According to Bahamas Surgery Center, Defendants marketed and sold MicroCool Gowns, which they represented as providing the highest level of liquid barrier protection—known as "AAMI

Level 4"[1]—from the transfer of bodily fluids, bacteria, and infection between healthcare professionals and their patients.  SAC ¶ 1.  Yet, Bahamas Surgery Center alleges that Defendants knew that the MicroCool Gowns failed industry-standard tests for measuring AAMI Level 4 compliance as early as 2012.  *Id.* ¶¶ 30-33.  Despite multiple failed test results, Bahamas Surgery Center alleges that Defendants continued to market and sell MicroCool Gowns, representing the product as meeting the AAMI Level 4 standard.  SAC ¶¶ 32-33.  In doing so, Bahamas Surgery Center alleges that Defendants committed fraud, violated the UCL, and put gown-users in the medical field at risk of serious infection and bodily harm.

Notably, entities like Bahamas Surgery Center that purchased MicroCool Gowns for professional healthcare uses ("the end-purchaser") obtained the product not over-the-counter at the local drug store, but by purchasing them from third-party vendors: distributors and custom product tray[2] ("CPT") manufacturers.  Boothe Decl. ¶ 12.  These distributors and CPT manufacturers purchase the MicroCool Gowns directly from Defendants and then resell the gowns to end-purchasers.  Only 10,000 of the roughly three million (0.3 percent) MicroCool Gowns sold to private purchasers in California from February 12, 2012 to January 11, 2015 shipped directly from Defendants to the end-purchaser ("direct sales").  Declaration of Lori Hand ("Hand Decl.") ¶ 16 [Doc. # 190-6.]  Thus, 99.7 percent of the time, an independent distributor, CPT manufacturer, or third-party vendor makes the MicroCool Gown sale to the end-purchaser.  Of the indirect sales,

---

[1] AAMI stands for Association for the Advancement of Medical Instrumentation.  AAMI identified four different levels of liquid barrier performance for surgical gowns, ranging from 1 (least protective) to 4 (most protective).  SAC ¶ 23.  AAMI Level 4 gowns are "intended for those healthcare situations where the potential for exposure to blood and other potentially infectious materials is high in terms of volume of liquid, the likelihood of exposure to spray or splash, or when pressure will be applied against the gown when exposed to these liquids."  Declaration of Jeffrey O. Stull ("Stull Decl.") ¶ 36 [Doc. # 175-7.]

[2] A CPT consists of a bundle of medical devices (i.e., drapes, gauze, bandages, gloves, towels, etc.) shipped in a single, sterilized pack to provide the end-purchaser with all disposable items it requires for a specific surgical procedure.  Boothe Decl. ¶ 17.

approximately 54 percent make up MicroCool Gowns originally sold to CPT manufacturers as non-sterile gowns.  Hand Decl. ¶ 17.  The CPT manufacturers sterilize, package, and market the pack components, including the MicroCool Gowns, and sell them to end-purchasers.  Boothe Decl. ¶ 19.

Defendants play no direct role in the assembly, marketing, or labeling of CPTs containing MicroCool Gowns.  *Id.*  There is also no evidence that a CPT packet's external packaging, which lists the product inventory within the packet, identifies the brand of the surgical gown inside or represents the gowns as "AAMI Level 4."  *Id.* ¶¶ 22[3], 25 (attaching photographs of exemplar CPT packaging labels for CPTs containing MicroCool Gowns).  In contrast, the stand-alone sterile MicroCool Gowns' packaging contains the representation that the gowns are AAMI Level 4 (the "AAMI Level 4 label").  *See, e.g.*, Declaration of Michael Avenatti ("Avenatti Decl."), Ex. 78, Deposition of Judson Boothe ("Boothe Depo.") at 157-58 (MicroCool gowns sold after 2011 had the words "AAMI Level 4" on packaging) [Doc. # 175-1].

Pursuant to Federal Rules of Civil Procedure 23, Bahamas Surgery Center moves to certify the following three classes:

1.   **California Damages/Restitution Class**:  All entities and natural persons in California who purchased the MicroCool Gowns from February 12, 2012 up to and including January 11, 2015 (the "California Damages/Restitution Class").

---

[3] Bahamas Surgery Center objects to Boothe's testimony describing CPT labels generally and the statement "*I am not aware* of any CPT packaging that states on the label that MICROCOOL* gowns are 'AAMI Level 4'" on the grounds of speculation and lack of personal knowledge.  Plaintiff's Evidentiary Objections at 18 (emphasis added) [Doc. # 216-2].  The Court OVERRULES the objection.  From 2011 to 2013, Boothe led Defendants' Surgical and Infection Prevention ("S&IP") field sales organization for the Easter United States.  Boothe Decl. ¶ 2.  Beginning in 2013, he led the Product Supply Team for the S&IP division.  *Id.*  In these capacities, Boothe attests to the nature and contents of CPTs that contain MicroCool Gowns and even attaches photographs of CPT packaging.  *Id.* ¶¶ 17, 25.  Bahamas Surgery Center does not object to these paragraphs or the exhibits attached to Boothe's declaration, which demonstrate his knowledge of the CPTs.  *See* Plaintiff's Evidentiary Objections at 14-19.

2.      **California Injunctive Relief Class**:  All entities and natural persons in California who purchased the MicroCool Gowns from February 12, 2012 up to and including January 11, 2015 (the "California Injunctive Relief Class").

3.      **Nationwide Issue Based Class**:  A nationwide class of all entities and natural persons who purchased the MicroCool Gowns from February 12, 2012 up to and including January 11, 2015, for the resolution of the specific issue of whether Defendants misrepresented during the time period February 12, 2012 up to and including January 11, 2015 the liquid barrier claims relating to the MicroCool Gowns (e.g. whether the gowns met the AAMI Level 4 standard) on the gowns' packaging and in their marketing materials and/or whether Defendants concealed material facts relating thereto.[4]

Mot. at 16.

The class period of the class claims is February 12, 2012 up to and including January 11, 2015 (the "Class Period").  *Id.*  Bahamas Surgery Center seeks to serve as class representative for each of the classes.  *Id.*

## III.
## EVIDENTIARY OBJECTIONS

The parties have raised a number of objections to the opposing side's evidence. The Court does not address objections pertaining to facts it deems immaterial to the resolution of the motion.  The Court addresses the parties' objections only to the extent it deems necessary.

---

[4] Excluded from each of these classes are (a) any governmental entity; (b) any person or entity in which any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff, have any controlling interest; and (c) any partner or employee of Class Counsel.  Mot. at 16.

In particular, Defendants object to Plaintiff's expert Jeffrey Stull's interpretation of results from an industry-standard test (the "ASTM F1671 test") for measuring AAMI Level 4 liquid barrier protection performed by independent testing lab Intertek on MicroCool Gowns.  Defendants seek to strike his declaration in its entirety on the ground that he is not qualified to offer opinions under Federal Rule of Evidence 702.  ("Def. Evidentiary Obj. to Stull Decl.") at 13 [Doc. # 194]; Stull Decl. ¶¶ 40-41.

Rule 702 allows expert testimony if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  Rule 702 gives courts broad discretion to discharge their gatekeeping role.  *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004).  The Ninth Circuit has emphasized that "the trial court must assume that the expert testimony both rests on a reliable foundation and is relevant to the task at hand. . . .  Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.  And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969-70 (9th Cir. 2013).  Moreover, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  *Id.*

Here, Stull has demonstrated that he is qualified to provide the opinions in his declaration.  *See* Stull Decl. ¶¶ 2-14, Ex. A (*curriculum vitae*).  He is formally trained in chemical engineering and engineering management, and is currently the President of International Personnel Protection, Inc., which provides services directly related to "safety/health issues within the chemical, thermal, biological, and physical protection industries."  *Id.* ¶ 3.  Perhaps most significantly, he "participated in meetings of the AAMI Protective Barriers Committee that prepared the AAMI PB70 standard Liquid Barrier Performance and Classification of Protective Apparel and Drapes Intended for Use in Health Care Facilities. "  *Id.* ¶ 6.  Stull thus has "direct experience in the original development of the ES-22/ASTM F1671 test method" at issue in this case and has

"assisted dozens of commercial protective clothing manufacturers in evaluating their product for viral penetration resistance using the ASTM F1671 standard for the purpose of making specific claims for wearer protection." *Id.* ¶¶ 12-13.  He even has specifically "used Intertek Testing Services for ASTM F1671 testing as part of other assignments." *Id.*

In short, Stull has demonstrated that his opinions are sufficiently relevant and reliable to be admissible on this class certification motion.  Thus, Defendants' objections to the Stull Declaration are OVERRULED and the Court DENIES their motion to strike his declaration.  To the extent Defendants' own expert disagrees with Stull's findings and interpretation of the ASTM F1671 test results for the MicroCool Gown samples, Defendants may present their expert evidence at trial and attack Stull's findings through cross-examination.

## IV.
## LEGAL STANDARD

**A.   Substantive Requirements of Rule 23**

A district court has broad discretion in making a class certification determination under Rule 23.  *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979) (district courts "have broad power and discretion vested in them by Fed. Rule Civ. Proc. 23").  Nonetheless, a court must exercise its discretion "within the framework of Rule 23."  *Navellier*, 262 F.3d at 941.

The following prerequisites must be met before a court may certify a class under Rule 23:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)   the representative parties will fairly and adequately protect the interests of the class.

-7-

Fed. R. Civ. P. 23(a).   These prerequisites "ensure[] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  "The Rule's four requirements— numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* (internal citation and quotation marks omitted).

If the Rule 23(a) requirements are satisfied, a class action may be maintained pursuant to Rule 23(b)(3) if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  In order to meet the superiority requirement, a class action must be superior to any other methods of resolving the case. Fed. R. Civ. P. 23(b)(3).

## B.   Burdens and Standard of Proof

"The party seeking class certification bears the burden of establishing that the proposed class meets the requirements of Rule 23." *Edwards*, 798 F.3d 1172 at 1177; *see also Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 321 (C.D. Cal. 2015) ("More than a pleading standard, Rule 23 requires the party seeking class certification to affirmatively demonstrate compliance with the rule[.]") (internal citation, ellipsis, and quotation marks omitted).  Certification is properly granted only after "a rigorous analysis [determining] that the prerequisites of Rule 23(a) have been satisfied." *Dukes*, 131 S. Ct. at 2551.  A court ruling on a class certification "is merely to decide a suitable method of adjudicating the case" and "should not turn class certification into a mini-trial on the merits." *Edwards*, 798 F.3d at 1178 (internal citation and quotation marks omitted).

Neither the Supreme Court nor the Ninth Circuit has definitively set forth a specific standard of proof for Rule 23 determinations.  *See Dukes*, 131 S. Ct. at 2551-52 (setting forth a "rigorous analysis" requirement without discussing a specific standard of proof); *Edwards*, 798 F.3d at 1178 (Rule 23 determinations "will inevitably touch upon the merits of plaintiffs' underlying . . . claims" but cautioning that a class certification should not become a "mini-trial on the merits") (internal citation and quotation marks omitted).  Rather, the Ninth Circuit has stated that, "[w]hile some evaluation of the merits frequently 'cannot be helped' in evaluating [certifiability], that likelihood of overlap with the merits is 'no license to engage in free-ranging merits inquiries at the certification stage.'"  *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013)).  "[M]erits questions may be considered to the extent—*but only to the extent*— that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Id.* (quoting *Amgen*, 133 S. Ct. at 1194-95) (emphasis in original).

# V.
## DISCUSSION

## A.   California Damages/Restitution Class

Bahamas Surgery Center seeks to certify a class of entities or persons who purchased MicroCool Gowns during the approximately three-year Class Period.  It asserts that the proposed California Damages/Restitution Class satisfies the elements of Rules 23(a) and 23(b)(3).

### 1.   Ascertainability

"Although there is no explicit requirement concerning the class definition in [Rule] 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed."  *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) (internal quotation omitted).  "A class definition should be precise, objective and presently ascertainable," such that it is "administratively feasible to

determine whether a particular person is a class member." *Id.* The identity of class members need not, however, be known at the time of class certification. *Id.*

Here, Defendants argue that Bahamas Surgery Center's proposed California Damages/Restitution Class is overbroad and not ascertainable because it "impermissibly includes purchases of the ***non-AAMI-rated*** version of MICROCOOL\*." Opp. at 17 (emphasis in original). According to Defendants, they have not always marketed MicroCool Gowns as "AAMI Level 4" gowns. Boothe Decl. ¶ 7. Indeed, Kimberly-Clark did not release the AAMI Level 4 gowns until after it received clearance from the FDA on December 23, 2010. *Id.* Defendants released these newer gowns only in small quantities in late 2011, "and, overtime, replaced the prior [non-AAMI-rated] version of MicroCool."[5] *Id.*

The Court rejects Defendants' position that the California Damages/Restitution Class is not ascertainable. The issue of ascertainability concerns whether "Plaintiffs have precisely defined their class based on . . . objective criteria[.]" *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at \*5 (C.D. Cal. Apr. 9, 2014). Bahamas Surgery Center has done just this: the class consists of entities or individuals who purchased the MicroCool Gowns within a closed time frame. As for issues regarding manageability, the Court retains "the flexibility to address problems with the certified class as they arise, including the ability to decertify." *Id.* at \*7.

In any event, even if there may have been some mix-ups between two different MicroCool Gown versions during the first few months or so of the AAMI Level 4 product's introduction, that does not defeat ascertainability for a precisely-defined class within a 35-month purchase period. Indeed, Defendants have already produced

---

[5] Bahamas Surgery Center objects to a paragraph in a Defense witness' declaration that states that as late as May 2012, three months after the start of the Class Period, "a customer *may* have received the AAMI-4 version in May 2012 and the non-AAMI-rated version the following month, and vice versa." Boothe Decl. ¶ 16 (emphasis added); Plaintiff's Evidentiary Objections at 16 [Doc. # 216-2]. The Court SUSTAINS the objection. This speculative statement is beyond the declarant's personal knowledge.

comprehensive sales spreadsheets identifying MicroCool AAMI Level 4 gown purchasers dating back to the start of the Class Period.  *See, e.g.*, Avenatti Decl., Ex. 67. Accordingly, the Court finds that the proposed damages class is sufficiently ascertainable to warrant certification.[6]

### 2. Rule 23(a)

#### a. Numerosity

A putative class may be certified only if it "is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement imposes no absolute limitations; rather, it "requires examination of the specific facts of each case."  *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980).  Thus, while the Supreme Court has noted that putative classes of 15 are too small to meet the numerosity requirement, *id.* at 330 & n.14, district courts in this Circuit have found that classes with as few as 39 members met the numerosity requirement, *see Patrick v. Marshall*, 460 F. Supp. 23, 26 (N.D. Cal. 1978); *see also Jordan v. L.A. County*, 669 F.2d 1311, 1320 (9th Cir. 1982) (noting, in *dicta*, that the court "would be inclined to find the numerosity requirement . . . satisfied solely on the basis of ascertained class members"), *vacated on other grounds*, 459 U.S. 810 (1982).  "The Ninth Circuit has not offered a precise numerical standard; other District Courts have, however, enacted presumptions that the numerosity requirement is satisfied by a showing of 25–30 members."  *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).

---

[6] The Court also rejects Defendants' argument that the inclusion of purchasers who bought MicroCool Gowns after Plaintiffs filed the lawsuit creates individualized issues that would destroy ascertainability.  That the class definition includes members who purchased the product at issue post-filing does not factor into the ascertainability analysis—it says nothing about the definition's precision or objective criteria.  This Court has previously certified classes that may involve members who purchased the alleged mislabeled or defective products after named plaintiffs already filed suit.  *See, e.g.*, *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 672 (C.D. Cal. 2014) (certifying class of consumers who purchased defendants' allegedly mislabeled products from "February 9, 2008 to the present").

1    In this case, Bahamas Surgery Center satisfies the numerosity requirement because

2    it has identified hundreds of individual California end-purchasers from Defendants'

3    records. *See* Avenatti Decl., Ex. 69 (spreadsheet containing sales data and customer

4    names).

5    ### b. Commonality

6    The commonality requirement is satisfied if "there are questions of law or fact

7    common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to

8    demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S. Ct.

9    at 2251 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  In

10   determining that a common question of law exists, it is insufficient to find that all

11   putative class members have suffered a violation of the same provision of law.  *Id*.

12   Rather, the putative class members' claims "must depend upon a common contention"

13   that is "of such a nature that it is capable of classwide resolution—which means that

14   determination of its truth or falsity will resolve an issue that is central to the validity of

15   each one of the claims in one stroke." *Id*.

16   Here, Bahamas Surgery Center has shown common questions of law and fact exist

17   based on Defendants' two alleged fraudulent business practices:  (1) affirmative

18   misrepresentation to customers that the MicroCool Gowns met AAMI Level 4 standards,

19   *see, e.g.*, Avenatti Decl., Ex. 78, Boothe Depo. at 157-58; and (2) failure to disclose to

20   customers the safety risks the gowns posed after internally learning that the gowns failed

21   to pass industry standard tests.  Such common questions include whether Defendants

22   falsely claimed that the MicroCool Gowns provide the highest level of liquid barrier

23   protection; whether Defendants concealed from customers and end-purchasers that the

24   MicroCool Gowns posed certain safety risks to healthcare professionals; and whether

25   Defendants concealed knowledge that the gowns failed to pass industry standard tests for

26   measuring AAMI Level 4 barrier protection.

27   //

28

### c.   Adequacy

Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Class representation is inadequate if the named plaintiff fails to prosecute the action vigorously on behalf of the entire class or has an insurmountable conflict of interest with other class members."  *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

In this case, adequacy is satisfied because (1) the Declaration of Bahamas Surgery Center's attorney demonstrates that experienced and qualified counsel will vigorously prosecute the action, and (2) the record does not reflect any conflicts of interest between Bahamas Surgery Center and the putative members of the class.[7]  *See* Supplemental Declaration of Michael Avenatti ("Avenatti Supp. Decl.") ¶¶ 6-11 [Doc. # 210]; Campos Decl. ¶¶ 13-15 [Doc. # 169-6].

### d.   Typicality

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The purpose of this requirement "is to assure that the interest of the named representative aligns with the interests of the class."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id.* (quoting *Hanon*, 976 F.2d at 508).  The typicality standard under Rule

---

[7] Defendants argue that by bringing tort claims against them, Bahamas Surgery Center "has jeopardized [putative] class members' ability to recover for breach of contract, which may be their sole remedy."  Opp. at 36.  Defendants' argument is speculative.  As the Court discusses *infra*, Defendants have not presented evidence why certain contracts between Defendants and third-party vendors or end-purchasers would govern claims by putative class members based on MicroCool Gowns' failure to meet AAMI Level 4 standards.

23(a)(3) is "permissive":  "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Staton*, 327 F.3d at 957 (quoting *Hanlon*, 150 F.3d at 1020).

### i.     Fraudulent Misrepresentation

The elements of common law fraud in California are:  "(1) a misrepresentation of a material fact (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."  *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (2011).  Intentional misrepresentation requires a false statement by one who does not believe it to be true. *Masters v. San Bernardino Cnty. Employees Ret. Assn.*, 32 Cal. App. 4th 30, 41 (1995). Under California law, intentional misrepresentation is a species of fraud.  *Id.* at 41-42 (intentional misrepresentation is a type of "actual fraud" under Cal. Civ. Code § 1572 and common law fraud embodied in Cal. Civ. Code § 1710).

Here, Defendants argue that whether each class member relied upon the same AAMI Level 4 representation is an individualized issue and that Bahamas Surgery Center itself cannot show justifiable reliance.  Opp. at 24.  Indeed, Bahamas Surgery Center's Rule 30(b)(6) witness, Rashel Campos, testified she was not sure what representations from Defendants regarding MicroCool gowns Plaintiff relied upon in making its purchases.  Declaration of Stephen Devereaux ("Devereaux Decl."), Ex. 11, Deposition of Rashel Campos ("Campos Depo.") at 102-104 [Doc. # 191-3].  Campos also was not aware of any communications or representations from a third-party vendor (i.e., CPT manufacturer) concerning MicroCool gowns upon which Bahamas Surgery Center relied. *Id.*  Campos' testimony stands in stark contrast with Bahamas Surgery Center's allegation in the SAC that putative class members "made these purchases and used these gowns in reliance on Defendants' representations regarding the gowns . . . meeting AAMI Level 4 standards" and providing the highest level of liquid barrier protection available.  *See* SAC ¶ 54.

Bahamas Surgery Center's failure to adduce evidence that it relied upon Defendants' advertising, marketing, or product packaging when it decided to purchase the MicroCool gowns is fatal. *Allen v. Hyland's Inc.*, No. CV 12-1150-DMG (MANx), 300 F.R.D. 643, 662 (C.D. Cal. 2014) (to the extent "a named plaintiff did not read Defendants' statements on the product packaging of products purchased or explicitly testified that [he] did not rely on packaging statements, such an individual is *not* typical of the class [he] seeks to represent") (emphasis in original).

Campos later in her deposition appears to contradict herself, stating that "I'm sure when the [CPT] rep came in to introduce a trial to us, he marketed those gowns as AAMI 4 and that they were MicroCool. And that is the reason we trialed them." Campos Depo. at 206; *see also id.* at 196-97 (was shown Kimberly-Clark sterile gowns with the AAMI Level 4 label and relied on that label). Even if the Court credits Campos' latter testimony, the alleged oral and visual misrepresentation made to Bahamas Surgery Center at the point of sale by a CPT representative, *see id.* at 92, who is not Defendants' employee or agent, does not constitute the type of single-source or standardized communication that the Court can deem typical of all putative class members. *See Tipton v. Sec'y of Educ.*, 1992 U.S. Dist. LEXIS 22797, at *40-41 (S.D. W. Va. Aug. 28, 1992) (insofar as plaintiffs' and putative class members' testimony "reflects a variety of alleged oral misrepresentations . . . , differing degrees of reliance placed upon particular misrepresentations, differing sources of those misrepresentations, and no essentially identical or standardized communications on the part of the school, it is concluded that the plaintiffs have failed to satisfy the typicality requirement of Rule 23(a)").

This is especially true given that Campos' testimony involved a sale of non-sterilized gowns to be included in CPT packets, as opposed to a sale of individual, sterilized gowns. In contrast to direct purchases of individual, sterilized MicroCool gowns, external labels displayed on CPT packets containing non-sterilized MicroCool gowns do not identify whether the gowns are AAMI Level 4. Booth Decl. ¶ 25, Ex. B (e.g., "1 EA GOWN, XXLRG IMPERV MICROC KC400").

In Campos' case, the CPT representative let Bahamas Surgery Center examine and trial the gowns before deciding to purchase them as part of a CPT packet. Campos Depo. at 90 (clarifying that Bahamas Surgery Center did not select from "readymade tray options" and instead built their own packs), 196-97. Yet, there is no evidence in the record that Campos' sales-representative interaction occurred regularly in all other interactions between third-party vendors and other putative class members, particularly in the case of CPT-packet sales. Indeed, Defendants present evidence of contracts between third-party vendors and Defendants that allow end-purchasers like Bahamas Surgery Center to order gowns remotely through a "Web-based Interface," or "by telephone, fax, or through electronic order entry directly through" Kimberly-Clark. *See, e.g.*, Hare Decl., Ex. D ("GK-164 Agreement") ¶ 4.2 [Doc. # 230-8]; *see also infra*, section V.A.3.a.i. The "Ordering" section of the GK-164 Agreement leaves open the possibility that putative class members purchased MicroCool gowns without a face-to-face interaction and without exposure to the label.[8]

Because Bahamas Surgery Center has not met its burden of showing a uniform affirmative representation prior to or at the point of sale, to the extent that Bahamas Surgery Center's proposed damages/restitution class is based on a claim for fraudulent or affirmative misrepresentation, the motion is **DENIED** for failure to meet Rule 23(a)'s typicality requirement.

### ii.   Fraudulent Concealment and UCL

"In determining whether typicality is met, the focus should be on the defendants' conduct and the plaintiffs' legal theory, not the injury caused to the plaintiff." *Allen*, 300 F.R.D. at 661 (quoting *Astiana v. Kashi Company*, 291 F.R.D. 493, 502 (S.D. Cal. 2013)).

---

[8] For this reason, the Court declines to certify a subclass of plaintiffs made up of purchasers of only individual, sterile MicroCool gowns for the purposes of the affirmative misrepresentation and UCL claims as Bahamas' counsel suggested at oral argument. *See* Oral Transcript at 14 [Doc. # 246.]

In this case, Bahamas Surgery Center satisfies the typicality prerequisite for its fraudulent nondisclosure/concealment claim.   Bahamas Surgery Center alleges that during the time that it purchased MicroCool AAMI Level 4 Gowns, Defendants failed to disclose internal knowledge that the gowns failed industry-standard tests for measuring AAMI Level 4 compliance.   This alleged conduct serves as the basis for Bahamas Surgery Center's fraudulent concealment claim.   Bahamas Surgery Center's claim is typical of those of the class because it arises out of the same course of events and boils down to a core, shared allegation:   the named representative and other class members would not have purchased the MicroCool AAMI Level 4 Gowns had they known it was not actually AAMI Level 4 compliant.   *See* SAC ¶ 54; Campos Decl. ¶ 10 (stating Bahamas Surgery Center would not have purchased the MicroCool Gowns had it known about the failing test results that Defendants intentionally withheld from them and other end-purchasers).

Additionally, to the extent Bahamas Surgery Center's UCL claim for fraudulent business practices is based on Defendants' failure to disclose material information, its UCL claim is also typical of the class.

### 3.      Rule 23(b)(3)

When the Rule 23(a) requirements are satisfied, a class action may be maintained pursuant to Rule 23(b)(3) if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).   "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."   *Edwards*, 798 F.3d at 1182 (quoting *Amchem*, 521 U.S. at 623).   In order to meet the superiority requirement, a class action must be superior to any other methods of resolving the case.   Fed. R. Civ. P. 23(b)(3).

//

-17-

### a.     Predominance

In order to satisfy the predominance prong of Rule 23(b)(3), a plaintiff must show that the proposed class is sufficiently cohesive.  *Amchem*, 521 U.S. at 623.   While substantial overlap exists between the Rule 23(a)(2) commonality test and the Rule 23(b)(3) predominance test, the latter is "far more demanding."  *Wolin*, 617 F.3d at 1172 (quoting *Amchem*, 521 U.S. at 623-24).  "[T]he common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication."  *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (internal quotation, brackets and alteration omitted).

"There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position."  *Galvan v. KDI Distrib.*, No. CV 08-0999-JVS (ANx), 2011 WL 5116585, at *8 (C.D. Cal. Oct. 25, 2011) (internal quotation marks and citation omitted).

To determine whether questions of law or fact common to class members predominate, the Court must analyze each of Plaintiff's claims separately.  *Berger*, 741 F.3d at 1068.

### i.     Intermediary Contracts

In arguing that individualized issues predominate, Defendants first stress the existence of a "complex web of hundreds of interlocking contracts between Defendants, [Group Purchasing Organizations], CPT sellers, distributors, and end purchasers."  Opp. at 19.  According to Defendants, because these intermediary contracts, which contain materially different terms, govern the purchase and sale of every MicroCool Gown sold during the Class Period, the "Court would have to review every contract, analyze its provisions under the chosen governing law, and draw a legal determination about whether the class member could recover."  *Id.* at 20.

These contracts are a red herring.  This case concerns common law fraud and UCL claims, not breach of contract claims.  While Defendants emphasize the existence of a multitude of contracts, they fail to explain why these contracts govern Bahamas Surgery Center's fraud claims or why the fraud claims fall within the scope of the various choice-of-law provisions.  *See Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 536 (C.D. Cal. 2013) (where defendants sought to apply a contract's choice-of-law provision, a court should "ascertain whether the advocate of the clause has met its burden of establishing that the various claims of putative class members fall within its scope") (quoting *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 916 (2001)).[9]

Defendants also argue that the end-purchasers are third-party beneficiaries to contracts between third-party vendors and Defendants.  They explain that most end-purchasers buy MicroCool Gowns "pursuant to contracts negotiated by one or more Group Purchasing Organizations ('GPOs')."  Opp. at 8.  These entities leverage the aggregate purchasing power of its members to negotiate contracts with manufacturers, distributors, and other third-party vendors for the purchase of MicroCool Gowns.  Declaration of Ty Hare ("Hare Decl.") ¶ 12 [Doc. # 190-8.]  While GPO members (i.e., end-purchasers) "do not have a direct contractual relationship with Defendants," they argue that the end-purchasers are intended third-party beneficiaries.  Opp. at 8.

Even if class members are third-party beneficiaries of certain agreements, that does not necessarily mean those agreements govern their claims against Defendants.  As a

---

[9] The GK-164 Agreement contains a choice-of-law provision:  "This Agreement must be construed and its performance enforced under Texas law."  GK-164 Agreement at C-6.  In determining the choice-of-law provision's scope, the Court must look at Texas law.  *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 469 (1992) (interpreting choice-of-law clause pursuant to law chosen by the parties).  Under Texas law, a choice-of-law provision that "applies only to the interpretation and enforcement of the contractual agreement" does not "encompass all disputes between the parties" or "encompass tort claims."  *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (1999).  Here, the GK-164 Agreement's choice-of-law provision applies only to contract interpretation and enforcement.  Bahamas Surgery Center does not attempt to enforce performance of the contract, but rather seeks damages and other relief under independent tort claims.  The Court therefore applies California law to Bahamas Surgery Center's fraud claims.

preliminary matter, agreements cannot be enforced against third-party beneficiaries absent certain conditions, such as a third-party beneficiary bringing suit to enforce the agreement.  *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006) ("A third party beneficiary might in certain circumstances have the power to sue under a contract; it certainly cannot be *bound* to a contract that it did not sign or otherwise assent to.") (emphasis in original); *see also Motorsport Eng'g, Inc. v. Maserati SPA*, 316 F.3d 26, 29 (1st Cir. 2002) ("the third-party beneficiary, who did not sign the contract, is not liable for either signatory's performance and has no contractual obligations to either").

Furthermore, Defendants fail to point to any exclusive remedy provision that states third-party beneficiaries may only pursue contractual remedies and not tort remedies. When asked at oral argument whether such a provision exists, Defense counsel pointed to language in the GK-164 Agreement between GPO Broadlane, Inc. and Kimberly-Clark that Defendants argue applies to Bahamas Surgery Center.[10]  Oral Transcript at 23.  This provision entitled "Supplier's Product Warranties," states in relevant part:

> Supplier warrants that the Products shall be in accordance with Supplier's standard specifications upon the date of delivery. . . .  SUPPLIER SHALL NOT BE LIABLE UNDER THIS WARRANTY FOR ANY SPECIAL, CONSEQUENTIAL, OR INCIDENTAL DAMAGES OF ANY NATURE WHATSOEVER, AND IN NO EVENT SHALL SUPPLIER'S LIABILITY UNDER THIS WARRANTY FOR BREACH OF CONTRACT, TORT, OR OTHERWISE EXCEED THE AMOUNTOF THE PURHCASE PRICE OF THE PRODUCTS WITH RESPECT TO WHICH DAMAGES ARE CLAIMED.

---

[10] In their motion for summary judgment, Defendants concede that "it is not clear from the present record whether Bahamas's purchase of CPTs containing the MICROOL* gowns were made through MedAssets," or under the GK-164 Agreement.  [Doc. # 190-4 at 17.]  Indeed, Defendants present evidence that Bahamas Surgery Center purchased only one case of sterile MicroCool Gowns that were not part of a CPT.  *See, e.g.*, Campos Depo. at 46 ("we did order a case [of sterile gowns] when we first started our custom packs with MicroCool gowns").  In other words, the GK-164 Agreement, at most, applies to one case of sterile gowns purchased by Bahamas Surgery Center.

GK-164 Agreement, Exhibit F (capitalization in original).  This language unambiguously states that it governs damages calculations—which cannot exceed the purchase price paid—rather than an end-purchaser's pursuit of liability for fraud in a class action.

In any event, the plain language of the damages limitation in this provision applies only to damages sought in connection with the supplier's liability "under this warranty."  Here, Bahamas brings independent causes of action that are not based on the Supplier's warranties.  Defendants have not established why the "Supplier's Product Warranties" provision applies here. [11]

In short, Defendants have presented the Court with a plethora of different contracts that all involve the sale of MicroCool Gowns.  But they have failed to draw the Court's attention to specific material provisions indicating that these contracts govern putative class members' claims such that individualized issues would predominate.

### ii.  Fraudulent Misrepresentation

Because Bahamas Surgery Center has failed to meet the Rule 23(a) prerequisites for its fraudulent misrepresentation claim, its motion to certify a class on this basis fails and the Court need not address Rule 23(b)(3)'s requirements as to that claim.  *See supra*, section V.A.2.d.i.

### iii.  Fraudulent Concealment

A successful claim for fraudulent concealment requires a plaintiff to show:  (1) defendant concealed a material fact, (2) defendant had duty to disclose the fact, (3) defendant intentionally concealed the fact with the intent to defraud, (4) plaintiff was unaware of the concealed fact and would not have acted as he did if he possessed knowledge, and (5) as a result of the concealment, plaintiff sustained damage.  *Kaldenbach v.Mutual of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (2009).

---

[11] Moreover, there is nothing in the warranty provision or in the record defining the term "standard specifications."

In the absence of a fiduciary relationship between defendant and plaintiff, there are three circumstances when an obligation to disclose may arise:  (1) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (2) when the defendant actively conceals a material fact from the plaintiff; and (3) when the defendant makes partial representations but also suppresses some material facts.  *See* July 10, 2015 Motion to Dismiss Order (citing *Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV 13-02529-MMM (VBKx), 2013 WL 9885046, at *15 (C.D. Cal. Nov. 4, 2013)).  "A misrepresentation is judged to be 'material' if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question," and, as such, "materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it."  *Id.* (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009)).

Here, Bahamas Surgery Center contends that common evidence will establish class-wide fraudulent omission.  It presents evidence supporting the existence of a duty to disclose that the MicroCool Gown repeatedly did not pass the industry-standard test ("the ASTM F1671 test") for measuring AAMI Level 4 liquid barrier protection.  For instance, on February 29, 2012—the proposed start of the Class Period—Kimberly-Clark received results from an independent testing lab showing failing ASTM F1671 test results for a group of MicroCool Gown samples.  Avenatti Decl., Ex. 3 (Intertek Test Report); Stull Decl. ¶¶ 40-41 (describing test report which found failing samples and observations of liquid penetration).  Bahamas Surgery Center alleges that Defendants acted uniformly toward class members by deliberately withholding this internal information.

Additionally, Bahamas Surgery Center contends that common evidence will show a reasonable healthcare industry consumer, involved in the business of performing fluid-intensive procedures, would find information about potential defects in the product important in deciding whether to purchase MicroCool Gowns.  *See* Campos Decl. ¶ 8 ("Because of fluid intensive procedures performed at Bahamas Surgery Center, it was

likewise critically important that the gowns did not leak; met industry standards relating to liquid barrier protection as represented by Kimberly-Clark (i.e. AAMI Level 4); [and] did not pose an undisclosed safety risk and were safe.").

In its opposition, Defendants argue that Bahamas Surgery Center "cannot show uniform exposure" to the "AAMI Level 4" representation among putative class members as some purchased the gowns as part of CPTs while others purchased the gowns themselves pursuant to a contract with another third-party vendor.   Opp. at 26. Defendants contend that purchasers of CPT kits never see Defendants' packaging bearing the "AAMI-4" label, while purchasers of the stand-alone gowns "generally do not see that label until they have already bought the gowns."  *Id.* at 27.  Defendants appear to point to Plaintiff's failure to show either uniform reliance on the AAMI Level 4 label or that class members would not have acted as they did if they had known about the gown's alleged defects.

But in a fraudulent concealment claim such as this, involving the omission of uniform, material facts, a plaintiff need not show uniform reliance as it would in an affirmative misrepresentation claim.  *See Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123, 1147 (N.D. Cal. 2010) ("[R]eliance . . . may be presumed in the case of a material fraudulent omission.") (quoting *Plascencia v. Lending 1st Mortgage,* 259 F.R.D. 437, 447 (N.D. Cal. 2009)); *see also Daniel v. Ford Motor Co.*, 2013 WL 2474934, at *4 (E.D. Cal. June 7, 2013) ("A plaintiff may invoke a presumption or inference of reliance if the alleged omission was material.").

Based on an examination of the evidence, the Court finds that common issues predominate for Bahamas Surgery Center's fraudulent concealment claim.   Common proof can be used to establish the elements of this claim, such as whether Defendants had a duty to disclose the alleged failed tests, whether the alleged defect posed an unreasonable safety risk, and whether consumers would find Defendants' omission material.  Further, common issues predominate among putative class members regarding

the alleged gown defects, its effect on safety, and Defendants' prior knowledge of the defect.

### iv.     Unfair Competition Law

Section 17200 of California's Business and Professions Code prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice." Bahamas Surgery Center brings its UCL claim under the "fraudulent business practice" prong. Mot. at 20 ("the California Classes' fraudulent business practices cause of action under the UCL is based on the theory" of affirmative misrepresentation and fraudulent nondisclosure).

Because the UCL is intended to deter unfair business practices expeditiously and the scope of remedies under it is limited, "relief under the UCL is available without individualized proof of deception, reliance and injury.'" *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (quoting and citing *In re Tobacco II Cases*, 46 Cal. 4th 298). If Plaintiff can show that it relied upon Defendants' alleged deceptive or misleading statements or omissions to establish standing, to state a claim under the UCL based on fraud, it need only "show that members of the public are likely to be deceived" by Defendant's conduct. *In re Tobacco II Cases*, 46 Cal. 4th at 312; *see also In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (2010) (once named plaintiff meets standing requirements "no further individualized proof of injury or causation is required to impose restitution liability [under the UCL] against the defendant in favor of absent class members"). "'Likely to deceive' . . . indicates that the ad[vertisement] is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).

Here, Bahamas Surgery Center has demonstrated that its UCL claim, to the extent it is based on a theory of fraudulent concealment, is subject to class-wide proof and common questions predominate. *See supra*, section V.A.3.a.iii.

But to the extent Bahamas Surgery Center bases its UCL fraud claim on Defendants' alleged affirmative misrepresentation, the Court finds that common questions do not predominate.  To be sure, Bahamas Surgery Center is not required to establish individualized proof of reliance for putative class members.  Yet, sufficient class-wide proof of a likelihood of deception still requires a showing that class members were exposed to Defendants' fraudulent representations at the time of purchase.

According to Bahamas Surgery Center, "Plaintiffs were exposed to the label and relied on the AAMI representation in electing to purchase the MicroCool Gowns."  Reply at 16.  To support this assertion, Bahamas Surgery Center cites to the testimony of Campos, a purchaser for the company who testified that she relied upon a CPT vendor's representations to her during an in-person sales pitch for MicroCool Gowns.  Campos Depo. at 196-97.  In particular, Campos testified that she relied upon the AAMI Level 4 label and the representation that the gowns "were AAMI 4 rated."  *Id.*

While Campos' testimony satisfies the UCL's standing requirement, Bahamas Surgery Center fails to present evidence that other end-purchasers were exposed to similar oral and visual in-person representations.  Bahamas Surgery Center does present evidence of internal computer-based training programs developed to train Defendants' salesforce.  Avenatti Decl. Ex. 62; Declaration of Jamie Handler Pursuant to Court's March 24, 2016 Sealing Order ¶ 10 [Doc. # 142-2].  But there is no evidence that either Kimberly-Clark or Halyard made these training presentations to CPT manufacturers, distributors, or other third-party vendors for the purpose of assisting them with their own sales efforts to end-purchasers.  Nor is there evidence that the CPT manufacturers and third-party distributors acted as Defendants' agents or used the same sales materials as Defendants' salesforce.

Indeed, Bahamas Surgery Center does not dispute the statement from a declaration by a defense witness that "[w]hile Kimberly-Clark and Halyard have made written marketing materials concerning MICROCOOL* available to their sales representatives, the extent to which the sales representatives use or reference those materials, or provide

1   them to potential purchasers, depends entirely on the sale representative's preferences

2   and the unique dynamics of each communication."   Declaration of Jamie Handler

3   ("Handler Decl.") ¶ 11 [Doc. # 191-12].   Thus, notwithstanding Defendants' written

4   script or guidelines, determining whether or not putative class members were exposed to

5   the alleged fraudulent misrepresentations at the point of sale would require individualized

6   inquiries as to what was said by third-party vendors.

7          Accordingly, the Court finds that Bahamas Surgery Center's UCL claim satisfies

8   the predominance requirement, but only to the extent that it is based on a theory of

9   fraudulent concealment and not fraudulent misrepresentation.

10                    **v.   Damages**

11         Finally, to meet Rule 23(b)(3)'s predominance requirement, Bahamas Surgery

12  Center must present a damages model capable of measuring class-wide damages

13  attributable to its theory of liability.   *Comcast v. Behrend*, 13 S. Ct. 1426, 1433 (2013);

14  *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("plaintiffs must be able

15  to show that their damages stemmed from the defendant's actions that created the legal

16  liability"); *see also Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 379 (N.D. Cal.

17  2010) ("At class certification, plaintiff must present a likely method for determining class

18  damages, though it is not necessary to show that his method will work with certainty at

19  this time.").   Without adequately tethering damages to a defendant's allegedly wrongful

20  acts, "[q]uestions of individual damage calculations [would] inevitably overwhelm

21  questions common to the class."   *Comcast*, 133 S. Ct. at 1435.   As long as a feasible and

22  efficient mechanism exists to calculate damages on a class-wide basis, the presence of

23  potential individualized damages will not negate predominance.   Here, Bahamas Surgery

24  Center presents two damages models:  a full refund model and a partial refund model.

25         The Court finds that Bahamas Surgery Center has not demonstrated that its full

26  refund damages model, which would award class members full restitution, satisfies the

27  predominance requirement.   This model assumes that the MicroCool Gowns that class

28  members purchased have no value because they cannot be legally re-sold or used for any

purpose because of the mislabeling.  Reply at 22.  Bahamas Surgery Center, however, has not presented sufficient evidence that the allegedly mislabeled MicroCool Gowns are useless to class members.[12]   Bahamas Surgery Center's own Rule 30(b)(6) witness concedes that the gowns have other valuable attributes—aside from liquid barrier protection—such as breathability and comfort, flame resistance, and lint and abrasion resistance.  *See* Campos Depo. at 69-71.  The Court would have to conduct multiple individualized inquiries of class members to determine whether they made use of the gowns in ways that may not involve the liquid-intensive procedures for which AAMI Level 4 gowns are best suited.  As it stands, given that there is a market for non-AAMI-labeled gowns—as well as gowns with levels below AAMI Level 4—it strains credulity that a reasonable medical facility would fail to make *any* use of the mislabeled MicroCool Gowns.

At the hearing, Plaintiff's counsel drew the Court's attention to the declaration and supplemental declaration of Dennis Moore, who claimed that the "misbranded, adulterated, and/or noncompliant" MicroCool Gowns "could not be lawfully sold, offered for sale, proffered for delivery, distributed, *held or used* in the United States" under the applicable law.  Moore Decl. ¶ 25 (emphasis added) [Doc .# 169-8]; *see also* Suppl Moore Decl. ¶ 33 ("nearly everyone involved with the device in interstate commerce, such as manufacturers, packers, distributors, and retailers, is responsible for assuring that

---

[12]  According to Bahamas Surgery Center, "the survey completed by Plaintiffs' expert Dr. Stewart in connection with this motion further supports the application of the full refund model" because it demonstrates that mislabeled MicroCool Gowns as received have no value.  Mot. at 35.  The Court will not rely on Stewart's survey because it does not support Plaintiff's proposition.  The key question in the survey asks:  "If you learned that a manufacturer had represented that one type of its surgical gowns met the AAMI Level 4 liquid barrier standard when in fact these gowns did not meet that standard, would you still purchase the gown?"  Declaration of David Stewart ("Stewart Decl.") ¶ 38 [Doc. # 169-9].  Ninety-three percent of respondents said "no."  *Id.*  Stewart concludes from these results that the "AAMI Level 4 standard are [sic] critical and determinant attribute in the purchase of surgical gowns."  *Id.* ¶ 39.  The survey and Stewart's conclusion, however, do not support the assertion by Bahamas Surgery Center that the as-received MicroCool gowns have absolutely no value or benefit to end-purchasers.

he or she is not dealing in products that are adulterated or misbranded, even if someone else caused the adulteration or misbranding in the first place").

The laws upon which Moore relies include California Health & Safety Code sections 111295 and 111440, and 21 U.SC. section 331.  Moore Decl. ¶¶ 17-20.  Under section 111295, "[it] is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug or device that is adulterated."  Similarly, section 111440 states "[i]t is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug or device that is misbranded."  According to 21 U.S.C. section 331(a), the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded" constitutes a "prohibited act."  *See* Moore Decl. ¶ 20.  Based on Moore's declaration, Plaintiff's counsel asserted that "the [misbranded] product cannot even be held."  Oral Transcript at 18; *see also* Moore Decl. ¶ 28 ("under the regulatory schemes . . ., the MicroCool Gowns would be subject to seizure or condemnation").

The statutes Moore cites do not define the words "hold" or "held."  In context, however, these regulations deal with the manufacture or introduction of the misbranded or adulterated product into interstate commerce, and not with mere possession by consumers who may have obtained the product before they even knew about the alleged defects.  Indeed, the titles of California Health & Safety Code sections 111295 and 111440 are "Manufacture or sale of misbranded drug or device" and "Manufacture of adulterated drug or device," respectively.  There is no evidence in the record that putative class members could find no alternative use for the MicroCool Gowns or that they have been seized by law enforcement authorities.  Interpreting Moore's declaration to mean that end-purchasers cannot even "hold" the alleged defective gowns under the law would lead to absurd results:  it would require state and federal regulators to seize misbranded or adulterated goods from unknowing consumers, even if they have no intention of selling or reintroducing the goods into interstate commerce and could put the products to an innocuous use.

In contrast to the full refund model, the partial refund model presents a viable method of measuring damages without running afoul of *Comcast*.  This model assumes that buyers received a benefit equal to the price of a non-AAMI rated gown.  Thus, the difference between the following two variables would determine damages:  (1) the MicroCool Gown's purchase price and (2) the price of gowns with no AAMI rating.  *See* Declaration of Michael Williams ("Williams Decl.") ¶¶ 40-41 [Doc. # 169-7.][13] Defendants object that because over half of the gowns purchased during the Class Period were contained in CPTs, "neither the buyer nor Defendants know the itemized prices paid for the individual components within the pack, including the MICROCOOL* gowns." Opp. at 30 (citing Boothe Decl. ¶ 24).

But as Bahamas Surgery Center demonstrates, Defendants' sales data show what they charged distributors and CPT providers for the MicroCool Gowns.  *See, e.g.*, Avenatti Decl., Ex. 67.  Because the CPT manufacturers and other third-party vendors charged putative class members more than what they paid Defendants for the gowns, the

---

[13] Defendants object to Williams' partial refund model because Williams "does not actually attempt to calculate anything," and because it would essentially be cumbersome to determine the different prices different class members paid for the gowns.  ("Def. Objections to Williams Decl.") [Doc. # 195] ("For each and every putative member, one would need to look at all of the contracts governing their purchases, the types of gowns it buys, whether it buys them as stand-alone sterile products or as part of CPTs, and what terms, discounts, and mark-ups affect the final price.").  The Court OVERRULES Defendants' objection.

As a preliminary matter, Plaintiff is not required at this stage to "actually run their damages models" to make Williams' declaration admissible.  *Guido v. L'Oreal, USA, Inc.*, No. CV 11-01067-CAS (JDx), 2014 WL 6603730, at *9 (C.D. Cal. July 24, 2014); *see also Leyva*, 716 F.3d at 513-14 ("The only individualized factor that the district court identified was the amount of pay owed. 'In this circuit, however, damage calculations alone cannot defeat certification.'") (quoting *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)).  More importantly, Williams identified the source of the two variables under his model:  Defendants' own sales data, which captures sales to class members during the Class Period, and Defendants' internal marketing documents that identify the price Defendants charged for a non-AAMI Level 4 rated gown Defendants sold during the class period. Rebuttal Declaration of Michael Williams ¶¶ 20-21 (using the more "conservative" AAMI Level 2 gown comparison because Defendants objected to producing purchase documents unrelated to the MicroCool Gowns), 28-30.

sales data represents "conservative" damage estimates.  Williams Rebuttal Decl. ¶¶ 15, 27-30; *see also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) ("In calculating damages, here restitution, California law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation. . . .  [T]he fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery.") (internal quotation marks and citation omitted).

Accordingly, with its partial refund model, Bahamas Surgery Center has met its burden of showing a proposed class-wide damages model that is consistent with its theory of liability.  *See Comcast*, 133 S. Ct. at 1435 ("The first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*.") (internal quotation marks and citation omitted) (emphasis in original).

### b.   Superiority

The "superiority" prong requires the Court to consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(a)-(d).

The Court finds that class adjudication is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Nothing in the record suggests that class members have any individual interest in controlling the prosecution or defense of separate actions.  No party has pointed out any other litigation concerning this controversy initiated by class members.  No party has objected to this forum, which appears to be desirable in light of Bahamas Surgery Center's principal place of business and the application of California law.  Finally, the class is not unmanageable as common questions exist regarding Defendants' alleged decision to

intentionally conceal material information, which will establish liability as to all class members.  While individual damages issues will likely exist, the Court cannot deny class certification on the basis that it must later calculate individualized damages.  *Leyva*, 716 F.3d at 515.

Bahamas Surgery Center has satisfied the superiority element of Rule 23(b)(3).  Because it has satisfied the other requirements under Rules 23(a) and 23(b)(3), the Court **GRANTS** Bahamas Surgery Center's motion to certify the California Damages/Restitution Class but only as to claims for fraudulent concealment under common law and fraudulent concealment under the UCL.

**B.   California Injunctive Relief Class**

Classes may be certified pursuant to Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Class certification under Rule 23(b)(2) is possible only when declaratory or injunctive relief is sought.  Rule 23(b)(2) certification is available for monetary relief, if at all, only when such relief is incidental to the injunctive or declaratory relief.  *Dukes*, 131 S. Ct. at 2557.  Misleading or deceptive practices cases "exemplif[y] the kind of action that may be appropriate for certification under Rule 23(b)(2), at least insofar as plaintiffs request: (1) declaratory relief that the alleged practices are unlawful, and (2) injunctive relief prohibiting defendants from continuing them."  *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 541 (N.D. Cal. 2012).

In determining whether certification is appropriate under Rule 23(b)(2), a court must "look at whether class members seek uniform relief from a practice applicable to all of them."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010).  "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)."  *Id.* (citing *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)).  Claims for individualized relief, in contrast, do not satisfy Rule 23(b)(2).  This subsection "applies only when a

single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Dukes*, 131 S. Ct. at 2557.

Here, Bahamas Surgery Center seeks declaratory relief that Defendants' alleged fraudulent practices are unlawful, and injunctive relief prohibiting Defendants from continuing them.  Mot. at 37-38.  Given that the injunctive relief Bahamas Surgery Center seeks would apply to the entire class and address the alleged practices by Defendants of fraudulently concealing material information, the Court finds certification under Rule 23(b)(2) appropriate as to Bahamas Surgery Center's fraudulent concealment and UCL claim (to the extent it is based on fraudulent nondisclosure).[14]

## C.   Nationwide Issue Based Class

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4). The Ninth Circuit has endorsed certifying classes under this rule in certain circumstances where individualized questions may otherwise predominate.  *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues").

In this case, Bahamas Surgery Center requests that the Court certify a Nationwide Class on the issue of whether Defendants made fraudulent misrepresentations or

---

[14] Defendants argue that Bahamas Surgery Center lacks Article III standing to pursue injunctive relief because it "stopped purchasing the gowns before this lawsuit was filed and no longer has any gowns in its possession."  Opp. at 36 (citing Campos Depo. at 100-110).  The Court already rejected Defendants' standing arguments in its motion to dismiss order and will not address them anew.  *See* July 10, 2015 Order at 5-7.

concealed material facts regarding the MicroCool Gowns under Rule 23(c)(4).  It contends that because Defendants sold MicroCool Gowns nationwide, the uniformity of Defendants' representations or omissions, and the likelihood of litigation in additional forums, certifying a nationwide class would efficiently advance the resolution of similar claims across the country.  Mot. at 40.

In response, Defendants submit a 50-state survey describing variations between the states with regard to the elements of common law fraud.  *See* Devereaux Decl., Ex. 1 [lodged with the Court].  Defendants contend that in light of these differences, certifying a nationwide class under Rule 23(c)(4) would not promote judicial economy.  The Court agrees.  Indeed, while there may be only slight differences across the states with elements for fraud, the applicable standard of proof varies quite a bit, with some states applying a preponderance of the evidence standard, and others a clear and convincing standard.  *Compare, e.g.*, *Diblik v. Marcy*, 166 P.3d 23, 28 (Alaska 2007) ("plaintiff in a misrepresentation case bears the burden of establishing by a preponderance of the evidence that the misrepresentation was material") *with Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033-34 (Ariz. Ct. App. 2010) ("A claim for fraud requires proof of nine elements by clear and convincing evidence").

As for fraud by concealment or omission, the Court finds significant differences as to what constitutes a defendant's duty to disclose.  *Compare, e.g.*, *Infrasource, Inc. v. Hahn Yalena Corp.*, 613 S.E.2d 144, 146 (Ga. Ct. App. 2005) ("In the absence of a confidential relationship, no duty to disclose exists when parties are engaged in arm's-length business negotiations; in fact, an arm's-length relationship by its nature excludes a confidential relationship.") and *JSB Indus., Inc. v. Nexus Payroll Servs., Inc.*, 463 F. Supp. 2d 103, 107 (D. Mass. 2006) ("While a duty to disclose may arise in a number of circumstances, . . . the existence of the duty is dependant [sic] on a fiduciary duty or other similar relation of trust and confidence that required disclosure.") (internal quotation marks and citation omitted) *with supra* section V.A.3.a.iii (California).  Bahamas Surgery Center in its Reply fails to rebut Defendants' position that certifying a nationwide "issue"

class would lead to confusion and inefficiency given the different standards and elements across the country.

Accordingly, the Court **DENIES** Bahamas Surgery Center's motion to certify a nationwide issue class under Rule 23(c)(4).

## VI.

## CONCLUSION

In light of the foregoing, Plaintiff's Motion for Class Certification is **GRANTED in part** and **DENIED in part** as follows:

1.     The Court certifies the following classes but only to the extent that they involve the fraudulent concealment claim and the UCL claim based thereon:[15]

- **California Damages/Restitution Class**:  All entities and natural persons in California who purchased the MicroCool Gowns from February 12, 2012 up to and including January 11, 2015 (the "California Damages/Restitution Class").

- **California Injunctive Relief Class**:   All entities and natural persons in California who purchased the MicroCool Gowns from February 12, 2012 up to and including January 11, 2015 (the "California Injunctive Relief Class").

2.     The Court declines to certify the Nationwide Issue Based Class.

---

[15] Excluded from each of these classes are (a) any governmental entity; (b) any person or entity in which any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff, have any controlling interest; and (c) any partner or employee of Class Counsel.  Mot. at 16.

3.     The Court appoints Michael Avenatti, Esq. of Eagan Avenatti, LLP as class counsel.

**IT IS SO ORDERED.**

DATED:     November 14, 2016

_____

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE