EAGAN AVENATTI, LLP
Michael J. Avenatti, State Bar No. 206929
mavenatti@eaganavenatti.com
Ahmed Ibrahim, State Bar No. 238739
aibrahim@eaganavenatti.com
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Telephone: 949.706.7000
Facsimile: 949.706.7050

Attorneys for Plaintiff, Individually and On Behalf of All Others Similarly Situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HRAYR SHAHINIAN, M.D., F.A.C.S., et al.,<br><br>            Plaintiff,<br><br>vs.<br><br>KIMBERLY-CLARK CORPORATION, a Delaware Corporation, and HALYARD HEALTH, INC., a Delaware Corporation,<br><br>            Defendants. | CASE NO.: 14-CV-08390 DMG (PLA)<br><br>**PLAINTIFF BAHAMAS SURGERY CENTER, LLC'S MOTION IN LIMINE NO. 2 TO PRECLUDE DEFENDANTS FROM OFFERING EVIDENCE IN SUPPORT OF SUBJECT MATTERS OVER WHICH DEFENDANTS ASSERTED CLAIMS OF PRIVILEGE DURING DISCOVERY** |

# MEMORANDUM OF POINTS AND AUTHORITIES

## Relief Sought:

Plaintiff Bahamas Surgery Center ("Plaintiff") requests that the Court rule that Defendants Kimberly-Clark Corporation or Halyard Health Inc. ("Defendants") is precluded from offering any argument, evidence, and expert opinion during the trial in this matter on subjects on which they instructed witnesses at deposition not to answer questions based on attorney-client privilege. Allowing such evidence would sanction Defendants' improper use of privilege as a sword and a shield.

During the depositions of Defendants' witnesses Ross Mansbach, Vice President and Deputy General Counsel, Lon Taylor, Director of Marketing for the Surgical and Infection Prevention Division, and Jerry Jascomb, a research and development technical leader, counsel repeatedly instructed the witnesses not to answer questions regarding numerous topics of interest to this litigation. More specifically, defense counsel obstructed Plaintiff's ability to obtain testimony regarding:

- Internal investigations at KC pertaining to gown failures prior to and during the class period (i.e. what KC knew about the gown failures);
- Knowledge by the Defendants of testing and failures for the MicroCool Gowns that are the subject of this litigation, and the reason failed tests were not disclosed;
- The company's communications to customers relating to test results;
- Company reaction to reports that its gowns had failed testing received from a competitor—Cardinal Health;
- Settlement negotiations with Cardinal Health over a dispute that implicated the gown failures;
- The chronology of relevant events relating to the MicoCool Gown testing failures reflected in a PowerPoint timeline;
- The reason KC indemnified Halyard;
- The reason the witnesses retained independent counsel; and
- Subsequent communications with two former employees.

Plaintiff anticipates that Defendants will attempt to offer explanations or defenses

during the trial that are within the scope of one or more of these topics as a sword. However, to allow Defendants to introduce evidence on these topics after they blocked Plaintiff's efforts to obtain discovery on these subjects would constitute an unfair and improper use of privilege as a sword and a shield and should be disallowed.

**Background:**

Plaintiff on behalf of itself and those similarly situated, filed this class action against Defendants for marketing and selling medical gowns represented to provide the highest level of liquid barrier protection (AAMI Level 4) from the transfer of bodily fluids, bacteria, and infection between a patient and healthcare professional. Contrary to their representations, however, the evidence shows that Defendants have known since at least as early as 2012 that these gowns, known as the MICROCOOL* Breathable High Performance Surgical Gowns (the "MicroCool Gowns" or the "Subject Gowns"), were not compliant and were failing the AAMI Level 4 standard industry tests – facts Defendants were required to disclose but did not. Among other things, the tests revealed that the gowns allowed liquid and bacterial and viral pathogens to penetrate the gowns, creating an unacceptable safety risk for healthcare professionals who would be using the gowns. Moreover, Defendants knew at all relevant times that the plant that assembled the gowns in Honduras was experiencing significant and consistent problems with the sealing equipment used to seal the sleeve seams of the gowns, thus creating product that was unfit for sale and use. This led Defendants to conclude internally that the gowns did not consistently meet industry standards and were misrepresented. And yet, Defendants continued to fraudulently sell and misrepresent these gowns as providing the highest level of liquid barrier protection (AAMI Level 4) and failed to disclose to purchasers that the gowns did not, in fact, consistently pass industry standard tests and were not safe.

Plaintiff asserts three primary causes of action: (1) on behalf of itself and the Class, claims for violations of the Unfair Competition Law ("UCL"); (2) on behalf of itself and the Class, common law fraud based on fraudulent nondisclosure/concealment;

and (3) only as to Plaintiff individually, i.e., not the Class, common law fraud based on affirmative misrepresentations. Plaintiff alleges and will prove at trial that the named Plaintiff in this action, and the Class, were fraudulently induced to purchase the MicroCool Gowns either by Defendants' affirmative misrepresentations (as to Plaintiff individually) regarding their compliance with the highest level of barrier protection (AAMI Level 4) and/or Defendants' failure to disclose (as to Plaintiff and the Class) that the gowns were not AAMI Level 4 compliant, were failing industry tests, and were unsafe. Defendants represented that the gowns met the standards for the highest level of barrier protection (AAMI Level 4) and likewise consistently failed to disclose the truth regarding the gowns. Plaintiff and the Class have been damaged because they would not have purchased the MicroCool Gowns but for the misrepresentations and/or omissions.

**Grounds Upon Which Relief Is Sought:**

Evidence, argument, and expert opinion regarding matters on which Defendants' counsel have prevented witnesses from testifying about on grounds of attorney-client privilege should be excluded because allowing such testimony or evidence would constitute an improper use of privilege as a sword and a shield. See Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield"). Hence, "where the party claiming privilege during discovery wants to testify at the time of trial, the court may ban that party from testifying on the matters claimed to be privileged." Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1196 (9th Cir. 2001) (citing William A. Schwarzer, et al., *Federal Civil Procedure Before Trial*, ¶ 11:37 at 11–29 (2000)); see also Hasbro, Inc. v. Sweetpea Entm't, Inc., No. CV133406DMGJCGX, 2014 WL 12561624, at *2 (C.D. Cal. Mar. 18, 2014) (J. Gee) (granting motion *in limine* to bar defendant from introducing testimony on matters over which it instructed witness not to respond to deposition questions based on claims of attorney-client privilege); QS Wholesale, Inc. v. World Mktg., Inc., No.

SACV120451DOCRNBX, 2013 WL 12114508, at *7 (C.D. Cal. July 9, 2013) (same).

**Reasons Why Relief Should Be Granted:**

**A.     The Use Of Privilege As Sword And Shield Is Fundamentally Unfair**

The rule against using attorney-client privilege as both a sword and a shield derives from principles of fundamental fairness and substantial justice. "If a party could use the privilege as both a sword and a shield, then the party could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truthseeking process." Shared Med. Res., LLC V. Histologics, LLC, SACV 12-0612 DOC, 2012 WL 5570213, at *2 (C.D. Cal. Nov. 14, 2012); see also Cave Consulting Group, Inc. v. OptumInsight, Inc., 15-CV-03424-JCS, 2016 WL 7475820, at *8 (N.D. Cal. Dec. 29, 2016) ("Such an approach would run counter to the waiver doctrine's basis in fairness: allowing a party to disclose and rely on privileged communications about a given issue so long as they are favorable to its interests and yet fall back on privilege as soon as the party or its counsel becomes aware of (and communicates) a less favorable aspect of the same issue"). That is precisely the danger here, and the Court should exclude testimony and argument on these topics by the defense to prevent injustice.

A party who asserts a privilege as to evidence essential to some element of its case is held to have forsaken that element; the decision to do so is imputed onto its decision to assert the privilege. See, e.g., Dairy Am., Inc. v. Hartford Cas. Ins. Co., CV F 07-0537 LJOSKO, 2010 WL 2923895, at *2 (E.D. Cal. July 23, 2010) (excluding information that had been shielded during discovery from being introduced at trial). In other words, a party asserting privilege cannot have it both ways: it cannot assert the privilege in discovery and then, having as a practical matter denied the adversary's legitimate discovery rights, waive the privilege and offer the proof during trial. See Hasbro, 2014 WL 12561624, at *2 (same); QS Wholesale (same).

The decision in Hasbro is instructive. In that case, defense counsel instructed a

-4-

party witness not to testify about damages on grounds of attorney-client privilege. 2014 WL 12561624, at *2. In barring the witness from testifying about damages during the trial, this Court noted that privilege cannot be both a sword and a shield. Id. "While the Ninth Circuit has generally applied this principle to hold that a party waived attorney-client privilege by putting privileged communications at issue in litigation," this Court reasoned, "the same fairness concerns apply in this case to exclude Solomon's testimony" at trial. Id. This Court held that it would "not permit Solomon to testify at trial as to damages . . . after he raised the shield of attorney-client privilege in order to refuse to testify about such damages during his deposition." Id.

Similarly, in QS Wholesale, the court granted a motion *in limine* to bar defendant from asserting a defense at trial where, during discovery, defendant had employed "an across-the-board invocation of privilege whenever WMI sought to learn about the legal advice Quiksilver had received regarding" the defense at issue. 2013 WL 12114508, at *6. Under the circumstances, the court found, "the only appropriate action is to GRANT WMI's motion and preclude Quiksilver from asserting" that defense. Id. at *7.

The same reasoning applies to the very analogous facts of this case.

### B. Counsel for Defendants Instructed Messrs. Mansbach, Taylor And Jascomb To Not Testify As To A Whole Host Of Issues, Invoking Attorney-Client Privilege.

In the instant case, Plaintiff took the depositions of Defendants' witnesses Ross Mansbach, Vice President and Deputy General Counsel, Lon Taylor, Director of Marketing for the Surgical and Infection Prevention Division, and of Jerry Jascomb, a research and development technical leader who was closely involved with the problems with the MicroCool Gown sleeve seams and the need to fix them. During the depositions, counsel for Defendants repeatedly instructed the witnesses not to answer questions regarding many topics of interest to this litigation, and the witnesses refused to testify as to those matters, following the advice of counsel. For example, Defense counsel instructed the witnesses not to testify, based on claims of privilege, as to any of

the following topics:

- Internal investigations at KC pertaining to gown failures for the MicroCool Gowns that are the subject of this litigation [Declaration of Michael J. Avenatti ("Avenatti Decl."), Ex. 21 (Jascomb Dep.) at 129:3-130:1, 23:6-20, 25:2-23, 130:15-131:2, 131:9-132:13, 132:6-17];

- Internal knowledge of testing and failures for the MicroCool Gowns that are the subject of this litigation [Avenatti Decl., Ex. 21 (Jascomb Dep.) at 43:14-24, 43:25-44:7, 126:5-14; Ex. 22 (Mansbach Dep.) at 79:1-80:8, 138:11-139:7, 201:25-202:9, 216:22-217:18, 218:21-219:18];

- The company's communications to customers relating to testing results [Avenatti Decl., Ex. 23 (Taylor Dep.) at 86:17-87:10, 89:11-20, 89:21-90:24, 91:13-93:25, 94:1-96:22];

- The reason failed tests relating to the MicroCool Gowns were not disclosed [Avenatti Decl., Ex. 21 (Jascomb Dep.) at 50:7-51:11, 51:12-23; Ex. 22 (Mansbach Dep.) at 32:5-34:20, 35:25-37:2, 75:13-76:10, 212:24-213:16];

- Company reaction to reports that its gowns had failed testing received from a competitor—Cardinal Health [Avenatti Decl., Ex. 22 (Mansbach Dep.) at 62:25-64:23, 65:9-18, 68:25-29:20, 77:21-78:6];

- Settlement negotiations with Cardinal over a dispute that implicated the gown failures [Avenatti Decl., Ex. 22 (Mansbach Dep.) at 101:21-103:18, 103:3-104:18, 134:1-25, 146:1-147:25, 148:15-149:2, 151:15-152:3, 179:3-180:15, 202:23-203:202, 209:1-21];

- The chronology of relevant events relating to the MicroCool Gown testing failures reflected in a PowerPoint timeline. [Avenatti Decl., Ex. 21 (Jascomb Dep.) at 27:20-29:2, 31:1-14, 31:21-29:14, 34:24-35:12];

- Defendants' subsequent communications with two former employees, including a deceased witness [Avenatti Decl., Ex. 21 (Jascomb Dep.) at 87:11-17; Ex. 21 (Mansbach Dep.) at 80:11-81:15, 81:16-24, 81:25-82:12, 82:13-83:4, 93:9-94:10, 220:5-222:17, 223:9-21.]

### C. Defendants Should Be Precluded From Offering Argument, Evidence, Or Expert Opinion On These Topics.

Plaintiff anticipates that Defendants may attempt to offer explanations or defenses

-6-

during the trial regarding the subjects set forth above through other witnesses, or through their hired experts. Having stonewalled Plaintiff during discovery from obtaining this highly relevant and discoverable information on the basis of invalid privilege objections—presumably because Defendants did not like what these witnesses would have to say—Defendants cannot be permitted to now turn around and offer argument or evidence through *other* witnesses to disseminate to the jury a more favorable narrative.

For example, Defendants sought testimony from Jerry Jascomb, the lead engineer actually involved in the testing of the MicroCool Gowns and tasked with trying to find a solution to the problems with the gowns' sleeves, what he knew about the company's internal investigation relating to the gown failures. Defense counsel asserted privilege objections and instructed Mr. Jascomb to refuse to provide this information. [Avenatti Decl., Ex. 21 (Jascomb Dep.) at 129:3-130:1, 23:6-20, 25:2-23, 130:15-131:2, 131:9-132:13, 132:6-17.] Having made a choice that Mr. Jascomb will not provide this information to Plaintiff, Defendants may not now appear at trial and provide testimony through another employee of the company describing their internal investigation, what actions were taken, why the company's actions were justified, how the company never believed during the course of the investigation that the gowns were not compliant, and so on. Indeed, to allow Defendants to introduce evidence on that topic would be patently unfair after Defendants impeded Plaintiff's counsel from obtaining answers to such fundamental questions as who took part in the investigation meetings [Avenatti Decl., Ex. 21 (Jascomb Dep.) at 23:6-20], who at the company a research and development technical employee spoke to regarding the investigations outside the presence of lawyers [id. at 25:2-23], or what documents he was asked to bring to the meetings of the investigation [id. at 133:6-17].

Defendants' determination to withhold information based on attorney-client privilege was deliberate and well thought-through. For example, Counsel for Defendants consistently instructed Mr. Taylor (a non-lawyer) not to respond to questions regarding

-7-

Kimberly-Clark Corporations's letter telling purchasers of MicroCool Gowns that "Our customers, including caregivers and patients, can rest assured that the gowns pass ASTM F1671, a standard test methodology for viral penetration. [Avenatti Decl., Ex. 23 (Taylor Dep.) at 91:13-93:25.] In the face of persistent objections on privilege grounds and instructions to the witness not to respond to questions thereon, Plaintiff's counsel asked for clarification: "I want to be really clear … The company is objecting to … answering the question as to what the company meant by that statement based on the privilege? I just want to make sure we have an absolute clean record. Or based on that statement. Is that right?" Defense counsel replied: "That's correct." [Id. at 92:23-93:6.] In a subsequent exchange, Plaintiff's counsel pointedly asked Defendants to choose between asserting the privilege or providing the testimony, stating that he would deem it a waiver if an answer was made. Cf., Hasbro, 2014 WL 12561624 at *2 (privilege waived by testimony on a presumably-privileged subject). Defense counsel responded: "Then I instruct [the witness] not to answer the question." [Id. at 94:10-11.] Defendants made their choice: they used privilege as a shield, and cannot now attempt to use the withheld information offensively as a sword.

Similarly, where Defendants thwarted discovery of relevant facts based on claims of attorney client privilege during the depositions on the remaining topics, they should not be allowed to offer argument, evidence, or expert opinions during the trial as to those topics. Accordingly, Defendants should be barred from offering evidence relating to the chronology of relevant events reflected in the PowerPoint timeline that they instructed Mr. Jascomb not to testify about, because allowing that testimony would permit Defendants to use privilege as a sword and a shield. Defendants should not be permitted to offer evidence relating to internal knowledge of testing and failures for the MicroCool Gowns that are the subject of this litigation, because they foreclosed discovery on that topic during depositions. Nor should defense witnesses be allowed to now proffer an explanation for why the MicroCool Gowns test failures were not disclosed, after they,

like the defendant in <u>QS Wholesale</u>, refused to testify on the issue.

Defendants also missed their opportunity to offer explanations regarding the litigation and settlement with Cardinal Health and they should not be allowed to address this issue for the first time during trial after claiming that those subjects were protected by privilege. Nor should Defendants be permitted to offer any testimony or other evidence regarding subsequent communications with two former employees, including between Jerry Jascomb and Keith Edgett, and communications with the late Bernard Vezeau, after claiming during the depositions that the information was protected by privilege.

Accordingly, for all of these reasons, Plaintiff respectfully requests that the Court grant the relief requested and order that the evidence, argument, and expert opinion in question will not be admitted at trial.

Dated: February 7, 2017            EAGAN AVENATTI, LLP


                                   By:    /s/ Michael J. Avenatti
                                          Michael J. Avenatti
                                          Attorneys for Plaintiff, Individually and
                                          On Behalf of All Others Similarly Situated