EAGAN AVENATTI, LLP
Michael J. Avenatti, State Bar No. 206929
mavenatti@eaganavenatti.com
Ahmed Ibrahim, State Bar No. 238739
aibrahim@eaganavenatti.com
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Telephone: 949.706.7000
Facsimile: 949.706.7050

Attorneys for Plaintiff, Individually and On Behalf of All Others Similarly Situated

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

HRAYR SHAHINIAN, M.D., F.A.C.S., et al.,

Plaintiff,

vs.

KIMBERLY-CLARK CORPORATION, a Delaware Corporation, and HALYARD HEALTH, INC., a Delaware Corporation,

Defendants.

CASE NO.: 14-CV-08390 DMG (PLA)

**PLAINTIFF BAHAMAS SURGERY CENTER, LLC'S MOTION IN LIMINE NO. 3 TO EXCLUDE ARGUMENT, EXPERT TESTIMONY AND EVIDENCE ASSERTING THE MICROCOOL GOWNS ARE FDA APPROVED AND COMPLIANT**

# **MEMORANDUM OF POINTS AND AUTHORITIES**

**Relief Sought:**

Plaintiff Bahamas Surgery Center, LLC ("Plaintiff") requests that the Court preclude any evidence, argument, or expert testimony offered by Defendants Kimberly-Clark Corporation or Halyard Health Inc. ("Defendants") supporting any claim that the Food and Drug Administration (FDA) approved of the safety of the MICROCOOL* Breathable High Performance Surgical Gowns (the "MicroCool Gowns") or that the MicroCool Gowns are compliant with FDA and/or federal regulations. Plaintiff anticipates that Defendants will seek to introduce evidence and argue that the FDA certified that the gowns were safe during the 510(k) approval process, and that the FDA allowed Kimberly-Clark to market the gowns as AAMI Level 4 gowns. While this argument is in fact demonstrably false and has nothing to do with whether the gowns met industry standards during the class period, because such evidence is irrelevant and threatens to confuse or mislead the jury, it should simply be excluded in order to avoid the waste of time and resources of both the Court and the jury addressing this claim.

Similarly, Plaintiff anticipates that Defendant will argue, or at least insinuate, to the jury that because the FDA did not take action against Defendants with respect to the MicroCool Gowns, that it approved of their conduct and that Defendants therefore did not violate the law by selling the MicroCool gowns while the gowns failed industry standard tests. This argument ignores that Defendants concealed the gowns' failing tests from the FDA and the public, and more to the point, should simply be excluded as irrelevant and in order to avoid wasting the Court's time and confusing the jury.

**Background:**

Plaintiff on behalf of itself and those similarly situated, filed this class action against Defendants for marketing and selling medical gowns represented to provide the highest level of liquid barrier protection (AAMI Level 4) from the transfer of bodily fluids, bacteria, and infection between a patient and healthcare professional. Contrary to their representations, however, the evidence shows that Defendants have known since at

least as early as 2012 that these gowns, known as the MICROCOOL* Breathable High Performance Surgical Gowns (the "MicroCool Gowns" or the "Subject Gowns"), were not compliant and were failing the AAMI Level 4 standard industry tests – facts Defendants were required to disclose but did not. Among other things, the tests revealed that the gowns allowed liquid and bacterial and viral pathogens to penetrate the gowns, creating an unacceptable safety risk for healthcare professionals who would be using the gowns. Moreover, Defendants knew at all relevant times that the plant that assembled the gowns in Honduras was experiencing significant and consistent problems with the sealing equipment used to seal the sleeve seams of the gowns, thus creating product that was unfit for sale and use. This led Defendants to conclude internally that the gowns did not consistently meet industry standards and were misrepresented. And yet, Defendants continued to fraudulently sell and misrepresent these gowns as providing the highest level of liquid barrier protection (AAMI Level 4) and failed to disclose to purchasers that the gowns did not, in fact, consistently pass industry standard tests and were not safe.

Plaintiff assert three primary causes of action: (1) on behalf of itself and the Class, claims for violations of the Unfair Competition Law ("UCL"); (2) on behalf of itself and the Class, common law fraud based on fraudulent nondisclosure/concealment; and (3) only as to Plaintiff individually, i.e., not the Class, common law fraud based on affirmative misrepresentations. Plaintiff alleges and will prove at trial that the named Plaintiff in this action, and the Class, were fraudulently induced to purchase the MicroCool Gowns either by Defendants' affirmative misrepresentations (as to Plaintiff individually) regarding their compliance with the highest level of barrier protection (AAMI Level 4) and/or Defendants' failure to disclose (as to Plaintiff and the Class) that the gowns were not AAMI Level 4 compliant, were failing industry tests, and were unsafe. Defendants represented that the gowns met the standards for the highest level of barrier protection (AAMI Level 4) and likewise consistently failed to disclose the truth regarding the gowns. Plaintiff and the Class have been damaged because they would not have purchased the MicroCool Gowns but for the misrepresentations and/or omissions.

**Grounds Upon Which Relief Is Sought:**

Evidence, expert testimony or argument that the FDA approved the MicroCool Gowns under the FDA's 510(k) premarket approval process and took no action against Defendants regarding the gowns should be excluded as irrelevant. See Fed. R. Evid. 401 (Defining relevance). At issue in this case is whether Defendants represented that MicroCool Gowns met the AAMI Level 4 standard when they in fact failed the required tests, and whether Defendants concealed that the gowns failed industry-standard tests and posed a safety risk. In other words, Defendants are on trial for whether they violated California state law claims for fraud and violation of the Unfair Competition Law (UCL)—not whether they properly followed the federal regulatory process to gain initial approval to market and sell the gowns or whether they met FDA regulations relating to the gowns.

Alternately, the evidence should be excluded because the probative value of the evidence (to the extent that there is any) is outweighed by the danger of confusing or misleading the jury as well as undue consumption of time. See Fed. R. Evid. 403 (Even relevant evidence should be excluded if unduly prejudicial). Allowing Defendants to tout "FDA approval and compliance" or the "FDA permitted us to sell the gowns and did nothing about it" would plainly mislead the jury by potentially causing jurors to associate FDA initial approval and subsequent inaction with Defendants' lack of liability for state law fraud and UCL claims. The FDA is not responsible for ongoing monitoring of Defendants' products, particularly where, as here, the FDA was never informed that the MicroCool Gowns do not meet AAMI Level 4 standards and failed industry standard tests for fluid barrier protection.

**Reasons Why Relief Should Be Granted:**

**A. Evidence That the MicroCool Gowns Were Approved Following a 510(k) Review are Irrelevant and Prejudicial.**

As noted above, Plaintiff anticipates Defendants will seek to tell or suggest to the jury that the MicroCool Gowns are FDA-approved and FDA-compliant because they

went through the 510(k) premarket notification process and the FDA has not recalled or otherwise put a stop to the sale of the product. Plaintiff further anticipates, based on Defendants' inclusion of copies of numerous federal regulations on their proposed Exhibit List, that Defendants seek to argue to the jury that the MicroCool Gowns have at all times complied with federal regulations. Such evidence or argument should be excluded because it is plainly irrelevant, prejudicial, confusing to the jury, and would result in the undue consumption of time. Obtaining 510(k) approval means very little as it relates to ongoing compliance of the product and, more to the point, has nothing to do with any of the elements of common law fraud or violation of the UCL.

The Supreme Court has explained that "[t]he 510(k) process is focused on equivalence, not safety. As a result, substantial equivalence determinations provide little protection to the public. These determinations simply compare a post–1976 device to a pre–1976 device to ascertain whether the later device is no more dangerous and no less effective than the earlier device. If the earlier device poses a severe risk or is ineffective, then the later device may also be risky or ineffective." Medtronic, Inc. v. Lohr, 518 U.S. 470, 493 (1996) (quotations and citations omitted). In other words, the FDA does not even conduct its own independent tests of the device to make sure a product complies with the standards it is represented to comply with; instead, the FDA merely takes the applicant at its word. Allowing Defendants to tout this limited approval as being the equivalent of the FDA's ongoing compliance with the product or, worse yet, that the FDA certifies the product was functioning as represented and safe during the class period, would be grossly misleading.

Recognizing this concern and potential prejudice to a product liability plaintiff, the Fourth Circuit in the case of In re C.R. Bard, a design defect case, affirmed the exclusion of evidence regarding 510(k) compliance of a product because it could confuse the jury. In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig., 810 F.3d 913, 922 (4th Cir. 2016). The Court explained that 510(k) compliance only means a device is "substantially equivalent" to one that existed before 1976, not that the device is

safe. See id. at 921; cf. Riegel v. Medtronic, Inc., 552 U.S. 312, 343 (2008) (preemption clause enacted in the Medical Device Amendments of 1976 (21 U.S.C. § 360k) does not bar common law claims challenging the safety and effectiveness of a medical device given premarket approval by the FDA); Medtronic, Inc. v. Lohr, 518 U.S. 470, 496-97 (1996) (holding that section 510(k) substantial equivalence review does not preempt state common law claims); Stengel v. Medtronic, Inc., 704 F.3d 1224, 1231 (9th Cir. 2013) ("[T]he MDA [Medical Device Act] does not preempt a state-law claim for violating a state-law duty that parallels a federal-law duty under the MDA."). The Court in In re C.R. Bard explained that, as a consequence, "subjecting the jury to many hours, and possibly days, of complex testimony about regulatory compliance could lead jurors to *erroneously conclude that regulatory compliance proved product safety*" as well as "inflate the perceived importance of compliance and distract the jury from the central question" of whether the product design was unreasonable. 810 F.3d at 922 (emphasis added).

The same concerns are even stronger here. While in C.R. Bard, there was at least a coherent reason for the defendant to wish to use 510(k) compliance to show the *design* of a device was safe, here, the MicroCool Gowns became defective by failing industry tests on gowns manufactured and actually sold to customers. A 510(k) review would not touch on such events that occur *after* the review. Compliance testimony is irrelevant and may result in the jury substituting a FDA review and compliance process that neither evaluates the safety nor manufacturing process of a product following review for the jury's own judgment. Therefore, such testimony must be excluded.

**B. Evidence That the FDA Has Taken No Action Against Defendants To Date is Irrelevant and Prejudicial.**

Relevant evidence is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Thus, in order for evidence to be relevant, it must have some bearing on the elements of the offense/wrongful conduct at issue.

United States v. Dean, 980 F.2d 1286, 1288 (9th Cir. 1992). If the evidence is offered only to prove matters not at issue in an action, it is not relevant within the meaning of the law. See id. ("While Deputy Needham's reasons for going to the mobile home might have been relevant to establishing probable cause for the search, there was no need to establish probable cause in this case. Thus, the deputy's reasons for going there were not relevant to the search.").

Even if there is minimal probative value, evidence may be excluded if the probative value is outweighed by prejudice to the opposing party or if the evidence will only confuse or mislead the jury. "Under Rule 403 of the Federal Rules of Evidence, a court may exclude evidence 'if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, [or] misleading the jury.'" U.S. Sec. & Exch. Comm'n v. Jensen, 835 F.3d 1100, 1116 (9th Cir. 2016); Fed. R. Evid. 403. As such, evidence is properly excluded when the danger that it would confuse or mislead the jury outweighs any probative value. See, e.g., Id.; United States v. McQuarry, 816 F.3d 1054, 1058 (8th Cir. 2016); Broad St. Energy Co. v. Endeavor Ohio, LLC, 806 F.3d 402, 409 (6th Cir. 2015); Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc., 68 F. Supp. 3d 499, 507 (S.D.N.Y. 2014).

Courts will also exclude evidence that will result in disputes creating mini-trials. See White v. United States, 148 F.3d 787, 792 (7th Cir. 1998) (Evidence was properly excluded based on the danger of wasting time and the "clear potential to develop into a trial within a trial."); Diede v. Burlington N. R. Co., 772 F.2d 593, 596 (9th Cir. 1985) ("[T]he district court properly excluded the evidence under Fed.R.Evid. 403 because its probative value was outweighed by the danger that it would confuse the issues, mislead the jury, and waste the court's time.").

At trial, Plaintiff will prove that the MicroCool Gowns sold during the class period were not AAMI Level 4, failed industry standard tests for fluid barrier protection, posed a safety risk to health professionals, and that Defendants received complaints of strikethrough with respect to the gowns. Plaintiff will prove that these material facts

were concealed from purchasers, including Plaintiff and class members, during the class period, and that the failure to disclose these material facts constituted fraud under California law and a violation of the California UCL (Cal. Bus. & Prof. Code § 17200, *et seq*.).

Courts routinely warn that evidence of government investigations is highly prejudicial under Rule 403 "because a jury might find it difficult to evaluate independently evidence of discrimination after being informed of the investigating agency's final results." Beachy v. Boise Cascade Corp., 191 F.3d 1010, 1015 (9th Cir. 1999); see Kreidler v. Pixler, No. C06-0697RSL, 2010 WL 1536842, at *1 (W.D. Wash. Apr. 15, 2010) (excluding SEC allegations because evaluating the truth of the allegations would require a mini-trial, waste resources, and would be more prejudicial than probative). Because the reasons behind government actions are frequently unclear, evidence of government action is not probative, but may mislead or confuse the jury. See Thompson v. Quorum Health Res., LLC, No. 1:06-CV-168, 2010 WL 234801, at *4 (W.D. Ky. Jan. 13, 2010) (excluding evidence of government's decision not to intervene in *qui tam* action because it "may have been based on a variety of factors").

The district court's decision in Sawant v. Ramsey, No. 3:07-CV-980 VLB, 2012 WL 1605450, at *1 (D. Conn. May 8, 2012), is instructive. There, the district court granted the plaintiff's motion to exclude Securities and Exchange Commission letters recommending no enforcement action to be taken. In reaching this conclusion, the court explained in detail why arguments relating to regulatory inaction should be excluded:

> The Court agrees with the Plaintiffs that the prejudicial impact of the letters far exceeds any probative value that they may confer. Fed.R.Evid. 403. Admission of the letters would cause substantial unfair prejudice against the Plaintiffs due to the risk that the jury would rely excessively on the letter as an indication that the SEC determined as a matter of law that the Defendants committed no wrongdoing, when in fact the jury must examine the evidence presented and determine for itself whether any violations of the securities laws were committed. The Court's

> concerns regarding the prejudicial nature of the letters are further compounded by the minimal probative value offered by the letters in light of the dearth of any explanation as to why an investigation was not pursued. The absence of any explanation would permit the jury to conclude that the investigation was discontinued because the press release was determined to be void of any false or misleading statement, when in fact the investigation could have been discontinued for any number of reasons, such as a prosecutorial determination to prioritize different matters, a determination that any wrongdoing had been rectified, lack of sufficient resources, etc. This strong risk of the letters usurping the role of the jury in comparison to the negligible probative value offered by the letters warrants their exclusion.

Sawant, 2012 WL 1605450, at *1.

Here, evidence that the FDA did not investigate the MicroCool Gowns or take action against Defendants is not relevant to whether the gowns did not meet the AAMI Level 4 standard when they were tested.[1] Whether the FDA investigated Defendants or took action against them does not make it more or less likely that Defendants committed fraud or violated the UCL by failing to disclose material information to purchasers regarding the MicroCool Gowns during the class period. Indeed, the FDA would have no basis to investigate or take action if it was unaware that anything was wrong with the MicroCool Gowns. There is no evidence that Defendants informed the FDA of the failing tests, or of all of the problems Defendants were experiencing in manufacturing the gowns—and in particular, in properly sealing the sleeve seams. In short, allowing Defendants to present this evidence would be tantamount to Defendants inviting the jury improperly compare "apples to oranges."

Even assuming government action was somehow relevant, it would be prejudicial and subject to exclusion under Rule 403. The probative value of government inaction would be miniscule when there is no evidence Defendants ever made the FDA aware of

[1] It is also false, as there are multiple ongoing governmental investigations, including a significant investigation by the FDA.

the problems with the MicroCool Gowns. In addition, government action would be incredibly speculative, because unlike the cases above, here Defendants could not even point to a document showing that the government was not going to take action regarding the MicroCool gowns while the gowns failed testing. If Defendant is permitted to introduce evidence about government inaction, Plaintiff and Defendant will hold what amounts to a mini-trial consisting of competing experts debating the reasons why the FDA chooses to take action in a particular case, whether it will take action when it only learns of a problem after it has been corrected, how the FDA prioritizes its resources, what the FDA knew at various points in time, and other topics that will be purely speculative. Even with this extensive and lengthy speculation, there would still be a risk that the jury would simply believe that because the FDA has not ***yet*** taken formal action, Defendants could not have committed fraud or violated the UCL. In doing so, they would be abdicating their role as finders of fact. They would also ignore that the elements of Plaintiff's claims would have no relationship to whatever factors may motivate the FDA to take enforcement action. In sum, Defendants should not be permitted to manipulate the common layman's belief that the FDA is responsible for everything relating to medical products and that FDA inaction means there is nothing wrong with the product.

For all of these reasons, Plaintiff respectfully request that the Court grant the relief requested and order that the evidence in question is not admissible at trial.

Dated: February 7, 2017 EAGAN AVENATTI, LLP

By: /s/ Michael J. Avenatti
Michael J. Avenatti
Attorneys for Plaintiff, Individually and On Behalf of All Others Similarly Situated