1  EAGAN AVENATTI, LLP
   Michael J. Avenatti, State Bar No. 206929
2  mavenatti@eaganavenatti.com
   Ahmed Ibrahim, State Bar No. 238739
3  aibrahim@eaganavenatti.com
   520 Newport Center Drive, Suite 1400
4  Newport Beach, CA 92660
   Telephone:  949.706.7000
5  Facsimile:   949.706.7050

6  Attorneys for Plaintiff, Individually and On
   Behalf of All Others Similarly Situated
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | HRAYR  SHAHINIAN,  M.D.,  F.A.C.S., et al., | CASE NO.:  14-CV-08390 DMG (PLA) |

12

13                   Plaintiff,              **PLAINTIFF BAHAMAS SURGERY CENTER, LLC'S MOTION TO**

         vs.                                 **EXCLUDE OR LIMIT EXPERT**
14                                           **TESTIMONY OF PHILIP J.**
   KIMBERLY-CLARK  CORPORATION,              **PHILLIPS (FED. EVID. 702;**
15 a Delaware Corporation, and HALYARD       **DAUBERT V. MERRELL DOW**
   HEALTH, INC., a Delaware                  **PHARMACEUTICALS) AND**
16 Corporation,                              **REQUEST FOR DAUBERT**
                                             **HEARING**
17                   Defendants.

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

I.   INTRODUCTION ....................................................................................................1

3

4

II.  LEGAL STANDARDS .........................................................................................2

5

III.    ARGUMENT.....................................................................................................4

6

A.  Mr. Phillips Should be Prohibited from Testifying About Facts. ............................4

7

8

B.  Background Testimony About the FDA Regulation of Medical Devices, Premarket Notification, and FDA Regulation of Surgical Gowns Must be Excluded....5

9

10

C.  Testimony About the Reasonableness of Defendants' Actions Must be Excluded. ....................................................................................................................7

11

12

D.  Testimony About the 510(k) Clearance of MicroCool Gowns Must be Excluded...8

13

E.  Testimony Comparing Regulation of Surgical Gowns to Other Devices Must Be Excluded. .............................................................................................................9

14

15

F.  Testimony Discussing FDA Enforcement Options and Whether the MicroCool Gowns May Be Legally Sold Must Be Excluded............................................................9

16

17

G.  Testimony that Healthcare Providers Were Permitted to Use the MicroCool Gowns in Whatever Ways they Deem Medically Appropriate Must be Excluded.......12

18

19

IV.    CONCUSION ..................................................................................................13

20

21

22

23

24

25

26

27

28

1

2

## TABLE OF AUTHORITIES

3

## CASES

4

5
Bourjaily v. United States,
   483 U.S. 171 (1987)...................................................................................3

6

7
Daubert v. Merrell Dow Pharm., Inc.,
   509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ........................1, 3, 4

8

9
Daubert v. Merrell Dow Pharmaceuticals, Inc.,
   43 F.3d 1311 (9th Cir. 1995) ....................................................................1, 3, 4

10

11
In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.,
   810 F.3d 913 (4th Cir. 2016) .....................................................................6, 8

12

13
Kumho Tire Co., Ltd. v. Carmichael,
   526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ...........................1, 4

14

15
Medtronic, Inc. v. Lohr,
   518 U.S. 470 (1996).....................................................................................8

16

17
Pulaski & Middleton v. Google,
   802 F.3d 979 (9th Cir. 2015) ......................................................................7

18

19
Rapsomanikis v. U.S. Dep't of Health & Human Servs.,
   990 F.2d 1259 (9th Cir. 1993) ....................................................................11

20

21
Riegel v. Medtronic, Inc.,
   552 U.S. 312 (2008).....................................................................................8

22

23
Sawant v. Ramsey,
   2012 WL 1605450 (D. Conn. May 8, 2012) ...............................................10

24

25
Stengel v. Medtronic, Inc.,
   704 F.3d 1224 (9th Cir. 2013) ....................................................................8

26

27
United States v. An Article of Device . . . Diapulse,
   768 F.2d 826 (7th Cir. 1985) ......................................................................11

28

---

**PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF OF PHILIP J. PHILLIPS**

United States v. Article of Device Labeled in Part 110 V Vapozone,
    194 F. Supp. 332 (N.D. Cal. 1961) .................................................................. 11

United States v. Articles of Device Consisting of Three Devices . . . "Diapulse",
    527 F.2d 1008 (6th Cir. 1976) ...................................................................... 11

United States v. Cordoba,
    104 F.3d 225 (9th Cir. 1997) ........................................................................ 3

United States v. Diapulse Corp. of Am.,
    514 F.2d 1097 (2d Cir. 1975) ...................................................................... 12

United States v. Diapulse Mfg. Corp. of Am.,
    389 F.2d 612 (2d Cir. 1968) ........................................................................ 11

United States v. Kaplan,
    836 F.3d 1199 (9th Cir. 2016) .......................................................... 11, 12, 13

United States v. Olsen,
    161 F.2d 669 (9th Cir. 1947) ...................................................................... 11

United States v. One Device, More or Less, Ellis Micro-Dynameter,
    224 F. Supp. 265 (E.D. Pa. 1963) ................................................................ 11

## STATUTES

21 U.S.C. §§ 331 ...................................................................................... 9

21 U.S.C. § 334 ................................................................................... 9, 11

21 U.S.C. §§ 351 ...................................................................................... 9

21 U.S.C. §§ 352 ...................................................................................... 9

21 U.S.C. § 360d ...................................................................................... 7

21 U.S.C. § 360k ...................................................................................... 8

Cal. Bus. & Prof. Code § 17200 .................................................................. 7

Cal. Bus. & Prof. Code § 17204 .................................................................. 7

# RULES

Fed.R.Evid. 403.................................................................................................10, 12

Fed. R. Evid. 602...................................................................................................5

Fed. R. Evid. 702.........................................................................................1, 2, 3, 4

# OTHER AUTHORITIES

CACI 1900 .............................................................................................................7

CACI 1901 .............................................................................................................7

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5053 .......3

**PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF PHILIP J. PHILLIPS**

1    Plaintiff Bahamas Surgery Center, LLC respectfully submits this memorandum of

2    law in support of its motion to exclude, or in the alternative limit, the expert testimony of

3    Philip J. Phillips under Rule 702 of the Federal Rules of Evidence and <u>Daubert v. Merrell

4    Dow Pharm., Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its

5    progeny.

6    # I.    INTRODUCTION

7    Defendants Kimberly-Clark Corporation and Halyard Health, Inc.'s (collectively,

8    "Defendants") expert, Philip J. Phillips., seeks to present expert testimony in which he

9    (1) discusses at length the FDA regime regulating medical devices, (2) argues that

10   Defendants acted reasonably with respect to the failure to take action in response to their

11   MicroCool Gowns not meeting testing standards, (3) claims that Defendants were

12   permitted to sell misbranded or adulterated gowns, and (4) asserts that the MicroCool

13   Gowns Defendants sold were not worthless.   [Omnibus Declaration of Michael J.

14   Avenatti in Support of Plaintiff's Motions to Exclude or Limit Expert Testimony

15   ("Avenatti Decl."), Ex. 15 Expert Report of Philip J. Phillips ("Phillips").]

16   A trilogy of well-settled case precedent deals with the district court's role as

17   gatekeeper with respect to expert testimony and establishing guidelines for the evaluation

18   of such testimony. <u>Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I)</u>, 509 U.S.

19   579, 592 (1993); <u>Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II)</u>, 43 F.3d

20   1311, 1316 (9th Cir. 1995); and <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 119

21   S.Ct. 1167, 143 L.Ed.2d 238 (1999).

22   Under these "<u>Daubert</u> standards," the court acts as a gatekeeper to keep out

23   irrelevant or unreliable expert testimony.  <u>See</u> <u>Kumho Tire</u>, 526 U.S. at 145; <u>Daubert</u>, 509

24   U.S. at 596.  Plaintiff's motion should be granted for at least the following reasons:

25   1.    Expert testimony of Mr. Phillips is not necessary to repeat facts (assuming

26   that they were even relevant to begin with, which Plaintiff disputes for the reasons set

27   forth in Motion in Limine No. 3) that Defendants may present directly to the jury through

28   evidence.

2.      The vast majority of the background information Mr. Phillips provides about FDA regulation of medical devices, premarket notification, and FDA regulation of surgical gowns is irrelevant to this case.

3.      Mr. Phillips' proposed testimony opining on the reasonableness of Defendants' actions does not assist the jury because reasonableness is not an element to any claim or defense in this case.

4.      Testimony about the 510(k) clearance of MicroCool Gowns is irrelevant and may mislead the jury.

5.      Testimony comparing regulation of surgical gowns to other devices is irrelevant.

6.      Mr. Phillips is mistaken as a matter of law that adulterated or misbranded MicroCool Gowns could legally be sold.

7.      Mr. Phillips is incorrect that physicians are permitted to use misbranded or adulterated surgical gowns.

In sum, because the vast majority of the report Mr. Phillips has submitted is irrelevant, likely to confuse the jury, or simply wrong as a matter of Ninth Circuit law, if Defendants wish to have Mr. Phillips testify at all during the trial, his testimony will need to be restricted to clearly delineated topics.

## II.     LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence governs "Testimony by Expert Witnesses." The Rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)     the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles
and methods; and

(d)     the expert has reliably applied the principles and
methods to the facts of the case.

Fed. R. Evid. 702.

Defendants bear the burden of proving the admissibility of their experts' testimony.[1] In determining whether the offering party has met its burden of establishing the admissibility of expert evidence, the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I), 509 U.S. 579, 592 (1993). The Supreme Court construed Rule 702 to impose on federal courts the gatekeeping role of ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert I, 509 U.S. at 597.  In performing its duty as "gatekeeper," the trial judge must determine whether or not the underlying proposed expert testimony is scientifically valid, amounts to "scientific knowledge," constitutes "good science," and is "derived by the scientific method." Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II), 43 F.3d 1311, 1316 (9th Cir. 1995).  In addition to meeting the Daubert standard, any proffered expert opinion must "assist the trier of fact in understanding the evidence or in determining a fact in issue." United States v. Cordoba, 104 F.3d 225, 229 (9th Cir. 1997).

The Supreme Court in Daubert I held that courts should consider five criteria when determining the admissibility of expert testimony:  (1) whether the proffered knowledge can be or has been tested; (2) whether the theory or technique has been subjected to peer

---

[1] It is axiomatic that the burden of proof is on the party introducing evidence. See Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5053 ("Normally the proponent of the evidence will have the burden of proving the facts upon which admissibility depends, though often the objector will have the burden of producing evidence to show the existence of grounds for the objection.").  In Daubert, the Supreme Court stated that the proponent of the evidence must show by a preponderance of the proof that the basis for the proffered expert opinion is reliable. See Daubert I, 509 U.S. at 592 n.10 (citing Bourjaily v. United States, 483 U.S. 171, 175-176 (1987)).

review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or technique has gained general acceptance in the relevant scientific community. See Daubert I, 509 U.S. at 592-94.  A trial court should make findings on each of the relevant factors concerning whether expert testimony is scientifically reliable in order to properly exercise its discretion.  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 159 (1999) (Scalia, J., concurring) ("[I]n a particular case[,] the failure to apply one or another of [the Daubert factors] may be unreasonable, and hence an abuse of discretion.")

The standard grounds to exclude evidence, including relevance and prejudice, play a role in a Daubert analysis as well.  An expert's testimony is only admissible if "it logically advances a material aspect of the proposing party's case." Daubert II, 43 F.3d at 1315.  The Supreme Court has stated that under Rule 702, expert testimony must be "relevant to the task at hand." Daubert I, 509 U.S. 580.  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Id. at 591 (quotation and citation omitted).

Rule 403 becomes especially significant when considering the admissibility of expert testimony because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." Id. at 595 (citations and quotations omitted).

Accordingly, this Court should evaluate whether the opinions Mr. Phillips offered in this case are relevant, consistent with Ninth Circuit law, and not likely to confuse the jury.

## III.   ARGUMENT

### A.   Mr. Phillips Should be Prohibited from Testifying About Facts.

In several portions of his report, Mr. Phillips simply repeats facts that, assuming

-4-

they are even relevant to begin with,[2] Defendants should be required to establish through fact witnesses.  For example, there is no reason for Mr. Phillips to recount Kimberly-Clark's 510(k) approval process.  Defendants' own employees were involved in this process and, thus, they are the ones with proper foundation and personal knowledge to testify about that process, along with the documents they submitted as part of the process.  [Phillips ¶¶52-57.]  See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  In addition, Mr. Phillips on several occasions testifies, *without adequate foundation*, about Defendants' knowledge, motivations, and the reasoning behind their decisions, such as to not recall the MicroCool Gowns or to disregard the Cardinal Health test results.  [Phillips ¶¶79-84, 102-111.]  This also requires fact witness testimony to testify about what *actually* happened (not Mr. Phillips' speculation about what he thinks may have happened or what Defendants' motivations were).  See Fed. R. Evid. 602.  Defendants are capable of introducing their records or having fact witnesses testify to their reasoning process in making decisions – having an expert "spoon feed" a jury alternative facts is wholly inappropriate. Therefore, Mr. Phillips does not assist the jury by testifying about facts.

### B. Background Testimony About the FDA Regulation of Medical Devices, Premarket Notification, and FDA Regulation of Surgical Gowns Must be Excluded.

In his report, Mr. Phillips describes in great detail the three class of medical devices, factors the FDA considers when approving a device, and the premarket notification process, and background about the regulation of surgical gowns.  [Phillips ¶16-51.]  The vast majority of this information is irrelevant and will only confuse jurors,

---

[2] In Motion in Limine No. 3, Plaintiff seeks to exclude any evidence or argument that the MicroCool Gowns complied with FDA or other federal regulations because such evidence or argument would be irrelevant and would mislead and confuse the jury. Therefore, Plaintiff's position is that none of the facts relating to FDA compliance or clearance of the gowns under the 510(k) process should come into evidence.  This is also discussed in further detail in section III(B) below.

who may instead incorrectly believe that the FDA has approved Defendants' conduct and not make independent evaluations about their liability.  This was the concern expressed in In re C.R. Bard, where the Fourth Circuit affirmed the exclusion of evidence regarding the regulatory approval of a product because "subjecting the jury to many hours, and possibly days, of complex testimony about regulatory compliance could lead jurors to erroneously conclude that regulatory compliance proved product safety" as well as "inflate the perceived importance of compliance and distract the jury from the central question" of whether the product design was unreasonable.  In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig., 810 F.3d 913, 922 (4th Cir. 2016).  Mr. Phillips risks precisely this when he discusses how the FDA regulation of devices provides a "reasonable assurance of safety and effectiveness."  [Philips ¶¶26-28.]

The jury does not need to know about the various classes of medical devices, the details about how surgical gowns are approved, or other background information to be able to understand the issues in this case.  The jury only needs to understand three regulatory issues to follow the arguments presented by the parties in this case: (1) because the MicroCool gowns were approved as AAMI Level 4, they must comply with the standard's requirements, (2) medical devices that do not comply with the standard they were approved under are misbranded and/or adulterated, and (3) devices that are misbranded or adulterated are subject to seizure and cannot be held, sold or used.  An extended background discussion of FDA regulations and device approval neither helps Defendants present their arguments nor refute Plaintiff's arguments.   Information regarding how the MicroCool Gowns came to be approved, or the various classifications of medical devices will not help the jury understand the issues in this case but will waste substantial time.   In particular, this background information includes discussing "voluntary" standards [Phillips ¶¶22, 35, 38, 44]—a misnomer that may easily confuse jurors because defendants became bound by the "voluntary" AAMI Level 4 standard when they sought to be approved under that standard in order to benefit from being able to market the product as meeting the higher standard. [Avenatti Decl., Ex. 14 Declaration

-6-

of Dennis M. Moore in Support of Plaintiff Bahamas Surgery Center, LLC's Opposition to Defendants' Motion for Summary Judgment, ECF no. 241-4 ("Moore Decl."), ¶¶ 34-35.] See 21 U.S.C. § 360d (statutory basis for the use of consensus standards to meet Class II device requirements).  A juror may become confused by the discussion of voluntary standards and instead believe that Defendants did not have to comply with the AAMI Level 4 standard (or any standard) when they manufactured and sold the MicroCool Gowns during the class period.  Because an extended background discussion of the FDA regulatory process is irrelevant and may confuse the jury, it should be excluded from the testimony Mr. Phillips provides.

**C.    Testimony About the Reasonableness of Defendants' Actions Must be Excluded.**

In several instances, Mr. Phillips argues that Defendants acted reasonably.  In particular, Mr. Phillips discusses the actions Defendants took when it learned that the MicroCool Gowns failed testing and states that Defendants acted reasonably in concluding that the failed test results were acceptable and that further action was not necessary.  [Phillips ¶¶79-91.]  He later states that based on Defendants' previous interactions with the FDA, they were justified in not recalling the MicroCool Gowns.  [Phillips ¶¶103-107.]  Finally, Mr. Phillips states that Defendants were justified in limiting their evaluation of MicroCool Gown testing failures to their own data and not results from their competitor Cardinal Health.  [Phillips ¶¶108-111.]  None of these opinions are relevant to the case, because no element of Plaintiff's claims, and no element of a defense Defendants could present, considers whether they acted "reasonably" in these areas.  See Judicial Council of California Civil Jury Instructions (hereafter, "CACI") 1900 & 1901 (defining elements of fraud based on intentional misrepresentations and concealment); Cal. Bus. & Prof. Code § 17200, 17204; Pulaski & Middleton v. Google, 802 F.3d 979, 985 (9th Cir. 2015) (discussing requirements to prove violation of the UCL).  To the contrary, this case concerns Defendants' sale of

MicroCool Gowns they knew failed to consistently meet the AAMI Level Standard and pass industry tests.

### D. Testimony About the 510(k) Clearance of MicroCool Gowns Must be Excluded.

Mr. Phillips discusses the 510(k) clearance of the MicroCool Gown even though that has nothing at all to do with the issues in this case.  [Phillips ¶¶52-57.]  In In re C.R. Bard, a design defect case, the Fourth Circuit affirmed the exclusion of evidence regarding 510(k) compliance of a product because it could confuse the jury, as discussed above.  In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig., 810 F.3d at 922.  The Court explained that 510(k) compliance only means a device is "substantially equivalent" to one that existed before 1976, not that the device is safe.  See id. at 921; cf. Riegel v. Medtronic, Inc., 552 U.S. 312, 343 (2008) (preemption clause enacted in the Medical Device Amendments of 1976 (21 U.S.C. § 360k) does not bar common law claims challenging the safety and effectiveness of a medical device given premarket approval by the FDA); Medtronic, Inc. v. Lohr, 518 U.S. 470, 496-97 (1996) (holding that section 510(k) substantial equivalence review does not preempt state common law claims); Stengel v. Medtronic, Inc., 704 F.3d 1224, 1231 (9th Cir. 2013) ("[T]he MDA [Medical Device Act] does not preempt a state-law claim for violating a state-law duty that parallels a federal-law duty under the MDA.").

The same concerns are even stronger here.  While in C.R. Bard, there was at least a coherent reason for the defendant to wish to use 510(k) compliance to show the *design* of a device was safe, here, the MicroCool Gowns became defective by failing industry tests on gowns manufactured and actually sold to customers.  A 510(k) review would not touch on such events that occur *after* the review.  510(k) compliance testimony is irrelevant and may result in the jury substituting their judgment for either an FDA review process that neither evaluates the safety nor manufacturing process of a product following review.  Therefore, such testimony must be excluded.

### E.    Testimony Comparing Regulation of Surgical Gowns to Other Devices Must Be Excluded.

Phillips compares regulation of surgical gowns to surgical gloves and concludes that the FDA viewed surgical gowns as a lower risk because they are not subject to special regulations.  [Phillips ¶¶92-101.]  He then claims that Defendants were aware that the FDA had not created special regulations for surgical gowns and therefore decided to not recall the MicroCool Gowns.  [Phillips ¶102.]  None of this is relevant; *all defective devices are subject to the same background statutes and regulations*, including 21 U.S.C. §§ 331, 351, 352, and 334.  [Moore Decl. ¶48.]  Therefore, Defendants were not permitted to sell the MicroCool Gowns.  Defendants' motives in declining to *recall* the gowns are not relevant to any of Plaintiff's causes of action, which relate to the *sale* of the gowns.  Discussion of surgical gloves standards (or the standard for any device besides surgical gowns) is irrelevant and may confuse the jury into believing that only devices that are subject to specific regulations are misbranded or adulterated and that the background statutes and regulations do not apply.  Therefore, this testimony must be excluded.

### F.    Testimony Discussing FDA Enforcement Options and Whether the MicroCool Gowns May Be Legally Sold Must Be Excluded.

Mr. Phillips discusses various enforcement options available to the FDA before concluding that the FDA has not taken any enforcement action against the MicroCool Gown testing failures under the revised AAMI PB70:2012 standard and that therefore, Defendants are still permitted to sell the gowns.   [Phillips ¶¶112-117, 119, 120.] Discussion of FDA enforcement is irrelevant and inadmissible under Rule 403 because the prejudicial impact outweighs any probative value and the evidence would risk confusion of the jury and undue consumption of time.  Mr. Moore has clearly explained the obvious point that the FDA always has the option to enforce violations, but to be able to do so, it must be aware of them.  [Moore Decl. ¶¶49-51.]  This is not any different than a prosecutor failing to learn of a crime or declining to prosecute it; whether a crime was committed is not dependent on the prosecutor's actions.  [Moore Decl. ¶50.]  The

MicroCool Gowns continued to be subject to seizure for as long as they existed.  [Moore Decl. ¶49.]

Sawant v. Ramsey, No. 3:07-CV-980 VLB, 2012 WL 1605450, at *1 (D. Conn. May 8, 2012), is instructive.  There, the district court granted the plaintiff's motion to exclude Securities and Exchange Commission letters recommending no enforcement action to be taken.  In reaching this conclusion, the court explained in detail why arguments relating to regulatory inaction should be excluded:

> The Court agrees with the Plaintiffs that the prejudicial impact of the letters far exceeds any probative value that they may confer. Fed.R.Evid. 403.  Admission of the letters would cause substantial unfair prejudice against the Plaintiffs due to the risk that the jury would rely excessively on the letter as an indication that the SEC determined as a matter of law that the Defendants committed no wrongdoing, when in fact the jury must examine the evidence presented and determine for itself whether any violations of the securities laws were committed. The Court's concerns regarding the prejudicial nature of the letters are further compounded by the minimal probative value offered by the letters in light of the dearth of any explanation as to why an investigation was not pursued. The absence of any explanation would permit the jury to conclude that the investigation was discontinued because the press release was determined to be void of any false or misleading statement, when in fact the investigation could have been discontinued for any number of reasons, such as a prosecutorial determination to prioritize different matters, a determination that any wrongdoing had been rectified, lack of sufficient resources, etc.  This strong risk of the letters usurping the role of the jury in comparison to the negligible probative value offered by the letters warrants their exclusion.

Sawant, 2012 WL 1605450, at *1.

Therefore, this discussion is irrelevant, a waste of time, and will only confuse the jury, which may incorrectly believe the FDA's lack of enforcement (when it was ignorant of the fact that Defendants' gowns were failing testing) somehow justified the continued sale of the MicroCool Gowns.  To the extent that Mr. Phillips believes lack of action by

-10-

the FDA has any significance, his opinion is without any basis and not an expert opinion.[3]

Moreover, to the extent Mr. Phillips' statement that "Kimberly-Clark could continue to legally market the gowns that were the subject of 510(k) clearances" [Phillips ¶117] refers to the present day, his statement is irrelevant because the gowns are outside of the class period.  If he is claiming defective or misbranded gowns during the class period could be sold, then he is simply wrong under federal and California law and therefore not providing appropriate expert testimony.  [Moore Decl. ¶¶16-28.]  See United States v. Olsen, 161 F.2d 669, 671 (9th Cir. 1947)(rejecting argument that medical device could be seized from home of person who wanted to keep it because "such facts could not and did not exempt the article from the provisions of Sec. 304 of the Act"); United States v. Kaplan, 836 F.3d 1199, 1209-1210 (9th Cir. 2016) (explaining that using a medical device in a procedure is "held for sale" within the meaning of 21 U.S.C. § 334); Rapsomanikis v. U.S. Dep't of Health & Human Servs., 990 F.2d 1259 (9th Cir. 1993) (FDA agents seized devices plaintiff used "purportedly to treat certain medical conditions, including cancer and AIDS" under 21 U.S.C. § 334); United States v. Article of Device Labeled in Part 110 V Vapozone, 194 F. Supp. 332, 333 (N.D. Cal. 1961) (explaining that physical therapist's device could be seized because it had previously been in interstate commerce); United States v. An Article of Device . . . Diapulse, 768 F.2d 826, 828 (7th Cir. 1985) (two misbranded devices were seized from doctor's medical offices under 21 U.S.C. § 334); United States v. Articles of Device Consisting of Three Devices . . . "Diapulse", 527 F.2d 1008, 1012 (6th Cir. 1976) (devices seized from office of claimant who used them); United States v. Diapulse Mfg. Corp. of Am., 389 F.2d 612, 614 (2d Cir. 1968) ("device in the possession of an Atlanta chiropractor" when seized); See, e.g., United States v. One Device, More or Less, Ellis Micro-Dynameter, 224 F. Supp. 265, 266 (E.D. Pa. 1963) (claimant's seized device was replacement for one

---

[3] Mr. Phillips also fails to disclose that multiple FDA and governmental investigations relating to the gowns are ongoing.

**PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF PHILIP J. PHILLIPS**

"he used extensively"); cf. United States v. Diapulse Corp. of Am., 514 F.2d 1097, 1098 (2d Cir. 1975) ("The contention that the injunction was improperly extended to cover devices held by practitioners is also without merit. Such devices, used in the treatment of patients, may properly be considered "held for sale" within the meaning of the Food, Drug, and Cosmetic Act").

Regardless, the testimony is irrelevant and will only confuse the jury.

### G.   Testimony that Healthcare Providers Were Permitted to Use the MicroCool Gowns in Whatever Ways they Deem Medically Appropriate Must be Excluded.

Mr. Phillips claims that the "FDA is prohibited from interfering with the practice of medicine" and in the absence of enforcement action "healthcare providers could use the MicroCool gowns in whatever ways they deem medically appropriate."   [Phillips ¶118.]  It is unclear what the relevance of this claim is and, as discussed above, it falsely claims that FDA enforcement determines whether gowns are misbranded or adulterated. This will only confuse and mislead the jury and thus should be excluded under Rule 403.

Regardless of what possible relevance the claim has, it is false as a matter of law. As the court in United States v. Kaplan recently explained, the FDA's prohibition of *products* does not interfere with the *practice* of medicine.  See 836 F.3d 1199, 1210 (9th Cir. 2016).  The FDA does not claim procedures using the products are unsafe, just that the product itself is unsafe.  See id.  Using misbranded or adulterated products is not an example of a doctor's permissible "off-label" use of a product.

> Off-label use allows a physician to use drugs or devices regulated by the FDCA for a purpose not approved by the FDA. The purpose of this exception is to allow physicians the freedom to manage the care of their patients. . . . [O]ff-label use does not immunize a physician who uses adulterated products. Though off-label use allow[s] physicians to prescribe ... lawful drugs for unapproved uses, off-label use of *adulterated* products is beyond the scope of the privilege.  While a physician may exercise professional judgment in the off-label use of

**PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF PHILIP J. PHILLIPS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> unadulterated products, nothing in the FDCA or caselaw suggests that the use of adulterated products is ever permissible.

Kaplan, 836 F.3d at 1210-11 (citations omitted, emphasis original).  If healthcare providers chose to use the MicroCool Gowns knowing that they were misbranded or adulterated, they would have simply exposed themselves to FDCA liability.  See id. (doctor criminally prosecuted for using adulterated medical devices).  Therefore, this line of discussion must be excluded because it is wrong as a matter of Ninth Circuit law.

## IV.   CONCLUSION

For the above-stated reasons, Plaintiff Bahamas Surgery Center, LLC respectfully requests that this motion to exclude, or in the alternative limit, the expert testimony of Philip J. Phillips be granted.  Plaintiff also requests a Daubert hearing to the extent the Court deems such a hearing to be necessary or helpful in assessing Plaintiff's motion.

Dated:  February 7, 2017                    EAGAN AVENATTI, LLP


                                            By:        /s/ Michael J. Avenatti
                                                 Michael J. Avenatti
                                                 Attorneys for Plaintiff, Individually and
                                                 On Behalf of All Others Similarly Situated