ALEXANDER CALFO (State Bar No. 152891)
acalfo@kslaw.com
JULIA ROMANO (State Bar No. 260857)
jromano@kslaw.com
KING & SPALDING LLP
633 W. Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants KIMBERLY-CLARK
CORPORATION, a Delaware Corporation; and
HALYARD HEALTH, INC., a Delaware
Corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HRAYR SHAHINIAN, M.D., F.A.C.S., et al.,<br><br>              Plaintiff,<br><br>    vs.<br><br>KIMBERLY-CLARK CORPORATION, a Delaware Corporation, and HALYARD HEALTH, INC., a Delaware Corporation,<br><br>              Defendants. | CASE NO.: 14-CV-08390 DMG (PLA)<br><br>**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO LOCAL RULE 16-4**<br><br>Final Pretrial Conf.: February 28, 2017<br>Time: 2:00 p.m.<br>Ctrm: 8C<br>Trial Date: March 28, 2017 |

# TABLE OF CONTENTS

I.    CLAIMS PLAINTIFF PLANS TO PURSUE............................................................1

II.   CLAIM 1: FRAUDULENT CONCEALMENT ......................................................1

    A.   Elements Required to Establish Plaintiff's Claim for Fraudulent Concealment..........................................................................1

    B.   Defendants' Description of Key Evidence in Opposition to Claim for Fraudulent Concealment ..........................................................2

        1.   Element 1: Did Defendants (a) disclose some facts to Bahamas but intentionally fail to disclose other facts, making the disclosure deceptive; or (b) intentionally fail to disclose certain facts that were known only to them and that Bahamas could not have discovered; or (c) prevent Bahamas from discovering certain facts?..........................2

        2.   Element 2: Did Bahamas not know of the concealed facts?........................................................................................7

        3.   Element 3: Did Defendants intend to deceive Bahamas by concealing the facts? ........................................8

        4.   Element 4: Would Bahamas reasonably have behaved differently, if the omitted information had been disclosed? ....................................................................8

        5.   Element 5: Was Bahamas harmed?.....................................8

        6.   Element 6: Was Defendants' concealment a substantial factor in causing Bahamas' harm?.................9

III.  CLAIM 2: FRAUDULENT CONCEALMENT UNDER THE UCL..............................................................................................9

    A.   Elements Required to Establish Plaintiff's Claim for Fraudulent Concealment Under the UCL................................9

    B.   Defendants' Description of Key Evidence in Opposition to Claim for Fraudulent Concealment Under the UCL ....................10

        a)   Element 1: Did Bahamas purchase MICROCOOL* gowns sold by Defendants?..........................10

i

|   |   | b) | Element 2: Did Defendants omit facts (i) that were contrary to an actual representation to which Bahamas was exposed; or (ii) that they had a duty to disclose to Bahamas?....................................10 |
|   |   | c) | Element 3: Were Defendants' omissions likely to deceive reasonable consumers?............................11 |
|   |   | d) | Element 4: Were the facts omitted by Defendants material to Bahamas' decision to purchase MICROCOOL* gowns?............................11 |
|   |   | e) | Element 5: Was Bahamas harmed by Defendants' omissions?............................11 |
| IV. | CLAIM 3: FRAUDULENT MISREPRESENTATION ........................................11 |
|   | A. | Defendants' Objection................................11 |
|   | B. | Defendants' Description of Key Evidence in Opposition to Claim for Fraudulent Misrepresentation ................................11 |
| V. | CLAIM 4: FRAUDULENT MISREPRESENTATION UNDER THE UCL................................11 |
|   | A. | Defendants' Objection................................11 |
|   | B. | Defendants' Description of Key Evidence in Opposition to Claim for Fraudulent Misrepresentation Under the UCL ...........................12 |
| VI. | AFFIRMATIVE & OTHER DEFENSES ........................12 |
|   | A. | First Defense: Lack of Subject-Matter Jurisdiction ......................12 |
|   |   | 1. | Defendants' Description of Key Evidence in Support of the Defense of Lack of Subject-Matter Jurisdiction......................13 |
|   | B. | Second Defense: Failure to Mitigate Damages............................13 |
|   |   | 1. | Elements Required to Establish Defendants' Defense of Mitigation of Damages. ....................13 |
|   |   | 2. | Defendants' Description of Key Evidence in Support of Defense of Mitigation of Damages................14 |
|   | C. | Third  Defense: Preemption ........................14 |

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1.   Defendants' Description of Key Evidence in Support
of the Defense of Preemption................................................14

D.   Fourth  Defense: Unconstitutionality ...........................................14

1.   Defendants' Description of Key Evidence in Support
of Defense of Unconstitutionality.......................................15

E.   Fifth Defense: Economic Loss Doctrine .......................................15

1.   Elements Required to Establish Defendants' Defense
of Economic Loss Doctrine..................................................15

2.   Defendants' Description of Key Evidence in Support
of Defense of Economic Loss Doctrine ...............................16

F.   Sixth Defense: Merger Clause and Other Contractual
Limitations on Recovery ...............................................................16

1.   Defendants' Description of Key Evidence in Support
of Defense of Merger Clauses and Other Contractual
Limitations on Recovery.......................................................16

VII.   EVIDENTIARY ISSUES ........................................................................17

VIII.   ISSUES OF LAW.....................................................................................17

A.   Bahamas Cannot Serve as Class Representative and
Maintain Its Claims Based on Affirmative
Misrepresentation. ........................................................................17

B.   The Contracts Governing Most Class Members' Claims
Prohibit Punitive or any other Damages in Excess of
Purchase Price, and Dispose of the Fraud Claims Under the
Economic Loss Doctrine. .............................................................22

C.   Bahamas' Concealment Claims Are Inappropriate for Class
Certification...................................................................................24

D.   The Court Lacks Subject-Matter Jurisdiction Over This
Matter.............................................................................................26

E.   Bahamas' Claim for Punitive Damages Fails as a Matter of
Law, and in Any Case Cannot Be Determined on a
Classwide Basis.............................................................................27

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

F.   Prejudgment Interest Is Improper, and in Any Case, Bahamas' Expert's Attempt to Calculate It Is Legally Incorrect...........................................................................29

G.   Injunctive Relief Is Inappropriate. .......................................31

IX.   BIFURCATION OF ISSUES ..........................................................31

X.   CLAIMS FOR THE JURY AND CLAIMS FOR THE COURT ...........32

XI.   ATTORNEYS' FEES ....................................................................32

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

# I.     CLAIMS PLAINTIFF PLANS TO PURSUE

<u>Claim 1</u>: Defendants Kimberly-Clark Corporation ("Kimberly-Clark") and Halyard Health, Inc. ("Halyard") (collectively "Defendants") committed fraud based on their fraudulent concealment and/or non-disclosure of material facts regarding MICROCOOL* Breathable High Performance Surgical Gowns ("MICROCOOL*").

<u>Claim 2</u>: Defendants violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et seq.*, based on their concealment and/or non-disclosure of facts.

<u>Claim 3</u>: Defendants committed fraud based on their affirmative misrepresentations.[1]

<u>Claim 4</u>: Defendants violated the California UCL, CAL. BUS. & PROF. CODE § 17200, *et seq.*, based on their affirmative misrepresentations.[2]

# II.     CLAIM 1: FRAUDULENT CONCEALMENT

## A.     Elements Required to Establish Plaintiff's Claim for Fraudulent Concealment

To establish its claim for fraud based on fraudulent concealment, Plaintiff must prove all of the following:

1. That Defendants:

    a.  disclosed some facts to Bahamas but intentionally failed to disclose other facts, making the disclosure deceptive; or

    b.  intentionally failed to disclose certain facts that were known only to them and that Bahamas could not have discovered; or

    c.  prevented Bahamas from discovering certain facts.

2. That Bahamas did not know of the concealed facts.

3. That Defendants intended to deceive Bahamas by concealing the facts.

---

[1] Bahamas' attempt to press its claim for affirmative misrepresentation while serving as class representative in this trial is wholly improper and unsupportable as a matter of law for the reasons set forth *infra* at Section VIII.A.

[2] Bahamas' attempt to press its claim under the UCL for affirmative misrepresentation while serving as class representative in this trial is wholly improper and unsupportable as a matter of law for the reasons set forth *infra* at Section VIII.A.

4.  That these concealed facts were material – *i.e.*, had the omitted information been disclosed, the reasonable consumer would have been aware of it and behaved differently.

5.  That had the omitted information been disclosed, Bahamas reasonably would have behaved differently.

6.  That Bahamas was harmed.

7.  That Defendants' concealment was a substantial factor in causing Bahamas' harm.

*See* CACI Nos. 1901, 1907; *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012); *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993).

**B.**   **Defendants' Description of Key Evidence in Opposition to Claim for Fraudulent Concealment**

**1.**   **Element 1: Did Defendants (a) disclose some facts to Bahamas but intentionally fail to disclose other facts, making the disclosure deceptive; or (b) intentionally fail to disclose certain facts that were known only to them and that Bahamas could not have discovered; or (c) prevent Bahamas from discovering certain facts?**

1.      Evidence showing that Defendants' MICROCOOL* gowns were accurately labeled as compliant with its FDA-cleared claims at all times during the class period.

2.      Evidence showing that Bahamas was never exposed to any representation from Defendants concerning AAMI Level 4.

3.      Evidence showing the Bahamas did not understand or rely on the claim that the gowns met the AAMI Level 4 standard in purchasing the gowns.

4.      Evidence showing that most members of the putative class were not exposed to, did not understand, and/or did not rely on the claim that the gowns met the AAMI Level 4 standard in purchasing the gowns.

5.      Evidence (including fact and expert testimony) showing that most members of the putative class, including Bahamas, were not exposed to, did not

2

understand, and/or did not reasonably rely on information concerning the testing of the MICROCOOL* gowns under ASTM 1671 and/or ASTM 1670.

6.     Evidence (including fact and expert testimony and documents) showing that putative members of the class, by their purchasing decisions and other economic decisions, did not consider the fact of whether the gowns were (or were not) compliant with the Level 4 standard to be material to their purchasing decisions, *e.g.*,  (1) putative class members purchased MICROCOOL* gowns at the same price, for the same procedures, and under the same contracts applicable to their purchase of the Level 4 version of the gown; (2) the price of MICROCOOL* did not increase after the Level 4 claim was added; (3) sales of MICROCOOL* did not increase as a result of the addition of the Level 4 claim; (4) Defendants did not renegotiate their contracts with putative class members or group purchasing organizations ("GPOs") in light of the launch of the Level 4 claim; (5) the price of MICROCOOL* did not decrease after the allegedly "concealed" facts were made public; (6) MICROCOOL* sales did not decrease after the allegedly "concealed" facts were made public; (7) MICROCOOL* is less expensive than other gowns that do not claim to be compliant with AAMI Level 4; and (8) most putative class members purchased the gowns over and over reflecting the fact that their direct and extensive clinical experience with the gowns (not marketing claims) drove their purchasing decisions.

7.     Evidence showing the Bahamas did not contact either Defendant or otherwise make any attempt to discover facts about the testing or compliance history of MICROCOOL* gowns.

8.     Evidence showing that Bahamas had no contact whatsoever with Defendants in connection with the purchase and use of MICROCOOL* gowns.

9.     Evidence showing that packaging for custom procedure trays ("CPTs") purchased by Bahamas reflected no claim related to the AAMI level or related information for the gowns (including MICROCOOL*) contained within them.

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

10.     Evidence showing that nearly all of Bahamas' purchasers of MICROCOOL* gowns came in the form of CPT purchases.

11.     Testing data and expert testimony showing that the MICROCOOL* gowns were compliant with the applicable AAMI Level 4 standard ("PB70:2003") throughout the class period.

12.     Evidence, including expert testimony and documents, showing that Defendants had no obligation—either before or after it was recognized by FDA—to demonstrate that the MICROCOOL* gowns were compliant with a proposed revision to the PB70 standard ultimately known as PB70:2012.

13.     Evidence, including expert testimony and documents, showing that the proposed PB70:2012 standard changed the sampling requirements necessary to establish compliance with the proposed standard, making it substantially more difficult for gown manufacturers to demonstrate compliance with the proposed standard.

14.     Evidence, including internal documents, internal communications, and demonstrating that, although it had no obligation to do so, Defendant Kimberly-Clark voluntarily (and in good faith) tested MICROCOOL* gowns pursuant to PB70:2012 and did so even before the proposed revision to the standard was adopted by AAMI or recognized by FDA.

15.     Evidence, including expert testimony, showing that Defendant Kimberly-Clark disclosed the sampling methodology it used to demonstrate compliance with the PB70:2003 standard to FDA in submitting its 510(k) application for MICROCOOL* gowns.

16.     Evidence, including documents and expert testimony, showing that all commercially relevant ASTM 1671 testing of MICROCOOL* gowns conducted by the Defendant Kimberly-Clark prior to our during the putative class period demonstrated either passing results under PB70:2003 or, more likely than not, would have demonstrated passing results under that standard if the gowns had been tested under that standard (as opposed to PB70:2012).

4

17.     Evidence, including internal documents, internal communications, demonstrating that, although it had no obligation to do so, Defendant Kimberly-Clark voluntarily (and in good faith) undertook an expensive, and time- and resource-intensive project to upgrade its manufacturing process to ensure that MICROCOOL* gowns could consistently satisfy not only its cleared standard (PB70:2003) but the revised standard (PB70:2012) as well.

18.     Evidence, including marketing materials to customers demonstrating that Defendants represented only that the gowns met the PB70:2003 standard (not the PB70:2012 standard).

19.     Evidence, including complaint data, testimony, and expert testimony, demonstrating the remarkable record of Defendants' MICROCOOL* gown for safety and effectiveness and its low rate of "strikethrough" complaints.

20.     Evidence, including complaint data, testimony, and expert testimony, demonstrating that the rate of alleged "strikethrough" complaints received by the Defendants during the putative class period did not represent a quality or safety signal and was otherwise so small as to be immaterial and irrelevant to the purchasing decisions of putative class members.

21.     Evidence, including complaint data, testimony, and expert testimony, showing that many of the small number of alleged "strikethrough" complaints were either unconfirmed or, based upon investigation, indicated to be the result of user error rather than any malfunction in the barrier protection properties of the MICROCOOL* gowns.

22.     Testimony of Defendants' experts that Defendants were never, at any time, obligated to test their MICROCOOL* gown under the PB70:2012 standard after clearance of the MICROCOOL* gown under the PB70:2003 standard.

23.     Testimony of Defendants' experts that the risk of transmission of a bloodborne pathogen as a result of strikethrough involving a MICROCOOL* gown was essentially zero.

24.     Testimony of Defendants' experts that no safety issue of any kind concerning the MICROCOOL* gowns was concealed from Bahamas or any other member of the putative class.

25.     Evidence, including testimony of Defendants' former and current employees and experts, showing that Defendant Kimberly-Clark convened a Quality Review Board ("QRB") and initiated a Corrective and Preventive Action ("CAPA") in response to testing of the MICROCOOL* gowns voluntarily undertaken by Kimberly-Clark in anticipation of a proposed revision to PB70:2003, and reasonably and in good faith concluded that the gowns remained safe, effective, and compliant with their cleared claims and therefore  required no recall or other field action, and no FDA notification.

26.     Evidence . . . showing that the procedures followed by the QRB and the analyses it undertook pursuant to those procedures were robust, transparent, and compliant with applicable FDA regulations, industry standards, and international standards.

27.     Evidence . . . showing that, in marketing, manufacturing, and selling MICROCOOL* gowns during the putative class period, Defendants complied with applicable internal standard operating procedures, industry standards, and FDA regulations and guidance.

28.      Evidence showing that Bahamas purchased 5,080 MICROCOOL* gowns from Kimberly-Clark during the class period and used all of them without a single alleged incident of strikethrough or alleged product failure of any kind.

29.     Evidence showing that all of the 5,080 MICROCOOL* gowns purchased by Bahamas kept its doctors safe and dry.

30.     Evidence showing that the testing undertaken without Defendants' involvement or knowledge by Cardinal Health, a third-party competitor to Defendants, was a statistical outlier, unrepresentative of the real-world performance of the gowns, not undertaken in conformance with any version of the AAMI PB70 standard because it

6

purported to test only one of three required critical zone components, and purportedly generated results that were unlike the results of any of the many commercially relevant 1671 tests performed by Kimberly-Clark.

31.     Evidence, including testimony of Defendants' experts, establishing that the 1671 test is a difficult and technical test, and that its results do not reflect or predict the real-world risk of strikethrough or contamination.

32.     Evidence establishing that Defendant Halyard did not manufacture, promote, or sell MICROCOOL* gowns before October 31, 2014.

33.     Evidence that Defendant Kimberly-Clark did not manufacture, promote, or sell MICROCOOL* gowns after October 30, 2014.

34.     Evidence that Bahamas did not purchase or use any surgical gowns manufactured, promoted, or sold by Defendant Halyard.

35.     Evidence establishing that Defendant Halyard made no claim or omission of any kind with regard to Bahamas during the class period.

## 2.     Element 2: Did Bahamas not know of the concealed facts?

1.     All supporting evidence identified *supra* for Element 1 showing that no material facts were concealed from Bahamas much less intentionally so.

2.     Testimony of Bahamas' corporate representative confirming that Bahamas did not know what the term AAMI Level 4 meant or what is required of gowns carrying that designation.

3.     Testimony of Defendants' expert that purchasers of surgical gowns, including MICROCOOL*, do not generally understand what AAMI Level 4 means or requires.

4.     Evidence, including testimony of Bahamas' corporate representative, that Bahamas knew it used over 5,000 MICROCOOL* gowns, which safely, effectively, and uniformly protected its healthcare workers and were not the subject of a single complaint or alleged product malfunction.

    **3.**     **Element 3: Did Defendants intend to deceive Bahamas by concealing the facts?**

1.     All supporting evidence identified *supra* for Element 1.

    **4.**     **Element 4: Would Bahamas reasonably have behaved differently, if the omitted information had been disclosed?**

1.     All supporting evidence identified *supra* for Elements 1 and 2.

2.     Evidence, including testimony of Defendants' expert, confirming that Bahamas, like the vast majority of class members, was a repeat purchaser of MICROCOOL* gowns over many months and years and therefore relied on its own direct, extensive, and successful clinical experience with the gowns in deciding whether to purchase them again.

3.     Evidence, including testimony of Defendants' expert, confirming that roughly 99% of MICROCOOL* purchases during the class period were repeat purchases, and that these repeat purchases continued in significant number even after the wide publication of the allegations of this lawsuit.

4.     Testimony from Bahamas' corporate representative that Bahamas does not know why it stopped buying or using MICROCOOL* gowns.

    **5.**     **Element 5: Was Bahamas harmed?**

1.     All supporting evidence identified *supra* for Element 2.

2.     Testimony of Bahamas' corporate representative that Bahamas has no idea what it paid for a single one of the thousands of MICROCOOL* gowns that it bought as part of CPTs.

3.     Testimony of Defendants' expert that neither Bahamas nor any other member of the putative class paid a price premium for MICROCOOL* gowns attributable to the Level 4 claim or was otherwise damaged in any way.

4.     Testimony of Defendants' expert that Bahamas received the full benefit of its bargain in purchasing MICROCOOL* gowns because the gowns performed flawlessly and kept Bahamas' surgeons safe and dry.

5.      Testimony of Defendants' expert that prices and sales for MICROCOOL* gowns remained unaffected by the addition of the AAMI 4 labeling claim in 2011.

6.      Testimony of Defendants' expert that prices and sales for MICROCOOL* gowns remained unaffected by the wide publication of the allegations of this lawsuit.

7.      Testimony of Defendants' expert that Bahamas has identified no competent evidence that either Bahamas or any other member of the putative class was damaged in any way and that the damages model relied on by Bahamas' expert is invalid and inadmissible because, among many other flaws, it relies on (1) an invalid "comparator" gown that does not substantively compare to MICROCOOL* or even occupy the same market segment; and (2) an arbitrary and unrepresentative source for purporting to determine the difference between the price of MICROCOOL* gowns and the otherwise invalid comparator gown.

8.      Testimony of Defendants' expert that the purchase of MICROCOOL* gowns is governed by a complex web of contracts and other agreements that include an array of terms (which Bahamas neither knows nor has considered) that affect the final, actual price paid for the gowns.

9.      Testimony that Bahamas did not purchase any MICROCOOL* gowns from Defendant Halyard.

### **6.      Element 6: Was Defendants' concealment a substantial factor in causing Bahamas' harm?**

1.      All supporting evidence identified *supra* for Element 1, 2, 4, 5, and 6.

## **III.   CLAIM 2: FRAUDULENT CONCEALMENT UNDER THE UCL**

### **A.      Elements Required to Establish Plaintiff's Claim for Fraudulent Concealment Under the UCL**

1.  Bahamas purchased MICROCOOL* gowns sold by Defendants.

2.  Defendants:

   a.  omitted facts that were contrary to an actual representation to which Bahamas was exposed; or

9

b. omitted facts that they had a duty to disclose to Bahamas.

3. Defendants' omissions were likely to deceive reasonable consumers.

4. The facts omitted by Defendants were material to Bahamas' decision to purchase MICROCOOL* gowns.

5. Bahamas was harmed by Defendants' omissions.

*See* CAL. BUS. & PROF. CODE §17200 *et seq.*; *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012); *Davidson v. Kimberly–Clark Corp.*, 76 F. Supp. 3d 964, 972 (N.D. Cal. 2014); *Committee on Child. Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983).

**B.  Defendants' Description of Key Evidence in Opposition to Claim for Fraudulent Concealment Under the UCL**

**a)  Element 1: Did Bahamas purchase MICROCOOL* gowns sold by Defendants?**

1. Evidence shows that Bahamas purchased a small number of MICROCOOL* gowns manufactured and sold by Defendant Kimberly-Clark.

2. Evidence demonstrating that Bahamas did not purchase MICROCOOL* gowns manufactured and sold by Defendant Halyard.

3. Evidence showing that Bahamas obtained nearly all of the 5,080 MICROCOOL* gowns it used by purchasing custom procedure trays from CPT distributors.

**b)  Element 2: Did Defendants omit facts (i) that were contrary to an actual representation to which Bahamas was exposed; or (ii) that they had a duty to disclose to Bahamas?**

1. All supporting evidence identified *supra* for Elements 1 and 2 of Claim 1 (Fraudulent Concealment).

c)      **Element 3: Were Defendants' omissions likely to deceive reasonable consumers?**

1.      All supporting evidence identified *supra* for Elements 1, 2, and 4 of Claim 1 (Fraudulent Concealment).

d)      **Element 4: Were the facts omitted by Defendants material to Bahamas' decision to purchase MICROCOOL* gowns?**

1.      All supporting evidence identified *supra* for Elements 1, 2, 4, and 6 of Claim 1 (Fraudulent Concealment).

e)      **Element 5: Was Bahamas harmed by Defendants' omissions?**

1.      All supporting evidence identified *supra* for Element 5 of Claim 1 (Fraudulent Concealment).

## IV.   CLAIM 3: FRAUDULENT MISREPRESENTATION

### A.   Defendants' Objection

Defendants strenuously object to Bahamas' improper assertion of this claim, which the Court correctly refused to certify.  As explained *infra*, Bahamas is barred by law from purporting to try its express fraud claim while simultaneously representing the certified class at trial.  (*See infra* § VIII.A.)

### B.   Defendants' Description of Key Evidence in Opposition to Claim for Fraudulent Misrepresentation

1.      In addition to the fact that Bahamas is legally precluded from bringing its uncertified claim for affirmative misrepresentation, the evidence identified *supra* by Defendants in opposition to Bahamas' Claim 1 for fraudulent concealment, among other evidence, demonstrates that this claim fails on the merits.

## V.    CLAIM 4: FRAUDULENT MISREPRESENTATION UNDER THE UCL

### A.   Defendants' Objection

Defendants strenuously object to Bahamas' improper assertion of this claim, which the Court correctly refused to certify.  As explained *infra*, Bahamas is barred by

1
2

law from bringing its UCL claim based on express fraud claim while simultaneously representing the certified class at trial.  (*See infra* § VIII.A.)

3
4

**B.** **Defendants' Description of Key Evidence in Opposition to Claim for Fraudulent Misrepresentation Under the UCL**

5
6
7
8

1. In addition to the fact that Bahamas is legally precluded from bringing its uncertified claim for affirmative misrepresentation, the evidence identified *supra* by Defendants in opposition to Bahamas' Claim 1 (fraudulent concealment) and Claim 2 (fraudulent concealment under the UCL) demonstrate that this claim fails on the merits.

9

**VI.   AFFIRMATIVE & OTHER DEFENSES**

10

**A.   First Defense: Lack of Subject-Matter Jurisdiction**

11
12
13
14
15
16
17
18
19
20
21
22
23

Bahamas lacks standing and the Court lacks subject-matter jurisdiction in this matter.  First, the original named plaintiff, Hrayr Shahinian, lacked standing and could not properly substitute new class representatives.  Thus, the entire action must be dismissed.  *See Lierboe v. State Farm Mut. Auto. Ins.*, 350 F.3d 1018, 1023 (9th Cir. 2003) (finding named party could not cure lack of standing by substituting another member, vacating certification, and remanding for dismissal); *Hensley-Maclean v. Safeway, Inc.*, No. 11-CV-01230-RS, 2015 WL 3956099, at *4 (N.D. Cal. June 29, 2015) ("*Lierboe* stands for the proposition that where the original named plaintiff lacks standing, a new plaintiff with standing cannot step in to save the lawsuit from dismissal."); *Zapien v. Wash. Mut. Inc.*, No. 07cv385 DMS (CAB), 2008 U.S. Dist. LEXIS 67137, at *9 (S.D. Cal. June 17, 2008) (citing *Lierboe*) ("When the sole named plaintiff in a class action lawsuit lacks standing, intervention or substitution of another named plaintiff is not permissible, and the court must dismiss the claim.").

24
25
26
27

Here, Dr. Shahinian's lack of standing from the initiation of this lawsuit rendered impermissible the substitution of new named plaintiffs, the last remaining of which is Bahamas, and ensured that Bahamas *could not* have standing to proceed with the case. The Court should therefore dismiss on the basis of subject-matter jurisdiction.

28

Bahamas lacks standing to pursue any claim for injunctive relief as well.  As set forth more fully below (*see infra* § VIII.G), Bahamas concedes both that it already used all the MICROCOOL* gowns it ever bought, and that it is aware of *no complaints* concerning the performance of those gowns by those who used them, let alone any allegation of strikethrough or injury.  Those concessions make crystal clear that Bahamas' injunctive claim is moot and could not be beneficial to Bahamas.  This is fatal under Ninth Circuit law.  *See, e.g.*, *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014).

### 1. Defendants' Description of Key Evidence in Support of the Defense of Lack of Subject-Matter Jurisdiction

Key evidence that Defendants rely upon includes the lack of any evidence of purchase by original named plaintiff, Hrayr Shahinian, and Dr. Shahinian's decision to voluntarily dismiss his claims with prejudice upon the filing of Defendants' motion to compel such evidence, which constitutes an implied admission that he never purchased the gowns.  This evidence also includes documents and testimony showing that Bahamas received the benefit of the bargain and suffered no injury.  (*See supra* § II.B.5 (all supporting evidence identified *supra* for Element 5 of Claim 1 (Fraudulent Concealment).)

### B. Second Defense: Failure to Mitigate Damages.

### 1. Elements Required to Establish Defendants' Defense of Mitigation of Damages.

Bahamas was required to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.  Defendants have the  burden  of proving by a preponderance of the evidence: (1) that Bahamas failed to use reasonable efforts to mitigate damages; and, (2) the amount by which damages would have been mitigated.  Ninth Circuit Model Jury Instruction 5.3.

2. **Defendants' Description of Key Evidence in Support of Defense of Mitigation of Damages**

Key evidence that Defendants intend to rely upon includes the fact that, despite having used over 5,000 gowns over an extended period, Bahamas: (1) failed to notify Defendants of a single instance of any MICROCOOL* gown it purchased failing to perform as expected and to the satisfaction of Bahamas and the healthcare worker who wore it; (2) failed to return any gown it considered to be defective and/or request refund and, instead, used each and every one of the gowns it purchased; and (3) continued to purchase new gowns after each successful use of previously purchased gowns.

C. **Third Defense: Preemption**

Bahamas' claims are preempted to the extent they are based on allegations or evidence that Defendants engaged in "fraud on FDA," allegations that Defendants were subject to requirements different from or greater than their obligations under the Food, Drug, and Cosmetics Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, and/or allegations that Defendants failed to satisfy duties under state law that conflict with their obligation under the FDCA and/or stand as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress enacting the FDCA. *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341 (2001); 21 U.S.C. § 360k(a).

1. **Defendants' Description of Key Evidence in Support of the Defense of Preemption**

Key evidence that Defendants intend to rely upon includes documents and witness testimony demonstrating that MICROCOOL* gowns are classified as Class II medical devices and thus are subject to regulation under the FDCA, and demonstrating FDA's clearance of MICROCOOL* under the 510(k) process as substantially similar in safety and effectiveness to the predecessor MICROCOOL* gown.

D. **Fourth Defense: Unconstitutionality**

Bahamas is prohibited by the Due Process Clause of the Fourteenth Amendment from recovering punitive damages on a classwide basis and/or in an amount that

1
2
exceeds constitutional limits. *Philip Morris USA v. Williams*, 549 U.S. 346 (2007);

3
*State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

### 1. **Defendants' Description of Key Evidence in Support of Defense of Unconstitutionality**

4
5
6
Key evidence that Defendants intend to rely upon if the Court permits evidence

7
of punitive damages (which, Defendants maintain, would have no basis in law or fact)

8
includes testimony establishing that the amounts Bahamas seeks are excessive, as well

9
as documents and testimony establishing that contracts governing a substantial portion

10
of the purchases by class members expressly prohibit recovery of *any* damages

11
(including punitive damages) in excess of the purchase price of the MICROCOOL*

gown bought by the purchaser.

12
### E. **Fifth Defense: Economic Loss Doctrine**

13
14
### 1. **Elements Required to Establish Defendants' Defense of Economic Loss Doctrine**

15
The claims of Bahamas, and those of other class members, are barred in full or in

16
part because of the economic loss doctrine.  With regard to allegations of fraud, "[t]he

17
economic loss rule requires a purchaser to recover in contract for purely economic loss

18
due to disappointed expectations, unless he can demonstrate harm above and beyond a

19
broken contractual promise."  *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268,

20
272 (Cal. 2004).  The economic loss doctrine applies with particular force where, as

21
here, "the tort alleged is intentional or fraudulent misrepresentation by a seller to a

22
buyer, but the misrepresentation only goes to the quality or quantity of the goods

23
promised in the contract."  *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 876

24
(9th Cir. 2007); *Blue Dolphin Charters, Ltd. v. Night & Carver Yachtcenter, Inc.*, No.

25
11-cv-565-L(WVG), 2012 WL 1185945, at *3–4 (S.D. Cal. Apr. 9, 2012).

26
27
28

2.    **Defendants' Description of Key Evidence in Support of Defense of Economic Loss Doctrine**

Key evidence that Defendants intend to rely upon includes documents and testimony from Defendants' employee witnesses and expert establishing that the overwhelming majority of purchases of MICROCOOL* gowns made by putative class members during the class period were governed by long-term product-supply contracts made directly between Defendants and individual members of the putative class and/or between Defendants and the designated contracting agent(s) of putative members of the class.

F.    **Sixth Defense: Merger Clause and Other Contractual Limitations on Recovery**

The claims of Bahamas, and those of other class members, are barred in full or in part to the extent their purchases were made pursuant to contracts specifying that the contract constituted the entire agreement of the parties relating to the subject matter thereof and/or contracts otherwise expressly limiting the remedies for any alleged breach of contract, tort, or other claim allegedly arising from purchases of MICROCOOL* under the contracts.

1.    **Defendants' Description of Key Evidence in Support of Defense of Merger Clauses and Other Contractual Limitations on Recovery**

Key evidence that Defendants intend to rely upon includes documents and testimony establishing that: (1) the overwhelming majority of purchases of MICROCOOL* gowns made by putative class members during the class period were governed by long-term product supply contracts made directly between Defendants and individual members of the putative class and/or between Defendants and the designated contracting agent of putative members of the class; and (2) these long long-term product supply contracts disclaim reliance on any claimed misrepresentation not found in the contracts themselves, expressly disclaim liability for special, incidental or consequential

damages of any nature or kind whatsoever, and expressly prohibit any remedy in contract, tort, or otherwise that exceeds the purchase price of the gown.

## VII.   EVIDENTIARY ISSUES

Defendants believe that any outstanding evidentiary issues are, or will be, set forth in the parties' pre-trial submissions, including motions *in limine*, *Daubert* motions, exhibit-list objections, deposition designations and objections, and any motions to strike witnesses or proposed exhibits pursuant to FED. R. CIV. P. 37(c).

## VIII.   ISSUES OF LAW

### A.   Bahamas Cannot Serve as Class Representative and Maintain Its Claims Based on Affirmative Misrepresentation.

This Court should not permit Bahamas to pursue an individual non-certified claim for affirmative fraudulent misrepresentation on behalf of itself while simultaneously pursuing a class claim for fraudulent concealment/nondisclosure on behalf of the class for three reasons.

*First*, if this Court were to allow Bahamas to pursue a non-certified claim, it would elevate Bahamas to a better position than the rest of the class.  None of the class members may pursue the affirmative fraudulent misrepresentation claims at trial because the Court certified classes "only to the extent that they involve the fraudulent concealment claim and the UCL claim based thereon."  (Dkt. 270 at 21, 34.)  Nor may any class member pursue the non-certified claims after the trial ends because "[t]he judgment in a class action lawsuit binds all members of the class and precludes each from ever again suing over the same transaction and occurrence in the future." NEWBERG ON CLASS ACTIONS § 18:1 (5th ed.); *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984).  Only those class members who determine to opt out of the class may pursue the affirmative fraudulent misrepresentation claim as an individual claim.  *See* NEWBERG ON CLASS ACTIONS § 18:14.  Bahamas thus seeks to have it both ways.  It wants to be part of the class to pursue the certified concealment

claim, but also wants to effectively opt out of the class to pursue the non-certified misrepresentation claim.

This Court should not countenance  Bahamas' attempt to have it both ways.  As the Ninth Circuit has held, even if a named plaintiff has "stronger claims than most class members," the named plaintiff "disclaim[s] any right to a preferred position" once he "bring[s] [an] action as a class action." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 632 (9th Cir. 1982).  This follows from the fact that a class representative is a "fiduciary" who "sues, not for himself alone, but as representative of a class comprising all who are similarly situated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949).  Given this fiduciary role, a class representative "has a duty to do what is in the best interests of the class," *White v. Experian Sols. Info. Inc.*, No. SACV05-1070DOC(MLGX), 2009 WL 1615985, at *3 (C.D. Cal. June 9, 2009), and must "always put the interest of the class ahead of [its] personal interest." *Tardiff v. Knox Cty.*, 247 F.R.D. 225, 229 (D. Me. 2008); *Werner v. Quintus Corp.*, No. C-00-21177 EAI, 2001 WL 789445, at *2 (N.D. Cal. Feb. 2, 2001) (a class representative must be "willing and able to satisfy the fiduciary obligations that attend lead plaintiff status"); *Hernandez v. Copper Mountain Networks, Inc.*, No. C-00-3894 VRW, 2001 WL 789458, at *2 (N.D. Cal. Feb. 5, 2001) (same).  At the very least, a  "class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).

To permit Bahamas to proceed with its non-certified affirmative misrepresentation claim—when the absent class members cannot—would contravene these well-established principles.  If Bahamas proceeds with its non-certified claim at trial, it is essentially seeking a right "to a preferred position" within the class.  *Officers for Justice*, 688 F.2d at 632.  And by pursuing the non-certified claim, Bahamas is outside the class and no longer possesses the same interest or injury as the class

18

members.  *Rodriguez*, 431 U.S. at 403.  Accordingly, this Court should not permit Bahamas to pursue a non-certified claim if Plaintiff intends to remain the class representative.

*Second*, and relatedly, if Bahamas proceeds with its non-certified claim, it will no longer be an adequate representative—which means that the trial cannot proceed on a class-wide basis.  This Court has a "*continuing* duty to see that a class is adequately represented," *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1219 (9th Cir. 2000) (emphasis in original).  "[R]epresentative parties [must at all times] fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  The Supreme Court instructs courts to "give heightened scrutiny to cases"—like this one—"in which class members may have claims of different strength." *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 59 (1997)).

The Ninth Circuit has determined that class representatives are not adequate where—as here—the named plaintiff stands to benefit more so than do the class members.  It has held that an "important" part of the "adequacy analysis" is to determine whether "there is [anything] to differentiate the group of named plaintiffs from the individual class members with respect to the potential recovery of monetary relief." *Officers for Justice*, 688 F.2d at 631.  Accordingly, the Ninth Circuit has held that a plaintiff who sought a reimbursement that not all class members were entitled to obtain was not an adequate representative. *Doyle v. Chrysler Grp.*, LLC, No. 15-55107, 2016 WL 6156062, at \*2 (9th Cir. Oct. 24, 2016); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (reversing the district court's approval of a class-action settlement because the settlement provided for disproportionately large payments to class representatives); *cf. Drimmer v. WD-40 Co.*, 343 F. App'x 219, 221 (9th Cir.

19

2009) (upholding decision not to certify class in light of a "potential conflict interest between [the named representative] and the proposed class members").

If Bahamas proceeds with its individual claim, it will no longer be an adequate representative as its interests are not aligned with the class members.  Bahamas' interest in recovering a personal judgment on its affirmative misrepresentation claims fatally compromises its undivided loyalty to the class and its incentive to pursue the certified concealment claim.  *See, e.g.*, *Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 WL 1795703, at *11 (N.D. Cal. June 20, 2007) (explaining that plaintiff is an adequate representative only because plaintiff "is willing to dismiss his individual claims should the Court conclude that his individual retaliation claims prevent him from being an adequate class representative").  Even if Bahamas does not currently have a direct conflict of interest, there is no doubt that a potential conflict exists.  Indeed, by hedging its bets in this way, Bahamas has set the stage for arguing to the jurors that even if they find the "collective" fraud by omission unconvincing, they should still find for Bahamas as to its individual claim for fraud.   Because Bahamas lacks undivided loyalty to the class, it can no longer be an adequate representative.

*Third*, class adjudication will no longer be superior to other methods of adjudication if this Court permits Bahamas to try the affirmative misrepresentation claim alongside the certified concealment claim.  "In determining superiority, courts must consider" several factors including "the difficulties likely to be encountered in the management of a class action."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). This manageability factor is, "by far, the most critical concern in determining whether a class action is a superior means of adjudication."  Newberg on Class Actions § 4:72. The Ninth Circuit has held time and time again that "when the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication."  *Zinser*, 253 F.3d at 1192; . *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996); *In re*

20

*N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 856 (9th Cir. 1982).  Along these lines, the Ninth Circuit has also held that if a class member "has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not superior."  *Zinser*, 253 F.3d at 1190.

Courts in this District have found that a class is not superior where—as here—there is a risk that the "trial would devolve quickly into an unmanageable morass of divergent legal issues" in which "[c]ertain evidence would be admissible for some class members but not others," and where there would be "different sets of jury instructions." *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1104 (C.D. Cal. 2012).  This is precisely what would happen here.  This will not only prolong the trial, but will inevitably confuse the jury, especially because the fraudulent-concealment claim is potentially dependent upon exposure to an alleged affirmative misrepresentation. *See In re Paxil Litig.*, 212 F.R.D. 539, 551 (C.D. Cal. 2003) (explaining that "the risk of jury confusion" may outweigh advantages to class certification in certain cases).  Indeed, to determine whether members of the putative class reasonably relied on allegedly concealed information showing that the gowns were not compliant with the AAMI Level 4 standard, the jury must find that putative class members had formed a reasonable expectation that the gowns were, in fact, supposed to meet this standard, presumably by having been exposed to an affirmative representation to that effect.  But the Court has already found the most members of the class were not exposed to any such representation.  Under the circumstances, it would undermine the Court's ruling (and be grossly unfair) to permit Bahamas to pursue its individual affirmative fraud claim alongside its classwide omission claim given the substantial risk that it will confuse the jury and/or lead it to improperly generalize the evidence that Bahamas presents in support of its individual claim to the class as whole.  Trying these two claims together "would be incredibly time-consuming, unnecessarily disjointed, hopelessly confusing, and unfairly prejudicial to [Defendants] and many, if not all, of the members of the class."  *Gianino*, 846 F. Supp. 2d at 1104.

21

**B.** **The Contracts Governing Most Class Members' Claims Prohibit Punitive or any other Damages in Excess of Purchase Price, and Dispose of the Fraud Claims Under the Economic Loss Doctrine.**

Several putative class members that Bahamas has counted in its damage calculation as class members were bound to the terms of *direct corporate account agreements* with Defendants during the class period.  These entities include some of the largest purchasers in the putative class, including Antelope Valley Hospital, Cedars Sinai Medical Center, Hoag Memorial Presbyterian, Huntington Hospital, Loma Linda Supply Chain Management, the Methodist Hospital[3], Riverside County Hospital, and Redlands Community Hospital.[4]  Without exception, these agreements expressly disclaim any recovery for prejudgment interest or punitive damages through the following provision (emphasis added):

> Notwithstanding the forgoing indemnification provision, *K-C shall not be liable for any special, incidental or consequential damages of any nature whatsoever*, and *in no event shall K-C's liability for breach of contract, tort or otherwise, exceed the amount of the purchase price of the Products with respect to which damages are claimed*.[5]

Furthermore, these agreements subject the purchasers to merger clauses that defeat reliance on any claimed omissions.  These clauses clearly state: "This Agreement constitutes the entire agreement of the parties relating to the subject matter hereof, and cancels and supersedes all prior or contemporaneous agreements or understandings,

---

[3] The Methodist Hospital is a Texas-based entity that Bahamas has included in its damage model on the unsupportable grounds that the hospital purchased its MICROCOOL* gowns from a California-based distributor.

[4] Defendants maintain that Antelope Valley Hospital, Riverside County Hospital, and Redlands Community Hospital are in fact government entities that are expressly excluded from the class definition.  Nonetheless, Defendants include them here because Bahamas has included them in its damage calculation.

[5] Significantly, the Court's analysis of Bahamas' entitlement to damages and interest under its own agreement with MedAssets turned on the fact that the MedAssets contract's equivalent provision contained the qualifying phrase "shall not be liable *under this warranty*," and thus could not clearly be construed to extend to all claims. (Dkt. 270 at 20-21 (emphasis added).)  The Court's own reasoning *requires* that the provisions in the direct corporate agreements, which are clear and contain no such language, limit the recovery of the purchasers who are parties to the agreements to the purchase price of their gowns and nothing more.

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

whether written or oral, relating to the subject matter of this Agreement."  And because
the buyers purchased their MICROCOOL* gowns pursuant to contracts, their claims are
likewise barred by the economic loss doctrine under Ninth Circuit precedent.  *See, e.g.*,
*Giles*, 494 F.3d at 876 (9th Cir. 2007) (stating that the economic loss doctrine applies
with particular force where, as here, "the tort alleged is intentional or fraudulent
misrepresentation by a seller to a buyer, but the misrepresentation only goes to the
quality or quantity of the goods promised in the contract").

Similar contractual terms govern the purchases of other buyers and require the
same outcome for their claims.  For example, the agreement between Defendants and
KP Select, the buying agent for the Kaiser Health affiliate network, contains the same
language and thus limits, in whole, or in part, recovery to the price of purchase for the
***more than 60 Kaiser affiliates*** identified as injured buyers in Bahamas' damage model.

Finally, the same is true for class members covered under GPO agreements in
this case.  By Defendants' count, there are 135 entities identified by distinct customer
numbers under Bahamas' damages model that bought MICROCOOL* gowns during
the class period under the MedAssets GPO, Broadlane GPO, or both (MedAssets
bought Broadlane in 2010).  This includes Bahamas itself.  The damages model
includes 19 entities that purchased MICROCOOL* pursuant to the Amerinet GPO (now
known as Intalere), and 60 that did so under the Premier GPO.  These GPOs ***all***
included the warranty and merger provisions described above.  Moreover, another 104
entities identified by customer number in Bahamas' damages model bought
MICROCOOL* gowns pursuant to the Novation GPO, which expressly disclaims any
liability for punitive damages.  There was also a separate purchasing agreement known
as the West Coast Purchasing Coalition, under which at least twelve entities counted by
customer number in the damages model bought gowns under the same Novation terms
disclaiming punitives.[6]

---

[6] This includes Cedars Sinai, Citrus Valley Medical Center, Community Hospital
Monterey, Cottage health System, Doctors Medical Center, John Muir Medical Center,
Continued on the next page

In sum, these contracts expressly limit the amount and types of damages available to most members of the putative class, defeat any presumption that all putative members of the class relied upon the alleged omissions, and foreclose any recovery in tort under the economic loss doctrine.

### C.     Bahamas' Concealment Claims Are Inappropriate for Class Certification.

Defendants maintain that class certification remains improper in this case as to Bahamas' concealment claims under common law and the UCL.  The Court erred in certifying these claims for several reasons, including the following.

*First*, the class is overbroad and not ascertainable without extensive individual inquiries.  Bahamas still has put forth no evidence whatsoever suggesting that putative class members got less than what they bargained for: a safe and effective gown that protected its user.  Moreover, the class includes purchasers of the non-AAMI-rated version of MICROCOOL* and purchasers who bought gowns after this lawsuit was filed.

*Second*, Bahamas has not satisfied the requirement that common questions predominate, and has presented no viable method for calculating damages to the class. Under Ninth Circuit precedent, where, as here, there is *no* evidence of uniform exposure of information to class members, there can be no classwide presumption of reliance— for either misrepresentation *or* concealment claims.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012).[7]  The Court has recognized that there is no such evidence of uniform exposure here (*see* Dkt. 270 at 14-16), as purchasers were exposed to vastly different information through vastly different means.  Bahamas itself, for example, can point to no marketing materials it ever saw, and it purchased gowns

---

Continued from the previous page

PHI Health Hospital – Downey, PHI Health Hospital – Whittier, Sierra View District Hospital, Valley Care Medical Center, and Valley Memorial Hospital.

[7] Nor can there be a presumption of reliance where, as here, the evidence shows that Bahamas—and the vast majority of other class members—do not understand what AAMI Level 4 means or requires.

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

through CPT suppliers (which, the evidence shows, omit *any* AAMI-related information on their packaging) on the basis of idiosyncratic, personal interactions with a sales representative.  Furthermore, the vast array of contracts (described *supra*, § VIII.B) that govern class members' purchases contain materially different terms—including as to one of the most fundamental questions of all: what state's law governs the member's claims—and these agreements frequently were *the* deciding factor in class members' purchases.

*Third*, class adjudication is not a manageable mechanism for resolving Bahamas' claims, let alone a superior mechanism for doing so.  The overwhelming majority of purchasers are sophisticated business entities who leverage their bargaining power to buy their gowns pursuant to agreements that provide favorable pricing, feature a proliferation of differing terms as to concepts as fundamental as choice of law, and also set forth specific rights and the mechanism for resolving disputes regarding those rights.

*Fourth*, the evidence demonstrates that Bahamas is not an adequate representative of the class, and its claims are not typical of the class.  Bahamas lacks Article III standing because has adduced no proof whatsoever that it suffered any injury or experienced any barrier-protection issue with any of its gowns.  As to its injunction claim, Bahamas fares no better; as explained, it used all of its gowns and knows of no strikethrough involving MICROCOOL* gowns.  Its claims cannot then be typical of class members who seek prospective relief.  Furthermore, Bahamas has shown its inadequacy as a class member through its choice to abandon any claim based on contract or warranty—remedies that the majority of class members would seek first, but that will be precluded under *res judicata* upon judgment at trial in this case.

*Fifth*, as set forth below, injunctive relief is altogether improper in this case.  (*See infra* § VIII.G.)

Defendants' briefing and oral argument concerning class certification sets forth these grounds in great detail, and Defendants incorporate their prior briefing and oral argument in full herein.  (*See* Dkt. Nos. 191-195, 246, 272-1, 275.)

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**D.      The Court Lacks Subject-Matter Jurisdiction Over This Matter.**

Defendants contend that this Court does not have subject-matter jurisdiction because the original named plaintiff, Dr. Hrayr Shahinian, lacked standing to sue under Article III as he never purchased MICROCOOL* gowns.  Under Ninth Circuit precedent, an original named plaintiff who lacks standing cannot substitute new class representatives and the entire action must be dismissed.  *See Lierboe v. State Farm Mut. Auto. Ins.*, 350 F.3d 1018, 1023 (9th Cir. 2003) (finding named party could not cure lack of standing by substituting another member, vacating certification, and remanding for dismissal); *Hensley-Maclean v. Safeway, Inc.*, No. 11-CV-01230-RS, 2015 WL 3956099, at *4 (N.D. Cal. June 29, 2015) ("*Lierboe* stands for the proposition that where the original named plaintiff lacks standing, a new plaintiff with standing cannot step in to save the lawsuit from dismissal); *Zapien v. Wash. Mut. Inc.*, No. 07cv385 DMS (CAB), 2008 U.S. Dist. LEXIS 67137, at *9 (S.D. Cal. June 17, 2008) (citing *Lierboe*) ("When the sole named plaintiff in a class action lawsuit lacks standing, intervention or substitution of another named plaintiff is not permissible, and the court must dismiss the claim.").  Since Dr. Shahinian lacked standing as the original named plaintiff, all later-substituted plaintiffs (including Bahamas) have lacked standing as well.

Defendants also contend that Plaintiff Bahamas Surgery Center, LLC lacks standing to sue under Article III because it failed to establish an injury in fact.  (*See* Defs.' Mem. ISO MSJ (Dkt. 196), at 9-13 (collecting cases); Defs.' Reply Br. ISO MSJ, at 2-4 (collecting cases); MSJ Hr'g Tr. (Dkt. 264), at 7-20 (arguing that where the alleged wrong stems from assertion of insufficient performance of product or its features, plaintiffs must allege "something more" than overpaying to support a claim); *see also* Defs.' Class Cert. Opp. (Dkt. 191), at 18-19 (arguing Plaintiff's classes are impermissibly overbroad because they include purchasers who received benefit of bargain and suffered no injury).)

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bahamas also lacks standing to pursue any claim for injunctive relief as well.  Its claim is mooted by the admissions that it already used all the MICROCOOL* gowns it ever bought, and knows of no complaints concerning the gowns' safety or performance. This is fatal under Ninth Circuit law.  (*See infra* § VIII.G.)

### E.   Bahamas' Claim for Punitive Damages Fails as a Matter of Law, and in Any Case Cannot Be Determined on a Classwide Basis.

Bahamas' claim for punitive damages fails as a matter of law because there is no evidence (much less clear and convincing evidence) that any patient or provider was injured, that anyone was even placed at risk of injury, or that the gowns it purchased manifested any barrier protection or other defect of any kind.  Indeed, the evidence shows that the gowns provided safe and effective barrier protection for Bahamas' personnel more than 5,000 times.   In light of all this, at best, Bahamas' claimed injury relates only to its claimed disappointment that the gowns it purchased allegedly failed to comply with a highly technical and poorly understood  industry standard.  Such a garden-variety and purely economic injury—at best equal to only a small fraction of the purchase price of otherwise safe and effective gowns—is not sufficient to justify the imposition of punitive damages as a matter of law.  *See, e.g.*, *Ittella Foods, Inc. v. Zurich Ins. Co.*, 98 F. App'x 689, 691 (9th Cir. 2004) ("Where there is nothing done that is 'evil, criminal, recklessly indifferent to the rights of the [plaintiff], or with a vexatious intention to injure,' a punitive damages award must be reversed." ); *Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1051 (2002) ("Punitive damages are proper only when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate.") (citing *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1287 (1994)).

Moreover, for at least two reasons, it is simply not possible to calculate punitive damages in this action on a classwide basis.

27

***First***, as set forth above, punitive damages are prohibited as to a large number of class members, because the contracts governing their purchases explicitly limit the class members' recovery in tort to the purchase price of their gowns and/or expressly disclaim any liability for punitive damages. (*See supra*, § VIII.B.)

***Second***, the United States Supreme Court has held that a defendant's conduct is relevant to the punitive damages calculation only if it has "a nexus to the specific harm suffered by the plaintiff." *State Farm*, 538 U.S. at 422-23. That nexus requirement ***cannot*** be satisfied in this consumer-fraud class action. The class is comprised of purchasers who are differently situated from each other as to a number of critical factors, including what information from Defendants—***if any***—they were exposed to, and what information they relied upon in making their purchases. *See, e.g.*, 5 BUS. & COM. LITIG. FED. CTS. § 48:17 (4th ed.) (noting that "in class actions based on claims such as consumer fraud . . ., it is likely to be far more difficult for a court to assure itself that this nexus requirement is satisfied, because of the substantial likelihood that the putative class members will be differently situated from one another in terms of such critical factors as reliance"). Indeed, this Court has already acknowledged the lack of uniformity within the class on these very issues. (*See, e.g.*, Dkt. 270 at 14-16.) The Court should follow the example set by other courts throughout the country that have followed *State Farm* to hold that the imposition of punitive damages on a classwide basis under the circumstances presented here would violate due process. *See, e.g.*, 5 BUS. & COMO. LITIG. FED. CTS. § 48:17 (4th ed.) (collecting cases); *In re Simon II Litig.*, 407 F.3d 125, 139 (2d Cir. 2005) (reversing certification of punitive-damages class in concealment action where defendants' actions impacted different class members differently, if at all).[8]

[8] Defendants do not contend that punitive damages could never be assessed in a class action. *See, e.g.*, *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 620 (9th Cir. 2010), *rev'd on other grounds*, 564 U.S. 338 (2011). Rather, the circumstances of this case cannot be squared with the nexus requirement set forth by the Supreme Court in *State Farm* as a condition of due process. Furthermore, the circumstances of this case fail to comport with basic principles underpinning the assessment of punitive damages. For

Continued on the next page

**F.   Prejudgment Interest Is Improper, and in Any Case, Bahamas' Expert's Attempt to Calculate It Is Legally Incorrect.**

Bahamas' claim for prejudgment interest fails as a matter of law because the claim is barred both by statute and (as to a substantial portion of the class) by contract.

First, prejudgment interest is barred under California law because Bahamas' claims to be tried in this case are tort actions for fraud and disputes exist as to the amount of damages, which cannot be resolved except by trial.  Two statutory provisions of the California Civil Code govern the imposition of prejudgment interest and set the date from which it may first be calculated.  *See* CAL. CIV. CODE §§ 3287, 3288.  Section 3287 "applies only in cases where the recovery is predicated on breach of contract," and in any case is not appropriate "where the amount of damages cannot be resolved except by verdict or judgment.  *In re UC Lofts on 4th, LLC*, No. ADV 07-90139-CL, 2014 WL 1285415, at *25 (Bankr. S.D. Cal. Mar. 27, 2014), *aff'd*, No. AP 07-90139-CL, 2015 WL 5209252 (B.A.P. 9th Cir. Sept. 4, 2015) (citing *Pepitone v. Russo*, 134 Cal.Rptr. 709, 712 (1976));  *Duale v. Mercedes-Benz USA, LLC*, 56 Cal. Rptr. 3d 19, 27(2007).  Indeed, where uncertainty remains because damages cannot be determined without trial, prejudgment interest is properly denied under Section 3288 (for discretionary awards of prejudgment interest) as well.  *See, e.g.*, *Gutierrez v. Wells Fargo Bank, N.A.*, 944 F. Supp. 2d 819, 829 (N.D. Cal. 2013), *rev'd in part on other grounds*, 589 F. App'x 824

---

Continued from the previous page

example, Supreme Court precedent counts, as a key factor in determining whether to award punitive damages, the size and relative sophistication of the parties.  *See, e.g.*, *State Farm*, 538 U.S. at 419 (stating that punitives may be appropriate "when the target of the conduct had financial vulnerability"); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 576 (1996) (same).  In this case, class members come in various sizes, but many of them are as large, well-funded, and sophisticated as Defendants.  As already set forth, for example, Bahamas counts among the class members in its damage calculation more than five dozen affiliates of the massive managed care consortium Kaiser Permanente.  *Compare, e.g.*, *State Farm*, 538 U.S. at 434 (noting for purposes of punitive damages assessment that the plaintiffs were an elderly couple who could be considered among the "weakest of the herd," as they "appeared economically vulnerable and emotionally fragile").  Again, the contracts governing class members' purchases loom large even in this discussion, as the class members used group-buying arrangements such as GPOs and wielded their formidable buying power to extract favorable pricing from Defendants.

29

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1
2
(9th Cir. 2014) (denying prejudgment interest under both statutes in class action setting).

3
4
5
6
7
Second, as already set forth in Section VIII.B, *supra*, the contracts governing the purchases of a substantial portion of the class—including direct corporate account agreements between Defendants and class members—preclude the imposition of prejudgment interest or, in fact, any damages in excess of what the buyer paid for its MICROCOOL* gowns.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
Finally, even if prejudgment interest is available under Section 3288, there is no basis under law for the approach taken by Bahamas' expert, Dr. Williams, to calculate the amount properly.   To begin with, the operative interest rate would be 7%; Dr. Williams erroneously relies upon a rate of 10%.   *See, e.g.*, *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 775 (2002) (citing CAL. CONST. art. XV, § 1); *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1585 (1994) ("There is no legislative act specifying the rate of prejudgment interest for a fraud claim, and therefore the constitutional rate of 7 percent applies . . . .").   Furthermore, under Section 3288, interest in a fraud case is triggered from the date when the defrauded party actually parted with its money on the basis of the defendant's fraud.   *See, e.g.*, *Alexander v. Incway Corp.*, No. CV 11-8851 DSF VBKX, 2013 WL 5603932, at *21 (C.D. Cal. Oct. 11, 2013), *aff'd in part, rev'd in part on other grounds*, 633 F. App'x 472 (9th Cir. 2016) (citing  *In re Ekrem*, 192 B.R. 982, 997-98 (C.D. Cal. 1996)).   This is done ***individually, with regard to each transaction by each party***.   *In re Ekrem*, 192 B.R. at 997-98 (awarding interest in fraud action under Cal. Civ. Code § 3288 as to five fraudulent transfers starting from the date of each transfer) (citing *Nordahl v. Dep't of Real Estate*, 121 Cal. Rptr. 794, 799 (Cal. Ct. App. 1975)).   An aggregate amount as to the whole class, which is all that Dr. Williams has disclosed, is meaningless and contrary to law.

26
27
28

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

### G.    Injunctive Relief Is Inappropriate.

It is the law of the Ninth Circuit that to pursue injunctive relief in federal court, a plaintiff must benefit from the injunction it seeks.  *Walsh v. Dep't of Human Resources*, 471 F.3d 1033, 1036-37 (9th Cir. 2006) ("To have standing to bring a claim for relief, a plaintiff must show that she has (1) suffered an injury that (2) was caused by the defendant and (3) is likely to be redressed by the relief she seeks.") (citing *Thinknet Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1057 (9th Cir. 2004)).

Here, Bahamas concedes that it has no more MICROCOOL* gowns remaining in its inventory.  (*See, e.g.*, Dkt. 241-2 at 14.)  In light of this admission, granting the injunction Bahamas seeks would in no way benefit Bahamas.  Stated another way, Bahamas' request for injunctive relief is mooted by the fact that Bahamas no longer possesses any "previously produced" MICROCOOL* gowns.  *See Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014) (holding that a plaintiff's "claims for prospective relief became moot because he could no longer benefit from such relief").  Nor can Bahamas prevail on injunctive relief with its entirely concocted argument that such relief would help it to "investigate and explain any injuries suffered by health professionals from failing [MICROCOOL*] [g]owns." (*See, e.g.*, Dkt. 217 at 29; Dkt. 241 at 12.)  Bahamas is again done in by its own concession, as it has already admitted that no healthcare worker, patient, or anyone else has even complained about its MICROCOOL* gowns—let alone suffered any injury even potentially attributable to the use of a MICROCOOL* gown.  (*See, e.g.*, Dkt. 241-2 at 13-14.)  In short, to the extent Bahamas has suffered any cognizable injury at all, that injury can be redressed *in full* through monetary damages.

### IX.    BIFURCATION OF ISSUES

No bifurcation is requested in this case.

---

31

## X.   CLAIMS FOR THE JURY AND CLAIMS FOR THE COURT

Plaintiff's UCL causes of action afford only equitable relief and thus do not permit a jury trial.  *See, e.g.*, *Hodge v. Sup. Ct.*, 145 Cal. App. 4th 278, 284-85 (2006); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th  1134, 1150-51 (2003).

Defendants accordingly request that the Court sever equitable and legal issues while still conducting only one trial.  *See, e.g. Cellphone Termination Fee Cases*, 193 Cal. App. 4th 298, 305 (2011) (ruling that "anticipated significant overlap between the evidence relevant to both the court-tried issues and those the jury would be required to decide, [the Court] ruled that all issues would be presented in a single trial, and that the court and jury would then decide their respective issues at the conclusion of the evidence.").

## XI.   ATTORNEYS' FEES

Plaintiff's Second Amended Complaint seeks attorneys' fees as to all of its causes of action.  (Dkt. 70 at 30-31.)  California law does not support their request.

First, Bahamas straightforwardly cannot collect attorneys' fees on its certified, common-law claim for concealment (or, for that matter, the uncertified, common-law misrepresentation claim it improperly seeks to maintain on its own behalf).  "Unless authorized by either statute or agreement, attorney's fees ordinarily are not recoverable as costs."  *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 127 (1979); *see also* CAL. CIV. PROC. CODE § 1021; *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, No. CV02-8636MMM(PJWX), 2005 WL 927179, at *1 (C.D. Cal. Jan. 18, 2005).  Plaintiff has not, and cannot, point to any such statute or agreement that would authorize the recovery of attorneys' fees.

Second, Plaintiff is not entitled to attorneys' fees under the UCL.  *See, e.g.*, *Hadjavi v. CVS Pharmacy, Inc.*, No. CV 10-04886 SJO RCX, 2010 WL 7695383, at *4 (C.D. Cal. Sept. 22, 2010) (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,

20 Cal. 4th 163, 179 (1999).  California law does set forth a narrow exception allowing that:

> [u]pon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

CAL. CIV. PROC. CODE § 1021.5.  But the record simply does not support the application of this narrow exception in this case.  There is not a scintilla of evidence that even one of the over 5,000 MICROCOOL* gowns that Bahamas bought and used over the class period failed to perform exactly as expected or exposed a single user to injury.  There is, moreover, not even a single report of strikethrough in California involving MICROCOOL* during the class period.  Indeed, applying this exception would "transmut[e] section 1021.5 into an unwarranted cornucopia of attorney fees for those who . . . initiate litigation against[] private parties under the guise of benefiting the public interest while actually performing duplicative, unnecessary, and valueless services."  *Baxter v. Salutary Sportsclubs, Inc.*, 122 Cal App 4th 941, 945 (2004) (quoting *Committee to Defend Reprod. Rights v. A Free Pregnancy Ctr.*, 229 Cal. App. 3d 633, 643-44 (1991)).

Third, as already explained, the contracts governing the purchases made by a substantial portion of the class members expressly bar the recovery of attorneys' fees. (*See supra* § VIII.B (quoting contractual language disclaiming any liability in tort that would "exceed the amount of the purchase price")).  Accordingly, class counsel is not entitled to attorneys' fees in this case.

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

DATED:  February 7, 2017                    KING & SPALDING LLP

                                  By: /s/ Stephen B. Devereaux
                                      Alexander Calfo
                                      Julia Romano
                                      633 W. Fifth Street, Suite 1700
                                      Los Angeles, CA 90071
                                      Telephone:  (213) 443-4355
                                      Facsimile:   (213) 443-4310

                                      Chilton D. Varner
                                      (admitted *pro hac vice*)
                                      Stephen B. Devereaux
                                      (admitted *pro hac vice*)
                                      Madison H. Kitchens
                                      (admitted *pro hac vice*)
                                      1180 Peachtree Street, N.E.
                                      Atlanta, GA 30309-3521
                                      Telephone:  (404) 572-4600
                                      Facsimile:   (404) 572-5100

                                      Attorneys for Defendants
                                      KIMBERLY-CLARK
                                      CORPORATION, a Delaware
                                      Corporation; and HALYARD
                                      HEALTH, INC., a Delaware
                                      Corporation

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**