EAGAN AVENATTI, LLP
Michael J. Avenatti, State Bar No. 206929
mavenatti@eaganavenatti.com
Ahmed Ibrahim, State Bar No. 238739
aibrahim@eaganavenatti.com
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Telephone: 949.706.7000
Facsimile: 949.706.7050

Attorneys for Plaintiff, Individually and On Behalf of All Others Similarly Situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HRAYR SHAHINIAN, M.D., F.A.C.S., et al.,<br><br>　　　　　　Plaintiff,<br>　　vs.<br>KIMBERLY-CLARK CORPORATION, a Delaware Corporation, and HALYARD HEALTH, INC., a Delaware Corporation,<br><br>　　　　　　Defendants. | CASE NO.: 14-CV-08390 DMG (PLA)<br><br>**PLAINTIFF BAHAMAS SURGERY CENTER, LLC'S MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF MICHAEL P. MATHIS (FED. EVID. 702; DAUBERT V. MERRELL DOW PHARMACEUTICALS) AND REQUEST FOR DAUBERT HEARING** |

Plaintiff Bahamas Surgery Center, LLC respectfully submits this memorandum of law in support of its motion to exclude, or in the alternative limit, the expert testimony of Michael P. Mathis under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny.

## I.  INTRODUCTION

Defendant Kimberly-Clark Corporation and Halyard Health, Inc.'s (collectively, "Defendants") seeks to present expert testimony at trial from Michael P. Mathis in which he asserts that: (1) some stages of the ASTM F1671 test are ambiguous and testers are not always consistent in the way they test samples, and (2) the ASTM F1671 test does not correlate to real-world performance. [Omnibus Declaration of Michael J. Avenatti in Support of Plaintiff's Motions to Exclude or Limit Expert Testimony ("Avenatti Decl."), Ex. 13 Expert Report of Michael P. Mathis ("Mathis") at pp. 5-9.]

A trilogy of well-settled case precedent deals with the district court's role as gatekeeper with respect to expert testimony and establishing guidelines for the evaluation of such testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I), 509 U.S. 579, 592 (1993); Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II), 43 F.3d 1311, 1316 (9th Cir. 1995); and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Under these "Daubert standards," the court acts as a gatekeeper to keep out irrelevant or unreliable expert testimony. See Kumho Tire, 526 U.S. at 145; Daubert, 509 U.S. at 596. Here, Plaintiff's motion should be granted for at least the following reasons:

1.  Mr. Mathis is not qualified to testify as an expert on the impact of ASTM F1671 test errors.

2.  Mr. Mathis does not present any reliable or scientific methodology he engaged in, or reach any conclusions based on any such scientific methodology or analysis, that will render his testimony helpful to the jury. To the contrary, his proposed

testimony consists of anecdotes without any context that would allow the jury to understand his conclusions.

3. Mathis disputes whether the ASTM F1671 test correlates to real-world performance, which is irrelevant to this case and may confuse the jury.

## II. LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence governs "Testimony by Expert Witnesses." The Rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Defendants bear the burden of proving the admissibility of their experts' testimony.[1] In determining whether the offering party has met its burden of establishing the admissibility of expert evidence, the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline."

---

[1] It is axiomatic that the burden of proof is on the party introducing evidence. See Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5053 ("Normally the proponent of the evidence will have the burden of proving the facts upon which admissibility depends, though often the objector will have the burden of producing evidence to show the existence of grounds for the objection."). In Daubert, the Supreme Court stated that the proponent of the evidence must show by a preponderance of the proof that the basis for the proffered expert opinion is reliable. See Daubert I, 509 U.S. at 592 n.10 (citing Bourjaily v. United States, 483 U.S. 171, 175-176 (1987)).

Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I), 509 U.S. 579, 592 (1993). The Supreme Court construed Rule 702 to impose on federal courts the gatekeeping role of ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert I, 509 U.S. at 597. In performing its duty as "gatekeeper," the trial judge must determine whether or not the underlying proposed expert testimony is scientifically valid, amounts to "scientific knowledge," constitutes "good science," and is "derived by the scientific method." Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II), 43 F.3d 1311, 1316 (9th Cir. 1995). In addition to meeting the Daubert standard, any proffered expert opinion must "assist the trier of fact in understanding the evidence or in determining a fact in issue." United States v. Cordoba, 104 F.3d 225, 229 (9th Cir. 1997).

The Supreme Court in Daubert I held that courts should consider five criteria when determining the admissibility of expert testimony: (1) whether the proffered knowledge can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or technique has gained general acceptance in the relevant scientific community. See Daubert I, 509 U.S. at 592-94. A trial court should make findings on each of the relevant factors concerning whether expert testimony is scientifically reliable in order to properly exercise its discretion. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 159 (1999) (Scalia, J., concurring) ("[I]n a particular case[,] the failure to apply one or another of [the Daubert factors] may be unreasonable, and hence an abuse of discretion.")

Courts in the Ninth Circuit will exclude expert testimony that ignores major factors in its analysis. "[A] statistical study that fails to correct for salient explanatory variables, or even to make the most elementary comparisons, has no value as causal explanation and is therefore inadmissible in a federal court." United States v. Artero, 121 F.3d 1256, 1262 (9th Cir. 1997) (quoting People Who Care v. Rockford Board of Education, 111 F.3d 528, 537-38 (7th Cir.1997)); Lloyd v. Conseco Fin. Corp., No. CV00-

10452MMM(RNBX), 2001 WL 36097624, at *6 (C.D. Cal. Oct. 19, 2001) (quoting Artero and excluding expert's testimony when his analysis failed "to account adequately for potentially explanatory variables"). Similarly, if an expert's analysis is based on making comparisons to other data, the data must in fact be comparable. United States v. 12.94 Acres of Land in the Cty. of Solano, No. CIV S-07-2172 FCDEFB, 2009 WL 4828749, at *6 (E.D. Cal. Dec. 9, 2009) (excluding land appraiser when he did not use comparable properties in his analysis). A "study may become so incomplete that it is inadmissible as irrelevant and unreliable. Because the burden of proving helpfulness and relevance rests on the proponent of a regression analysis, it is the proponent who must establish that other major factors have been accounted for." In re REMEC Inc. Sec. Litig., 702 F. Supp. 2d 1202, 1273 (S.D. Cal. 2010).

The standard grounds to exclude evidence, including relevance and prejudice, play a role in a Daubert analysis as well. An expert's testimony is only admissible if "it logically advances a material aspect of the proposing party's case." Daubert II, 43 F.3d at 1315. The Supreme Court has stated that under Rule 702, expert testimony must be "relevant to the task at hand." Daubert I, 509 U.S. 580. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Id. at 591 (quotation and citation omitted).

Rule 403 becomes especially significant when considering the admissibility of expert testimony because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." Id. at 595 (citations and quotations omitted).

Finally, expert testimony is inadmissible when it merely states a conclusory opinion. See M2 Software, Inc. v. Madacy Entm't, No. CV 00-2853 AHM RZX, 2003 WL 25667611, at *2 (C.D. Cal. Jan. 3, 2003) (explaining that court considers "whether the expert's theory can be challenged in some objective sense, or whether it is instead

simply a subjective, conclusory approach that cannot reasonably be assessed for reliability.").

Accordingly, this Court should evaluate whether the opinions Mr. Mathis intends to offer at the trial in this case are based on a scientific and reliable methodology as a prerequisite to allowing the jury to consider the weight of competing expert testimony.

## III.   ARGUMENT

### A.   Mr. Mathis Has Not Established That He is Qualified to Testify as an Expert on the Impact of ASTM Test Errors.

Mathis states that he worked at Kimberly-Clark in the Research and Engineering Department until 2009 and observed "dozens" of ASTM F1671[2] tests at two laboratories. [Mathis at 1.]  He also claims that he studied the ASTM F1671 test.  [Id. at 1.]  What Mathis never explains, however, is how he is qualified to provide testimony that will be helpful to the jury about actual testing that occurred during the period that the MicroCool Gowns that are the subject of this lawsuit were manufactured.  Mathis lacks any technical or professional background suggesting he has the ability to take his scattered observations and put them into an analytical framework that is in any way relevant to this case and helpful to the jury.  For this reason alone, Mr. Mathis should be excluded from testifying at trial in this case.

### B.   Mr. Mathis Does Not Have Any Apparent Methodology or Conclusions.

The majority of the expert report Mr. Mathis prepared summarizes how the ASTM F1671-07 test is performed.  At a few points in his summary, Mathis mentions ambiguities in the standard.  For instance, he mentions that while testers should "slowly" pressurize a test cell, "slowly" has not been defined and "some testers are very deliberate

---

[2] By way of background, "ASTM" stands for the American Society for Testing and Material.  The ASTM F1671 test is described in detail in the expert report of Plaintiff's expert, Mr. Jeffrey Stull.  [See Avenatti Decl., Ex. 7 Expert Report of Jeffrey O. Stull, at Ex. 1 ("Stull"), ¶¶20-22, 25-38.]  In short, for a surgical gown to qualify as AAMI Level 4, it must pass the ASTM F1671 test in the "critical zones."  [Avenatti Decl., Id., at Ex. 1, ¶¶27, 35.]  The three "critical zones" are the sleeve seams, the front body, and the front tie.  [Id., ¶¶27, 35, 37-38.]

in raising the pressure slowly while others raise the pressure rapidly and typically overshoot the 2 psig by as much as 2 psig, and then quickly lower it back down." [Mathis at 4.]  Mr. Mathis provides no explanation of what the appropriate method is or should be, how common the various ways of raising pressure are, whether a particular method will result in false test results, or even whether these problems were present in tests run during the class period (since Mathis had left Kimberly-Clark in 2009).

Later, Mr. Mathis mentions that the tester is instructed to "gently swirl or rock" the test cell, which is again not defined, and that testers perform this in various ways. [Mathis at 5.]  Again, he does not explain how frequently different methods are employed, whether a particular method will result in false test results, or even whether these problems were present in tests run during the class period.

Mr. Mathis also states that ASTM F1671 is complicated and sensitive, and that he has witnessed various "errors and deviations from the prescribed test method that can lead to false failing results."[3]  [Mathis at 5.]  Once again, he never reaches any type of conclusion that is relevant to this case because he cannot specify how often these problems occurred or even that these problems persisted when MicroCool gowns were tested during the class period (i.e., between February 12, 2012 and January 11, 2015).

In short, Mr. Mathis's vague and anecdotal observations about his personal experience with the ASTM F1671 test should be excluded.  These observations are completely lacking in any scientific methodology and, moreover, it is not clear what conclusions Mr. Mathis asks the jury to draw from these observations other than to cast nebulous doubt in passing on the utility of a well-established and accepted testing methodology (which Kimberly-Clark embraced in its products and exploited for marketing purposes) based on nothing more than his own alleged percipient observations. See In re REMEC Inc. Sec. Litig., 702 F. Supp. 2d at 1273 (striking expert from case

---

[3] That Mathis raises these supposed problems now only begs the question of why Defendants did not raise these issues with the ASTM F23 subcommittee, especially when its head was their employee.  [Stull ¶9.]  Mathis omits any mention of this inconvenient fact.

because his study was "so incomplete that it is inadmissible as irrelevant and unreliable.").

Similarly, the conclusion from the report Mr. Mathis prepared is apparently that it is possible that testing problems possibly occurred at an undetermined rate for MicroCool Gowns. But Mr. Mathis is unable to provide any context that will assist the jury. He cannot state how often the problems occurred, whether these problems occurred often enough to result in a false positive causing the gowns to fail the test, whether the ASTM F1671 test was calibrated to take into account that testers would occasionally make the mistakes he describes, whether the labs testing Defendants' gowns *were even making these mistakes during the class period*, whether other products tested in the same labs under ASTM F1671 were having this problem as well (since that should mean they would fail as well), or that testers were making these mistakes for the entire period that Defendants' gowns were failing and then for some reason stopped doing so (because otherwise gowns tested under the ASTM F1671 standard would fail to this day). These are significant factors that Mr. Mathis should have considered in his analysis. [Stull, ¶8.] See Artero, 121 F.3d at 1262 (excluding study that failed to "correct for salient explanatory variables, or even to make the most elementary comparisons"). Indeed, there is no indication from Mr. Mathis's report that he attempted to conduct his own ASTM F1671 tests of random samples of the MicroCool Gowns sold during the class period to demonstrate—with independent testing and data—purported flaws he claims are inherent in the test. Despite testing failures being an area where a scientific, rigorous, and data-driven analysis of the issue should be possible[4], Mathis presents no such analysis. Without any legitimate scientific analysis or proper context, Mr. Mathis proposes to leave the jury with a few anecdotes. The plural of anecdotes, however, is not scientific data. Mr. Mathis makes no attempt to explain what his analytical method is, or that the relevant scientific community evaluates testing entirely by anecdote and without any context. The

---

[4] Mathis in fact mentions that when the ASTM F1671 standard was developed, tests were performed at multiple independent laboratories to show that they could get statistically equivalent results. [Mathis at 8.] His analysis is nowhere near that rigorous.

**PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF MICHAEL P. MATHIS**

jury will be left no better informed about testing problems, and will have its time wasted. Therefore, his testimony must be excluded. See In re REMEC Inc. Sec. Litig., 702 F. Supp. 2d at 1273 (striking expert from case because his study was "so incomplete that it is inadmissible as irrelevant and unreliable.").

### C. Whether the ASTM F1671 Test Correlates to Real-World Performance is Irrelevant.

Mr. Mathis states that to his knowledge "there is no scientific study establishing that results with respect to the ASTM F1671 test correlate to the real-world barrier protection performance of gowns utilized in actual surgical procedures." [Mathis at 8.] He then questions how realistic the test is. This is an unsubstantiated claim, and if anything, surgical gowns are subject to more extreme stresses in the real world than under the ASTM F1671 test. [Stull, ¶11.] It is also irrelevant. Defendants opted to have their MicroCool gowns approved by the FDA under the AAMI Level 4 standard that required it to pass the ASTM F1671 test. [Avenatti Decl., Ex. 14 Declaration of Dennis M. Moore in Support of Plaintiff Bahamas Surgery Center, LLC's Opposition to Defendants' Motion for Summary Judgment, ("Moore"), ¶34.] Defendants could have continued to sell unrated gowns if they wished. However, once they obtained AAMI Level 4 approval for the MicroCool gowns, they had to pass the ASTM F1671 test. [Moore ¶34.] At that point, it would not matter if the test is entirely arbitrary; class members bought gowns that were supposed to pass the test and the FDA requires compliance with the AAMI Level 4 label the gowns were sold under. Class members suffered the same damages regardless of whether the test is valid. This trial is not a venue for the jury to second guess the FDA, which chose to approve AAMI Level 4, and therefore the ASTM F1671 test, as a standard under which surgical gowns could be approved. Therefore, any opinions by Mr. Mathis on the utility of the test should be excluded because any such opinions are irrelevant and may lead the jury to believe that Defendants were not required to pass the ASTM F1671 test for its MicroCool Gowns.

Similarly, while Mr. Mathis mentions that European countries have not adopted the test[5] [Mathis at 8], the preferences of other countries is irrelevant and will only distract the jury from focusing on the AAMI Level 4 standard and the ASTM F1671 test as it is required to in this case.

Finally, Mr. Mathis claims that multiple independent laboratories ran the test before the standard was approved and obtained different results. [Mathis at 8.] Once again, this is irrelevant because Defendants' gowns must comply with the test, regardless of what problems may exist.

## IV. CONCLUSION

For the above-stated reasons, Plaintiff Bahamas Surgery Center, LLC respectfully requests that this motion to exclude, or in the alternative limit, the expert testimony of Dr. Michael P. Mathis be granted. Plaintiff also requests a Daubert hearing to the extent the Court deems such a hearing to be necessary or helpful in assessing Plaintiff's motion.

Dated: February 7, 2017                     EAGAN AVENATTI, LLP
                                            By:      /s/ Michael J. Avenatti
                                                 Michael J. Avenatti
                                                 Attorneys for Plaintiff, Individually and
                                                 On Behalf of All Others Similarly Situated

---

[5] Mathis misstates the international reception of the test, which has been adopted in modified form and even cited by the World Health Organization during the Ebola epidemic. [Stull, ¶11.] The factual inaccuracy of his claim only provides further reason to prevent Mr. Mathis from testifying.