EAGAN AVENATTI, LLP
Michael J. Avenatti, State Bar No. 206929
mavenatti@eaganavenatti.com
Ahmed Ibrahim, State Bar No. 238739
aibrahim@eaganavenatti.com
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Telephone: 949.706.7000
Facsimile: 949.706.7050

Attorneys for Plaintiff, Individually and On Behalf of All Others Similarly Situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HRAYR SHAHINIAN, M.D., F.A.C.S., et al.,<br><br>Plaintiff,<br><br>vs.<br><br>KIMBERLY-CLARK CORPORATION, a Delaware Corporation, and HALYARD HEALTH, INC., a Delaware Corporation,<br><br>Defendants. | CASE NO.: 14-CV-08390 DMG (PLA)<br><br>**PLAINTIFF BAHAMAS SURGERY CENTER, LLC'S MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF WILLIAM A. RUTALA (FED. EVID. 702; <u>DAUBERT V. MERRELL DOW PHARMACEUTICALS</u>) AND REQUEST FOR <u>DAUBERT</u> HEARING** |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1

II.  LEGAL STANDARD .............................................................................................2

    A.   Dr. Rutala's Opinion that the Risk of Transmission of Serious Diseases is So Low that Protective Equipment is Unnecessary is Out of the Mainstream of Scientific Opinion and Would Confuse the Jury ...............................................................4

    B.   Dr. Rutala Is Not Qualified to Render Expert Opinion Regarding the Effectiveness of MicroCool Gowns. ....................................10

    C.   Dr. Rutala Improperly Regurgitates Third Party Reports Rather Than Properly Present His Own Opinions .........................................13

III. CONCLUSION....................................................................................................15

**PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF WILLIAM A. RUTALA**

# **TABLE OF AUTHORITIES**

## **CASES**

Aguilar-Ramos v. Holder,
  594 F.3d 701 (9th Cir. 2010) ............................................................................... 13

Ake v. Oklahoma,
  470 U.S. 68 (1985) ................................................................................................. 4

Beech Aircraft Corp v. United States,
  51 F.3d 834 (9th Cir. 1995) ................................................................................. 13

Bourjaily v. United States,
  483 U.S. 171 (1987) ............................................................................................... 3

Bourland v. City of Redding,
  2013 WL 144973 (E.D. Cal., Jan. 11, 2013) ........................................................ 11

Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,
  509 U.S. 209 (1993) ............................................................................................... 9

City of Los Angeles v. County of Kern,
  509 F. Supp. 2d 865 (C.D. Cal. 2007) ................................................................... 6

Cook v. American Steamship Co.,
  53 F.3d 733 (6th Cir. 1995) ................................................................................. 11

Daubert v. Merrell Dow Pharm., Inc.,
  509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ................................ Passim

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
  43 F.3d 1311 (9th Cir. 1995) ..................................................................... 1, 3, 7, 8

General Electric Co. v. Joiner,
  522 U.S. 136 (1997) ........................................................................................... 5, 7

Hendrix v. Evenflo Co.,
  609 F.3d 1183 (11th Cir. 2010) ........................................................................... 11

Ilyia v. Khoury, No.,
    2016 WL 7131521 (9th Cir. Dec. 7, 2016) ........................................................ 8

In re Canvas Specialty, Inc.,
    261 B.R. 12 (Bankr. C.D. Cal. 2001) ........................................................ 11, 14

In re REMEC Inc. Sec. Litig.,
    702 F. Supp. 2d 1202 (S.D. Cal. 2010) ............................................................. 9

Jinro Am., Inc. v. Secure Invs., Inc.,
    266 F.3d 993 (9th Cir. 2001) ........................................................................... 11

Kumho Tire Co., Ltd. v. Carmichael,
    526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) .............................. 1, 4

Maine Yankee Atomic Power Co. v. N.L.R.B.,
    624 F.2d 347 (1st Cir. 1980) ............................................................................. 6

Perry v. Schwarzenegger,
    704 F. Supp. 921 (N.D. Cal. 2010) ................................................................. 13

United States v. 12.94 Acres of Land in the Cty. of Solano,
    2009 WL 4828749 (E.D. Cal. Dec. 9, 2009) .................................................... 7

United States v. Brownlee,
    744 F.3d 479 (7th Cir. 2014) .......................................................................... 13

United States v. Chang,
    207 F.3d 1169 (9th Cir. 2000) ........................................................................ 11

United States v. Cordoba,
    104 F.3d 225 (9th Cir. 1997) ............................................................................ 3

United States v. Dukagjini,
    326 F.3d 45 (2d Cir. 2002) ............................................................................. 13

Vuono v. New York Blood Ctr., Inc.,
    696 F. Supp. 743 (D. Mass. 1988) .................................................................... 6

White v. Ford Motor Co.,
    312 F.3d 998 (9th Cir. 2002) .......................................................................... 12

## **RULES**

Fed. R. Evid.104(a) ..................................................................................................4, 11

Fed. R. Evid. 702...............................................................................................Passim

## **OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5053 .......3

Plaintiff Bahamas Surgery Center, LLC respectfully submits this memorandum of law in support of its motion to exclude, or in the alternative limit, the expert testimony of William A. Rutala under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny.

## I.     INTRODUCTION

Defendant Kimberly-Clark Corporation and Halyard Health, Inc.'s (collectively, "Defendants") expert, Dr. William A. Rutala, seeks to present expert testimony at the trial in this matter expressing the following opinions: (1) because the likelihood of transmission of HIV, Hepatitis B Virus (HBV), Hepatitis C Virus (HCV), and Ebola through gown failure is purported to be "essentially zero" even if there was an ASTM F1671 test failure, reliable protective gowns are not really that important; (2) the MicroCool Gowns are supposedly extremely effective given the low rate of complaints according to Defendants' "unpublished data"; (3) ASTM F1671 is an extreme test that does not reflect reality; and (4) Plaintiff's experts' opinions are questionable. [Omnibus Declaration of Michael J. Avenatti in Support of Plaintiff's Motions to Exclude or Limit Expert Testimony ("Avenatti Decl."), Ex. 16 Expert Report of Dr. William A. Rutala ("Rutala") at pp. 2-3, 5-6, 10-16.]

A trilogy of well-settled case precedent deals with the district court's role as gatekeeper with respect to expert testimony and establishing guidelines for the evaluation of such testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I), 509 U.S. 579, 592 (1993); Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II), 43 F.3d 1311, 1316 (9th Cir. 1995); and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Under these "Daubert standards," the court acts as a gatekeeper to keep out irrelevant or unreliable expert testimony. See Kumho Tire, at 145; Daubert, 509 U.S. at 596. Here, for the reasons set forth herein and in the expert rebuttal declarations filed by

Plaintiff in support of its Daubert challenges, Plaintiff's motion should be granted for at least the following reasons:

1. Through Dr. Rutala, Defendants essentially seek to convince the jury that healthcare professionals do not really need surgical gowns to prevent serious infection. This runs counter to the very existence of the surgical gown industry—from which Defendants are one of the principal profiteers—and seriously calls into question the utility of the AAMI Level 4 MicroCool Gown. The problem with allowing such an extreme opinion to be presented to the jury is that this radical, nonsensical argument is being given the stamp of medical credibility because it is being conveyed by a credentialed epidemiologist. Accordingly, the jury should not be exposed to Dr. Rutala's opinion that surgical gowns do not really help prevent infections because such an opinion is well outside the mainstream of consensus of the scientific community and will be confusing to the jury in that it comes from a medical doctor, which gives it improper weight.

2. Dr. Rutala is not properly qualified to testify regarding the risk of contracting serious infections from the use of the MicroCool Gowns because he is not an expert on the MicroCool Gowns, surgical gowns in general, the ASTM F1671 test, or the field of probability and statistics.

3. Dr. Rutala improperly regurgitates hearsay third party reports and does not provide true expert analysis and, thus, his testimony will not be helpful to the jury.

## II.    LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs "Testimony by Expert Witnesses." The Rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF WILLIAM A. RUTALA**

>    (b) the testimony is based on sufficient facts or data;
>
>    (c) the testimony is the product of reliable principles and methods; and
>
>    (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Defendants bear the burden of proving the admissibility of their experts' testimony.[1] In determining whether the offering party has met its burden of establishing the admissibility of expert evidence, the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I), 509 U.S. 579, 592 (1993). The Supreme Court construed Rule 702 to impose on federal courts the gatekeeping role of ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert I, 509 U.S. at 597. In performing its duty as "gatekeeper," the trial judge must determine whether or not the underlying proposed expert testimony is scientifically valid, amounts to "scientific knowledge," constitutes "good science," and is "derived by the scientific method." Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II), 43 F.3d 1311, 1316 (9th Cir. 1995). In addition to meeting the Daubert standard, any proffered expert opinion must "assist the trier of fact in understanding the evidence or in determining a fact in issue." United States v. Cordoba, 104 F.3d 225, 229 (9th Cir. 1997).

The Supreme Court in Daubert I held that courts should consider five criteria when determining the admissibility of expert testimony: (1) whether the proffered knowledge can be or has been tested; (2) whether the theory or technique has been subjected to peer

---

[1] It is axiomatic that the burden of proof is on the party introducing evidence. See Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5053 ("Normally the proponent of the evidence will have the burden of proving the facts upon which admissibility depends, though often the objector will have the burden of producing evidence to show the existence of grounds for the objection."). In Daubert, the Supreme Court stated that the proponent of the evidence must show by a preponderance of the proof that the basis for the proffered expert opinion is reliable. See Daubert I, 509 U.S. at 592 n.10 (citing Bourjaily v. United States, 483 U.S. 171, 175-176 (1987)).

review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or technique has gained general acceptance in the relevant scientific community. See Daubert I, 509 U.S. at 592-94.  A trial court should make findings on each of the relevant factors concerning whether expert testimony is scientifically reliable in order to properly exercise its discretion.  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 159 (1999) (Scalia, J., concurring) ("[I]n a particular case[,] the failure to apply one or another of [the Daubert factors] may be unreasonable, and hence an abuse of discretion.")

Accordingly, this Court should evaluate whether Dr. Rutala's opinions offered in this case are based on a scientific and reliable methodology as a prerequisite to allowing the jury to consider the weight of competing expert testimony.

### A. Dr. Rutala's Opinion that the Risk of Transmission of Serious Diseases is So Low that Protective Equipment is Unnecessary is Out of the Mainstream of Scientific Opinion and Would Confuse the Jury

To be admissible, Defendants must show that Dr. Rutala's theory devaluing the importance of barrier protection for health workers facing potential exposure to serious infectious diseases has gained general acceptance in the relevant scientific community. See Daubert I, 509 U.S. at 595 (a theory which has not garnered wide acceptance "may properly be viewed with skepticism").  Dr. Rutala's theories defy scientific consensus and must be excluded.

As the Supreme Court has noted, "[t]estimony emanating from the depth and scope of specialized knowledge is very impressive to a jury.  The same testimony from another source can have less effect."  Ake v. Oklahoma, 470 U.S. 68, 82 n.7 (1985) (citation omitted).  Consequently, when a party moves to introduce scientific, technical, or specialized expertise this Court is obligated, under Federal Rules of Evidence 104(a) and 702, to act as a "gatekeeper" to ensure the evidence "is not only relevant, but *reliable*." Daubert I, 509 U.S. at 589 (emphasis added); see also Kumho Tire, 526 U.S. at 141 (expanding Daubert's holding to expertise deemed "technical" or "specialized

knowledge" under Rule 702); General Electric Co. v. Joiner, 522 U.S. 136, 146-147 (1997) (court may exclude expert evidence where it concludes that there is too great an analytical gap between the data and the expert's opinion). In order to carry out its gatekeeping function, this Court must adhere to the principles articulated in Daubert, Kumho Tire, and Joiner.

Here, through Dr. Rutala, Defendants essentially seek to convince the jury that healthcare professionals do not really need surgical gowns to prevent serious infection. Using "science" in the guise of a credentialed epidemiologist, this notion arguably calls into question the very concept of a surgical gown to begin with—let alone the MicroCool AAMI Level 4 surgical gown at issue in this case, which was represented to provide the highest level of liquid barrier protection available and to be absolutely essential to healthcare providers.

As noted by Plaintiff's expert on personal protective equipment and applicable industry standards, Mr. Stull, if the Court were to credit Dr. Rutala's opinion that the "'odds' that a particular individual wearing a MicroCool product would become infected when exposed are infinitesimal," such an exercise "begs the question for why surgical gowns with high barrier properties would be used *at all* or more importantly why a healthcare organization would endeavor to choose one level of a gown over another?" [Avenatti Decl., Ex. 17 Jeffrey O. Stull Expert Rebuttal Report ("Stull Rebuttal Report) at ¶22 (emphasis added).] As Mr. Stull points out, the Centers for Disease Control and Prevention have themselves "further revised their guidance for protection of healthcare workers on different occasions including offering the specific guidance for using surgical gowns that meet the Level 4 barrier criteria of AAMI PB-70." Id. at 23. Such initiatives on the part of health authorities would be pointless and even frivolous if the use of barrier protection were not actually demonstrably linked to risk mitigation by scientific data or if there were no consensus in the scientific community regarding the question. To the contrary, Mr. Stull's testimony is that these regulatory provisions reflect a recognition that "the use of personal protective equipment [is] an essential part of controlling worker

exposure to blood and other potentially infectious materials." [Avenatti Decl., Ex. 18 Declaration of Jeffrey O. Stull in Support of Plaintiff's Motion for Class Certification ("Stull Decl.") at ¶14.]

In short, the jury should not be exposed to the extreme opinion questioning the very need for surgical gowns by a person with impressive credentials on paper giving the extreme opinion a stamp of scientific approval.

It is not surprising that Dr. Rutala's views regarding the importance of reliable barrier performance to curb the spread of infectious disease are out of step with the mainstream, given the fallacious premises and analytical errors that underlie this opinion.

*First*, while Dr. Rutala focuses on the purported *low risk* of acquiring HIV, HBV and HCV, or Ebola due to barrier failure, Dr. Rutala ignores the *gravity* of that risk. See, e.g., Maine Yankee Atomic Power Co. v. N.L.R.B., 624 F.2d 347, 349 (1st Cir. 1980) (the greater order of magnitude of a nuclear accident over one in a conventional power plant justifies "extraordinary vigilance" on the part of operators of nuclear reactors); City of Los Angeles v. County of Kern, 509 F. Supp. 2d 865, 901 (C.D. Cal. 2007) ("Even given the apparently low ***likelihood*** that [development] would introduce contaminants into the groundwater . . . the ***tremendous amount*** of harm to the water banks that could result is sufficiently palpable" to warrant consideration) (emphasis in original); Vuono v. New York Blood Ctr., Inc., 696 F. Supp. 743, 748 (D. Mass. 1988) ("Since the attendant dangers of manufacturing and packaging serum albumin may constitute a hazard to human life . . . the standard of care required of the Blood Center in this case is extremely high"). Accordingly, by focusing solely on the statistical risk of infection, Dr. Rutala ignores a crucial variable that must be taken into account when the possibility of the transmission of these deadly infectious diseases is discussed—the severity of the hazards involved.

*Second*, Dr. Rutala's estimates artificially suppress the risk of infection faced by healthcare workers. According to Mr. Stull, "[i]n some cases, a principal basis for the majority of risk assessments provided by Dr. Rutala are reliant on the prevalence of the

specific disease within the U.S. population." [Stull Rebuttal Report at ¶19.] Such reliance assumes there is parity between the prevalence of disease in the general population and the prevalence one would find at an ER or a hospital. This, however, is a flawed assumption because health professionals face a higher prevalence of disease in their work environments. See, e.g., Joiner, 522 U.S. at 146-147 (excluding cancer expert's opinion because he did not establish a basis to compare cancer in mice to cancer in humans); United States v. 12.94 Acres of Land in the Cty. of Solano, No. CIV S-07-2172 FCDEFB, 2009 WL 4828749, at *6 (E.D. Cal. Dec. 9, 2009) (excluding land appraiser when he did not use comparable properties in his analysis). As such, Dr. Rutala's risk analysis "does not account for the overall risk that would be associated with healthcare providers that knowingly deal with patients having infectious diseases and for which one basis would exist for choosing a higher barrier performing product." [Stull Rebuttal Report at ¶19.]

*Third*, Dr. Rutala's risk estimates further suppress the risk of infection by relying on reports of gown failures without attempting to account for the number of gown failures that go *unreported* and without Dr. Rutala having conducted his own independent testing and research of the gowns. "One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." Daubert II, 43 F.3d at 1317. "That an expert testifies based on research he has conducted independent of the litigation provides important, objective proof that the research comports with the dictates of good science." Id. "If the proffered expert testimony is not based on independent research, the party proffering it must come forward with other objective, verifiable evidence that the testimony is based on 'scientifically valid principles.' One means of showing this is by proof that the research and analysis supporting the proffered conclusions have been subjected to normal scientific scrutiny through peer review and publication." Id. at 1317-18. Alternatively, "the proponent of expert scientific testimony

may attempt to satisfy its burden through the testimony of its own experts." Id. at 1319. "For such a showing to be sufficient, the experts must explain precisely how they went about reaching their conclusions and point to some objective source—a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like—to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field." Id.

Here, Defendants have not made this showing. Instead, in assessing the likelihood of gown failure, Dr. Rutala looks to "Unpublished data" of estimates based on rates of gown failure as reported by Kimberly Clark, and indicated failures during ASTM F1671 testing. [Stull Rebuttal Report at ¶¶20, 26.] Dr. Rutala thus improperly *assumes* that by looking at the failures reported by Defendants and the failures indicated during testing, one can come away with an accurate picture of the total number of gown failures to compare to gowns that do not fail. However, Dr. Rutala did not perform his own testing of the gowns made during the class period to determine failure rates. He also did not conduct his own scientific survey (nor could he) of gown users during the class period to determine how many, in fact, experienced gown failures or had complaints about the gowns. Dr. Rutala's data, therefore is woefully incomplete and inadequate. Nor does Dr. Rutala even address the fact that this information is incomplete. See, e.g., Ilyia v. Khoury, No. 14-35523, 2016 WL 7131521, at *1 (9th Cir. Dec. 7, 2016) (no error in excluding psychologist's report where proponent presented no evidence that psychiatrists routinely form reliable opinions based on a review that omits parts of patient's mental history). As a result, Dr. Rutala's findings "likely underestimate true failures because not all strikethroughs are reported and the sampling of gowns for testing purposes are only a sampling, not a full assessment of the product's barrier efficacy." [Stull Rebuttal Report at ¶20.] In other words, Dr. Rutala's uncritical and wholesale adoption of Kimberly-Clark's "Unpublished data" without conducting his own independent testing rendered his opinion unreliable.

*Fourth*, in evaluating the utility of barrier protection for the avoidance of the transmission of Ebola, Dr. Rutala ignores the specific traits of the disease. See <u>In re REMEC Inc. Sec. Litig.</u>, 702 F. Supp. 2d 1202, 1273 (S.D. Cal. 2010) (the proponent of a study must establish that major factors have been accounted for).  As Mr. Stull points out, "one of the aspects that makes Ebola so highly infectious (relative to HIV and Hepatitis) is its transmissibility and its persistence." [Stull Rebuttal Report at ¶25.]  Dr. Rutala bases his conclusions, in part, on the factual predicate that infectious diseases "lose their virulence outside a host or appropriate sustaining liquid medium." [<u>Id.</u>]  However, Ebola is different because: (1) the "Ebola virus has a very low infection dose" and (2) "Ebola remains persistent days to even months after its release from the body depending on the liquid medium in which it is transported." <u>Id.</u>  In ignoring these characteristics of a disease which the gowns were purported to address, Dr. Rutala has missed a "major factor." <u>In re REMEC</u>, 702 F.Supp.2d at 1273.  In fact, the real world attributes of the disease "dictate a higher level of attention to barrier protection." [Stull Rebuttal Report at ¶25.]

*Fifth*, **Dr. Rutala himself has authored a comprehensive article acknowledging the importance of surgical gown barrier effectiveness to ward against the spread of infectious disease.**  See <u>Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.</u>, 509 U.S. 209, 242 (1993) ("When … indisputable record facts contradict or otherwise render the [expert's] opinion unreasonable, it cannot support a jury's verdict").  In the abstract of his earlier article—published in 2001, long before Dr. Rutala was hired by Defendants to be an expert in this case—Dr. Rutala states that "[c]urrently, gowns protect healthcare personnel performing invasive procedures from contact with bloodborne pathogens." [Avenatti Decl., Ex. __ (Stull Rebuttal Declaration in Support of Class Cert.) at ¶38.]  Dr. Rutala's earlier article also discusses "the importance of how applied pressure relate[s] to the barrier performance of surgical gowns and cites other research findings for relative rates of strike-through through gown, indicating a 16.7% strikethrough rate for full length gowns with impervious front panel and forearms and thermally sealed side seams." <u>Id.</u>

**PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF WILLIAM A. RUTALA**

The contradiction of this article by Dr. Rutala not only undermines his current opinion to render it unreasonable and unreliable, but, importantly, it bears out the fact that Dr. Rutala's opinion in this case is out of the mainstream of general acceptance, as evidenced by his earlier consensus view.

*Finally*, for the reasons set forth in Plaintiff's Motion in Limine No. 1, whether or not the gowns actually failed or caused infections or injuries is irrelevant to this case and otherwise inadmissible.

In sum, Dr. Rutala's opinion that barrier protection is not exceedingly important to avoid the transmission of serious infectious diseases is well outside the scope of generally accepted theories, as evidenced by the CDC's policies—and Dr. Rutala's own earlier writings. His departure from the mainstream is characterized by glaring gaps in his analysis and flawed comparisons which seek to match apples and oranges, along with his failure to conduct independent testing of the gowns or independent surveys of actual gowns users. To admit his report would lend a veneer of "scientific" authenticity to a rogue opinion which Daubert counsels should be "viewed with skepticism." Daubert I, 509 U.S. at 595.

### B. Dr. Rutala Is Not Qualified to Render Expert Opinion Regarding the Effectiveness of MicroCool Gowns.

Dr. Rutala offers a sweeping assessment of the MicroCool Gown, declaring it is "extremely effective in not permitting blood exposure to HCP" [Rutala at p. 2), opining that it provides "HCP protection from blood or other potentially infectious materials as it provided barrier protection in nearly all uses" (id. at p. 4), that it is "capable of passing the [ASTM F1671] test at a high frequency" (id. at p. 11), and even that it "has well served its intended purpose" (id. at p. 17). Dr. Rutala opines on the MicroCool's QRB risk assessment (id. at pp. 2 and 9), remarks on customer complaints to Kimberly-Clark and Halyard regarding the MicroCool Gowns from 2012 through 2015 (id.), predicts the chances that a surgeon would be HBV infected if that surgeon used 1,000 MicroCool

gowns per year (id. at p. 6-7), and passes on whether MicroCool Gowns were used in the United States or West Africa during the Ebola crisis (id. at p. 12).

Whether an expert's opinion is within his or her area of expertise is a preliminary question to be determined by the trial court. Fed. R. Evid. 104(a). He or she must be "qualified as an expert by knowledge, skill, experience, training, or education . . ." Fed. R. Evid. 702. The expert may opine regarding matters "squarely within" the expertise of the expert; see also Bourland v. City of Redding, No. CIV S-09-3195-KJM, 2013 WL 144973, at *2 (E.D. Cal., Jan. 11, 2013) (expert opinion is "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline"). A witness' qualification as an expert must be measured with respect to the opinion the witness seeks to give. See Cook v. American Steamship Co., 53 F.3d 733, 738-40 (6th Cir. 1995); United States v. Chang, 207 F.3d 1169, 1172-1173 (9th Cir. 2000).

"Merely demonstrating that an expert has experience does not automatically render every opinion and statement by that expert reliable." Hendrix v. Evenflo Co., 609 F.3d 1183, 1201 (11th Cir. 2010). The expert must explain how any experience she has "leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Id. (citing Fed. R. Evid. 702, Advisory Committee Note, 2000 Amendment); see also Jinro Am., Inc. v. Secure Invs., Inc., 266 F.3d 993, 1004 (9th Cir. 2001) ("care must be taken to assure that a proffered witness truly qualifies as an expert"); In re Canvas Specialty, Inc., 261 B.R. 12, 18 (Bankr. C.D. Cal. 2001) ("It is not enough that the proposed expert have expertise in an area of knowledge. The expertise must be relevant to the determination of the facts in issue").

Here, as an initial matter and as noted above, Dr. Rutala did not conduct any independent investigation or testing of the gowns sold during the class period, or any independent survey of users of the gowns during the class to determine a scientific rate of

actual failures and complaints. For this reason alone, his testimony must be excluded or, at the very least, limited.

In addition, while Dr. Rutala offers specific, technical opinions regarding the effectiveness, development, customer satisfaction, and present characteristics and hypothetical performance of the MicroCool Gowns, his training and experience do not support the conclusion that he is qualified to render technical opinions regarding the efficacy and performance of the MicroCool Gowns. See White v. Ford Motor Co., 312 F.3d 998, 1008-09 (9th Cir. 2002). More specifically, Dr. Rutala is not properly qualified to testify regarding the risk of contracting serious infections from the use of the MicroCool Gowns because he is not an expert on the MicroCool Gowns, surgical gowns in general, the ASTM F1671 test, or the field of probability and statistics.

In White, the Ninth Circuit noted the proffered expert witness was not qualified to offer expert opinion regarding whether a vehicle's faulty parking brake caused the Plaintiff's injury, despite the expert's significant training and experience as a metallurgist (the study of the performance of metals) and as a professor of material science and engineering who was trained to read the underlying data. Id. at 1006-1008. Because the analytical process the expert employed did not rely on his expertise in how metals perform, the appellate court found the expert had "established no more foundation than anyone trained in any kind of engineering, or even a lay person not trained in engineering, would have to venture the opinion." Id. at 1008.

Like the expert in White, Dr. Rutala has general experience as an academic and administrator in various capacities relating to infectious diseases but lacks the specific expertise required to form the technical opinions regarding the MicroCool Gowns. For example, while Dr. Rutala served on the FDA General Hospital and Personal Use Devices Panel, *that experience ended seventeen years ago* (Dr. Rutala served as a consultant for two years, between 1995-1997, and as a member between 1997 and 2000). Moreover, his employment with the FDA did not give him the requisite experience, training, or education specific to the area of expertise upon which his opinions rely.

Specifically, Dr. Rutala does not indicate any experience approving, analyzing, or rating hospital gowns, their design, effectiveness, customer satisfaction, or any similar characteristic analyzed in his expert report—much less for the MicroCool Gowns at issue in this case.

### C.  Dr. Rutala Improperly Regurgitates Third Party Reports Rather Than Properly Present His Own Opinions

Generally, "an expert is permitted to base his opinion on hearsay evidence and need not have personal knowledge of the facts underlying his opinion." Aguilar-Ramos v. Holder, 594 F.3d 701, 706 n.7 (9th Cir. 2010).  However, it is well established that simply repeating hearsay evidence without conducting any analysis is not proper expert opinion.  See United States v. Dukagjini, 326 F.3d 45, 54 (2d Cir. 2002) (excluding testimony of expert that merely repeated hearsay evidence without applying any expertise whatsoever); see also Perry v. Schwarzenegger, 704 F. Supp. 921, 947 (N.D. Cal. 2010) ("Blakenhorn's mere recitation of text in evidence does not assist the court in understanding the evidence because reading, as much as hearing, 'is within the ability and experience of the trier of fact'") (quoting Beech Aircraft Corp v. United States, 51 F.3d 834, 842 (9th Cir. 1995)). That is because "[a]n expert who parrots an out-of-court statement is not giving expert testimony; [but] he is a ventriloquist's dummy." United States v. Brownlee, 744 F.3d 479, 482 (7th Cir. 2014).

Here, Dr. Rutala's report clearly sets forth opinions in some instances that merely repeat statements made by third-parties.  In addition to relying heavily on documentation furnished by Defendants (Rutala at pp. 1-2), Dr. Rutala also syphons extensive amounts of hearsay material and unpublished and unverified from various sources, which he attempts to present as though they were his own:

- Citing Kimberly-Clark's "Unpublished data" of reported failure rate and complaints of the MicroCool Gowns (id. at pp. 2-3);
- "*Based on available data*, the MicroCool gown provided HCP protection from blood or other potentially infectious materials as it provided barrier

protection in nearly all uses" (id. at p. 4) (emphasis added);

- "*Data in the peer reviewed literature* indicate that the frequency of non-intact skin exposure during surgery was observed to occur 0.076% of the time" (id. at p. 8) (emphasis added);

- "The QRB criteria for risk acceptability are determined prior to the risk analysis and are *based on Kimberly-Clark's and Halyard's Standard Operating Procedure* (SOP) for determining acceptable risk as defined in Procedure GL-SOP00161/3 and GL SOP00161/4" (id. at p. 9) (emphasis added);

- "*based on available information*, the Level 4 impervious gowns (e.g., MicroCool) were not used in the United States or West Africa when caring for Ebola patients" (id. at p. 12) (emphasis added);

- "the peer-reviewed literature discusses the likelihood of transmission associated with visible blood" (id. at p. 13);

- "To the extent that underlying clothing contamination occurs, the peer reviewed literature indicated this is much more likely through gown removal than via strikethrough" (id. at p. 16);

- "These calculations are based on a method published in the peer-reviewed, scientific literature" (id. at p. 17); and

- "Based on the peer-reviewed, scientific literature as well as information provided in this case, there was not a single HCP who developed a causally-related bloodborne infection as a result of a MicroCool gown strikethrough" (id. at p. 17)

The foregoing are clearly Defendants' attempts to have Dr. Rutala "parrot" opinions by relying on hearsay and other unreliable evidence. This is not permitted.

///

///

///

## III. CONCLUSION

For the above-stated reasons, Plaintiff Bahamas Surgery Center, LLC respectfully requests that this motion to exclude, or in the alternative limit, the expert testimony of Dr. William Rutala be granted.  Plaintiff also requests a Daubert hearing to the extent the Court deems such a hearing to be necessary or helpful in assessing Plaintiff's motion.

Dated:  February 7, 2017                    EAGAN AVENATTI, LLP


                                            By:      /s/ Michael J. Avenatti
                                                  Michael J. Avenatti
                                                  Attorneys for Plaintiff, Individually and
                                                  On Behalf of All Others Similarly Situated