1  EAGAN AVENATTI, LLP
   ael J. Avenatti, State Bar No. 206929
2  mavenatti@eaganavenatti.com
   Ahmed Ibrahim, State Bar No. 238739
3  aibrahim@eaganavenatti.com
   520 Newport Center Drive, Suite 1400
4  Newport Beach, CA 92660
   Telephone:  949.706.7000
5  Facsimile:   949.706.7050

6  Attorneys for Plaintiff, Individually and On
   Behalf of All Others Similarly Situated
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | HRAYR SHAHINIAN, M.D., F.A.C.S., et al., | CASE NO.: 14-CV-08390 DMG (PLA) |
   |---|---|
   | Plaintiff, | **PLAINTIFF BAHAMAS SURGERY CENTER, LLC'S MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF DUANE L. STEFFEY (FED. EVID. 702; DAUBERT V. MERRELL DOW PHARMACEUTICALS) AND REQUEST FOR DAUBERT HEARING** |
   | vs. | |
   | KIMBERLY-CLARK CORPORATION, a Delaware Corporation, and HALYARD HEALTH, INC., a Delaware Corporation, | |
   | Defendants. | |

## **TABLE OF CONTENTS**

I.  INTRODUCTION ..............................................................................................1

II. LEGAL STANDARDS .....................................................................................2

III. DR. STEFFEY IS NOT QUALIFIED TO TESTIFY AS AN EXPERT WITNESS ON THE MATTERS SET FORTH IN HIS EXPERT REPORT.........................................4

IV. CONCLUSION..................................................................................................8

# TABLE OF AUTHORITIES

**CASES**

Bourjaily v. United States,
 483 U.S. 171 (1987) ...............................................................................................2

Daubert v. Merrell Dow Pharm., Inc.,
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ........................1, 2, 3, 4

Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II),
 43 F.3d 1311 (9th Cir. 1995) ..............................................................................1, 3

Gable v. Nat'l Broad Co.,
 727 F.Supp.2d 815 (C.D. Cal. 2010) ......................................................................4

Gallagher v. S. Source Packaging, LLC,
 568 F. Supp. 2d 624 (E.D.N.C. 2008) ....................................................................6

Jinro Am., Inc. v. Secure Invs., Inc.,
 266 F.3d 993 (9th Cir. 2001) ..................................................................................7

Jones v. Lincoln Elec. Co.,
 188 F.3d 709 (7th Cir. 1999) ..................................................................................4

Kumho Tire Co., Ltd. v. Carmichael,
 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ..................................1, 3

Morales v. E.D. Etnyre & Co.,
 382 F. Supp. 2d 1252 (D.N.M. 2005) ....................................................................6

Oracle Am., Inc. v. Google Inc.,
 No. C-10-03561, 2016 WL 1743129 (N.D. Cal. May 2, 2016) ..........................6

United States v. Chang,
 207 F.3d 1169 (9th Cir. 2000) .............................................................................4, 7

United States v. Cordoba,
 104 F.3d 225 (9th Cir. 1997) ..................................................................................3

United States v. Redlightning,
 624 F.3d 1090 (9th Cir. 2010) ................................................................................7

White v. Ford Motor Co.,
  312 F.3d 998 (9th Cir. 2002) .................................................................................. 6

**RULES**

Fed. R. Evid. 104(a) .................................................................................................. 4

Fed. R. Evid. 702 ...................................................................................................... 2

**OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5053 ....... 2, 3

Plaintiff Bahamas Surgery Center, LLC respectfully submits this memorandum of law in support of its motion to exclude, or in the alternative limit, the expert testimony of Dr. Duane L. Steffey under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny.

## I. INTRODUCTION

Defendants Kimberly-Clark Corporation and Halyard Health, Inc.'s (collectively, "Defendants") statistics expert, Dr. Duane L. Steffey, seeks to present expert testimony in which he (1) argues Mr. Stull defined the acceptable quality limit (AQL) incorrectly for the AAMI PB70 test, (2) discusses the differences in testing methods between the 2003 and 2012 AAMI PB70 standard, and (3) uses his personal interpretation of the AAMI PB70 standard as a basis to pool test results to make it appear that the MicroCool Gowns did not fail excessively. [Omnibus Declaration of Michael J. Avenatti in Support of Plaintiff's Motions to Exclude or Limit Expert Testimony ("Avenatti Decl."), Ex. 20 Expert Report of Duane L. Steffey, Ph.D. ("Steffey").]

A trilogy of well-settled case precedent deals with the district court's role as gatekeeper with respect to expert testimony and establishing guidelines for the evaluation of such testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I), 509 U.S. 579, 592 (1993); Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II), 43 F.3d 1311, 1316 (9th Cir. 1995); and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Under these "Daubert standards," the court acts as a gatekeeper to keep out irrelevant or unreliable expert testimony. See Kumho Tire, 526 U.S. at 145; Daubert, 509 U.S. at 596. Plaintiff's motion should be granted because Dr. Steffey is not qualified to interpret the AAMI PB-70 standard and ASTM F1671 test, which underpin all of his opinions, including the statistical analysis he performs. Simply put, Dr. Steffey is a statistics expert, not an expert on fluid protection standards for medical gowns.

## II. LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence governs "Testimony by Expert Witnesses." The Rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Defendants bear the burden of proving the admissibility of their experts' testimony.[1] In determining whether the offering party has met its burden of establishing the admissibility of expert evidence, the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I), 509 U.S. 579, 592 (1993). The Supreme Court construed Rule 702 to impose on federal courts the gatekeeping role of ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert I, 509 U.S. at 597. In performing its duty as

---

[1] It is axiomatic that the burden of proof is on the party introducing evidence. See Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5053 ("Normally the proponent of the evidence will have the burden of proving the facts upon which admissibility depends, though often the objector will have the burden of producing evidence to show the existence of grounds for the objection."). In Daubert, the Supreme Court stated that the proponent of the evidence must show by a preponderance of the proof that the basis for the proffered expert opinion is reliable. See Daubert I, 509 U.S. at 592 n.10 (citing Bourjaily v. United States, 483 U.S. 171, 175-176 (1987)).

"gatekeeper," the trial judge must determine whether or not the underlying proposed expert testimony is scientifically valid, amounts to "scientific knowledge," constitutes "good science," and is "derived by the scientific method."  Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II), 43 F.3d 1311, 1316 (9th Cir. 1995).  In addition to meeting the Daubert standard, any proffered expert opinion must "assist the trier of fact in understanding the evidence or in determining a fact in issue."  United States v. Cordoba, 104 F.3d 225, 229 (9th Cir. 1997).

The Supreme Court in Daubert I held that courts should consider five criteria when determining the admissibility of expert testimony:  (1) whether the proffered knowledge can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or technique has gained general acceptance in the relevant scientific community.  See Daubert I, 509 U.S. at 592-94.  A trial court should make findings on each of the relevant factors concerning whether expert testimony is scientifically reliable in order to properly exercise its discretion.  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 159 (1999) (Scalia, J., concurring) ("[I]n a particular case[,] the failure to apply one or another of [the Daubert factors] may be unreasonable, and hence an abuse of discretion.")

The standard grounds to exclude evidence, including relevance and prejudice, play a role in a Daubert analysis as well.  An expert's testimony is only admissible if "it logically advances a material aspect of the proposing party's case."  Daubert II, 43 F.3d at 1315.  The Supreme Court has stated that under Rule 702, expert testimony must be "relevant to the task at hand."  Daubert I, 509 U.S. 580.  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."  Id. at 591 (quotation and citation omitted).

Rule 403 becomes especially significant when considering the admissibility of expert testimony because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing

possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." Id. at 595 (citations and quotations omitted).

Accordingly, this Court should evaluate whether the opinions Dr. Steffey offered in this case are relevant, consistent with Ninth Circuit law, and not likely to confuse the jury.

### III. DR. STEFFEY IS NOT QUALIFIED TO TESTIFY AS AN EXPERT WITNESS ON THE MATTERS SET FORTH IN HIS EXPERT REPORT

Whether an expert's opinion is within his or her area of expertise is a preliminary question to be determined by the trial court. Fed. R. Evid. 104(a). ). He or she must be "qualified as an expert by knowledge, skill, experience, training, or education . . ." Fed. R. Evid. 702. "To qualify as an expert, a witness must have knowledge, skill, experience, training or education relevant to such evidence or fact in issue[.]" United States v. Chang, 207 F.3d 1169, 1172 (9th Cir. 2000). Stated differently, "the opinion must be an expert opinion (that is, an *opinion informed by the witness' expertise*) rather than simply an opinion broached by a purported expert." Gable v. Nat'l Broad Co., 727 F.Supp.2d 815, 833 (C.D. Cal. 2010) (quoting Jones v. Lincoln Elec. Co., 188 F.3d 709, 723 (7th Cir. 1999) (emphasis in original). "Thus, to determine whether a proposed expert is qualified, the court must examine whether the witness's qualifying training, experience, or specialized knowledge is sufficiently related to the subject matter upon which the witness offers an opinion." Id.

Here, Dr. Steffey is by his own admission a "consulting statistician." [Steffey at 15.] He is neither a protective "clothing expert nor an expert in the development of standards on protective clothing." [(Avenatti Decl.), Ex. 17 Expert Rebuttal Report of Jeffrey O. Stull. ("Stull Rebuttal Report") ¶29.] He also "has no direct experience in the healthcare protective clothing industry" and has had no "level of participation for how requirements were set and applied." [Id.] He does not claim to have any prior familiarity, knowledge, education, or experience in FDA regulations and consensus

standards in general or the AAMI PB70 standard and the ASTM F1671 test in particular. Dr. Steffey's CV does not indicate otherwise, nor does Dr. Steffey provide any foundation in his expert report for possessing a background sufficient to testify on these topics. Accordingly, Dr. Steffey should be precluded from offering the following opinions:

- Opinions about the nature of the AAMI PB70 standard and ASTM F1671 test. [Steffey at 3-4.]
- Opinions regarding the differences between the 2003 and 2012 editions of the AAMI PB70 test, including differences in how tests are performed. [Steffey at 8.]
- The opinion that the 2012 edition of the AAMI PB70 standard "impl[ies] the testing a greater overall number of samples" and that "the specific addition of this language in the 2012 edition is one indication the more ambiguous language in the 2003 edition of AAMI PB70 could be reasonably interpreted by such parties as Kimberly-Clark as permitting the joint testing of specimens drawn, not necessarily in equal numbers, from all critical zones." [Steffey at 8.]
- The opinion that "a failing result on a test conducted under the 2012 [AAMI PB70] standard cannot be assumed to constitute a failure under the 2003 standard." [Steffey at 10.]
- The opinion that pooling of critical zone specimens (i.e., the front, sleeve seams, and tie) was permitted under the 2003 AAMI PB70 test, as opposed to testing specimens from each critical zone separately. [Steffey at 8-9.]
- The opinion that the Food and Drug Administration implicitly endorsed pooling. [Steffey at 8-9.]
- The opinion that "ASTM F1671 actually provides two similar, but slightly different, methods (Procedure A and Procedure B) for testing the resistance of protective clothing." [Steffey at 12.]

Exclusion of Dr. Steffey's proposed expert testimony is consistent with the Court's gatekeeping power to preclude experts in one area from exceeding the boundaries of their

expertise and offering expert opinions in other areas outside of their expertise. For example, in a copyright infringement action, the plaintiff asked the court to prohibit the defendant's expert in technical issues relating to fair use from also offering opinions relating to the effect of the alleged infringement on the market for the copyrighted works. See Oracle Am., Inc. v. Google Inc., No. C-10-03561, 2016 WL 1743129, at *1-2 (N.D. Cal. May 2, 2016). The court agreed, reasoning that the witness's opinions "appear to be inferences about economic issues" based on his understanding of technical issues. Id. at *4. The court found that "[c]onsistent with his lack of expertise in the field of economics, those conclusions were unsupported by any economic analysis." Id. Accordingly, the court held that the witness could not offer opinions on the economic effect of the alleged infringement at issue. Id.

In White v. Ford Motor Co., 312 F.3d 998, 1008-09 (9th Cir. 2002), the Ninth Circuit noted the proffered expert witness was not qualified to offer expert opinion regarding whether a vehicle's faulty parking brake caused the Plaintiff's injury, despite the expert's significant training and experience as a metallurgist (the study of the performance of metals) and as a professor of material science and engineering who was trained to read the underlying data. Id. at 1006-1008. Because the analytical process the expert employed did not rely on his expertise in how metals perform, the appellate court found the expert had "established no more foundation than anyone trained in any kind of engineering, or even a lay person not trained in engineering, would have to venture the opinion." Id. at 1008.

As another example, in a contract dispute case, the court held that a software consultant was not qualified to testify as an expert about a party's alleged losses. See Gallagher v. S. Source Packaging, LLC, 568 F. Supp. 2d 624, 634 (E.D.N.C. 2008). The court reasoned that the software consultant could not testify about economic matters because he "is not an accountant or an economist" and "has no knowledge concerning NPSG's customers, products, or production costs." Id.; see also Morales v. E.D. Etnyre & Co., 382 F. Supp. 2d 1252, 1271 (D.N.M. 2005) (witness with background in design

and manufacture of industrial or construction equipment was not qualified to offer expert testimony on related economic issues because the witness "has not conducted any analysis regarding the marketing, sale, or distribution of industrial or construction equipment" and "does not have knowledge of the duties and obligations imposed on a manufacturer or distributor of industrial and construction equipment"); Chang, 207 F.3d at 1172 (affirming exclusion of expert testimony of international finance expert regarding authenticity of "Japanese 'Certificate of Payback Balance'" because he lacked training or experience in identification of counterfeit securities); United States v. Redlightning, 624 F.3d 1090, 1115 (9th Cir. 2010) (district court properly held that witness could not opine on topics for which he lacked necessary qualifications); Jinro Am., Inc. v. Secure Invs., Inc., 266 F.3d 993, 1004 (9th Cir. 2001) (district court erred by allowing witness to testify as an expert when "his qualifications as an expert were suspect at best" and the witness "came before the jury cloaked with the mantle of an expert").

Moreover, because the above-listed opinions regarding regulatory and medical device testing form the essential foundation for the remainder of Dr. Steffey's opinions relating to the field of statistics, he also must also be precluded from offering the remainder of his opinions. For example, Dr. Steffey uses pooling to combine test results, which allows him to reanalyze the results of failed tests in a manner that he claims would result in them passing. [Steffey at 9-10.]

Because his conclusion that a statistical analysis demonstrates that the MicroCool Gowns did not actually fail to comply with the AAMI Level 4 standard is dependent upon, and inextricably intertwined with, assumptions and opinions about matters he is not qualified to testify about as an expert, Dr. Steffey should be precluded from testifying at all at the trial. Without an expert to provide the interpretation of the appropriate testing methodology under ASTM F1671 and AAMI PB70, Dr. Steffey's statistical analysis is irrelevant.

## IV. CONCLUSION

For the above-stated reasons, Plaintiff Bahamas Surgery Center, LLC respectfully requests that this motion to exclude, or in the alternative limit, the expert testimony of Dr. Duane L. Steffey be granted.  Plaintiff also requests a Daubert hearing to the extent the Court deems such a hearing to be necessary or helpful in assessing Plaintiff's motion.

Dated:  February 7, 2017                         EAGAN AVENATTI, LLP


                                                 By:         /s/ Michael J. Avenatti
                                                         Michael J. Avenatti
                                                         Attorneys for Plaintiff, Individually and
                                                         On Behalf of All Others Similarly Situated