1  EAGAN AVENATTI, LLP
   Michael J. Avenatti, State Bar No. 206929
2  mavenatti@eaganavenatti.com
   Ahmed Ibrahim, State Bar No. 238739
3  aibrahim@eaganavenatti.com
   520 Newport Center Drive, Suite 1400
4  Newport Beach, CA 92660
   Telephone:  949.706.7000
5  Facsimile:   949.706.7050

6  Attorneys for Plaintiff, Individually and On
   Behalf of All Others Similarly Situated
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  HRAYR SHAHINIAN, M.D., F.A.C.S., et al.,  | CASE NO.:  14-CV-08390 DMG (PLA)
12
13              Plaintiff,  | **PLAINTIFF BAHAMAS SURGERY CENTER, LLC'S MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF GLENN T. AULT (FED. EVID. 702; DAUBERT V. MERRELL DOW PHARMACEUTICALS) AND REQUEST FOR DAUBERT HEARING**
       vs.
14  KIMBERLY-CLARK CORPORATION, a Delaware Corporation, and HALYARD
15  HEALTH, INC., a Delaware Corporation,
16
17              Defendants.
18

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. LEGAL STANDARD ..................................................................................... 2

    A. Dr. Ault Is Not Qualified to Opine on Effective Means of Stopping the Spread of Communicable Disease, the Efficacy of MC Gowns, Reported Strikethroughs, or the Risk of Contagion Through Skin Contact. .................................................. 4

    B. Dr. Ault's Opinions On Subjects On Which He is Unqualified Are Unreliable ................................................................................ 7

        1. Dr. Ault's Opinion Regarding the Relative Merits of Alternative Strategies to Prevent the Transmission of Communicable Diseases is Unreliable. ................................. 7

        2. Dr. Ault's Opinion Regarding the Efficacy of MicroCool Gowns Based on His Personal Experience is Unreliable, Irrelevant, and Likely to Lead to Juror Confusion. ......................................................................... 8

        3. Dr. Ault's Opinion Regarding Alternative Explanations for Reports of Strikethroughs is Unreliable. ......................... 9

        4. Dr. Ault's Opinion Regarding the Risk of Infection through Skin Contact is Unreliable. ..................................... 10

III. CONCLUSION ............................................................................................ 11

# TABLE OF AUTHORITIES

**CASES**

Bourjaily v. United States,
  483 U.S. 171 (1987) ...................................................................................... 3

Bourland v. City of Redding,
  No. CIV S-09-3195-KJM, 2013 WL 144973 (E.D. Cal., Jan. 11, 2013) ........ 4

Casey v. Ohio Medical Products,
  877 F.Supp. 1380 (N.D. Cal. 1995) ......................................................... 9, 10

Daubert v. Merrell Dow Pharm., Inc. (Daubert I),
  509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ........................ 1, 2, 3

Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II),
  43 F.3d 1311 (9th Cir. 1995) ...................................................................... 1, 3

Gable v. Nat'l Broad Co.,
  727 F.Supp.2d 815 (C.D. Cal. 2010) .............................................................. 4

Gallagher v. S. Source Packaging, LLC,
  568 F.Supp.2d 624 (E.D.N.C. 2008) .............................................................. 6

Hendrix v. Evenflo Co.,
  609 F.3d 1183 (11th Cir. 2010) ...................................................................... 5

In re Canvas Specialty, Inc.,
  261 B.R. 12 (Bankr. C.D. Cal. 2001) ............................................................. 5

Jinro Am., Inc. v. Secure Invs., Inc.,
  266 F.3d 993 (9th Cir. 2001) ...................................................................... 5, 6

Jones v. Lincoln Elec. Co.,
  188 F.3d 709 (7th Cir. 1999) .......................................................................... 4

Jones v. United States,
  933 F. Supp. 894 (N.D. Cal. 1996) ................................................................. 9

Kumho Tire Co., Ltd. v. Carmichael,
  526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ........................ 1, 3, 4

Morales v. E.D. Etnyre & Co.,
    382 F.Supp.2d 1252 (D.N.M. 2005)..........................................................................6

Oracle Am., Inc. v. Google, Inc.,
    No. C-10-03561, 2016 WL 1743129........................................................................6

Perez v. Seafood Peddler of San Rafael, Inc., 12-CV-00116-WHO,
    2014 WL 2810144 (N.D. Cal. June 20, 2014) ........................................................9

United States v. Chang,
    207 F.3d 1169 (9th Cir. 2000)..............................................................................4, 6

United States v. Cordoba,
    104 F.3d 225 (9th Cir. 1997)....................................................................................3

United States v. Redlightning,
    624 F.3d 1090 (9th Cir. 2010)..................................................................................6

White v. Ford Motor Co.,
    312 F.3d 998 (9th Cir. 2002)......................................................................6, 7, 8, 11

**RULES**

Fed. R. Evid. 104(a) .......................................................................................................4

Fed. R. Evid. 401, 403 ...................................................................................................9

**OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5053 ...........3

Plaintiff Bahamas Surgery Center, LLC respectfully submits this memorandum of law in support of its motion to exclude, or in the alternative limit, the expert testimony of Glenn T. Ault under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny.

## I.   INTRODUCTION

Defendant Kimberly-Clark Corporation and Halyard Health, Inc.'s (collectively, "Defendants") expert, Glenn T. Ault, M.D, seeks to present expert testimony at the trial in this matter expressing the following opinions: (1) that prevention of infection in the operating room is mainly accomplished through sterility and the use of aseptic technique rather than the use of personal protective equipment (PPE); (2) that MicroCool gowns allow excellent range of motion, are flexible, durable and strong and he has never experienced a strike-through; (3) that most seepage in MicroCool gowns is due to "channeling" of fluids through sleeve "bunching" rather than strike-through; and that (4) when intact skin is exposed to bodily fluid the risk of infection or harm is "essentially zero." [Omnibus Declaration of Michael J. Avenatti in Support of Plaintiff's Motions to Exclude or Limit Expert Testimony ("Avenatti Decl."), Ex. 1 (Dr. Ault Expert Report) at pp. 2-8.]

A trilogy of well-settled case precedent deals with the district court's role as gatekeeper with respect to expert testimony and establishes guidelines for the evaluation of such testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I), 509 U.S. 579, 592 (1993); Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II), 43 F.3d 1311, 1316 (9th Cir. 1995); and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Under these "Daubert standards," the court acts as a gatekeeper to keep out irrelevant or unreliable expert testimony. See Kumho Tire, 526 U.S. at 145; Daubert, 509 U.S. at 596. Here, Plaintiff's motion should be granted because Dr. Ault is not properly

qualified to testify regarding the risk of contracting serious infections from the use of the MicroCool Gowns because he is not an expert on the MicroCool Gowns, surgical gowns in general, or the transmission of infectious diseases. His personal anecdotal experience with using the gowns without incident is not "expert" opinion and is not otherwise helpful to the trier of fact. To the contrary, his anecdotes about using the MicroCool Gowns are irrelevant and likely to lead to juror confusion.

## II.   LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs "Testimony by Expert Witnesses." The Rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and
>
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Defendants bear the burden of proving the admissibility of their experts' testimony.[1] In determining whether the offering party has met its burden of establishing the

---

[1] It is axiomatic that the burden of proof is on the party introducing evidence. See Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5053 ("Normally the proponent of the evidence will have the burden of proving the facts upon which admissibility depends, though often the objector will have the burden of producing evidence to show the existence of grounds for the objection."). In Daubert, the Supreme Court stated that the proponent of the evidence must show by a preponderance of the

Continued on the next page

**PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF GLENN T. AULT**

admissibility of expert evidence, the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I), 509 U.S. 579, 592 (1993).  The Supreme Court construed Rule 702 to impose on federal courts the gatekeeping role of ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert I, 509 U.S. at 597.  In performing its duty as "gatekeeper," the trial judge must determine whether or not the underlying proposed expert testimony is scientifically valid, amounts to "scientific knowledge," constitutes "good science," and is "derived by the scientific method." Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II), 43 F.3d 1311, 1316 (9th Cir. 1995).  In addition to meeting the Daubert standard, any proffered expert opinion must "assist the trier of fact in understanding the evidence or in determining a fact in issue." United States v. Cordoba, 104 F.3d 225, 229 (9th Cir. 1997).

The Supreme Court in Daubert I held that courts should consider five criteria when determining the admissibility of expert testimony:  (1) whether the proffered knowledge can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or technique has gained general acceptance in the relevant scientific community. See Daubert I, 509 U.S. at 592-94.  A trial court should make findings on each of the relevant factors concerning whether expert testimony is scientifically reliable in order to properly exercise its discretion.  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 159 (1999) (Scalia, J., concurring) ("[I]n a particular case[,] the failure to apply one or another of [the Daubert factors] may be unreasonable, and hence an abuse of discretion.")

Accordingly, this Court should evaluate whether Dr. Ault's opinions offered in this

---

Continued from the previous page
proof that the basis for the proffered expert opinion is reliable. See Daubert I, 509 U.S. at 592 n.10 (citing Bourjaily v. United States, 483 U.S. 171, 175-176 (1987)).

case are based on a scientific and reliable methodology as a prerequisite to allowing the jury to consider the weight of competing expert testimony.

### A. Dr. Ault Is Not Qualified to Opine on Effective Means of Stopping the Spread of Communicable Disease, the Efficacy of MC Gowns, Reported Strikethroughs, or the Risk of Contagion Through Skin Contact.

Dr. Ault is a colorectal surgeon. [Avenatti Decl., Ex. 1 (Ault Report) at pp. 1-2).] His experience in that field, however illustrious and distinguished, does not provide him with the necessary qualifications to offer technical opinions regarding the relative merits of alternative methods to prevent the spread of communicable diseases (id. at pp. 3-4), the efficacy of the MicroCool Gown (id. at pp. 6-7), alternative explanations for reports of strikethroughs involving the MicroCool Gown he may have witnessed (id. at p. 17), and the risk of infection from bodily fluid exposure to intact skin (id.). Therefore, these opinions are unreliable and should be excluded.

Whether an expert's opinion is within his or her area of expertise is a preliminary question to be determined by the trial court. Fed. R. Evid. 104(a). He or she must be "qualified as an expert by knowledge, skill, experience, training, or education . . ." Fed. R. Evid. 702. "To qualify as an expert, a witness must have knowledge, skill, experience, training or education relevant to such evidence or fact in issue[.]" United States v. Chang, 207 F.3d 1169, 1172 (9th Cir. 2000). Stated differently, "the opinion must be an expert opinion (that is, an *opinion informed by the witness' expertise*) rather than simply an opinion broached by a purported expert." Gable v. Nat'l Broad Co., 727 F.Supp.2d 815, 833 (C.D. Cal. 2010) (quoting Jones v. Lincoln Elec. Co., 188 F.3d 709, 723 (7th Cir. 1999) (emphasis in original). "Thus, to determine whether a proposed expert is qualified, the court must examine whether the witness's qualifying training, experience, or specialized knowledge is sufficiently related to the subject matter upon which the witness offers an opinion." Id. Bourland v. City of Redding, No. CIV S-09-3195-KJM, 2013 WL 144973, at *2 (E.D. Cal., Jan. 11, 2013) (expert opinion is "reliable if the knowledge

underlying it has a reliable basis in the knowledge and experience of the relevant discipline").

"Merely demonstrating that an expert has experience does not automatically render every opinion and statement by that expert reliable." Hendrix v. Evenflo Co., 609 F.3d 1183, 1201 (11th Cir. 2010). If a witness is relying solely or primarily on experience, as Dr. Ault does here, then the witness must explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Id. (citing Fed. R. Evid. 702, Advisory Committee Note, 2000 Amendment); see also Jinro Am., Inc. v. Secure Invs., Inc., 266 F.3d 993, 1004 (9th Cir. 2001) ("[C]are must be taken to assure that a proffered witness truly qualifies as an expert"); In re Canvas Specialty, Inc., 261 B.R. 12, 18 (Bankr. C.D. Cal. 2001) ("It is not enough that the proposed expert have expertise in an area of knowledge. The expertise must be relevant to the determination of the facts in issue").

Here, Dr. Ault is a colorectal surgeon. He is not an expert on surgical gowns or other personal protective apparel (PPE). He is not an expert on the transmission of infectious diseases and bloodborne pathogens, or how to measure the effectiveness of PPE in preventing the transfer of such diseases and pathogens. He is also not an expert on fluid barrier protection standards and tests, such as the PB70 standard or the ASTM F1670 and F1671 tests. The mere fact that he may use surgical gowns as part of his work as a surgeon does not make him an expert on the effectiveness of the gowns. If there is to be a "battle of the experts" at trial in this case, it should be a true battle of "experts" and not a battle between users who are fans of the MicroCool Gowns and those who are not. Yet, that is precisely what Dr. Ault, who claims to have a positive personal experience in using the product, proposes should be presented to the jury.

In addition, while Dr. Ault purports to opine "to a reasonable degree of medical certainty" [Avenatti Decl., Ex. 1 (Ault Report) at p. 3)] regarding alternative methods to prevent the spread of communicable disease, the efficacy of the MicroCool Gowns, alternative explanations for reports of MicroCool strikethroughs, and the risk of

transmission of infectious disease through skin contact with bodily fluids, his education and experience is not relevant to, and has not been applied to, these opinions. See White v. Ford Motor Co., 312 F.3d 998, 1008-09 (9th Cir. 2002). More specifically, Dr. Ault is not properly qualified to testify regarding the risk of contracting serious infections from the use of the MicroCool Gowns because he is not an expert on the MicroCool Gowns, surgical gowns in general, or the transmission of infectious diseases. See Chang, 207 F.3d at 1172 (affirming exclusion of expert testimony of international finance expert regarding authenticity of "Japanese 'Certificate of Payback Balance'" because he lacked training or experience in identification of counterfeit securities); United States v. Redlightning, 624 F.3d 1090, 1115 (9th Cir. 2010) (district court properly held that witness could not opine on topics for which he lacked necessary qualifications); Jinro Am., Inc. v. Secure Invs., Inc., 266 F.3d 993, 1004 (9th Cir. 2001) (district court erred by allowing witness to testify as an expert when "his qualifications as an expert were suspect at best" and the witness "came before the jury cloaked with the mantle of an expert"); Oracle Am., Inc. v. Google, Inc., No. C-10-03561, 2016 WL 1743129, at *4 (holding witness on technical issues relating to fair use precluded from offering opinions relating to the economic effect of alleged copyright infringement on the market for copyrighted works); Gallagher v. S. Source Packaging, LLC, 568 F.Supp.2d 624, 634 (E.D.N.C. 2008) (software consultant precluded from testifying as expert about party's alleged losses because he "is not an accountant or an economist" and "has no knowledge concerning NPSG's customers, products, or production costs."); Morales v. E.D. Etnyre & Co., 382 F.Supp.2d 1252, 1271 (D.N.M. 2005) (witness with background in design and manufactuer of industrial or construction equipment not qualified to offer expert testimony on related economic issues because he "has not conducted any analysis regarding the marketing, sale, or distribution of industrial or construction equipment" and "does not have knowledge of the duties and obligations imposed on a manufacturer or distributor of industrial and construction equipment").

In White, the Ninth Circuit noted the proffered expert witness was not qualified to offer expert opinion regarding whether a vehicle's faulty parking brake caused the Plaintiff's injury, despite the expert's significant training and experience as a metallurgist (the study of the performance of metals) and as a professor of material science and engineering who was trained to read the underlying data. White, 312 F.3d at 1006-1008. Because the analytical process the expert employed did not rely on his expertise in how metals perform, the appellate court found the expert had "established no more foundation than anyone trained in any kind of engineering, or even a lay person not trained in engineering, would have to venture the opinion." Id. at 1008.

Like the expert in White, Dr. Ault has practical experience as a colorectal surgeon, but lacks the specific expertise required to form technical opinions regarding the MicroCool Gowns and the spread of infectious diseases. For example, while Dr. Ault points to his previous experience as medical director of the operating room at the hospital where he practices as potentially qualifying experience [Avenatti Decl., Ex. __ (Ault Report) at p. 7)], Dr. Ault does not point to any specialized training, courses or certification that would provide him with a scientific basis for the opinions that he offers. In fact, Dr. Ault admits that his responsibilities for ensuring sterile practices in that capacity were shared with his nursing director, and related to the enforcement of the hospital's policies for maintaining sterility. [Id.]  Like the metallurgist in White, Dr. Ault has "established no more foundation" for his opinion than his nursing director "or even a lay person" with respect to these opinions. White, 312 F.3d at 1008.

B.  Dr. Ault's Opinions On Subjects On Which He is Unqualified Are Unreliable

**1.  Dr. Ault's Opinion Regarding the Relative Merits of Alternative Strategies to Prevent the Transmission of Communicable Diseases is Unreliable.**

Dr. Ault opines that prevention of infection in the operating room is mainly accomplished through sterility and the use of aseptic technique rather than the use of personal protective equipment (PPE). [Avenatti Decl., Ex. 1 (Ault Report) at pp. 3-5).] However, as noted above, the only qualifying experience that Dr. Ault points to is his

previous experience as medical director of the operating room at the hospital where he practices. [Id. at p. 7.] In this regard, Dr. Ault does not point to any specialized training, courses or certification that would provide him with a scientific basis for the opinions that he offers; in fact, he admits that his responsibilities were shared with his nursing director, and related to the enforcement of the hospital's policies for maintaining sterility. [Id.] Like the metallurgist in White, Dr. Ault has "established no more foundation" for his opinion than his nursing director "or even a lay person" with respect to the risk of transmission through skin contact with bodily fluids. White at 1008.

For this reason, his testimony must be excluded or, at the very least, limited.

### 2. Dr. Ault's Opinion Regarding the Efficacy of MicroCool Gowns Based on His Personal Experience is Unreliable, Irrelevant, and Likely to Lead to Juror Confusion.

Dr. Ault opines that the MicroCool Gowns allow excellent range of motion, are flexible, durable and strong, and he has never experienced a strikethrough. [Avenatti Decl., Ex. 1 (Ault Report) at pp. 6-7).] While Dr. Ault avers that "I have had personal experience with the use of MicroCool gowns," [id. at 6], he makes no attempt to quantify his purported experience, either by temporal reference, by even a rough estimate of times used, or any training he may have received. As Plaintiff's expert Jeffrey Stull points out, "Dr. Ault's observations about the efficacy of the MicroCool products are only limited to his own direct experience and not to the full extent of the product's distribution and application. Surgical gown products are used in a wide of variety of facilities that have different practices and in different uses such as by laboratory workers, researchers, and environmental services staff. The inference that a product is safe on the basis of one facility's history cannot account for the full range of product performance in the marketplace and therefore, suggesting that such an inference may be drawn is misleading at best." [Avenatti Decl., Ex. 1 (Stull Rebuttal Report) at ¶14.]

Additionally, as noted above, Dr. Ault did not conduct any independent investigation or testing of the gowns sold during the class period (other than in the limited

respect discussed below), or any independent survey of users of the gowns during the class to determine a scientific rate of actual failures and complaints.

In short, Dr. Ault proposes to provide irrelevant *percipient witness* testimony of extremely limited value disguised as expert opinion. The problem is that Defendants are proffering Dr. Ault as an *expert* witness, not as a *fact* witness. Dr. Ault's personal story of enjoying his personal use of the gowns without incident is irrelevant. See, e.g., Perez v. Seafood Peddler of San Rafael, Inc., 12-CV-00116-WHO, 2014 WL 2810144, at *2–3 (N.D. Cal. June 20, 2014) (granting motion *in limine* to preclude defendant's accountant from offering expert testimony on whether individuals were independent contractors or employees where accountant's expertise stemmed from personal knowledge and experience only and was "not based on scientific, technical, or other specialized knowledge"); Jones v. United States, 933 F. Supp. 894, 899 (N.D. Cal. 1996) ("[A]necdotal case reports, reviews of research done by other people, or studies lacking a control group ... are not derived through the scientific method"); Casey v. Ohio Medical Products, 877 F.Supp. 1380, 1385–1386 (N.D. Cal. 1995) (case reports are not reliable scientific evidence because they are not sufficiently based on scientific reliability and methodology). Worse yet, it threatens to improperly influence jurors not on the basis of facts or science or specialized knowledge or experience, but on the basis of hearing about one isolated positive experience from a person cloaked in the mantle of a credentialed "expert"—here, a colorectal surgeon. The Court is the gatekeeper of proper expert testimony and whether to exclude those matters that are irrelevant and would potentially mislead and confuse a jury. Fed. R. Evid. 401, 403. Therefore, Dr. Ault's testimony must be excluded or, at the very least, limited.

      **3.    Dr. Ault's Opinion Regarding Alternative Explanations for Reports of Strikethroughs is Unreliable.**

Dr. Ault admits that he "often" investigated instances in which the MicroCool Gown "allowed for 'channeling' of fluids from the forearm area down to the wrist" while

the gown was being used in procedures, and that "the provider claimed that this was strikethrough from the gown." [Avenatti Decl., Ex. 1 (Ault Report) at p. 7).]

While this factual testimony is admissible from Dr. Ault as a lay witness, Dr. Ault's *opinion* that this seepage in the MicroCool gowns was due to "channeling" of fluids through sleeve "bunching" rather than strikethrough is unreliable and should be excluded. [Avenatti Decl., Ex. 1 (Ault Report) at p. 7).] As noted above, Dr. Ault's claimed "personal experience with the use of the MicroCool gowns" [id. at 6] is entirely unquantified, as is the nature, scope, or extent of his "investigations." Dr. Ault does not provide any description of the basis for his conclusions, nor does he provide the underlying records or reports for his investigations, or communications with KC or Halyard or medical authorities to support these findings.

For this additional reason, his testimony must be excluded or, at the very least, limited.

### 4. Dr. Ault's Opinion Regarding the Risk of Infection through Skin Contact is Unreliable.

Dr. Ault opines that when intact skin is exposed to bodily fluid the risk of infection or harm is "essentially zero." [Avenatti Decl., Ex. 1 (Ault Report) at pp. 7-8).] However, as noted above, the only qualifying experience that Dr. Ault points to is his previous experience as medical director of the operating room at the hospital where he practices. [Id. at p. 7.] In this regard, Dr. Ault does not point to any specialized training, courses or certification that would provide him with a scientific basis for the opinions that he offers; in fact, he admits that his responsibilities were shared with his nursing director, and related to the enforcement of the hospital's policies for maintaining sterility. [Id.] Like the metallurgist in White, Dr. Ault has "established no more foundation" for his opinion than his nursing director "or even a lay person" with respect to the risk of transmission through skin contact with bodily fluids. White, 312 F.3d at 1008.

The only rationale that Dr. Ault offers for this opinion is that, "*[a]t our facility, there is no further treatment other than the immediate washing of the exposed area with*

clorhexidene soap. The provider does not have their blood tested and is not placed on any prophylactic medications." [Avenatti Decl., Ex. 1 (Ault Report) at pp. 7-8) (emphasis added.] Yet Dr. Ault points to nothing to show that the practice "at [his] facility" is state of the art or even in step with generally accepted practices or representative of the standard at other facilities. In fact, Dr. Ault undermines the ability of his facility's practice to support his opinion, when he admits that, "[i]f there is a body fluid exposure from a patient with a *known* communicable disease," a more robust response follows. [Id. at p. 8 (emphasis added).] That evidence shows that the risk of transmission is not *actually* "zero."

For this reason, his testimony must be excluded or, at the very least, limited.

### III. CONCLUSION

For the above-stated reasons, Plaintiff Bahamas Surgery Center, LLC respectfully requests that this motion to exclude, or in the alternative limit, the expert testimony of Dr. Glenn T. Ault be granted. Plaintiff also requests a Daubert hearing to the extent the Court deems such a hearing to be necessary or helpful in assessing Plaintiff's motion.

Dated: February 7, 2017                EAGAN AVENATTI, LLP


By:      /s/ Michael J. Avenatti
         Michael J. Avenatti
         Attorneys for Plaintiff, Individually and
         On Behalf of All Others Similarly Situated