EAGAN AVENATTI, LLP
Michael J. Avenatti, State Bar No. 206929
mavenatti@eaganavenatti.com
Ahmed Ibrahim, State Bar No. 238739
aibrahim@eaganavenatti.com
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Telephone:   949.706.7000
Facsimile:   949.706.7050

Attorneys for Plaintiff, Individually and On
Behalf of All Others Similarly Situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HRAYR SHAHINIAN, M.D., F.A.C.S., et al.,<br><br>                Plaintiff,<br><br>        vs.<br><br>KIMBERLY-CLARK CORPORATION, a Delaware Corporation, and HALYARD HEALTH, INC., a Delaware Corporation,<br><br>                Defendants. | CASE NO.:  14-CV-08390 DMG (PLA)<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |

## I.     CLAIMS AND DEFENSES

(a)     Plaintiff plans to pursue the following claims against the following defendants:

(1)     **Claim 1**:  Defendants Kimberly-Clark and Halyard committed fraud based on their affirmative misrepresentations.

(2)     **Claim 2**:  Defendants Kimberly-Clark and Halyard committed fraud based on their fraudulent concealment and/or non-disclosure of material facts.

(3)     **Claim 3**:  Defendants Kimberly-Clark and Halyard violated the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*., based on their affirmative misrepresentations.

(4)     **Claim 4**:  Defendants Kimberly-Clark and Halyard violated the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*., based on their concealment and/or non-disclosure of facts.

(b)     The elements required to establish Plaintiff's claims are:

(1)     **Claim 1**:  To establish its claim for fraud based on affirmative misrepresentations, Plaintiff must generally prove the following:

1.    That Defendants represented to Plaintiff that a fact was true

2.    That Defendants' representation was false.

3.    That Defendants knew that the representation was false when they made it, or that they made the representation recklessly and without regard for its truth.

4.    That Defendants intended that Plaintiff rely on the representation.

5.    That Plaintiff reasonably relied on Defendants' representation.

6.    That Plaintiff was harmed.

7.    That Plaintiff's reliance on Defendants' representation was a substantial factor in causing its harm.

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

See Judicial Council Of California Civil Jury Instruction (hereafter, "CACI") 1900

(2)   **Claim 2**:  To establish its claim for fraud based on fraudulent concealment and/or non-disclosure of material facts, Plaintiff must generally prove the following:

    1.    That Defendants did one or more of the following:

        a.    Disclosed some facts to Plaintiff but intentionally failed to disclose other facts making the disclosure deceptive; or

        b.    Intentionally failed to disclose certain facts that were known only to them and that Plaintiff could not have discovered; or

        c.    Prevented Plaintiff from discovering certain facts.

    2.    That Plaintiff did not know of the concealed facts (*note:  this element need not be proven if the third option for element 1 is selected*).

    3.    That Defendants intended to deceive Plaintiff by concealing the facts.

    4.    That had the omitted information been disclosed, Plaintiff reasonably would have behaved differently.

    5.    That Plaintiff was harmed; and

    6.    That Defendants' concealment was a substantial factor in causing Plaintiff's harm.

See CACI 1901.

(3)   **Claim 3:**  To establish its claim for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.,* based on affirmative misrepresentations, Plaintiff must generally prove the following:

    1.    **That Defendants engaged in "unfair competition" by engaging in a "fraudulent business act or practice[.]"**  Cal. Bus. & Prof. Code § 17200.  A business practice is fraudulent if "members of the public are likely to be

2

deceived" by Defendants' conduct.  <u>In re Tobacco II Cases</u>, 46 Cal.4th 298, 312 (2009); <u>see also</u> <u>Pulaski & Middleton v. Google</u>, 802 F.3d 979, 985 (9th Cir. 2015) (same). "'Likely to deceive' . . . indicates that the ad[vertisement] is such that it is probable that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." <u>Lavie v. Procter & Gamble Co.</u>, 105 Cal.App.4th 496, 508 (2003).  "This inquiry does not require 'individualized proof of deception, reliance or injury.'" <u>Pulaski</u>, 802 F.3d at 985 (quoting <u>In re Tobacco II Cases</u>, 46 Cal.4th at 320)).

2.      **That Plaintiff "has suffered injury in fact and has lost money or property as a result of the unfair competition."** Cal. Bus. & Prof. Code § 17204.

3.      **Actual reliance on the misrepresentation by Plaintiff**.  <u>See</u> <u>In re Tobacco II Cases</u>, 46 Cal.4th 298, 326 (2009).  Individualized proof of reliance, however, is not required.  <u>Pulaski & Middleton v. Google</u>, 802 F.3d 979, 985 (9th Cir. 2015).    Further, reliance by Plaintiff can be inferred by a showing that the "misrepresentation was material." <u>In re Tobacco II Cases</u>, 46 Cal.4th at 326.    A misrepresentation is material if "a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question[.]" <u>Id.</u>

(4)      **Claim 4:**  To establish its claim for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.,* based on concealment and/or non-disclosure of material facts, Plaintiff must generally prove the following:

1.      **That Defendants engaged in "unfair competition" by engaging in a "fraudulent business act or practice[.]"** Cal. Bus. & Prof. Code § 17200.  A business practice is fraudulent if "members of the public are likely to be deceived" by Defendants' conduct.  <u>In re Tobacco II Cases</u>, 46 Cal.4th 298, 312 (2009); <u>see also</u> <u>Pulaski & Middleton v. Google</u>, 802 F.3d 979, 985 (9th Cir. 2015) (same). "'Likely to deceive' . . . indicates that the ad[vertisement] is such that it is probable that

a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." Lavie v. Procter & Gamble Co., 105 Cal.App.4th 496, 508 (2003). "This inquiry does not require 'individualized proof of deception, reliance or injury.'" Pulaski, 802 F.3d at 985 (quoting In re Tobacco II Cases, 46 Cal.4th at 320)).

      2.    **That Plaintiff "has suffered injury in fact and has lost money or property as a result of the unfair competition."** Cal. Bus. & Prof. Code § 17204.

      3.    **Actual reliance on the omission by Plaintiff**. See In re Tobacco II Cases, 46 Cal.4th 298, 326 (2009). Individualized proof of reliance, however, is not required. Pulaski & Middleton v. Google, 802 F.3d 979, 985 (9th Cir. 2015). Further, reliance by Plaintiff can be inferred by a showing that the omission or failure to disclose was material. See, e.g., Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1022 (9th Cir. 2011); Massachusetts Mutual Life Ins. Co. v. Superior Court, 97 Cal.App.4th 1282, 1293 (2002) ("[H]ere the record permits an inference of common reliance. Plaintiffs contend Mass Mutual failed to disclose its own concerns about the premiums it was paying and that those concerns would have been material to any reasonable person contemplating the purchase. . . ." If proved, that would "be sufficient to give rise to the inference of common reliance on representations which were materially deficient."). A misrepresentation or omission is material if "a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question[.]" Stearns, 655 F.3d at 1022 (quoting Steroid Hormone Prod. Cases, 181 Cal.App.4th 145, 157 (2010)).

      4.    **That Defendants had a duty to disclose the materials omitted.** See, e.g., Massachusetts Mutual Life Ins. Co. v. Superior Court, 97 Cal.App.4th 1282, 1289-91 (2002) (insurer's failure to disclose planned change to dividend policy stated claim for "fraudulent business practice" in violation of the UCL); Falk v. General Motors Corp., 496 F.Supp.2d 1088, 1098 (N.D. Cal. 2007) (holding the

4

plaintiffs stated valid fraudulent conduct claim under the UCL by alleging GM violated its duty to disclose the potential for known defects in its speedometers). Such a duty exists where Defendants:

> a. Disclosed some facts to Plaintiff but intentionally failed to disclose other facts making the disclosure deceptive; or

> b. Intentionally failed to disclose certain facts that were known only to them and that Plaintiff could not have discovered; or

> c. Prevented Plaintiff from discovering certain facts.

> CACI 1901; see also Falk, 496 F.Supp.2d at 1095.

(c)     In brief, some of the key evidence Plaintiff relies on for each of the claims is as follows[1]:

(1)     **Claim 1:  Fraud Based on Affirmative Misrepresentations**

(i)     **Element 1:  That Defendants represented to Plaintiff that a fact was true.**

**Supporting Evidence for Element 1:**

- Evidence that Defendants labeled, advertised, marketed, and promoted the MicroCool Gowns as meeting the AAMI Level 4 standard for liquid barrier protection, and that the MicroCool Gowns pass the ASTM 1671 test.

- Evidence that the labeling of the MicroCool Gowns, and the claims regarding liquid barrier protection and passing industry standard tests, have remained consistent and uniform throughout the period between February 12, 2012 and January 11, 2015 (the "Class Period").

- Evidence that Defendants included a label with the AAMI Level 4 representation on the outside of every box containing non-sterile gowns shipped to CPT suppliers similar to the label placed on the sterile gown packages.

(ii)     **Element 2:  That Defendants' representation was false.**

---

[1] To be clear, this is certainly not all of the evidence Plaintiff will rely on at trial for each of the elements.

## **Supporting Evidence for Element 2:**

- Test reports revealing failing ASTM 1671 test results from independent testing labs of testing conducted on samples of sleeve seams from MicroCool Gowns.

- Test reports from monthly monitoring of the MicroCool Gowns Defendants received in 2012 also revealed consistent sleeve seam failures in 2012.

- Testimony of Defendants' employees and internal company documents confirming receipt of failing test results and the logging of the failing test results.

- Testimony of Defendants' current and former employees confirming that the company was well aware that the MicroCool Gowns failed AAMI Level 4 testing, were not compliant, had problems, and had quality issues.

- Testimony of a former employee of Kimberly-Clark describing a meeting convened by the President of Kimberly-Clark's Healthcare division about non-compliance and quality issues with the company's products, in which the President stated, among other things, that "she was sick and tired of all the noncompliance issues that . . . she had experienced for more than a decade, and she wanted me to fix it."

- Evidence from e-mails, internal documents, and testimony that Kimberly-Clark created a team to resolve the problems with the MicroCool Gowns and that the team confirmed that the MicroCool Gowns were non-compliant.

- Testimony of former employees of Kimberly-Clark stating that Kimberly-Clark consistently placed profits over compliance and that this was one of the reasons why the MicroCool Gowns had problems and why the company continued to sell the gowns knowing about these problems.

- E-mail evidence and employee testimony of at least one instance where Defendants sought to find a pretext to retest the gowns to make sure they pass, even if the rationale or reason to retest was not a "proven reason."

- Evidence from Defendants' employees and contemporaneous e-mails and other correspondence demonstrating that the process Defendants were using to seal sleeves of MicroCool Gowns was not validated and was producing defective sleeve seams that leaked.

- Evidence that Kimberly-Clark convened a "Quality Review Board" (QRB) to track the progress of the MicroCool Gowns' quality issue and to determine whether or not to conduct a recall.

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

- Evidence from internal documents and employee testimony that Kimberly-Clark initiated a "Corrective and Preventative Action" (CAPA) in early February 2013 to resolve the known problems with the gowns.

- Evidence that in opening the CAPA, Defendants admitted that the "problem" was that the MicroCool Gowns "are not meeting the AAMI Standard requirement for barrier performance as required in ASTM 1670 and the 510(k)" and was caused because "[c]urrent Band [sic] Sealing technology of gown sleeves is inadequate to meet the AAMI requirement for barrier performance."

- Evidence from company documents, e-mails, and employee testimony that the CAPA remained open—meaning it remained unresolved—for at least another 18 months until January or February 2015.

- Evidence of Defendants' receipt of complaints from customers about the MicroCool Gowns, including strikethrough and leaking in the sleeve area.

- Testimony from current and former employees, and internal documents, establishing that the MicroCool Gowns remained non-compliant until at least January 2015 while Defendants attempted to fix the problems with the sleeve seams by replacing their bar sealers with Bosch band sealers.

- Evidence of an internal "MicroCool Timeline" confirming there was, at a minimum, an 18-month "GAP IN SLEEVE SEAM PASSING ASTM."

- Evidence of an interview of Halyard's Chief Executive Officer relating to the MicroCool Gowns conducted by the television program *60 Minutes*.

- Evidence showing that after Cardinal Health, Kimberly-Clark's competitor and one its major distributors, shared test results of sleeve seams on the MicroCool Gowns failing at an alarming rate, Kimberly-Clark confidentially settled its then-long standing litigation with Cardinal in order to prevent public dissemination of the failing test results.

- Evidence that in connection with the Cardinal settlement, Kimberly-Clark's in-house lawyer admitted to the gown defects by agreeing to indemnify Cardinal "for any liability arising from any current AAMI IV product nonconformance."

- Evidence that Kimberly-Clark's lawyer acknowledged at the time that Kimberly-Clark had a "known quality issue, and it may continue during the [subsequent] 12 month period."

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

- Expert testimony that because of the known test failures and problems that had to be fixed with the gowns discussed above, labeling the gowns as AAMI Level 4 or representing that they meet the highest industry standards of liquid barrier protection would not be accurate.

- Evidence (testimony of Defendants' employees, expert testimony, Defendants' documents) describing the AAMI Level 4 certification and the industry tests and standards relating to the AAMI-4 certification and measuring liquid barrier protection in surgical gowns.

           **(iii)   Element 3:  That Defendants knew that the representation was false when they made it, or that they made the representation recklessly and without regard for its truth.**

<u>**Supporting Evidence for Element 3:**</u>

- All Supporting Evidence for Element 2 listed above.

           **(iv)   Element 4:  That Defendants intended that Plaintiff rely on the representation.**

<u>**Supporting Evidence for Element 4:**</u>

- Evidence from Defendants' employees (including the former President of the Healthcare division) that they understood purchasers of the MicroCool Gowns would rely on and "put stock" in the representation that the gowns met AAMI Level 4 standards.  Thus, whether gowns were AAMI Level 4, passed industry standard tests, did not leak, provided barrier protection, and were safe, was all material information that would influence purchasing decisions.

- Evidence that Defendants put the AAMI Level 4 representation and the representation that the gowns pass the ASTM 1671 test on the label of the MicroCool Gowns.

- Evidence that Defendants aggressively marketed the MicroCool Gowns as meeting the standards for the highest level of barrier protection, and being safe and superior to rival gowns.

- Evidence that Defendants recommended to customers and the general public that the MicroCool Gowns were safe to use in connection with high risk and fluid intensive treatments, including in the treatment of the Ebola virus.

- Evidence from Defendants' own internal documents and marketing surveys showing they knew barrier protection was a key characteristic for gown selection.

- Testimony and internal documents, along with Defendants' internal surveys of potential buyers and Plaintiff's expert's survery, showing that whether the gowns were AAMI Level 4, passed industry standard tests, were safe, and provided fluid protection, were material information.

- Expert testimony that because surgical gowns such as the MicroCool Gowns are used by surgeons in fluid intensive procedures—i.e. procedures that possibly expose the surgeon to significant amounts of blood and pathogens—the most important aspect of these medical devices is liquid barrier protection.

- Evidence Defendants differentiated their gowns from competitor gowns based on the AAMI Level 4 certification, and sought FDA approval to be able to label the gowns as meeting the AAMI Level 4 liquid barrier standard.

- Evidence of a marketing survey of purchasers of the gowns conducted by Plaintiff's expert showing that purchasers considered it to be very important that surgical gowns meet current industry standards and safety requirements, provide a high level of fluid protection, and meet the AAMI level liquid barrier standard, and that they were not likely to purchase gowns represented as AAMI Level 4 if the manufacturer did not know whether the standard was actually met or if the gowns did not in fact meet the standard.

### **(v)   Element 5:   That Plaintiff reasonably relied on Defendants' representation.**

#### **<u>Supporting Evidence for Element 5:</u>**

- All Supporting Evidence for Element 4 listed above.

- Testimony from Plaintiff that it was critically important to Plaintiff that the representations made by Defendants as to safety and effectiveness of the MicroCool Gowns were accurate.

- Testimony from Plaintiff that because of fluid intensive procedures performed at Bahamas Surgery Center, it was critically important that the gowns did not leak, met industry standards relating to liquid barrier protection as represented by Defendants, did not pose an undisclosed safety risk, and were safe.

- Testimony from Plaintiff that Plaintiff was exposed to the representation that the MicroCool Gowns were labeled as meeting AAMI Level 4 prior to Plaintiff's purchase of the gowns.

- Testimony from Plaintiff that Plaintiff relied on Defendants' representations regarding the effectiveness of the MicroCool Gowns in making its decision whether to purchase Defendants' gowns.

### (vi)   Element 6:  That Plaintiff was harmed.

### Supporting Evidence for Element 6:

- Evidence that Plaintiff paid money (over $14,000) to purchase more than 5,000 MicroCool Gowns during the Class Period, including testimony from Plaintiff, as well as Defendants' financial spreadsheets and Plaintiff's purchase documentation.

- Testimony of Plaintiff that it would not have purchased any MicroCool Gowns if it knew that Defendants' representations concerning the MicroCool Gowns were false, or if Defendants had disclosed the truth.

- Expert testimony from Plaintiff's economist and damage expert regarding damages to the class based on a full refund approach and a partial refund approach.

- Defendants' financial spreadsheets reflecting the purchase of MicroCool Gowns by class members during the Class Period.

- Expert testimony demonstrating that the testimony for AAMI Levels 1 to 3 differs from the testing required for Level 4, and that if a gown fails Level 4 testing, it does not nonetheless qualify as Level 1, 2, or 3, and cannot be designated as such.

- Expert testimony that once a sample lot of gowns has failed testing, it is not permissible to label any of the gowns as meeting AAMI Level 4.

- Expert testimony that there is no market for the sale of a mislabeled gown like the MicroCool Gowns here at issue.

- Expert testimony that it would be unlawful for a hospital to keep or use a mislabeled or adulterated device.

- Evidence that Defendants sell the MicroCool Gowns at a premium over non-AAMI rated or lesser AAMI-rated gowns.

- Evidence that had the truth been known, Defendants would not have been able to charge the same price for the MicroCool Gowns that they charged and that class members paid.

- Evidence of a marketing survey of purchasers of the gowns conducted by Plaintiff's expert showing that purchasers considered it to be very important that surgical gowns meet current industry standards and safety requirements, provide a high level of fluid protection, and meet the AAMI level liquid barrier standard, and that they were not likely to purchase gowns represented as AAMI Level 4 if the manufacturer did not know whether the standard was actually met or if the gowns did not in fact meet the standard.

**(vii)    Element 7:    That Plaintiff's reliance on Defendants' representation was a substantial factor in causing its harm..**

**Supporting Evidence for Element 7:**

- All Supporting Evidence for Elements 4, 5, and 6 listed above.

**(2)    Claim 2:  Fraud Based on Fraudulent Concealment and/or Non-Disclosure of Material Facts**

**(i)    Element 1:    That Defendants did one or more of the following:**

**a.    Disclosed some facts to Plaintiff but intentionally failed to disclose other facts making the disclosure deceptive; or**

**b.    Intentionally failed to disclose certain facts that were known only to them and that Plaintiff could not have discovered; or**

**c.    Prevented Plaintiff from discovering certain facts.**

**Supporting Evidence for Element 1:**

- All Supporting Evidence for Element 2 listed above for Claim 1 (Fraud – Affirmative Misrepresentations)

- Testimony of Plaintiff that Defendants never disclosed to Plaintiff that, among other things:  (1) the MicroCool Gowns did not consistently meet AAMI Level 4

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

standards; (2) Defendants were aware that the gowns failed industry tests relating to liquid barrier protection; (3) based on these failed tests, Defendants had reason to believe that the gowns did not provide liquid barrier protection to critical zones of the gowns; (4) Defendants had received complaints from other customers regarding strikethrough; (5) the gowns did not meet industry standards; and/or (6) that the gowns posed a safety risk.

- Defendants' admissions that they sold the MicroCool Gowns during the Class Period without disclosing on the label or packaging that: (1) the MicroCool Gowns did not consistently meet AAMI Level 4 standards; (2) Defendants were aware that the gowns failed industry tests relating to liquid barrier protection; (3) based on these failed tests, Defendants had reason to believe that the gowns did not provide liquid barrier protection to critical zones of the gowns; (4) Defendants had received complaints from other customers regarding strikethrough; (5) the gowns did not meet industry standards; and/or (6) that the gowns posed a safety risk.

- Testimony of former employees that Kimberly-Clark took "extensive measures" to keep the problems with the MicroCool Gowns, including the fact that they did not consistently meet AAMI Level 4 standards and their inability to meet industry standards concealed from purchasers and healthcare professionals.

- Testimony of former employees of Kimberly-Clark stating that Kimberly-Clark consistently placed profits over compliance and that this was one of the reasons why the MicroCool Gowns had problems and why the company continued to sell the gowns knowing about these problems.

- Evidence showing that after Cardinal Health, Kimberly-Clark's competitor and one its major distributors, shared test results of sleeve seams on the MicroCool Gowns failing at an alarming rate, Kimberly-Clark confidentially settled its then-long standing litigation with Cardinal in order to prevent public dissemination of the failing test results.

- Evidence that in connection with the Cardinal settlement, Kimberly-Clark's in-house lawyer admitted to the gown defects by agreeing to indemnify Cardinal "for any liability arising from any current AAMI IV product nonconformance."

- Evidence that Kimberly-Clark's lawyer acknowledged at the time that Kimberly-Clark had a "known quality issue, and it may continue during the [subsequent] 12 month period."

- Evidence that even after this lawsuit was filed in October 2014, with full knowledge that the gowns were still non-compliant and creating a safety risk,

Defendants disseminated communications to customers falsely stating the gowns were compliant and were safe.

**(ii)      Element 2:  That Plaintiff did not know of the concealed facts (*note:   this element need not be proven if the third option for element 1 is selected*).**

**Supporting Evidence for Element 2:**

- Testimony of Plaintiff that Defendants never disclosed to Plaintiff that (and that Plaintiff did not know that), among other things:  (1) the MicroCool Gowns did not consistently meet AAMI Level 4 standards; (2) Defendants were aware that the gowns failed industry tests relating to liquid barrier protection; (3) based on these failed tests, Defendants had reason to believe that the gowns did not provide liquid barrier protection to critical zones of the gowns; (4) Defendants had received complaints from other customers regarding strikethrough; (5) the gowns did not meet industry standards; and/or (6) that the gowns posed a safety risk.

- Defendants' admissions that they sold the MicroCool Gowns during the Class Period without disclosing on the label or packaging that:  (1) the MicroCool Gowns did not consistently meet AAMI Level 4 standards; (2) Defendants were aware that the gowns failed industry tests relating to liquid barrier protection; (3) based on these failed tests, Defendants had reason to believe that the gowns did not provide liquid barrier protection to critical zones of the gowns; (4) Defendants had received complaints from other customers regarding strikethrough; (5) the gowns did not meet industry standards; and/or (6) that the gowns posed a safety risk.

**(iii)      Element 3:  That Defendants intended to deceive Plaintiff by concealing the facts.**

**Supporting Evidence for Element 3:**

- All Supporting Evidence for Elements 2 and 4 listed above for Claim 1 (Fraud – Affirmative Misrepresentations)

**(iv)      Element 4:    That had the omitted information been disclosed, Plaintiff reasonably would have behaved differently.**

13

**Supporting Evidence for Element 4:**

- All Supporting Evidence for Elements 4 and 5 listed above for Claim 1 (Fraud – Affirmative Misrepresentations)

- Testimony of Plaintiff that had Defendants disclosed the matters listed above (e.g., that the gowns failed industry tests, were not safe, etc.), it would not have purchased the MicroCool Gowns.

**(v)      Element 5:  That Plaintiff was harmed.**

**Supporting Evidence for Element 5:**

- All Supporting Evidence for Element 6 listed above for Claim 1 (Fraud – Affirmative Misrepresentations)

**(vi)   Element   6:      That   Defendants'   concealment   was   a substantial factor in causing Plaintiff's harm.**

**Supporting Evidence for Element 6:**

- All Supporting Evidence for Elements 4, 5, and 6 listed above for Claim 1 (Fraud – Affirmative Misrepresentations).

**(3)      Claim 3:   Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) Based on Affirmative Misrepresentations**

**(i)      Element   1:   That   Defendants   engaged   in   "unfair competition" by engaging in a "fraudulent business act or practice[.]"  Cal. Bus. & Prof. Code § 17200.**

**Supporting Evidence for Element 1:**

- All Supporting Evidence for Elements 1, 2, 3, and 4 listed above for Claim 1 (Fraud – Affirmative Misrepresentations)

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

           **(ii)**     **Element 2:  That Plaintiff "has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.**

**Supporting Evidence for Element 2:**

- All Supporting Evidence for Elements 4, 5, and 6 listed above for Claim 1 (Fraud – Affirmative Misrepresentations)

           **(iii)**     **Element 3:  Actual reliance on the misrepresentation by Plaintiff (reliance inferred if misrepresentation material).**

**Supporting Evidence for Element 3:**

- All Supporting Evidence for Elements 4 and 5 listed above for Claim 1 (Fraud – Affirmative Misrepresentations)

           (4)     **Claim 4:  Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) Based on Concealment and/or Non-Disclosure of Material Facts**

           **(i)**     **Element 1:  That Defendants engaged in "unfair competition" by engaging in a "fraudulent business act or practice[.]"  Cal. Bus. & Prof. Code § 17200.**

**Supporting Evidence for Element 1:**

- All Supporting Evidence for Elements 1, 2, 3, and 4 listed above for Claim 1 (Fraud – Affirmative Misrepresentations)
- All Supporting Evidence for Elements 1 and 2 listed above for Claim 2 (Fraud – Concealment and/or Non-Disclosure of Material Facts)

           **(ii)**     **Element 2:  That Plaintiff "has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.**

**Supporting Evidence for Element 2:**

- All Supporting Evidence for Elements 4, 5, and 6 listed above for Claim 1 (Fraud – Affirmative Misrepresentations)

        **(iii)   Element 3:   Actual reliance on the omission by Plaintiff (reliance inferred if fact omitted was material).**

**<u>Supporting Evidence for Element 3:</u>**

- All Supporting Evidence for Elements 4 and 5 listed above for Claim 1 (Fraud – Affirmative Misrepresentations)

- All Supporting Evidence for Element 4 listed above for Claim 2 (Fraud – Concealment and/or Non-Disclosure of Material Facts)

        **(iv)   Element 4:   That Defendants had a duty to disclose the materials omitted.   Such a duty exists where Defendants:**

        **a.   Disclosed some facts to Plaintiff but intentionally failed to disclose other facts making the disclosure deceptive; or**

        **b.   Intentionally failed to disclose certain facts that were known only to them and that Plaintiff could not have discovered; or**

        **c.   Prevented Plaintiff from discovering certain facts.**

**<u>Supporting Evidence for Element 4:</u>**

- All Supporting Evidence for Element 2 listed above for Claim 1 (Fraud – Affirmative Misrepresentations)

- All Supporting Evidence for Element 1 listed above for Claim 2 (Fraud – Concealment and/or Non-Disclosure of Material Facts)

        (d)   Defendants have pleaded and plan to pursue the following affirmative defenses.

1.     Failure to Mitigate Damages.

(e)     The elements required to establish Defendants' affirmative defenses are as follows.

1.     Failure to Mitigate Damages

(a)     Failure to use reasonable efforts to mitigate damages; and

(b)     The amount by which damages would have been mitigated.

(f)     In brief, the key evidence Plaintiff intends to rely on in opposing Defendants' affirmative defenses is as follows.

As a preliminary matter, Plaintiff does not believe that the defense of mitigation of damages applies to this case.  Mitigation of damages requires that the plaintiff has discovered the fraud and is therefore aware that he or she has been damaged.  By definition, Plaintiff cannot mitigate damages if Plaintiff is unaware it has suffered. Here, Defendants have never made an assertion in this case that they ever made Plaintiff aware of the problems with the MicroCool Gowns (i.e., that the gowns are not AAMI Level 4, did not meet industry standard tests, are unsafe, etc.).  Defendants also have never asserted in this case that Plaintiff discovered the problems with the gowns on their own.  Instead, Defendants seek a mitigation instruction as an end-run around the Court's rulings concluding that Plaintiff need not prove physical injury from use of the MicroCool Gowns in order to establish standing.  In other words, Defendants' proposed use of the mitigation of damages defense presupposes that Plaintiff is required to prove physical injury, which, as the Court has determined multiple times in this litigation, is not required.  This is an economic injury case.

If the Court decides the jury will be instructed on mitigation of damages, the key evidence Plaintiff intends to rely on in opposing this defense consists of:

•     Defendants' admissions that they never informed Plaintiff that there were problems with the MicroCool Gowns

17

- Plaintiff's testimony that Defendant never disclosed to Plaintiff that the MicroCool Gowns did not comply with the AAMI Level 4 standard, failed industry standard tests, or were unsafe for use in high fluid procedures, and that Plaintiff was not aware of these facts at any point during the class period.

(g)   There are no third parties who will be participating as litigants in this lawsuit.

(h)   The anticipated evidentiary issues between the parties are reflected in each parties' concurrently filed motions *in limine* and <u>Daubert</u> motions.  In addition, the parties' objections to the exhibits identified on the Joint Exhibit List are set forth in the concurrently filed Pretrial Exhibit Stipulation.

(i)   The issues of law which are germane to the case are as follows:

1.   Whether Defendants are liable to Plaintiff and the Class for fraudulent concealment based on their concealment of and/or failure to disclose material facts to Plaintiff?

2.   Whether Defendants are liable to Plaintiff and the Class for fraud based on affirmative intentional misrepresentations?

3.   Whether Defendants are liable for violation of the fraud prong of the California Unfair Competition Law?  Cal. Bus. & Prof. Code § 17200, *et seq.*

4.   Whether Plaintiff's restitution/damages calculation under the out-of-pocket loss rule must account for benefits of the MicroCool Gowns received after the purchase of the gowns?

## II.   BIFURCATION OF ISSUES

Plaintiff makes no request for bifurcation of issues.

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

## III.   JURY TRIAL

Plaintiff's claims for fraud based on affirmative misrepresentation and fraudulent concealment are triable to the jury as a matter of right.  Plaintiff has made a timely demand for jury.  [See Dkt No. 1 (Complaint) at 31.]

Plaintiff's claims for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.,* based on their affirmative misrepresentations, and concealment and/or non-disclosure of facts, are triable to the Court.  See Hodge v. Superior Court, 145 Cal.App.4th 278, 285 (2006) (Stating that "there is no right to a jury trial in a section 17200 lawsuit" and collecting cases); Smith v. Chase Mortg. Credit Grp., 653 F.Supp.2d 1035, 1045 (E.D. Cal. 2009) (The "UCL sounds in equity and therefore there is no right to a jury determination" of liability under it.).

Plaintiff makes no request for bifurcation of issues.

## IV.   ATTORNEYS' FEES

Plaintiff seeks an award of attorneys' fees pursuant to California Civil Procedure Code section 1021.5, which provides:

> Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Civ. Proc. Code § 1021.5.

Courts routinely award attorneys' fees under section 1021.5 in class actions.  See, e.g., MacDonald v. Ford Motor Co., 142 F. Supp. 3d 884, 891 (N.D. Cal. 2015); Estrada

v. FedEx Ground Package Sys., Inc., 154 Cal. App. 4th 1, 17 (2007); Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553, 578 (2004).

     Plaintiff intends to make the showing required under section 1021.5 by post-trial motion.

Dated: February 7, 2017          EAGAN AVENATTI, LLP
                              By:        /s/ Michael J. Avenatti
                                  Michael J. Avenatti
                                  Ahmed Ibrahim
                                  Attorneys for Plaintiff, Individually and On Behalf of All Others Similarly Situated

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW