1   ALEXANDER CALFO (State Bar No. 152891)
    acalfo@kslaw.com
2   JULIA ROMANO (State Bar No. 260857)
    jromano@kslaw.com
3   **KING & SPALDING LLP**
    633 W. 5th Street, Suite 1700
4   Los Angeles, CA 90071
    Telephone:  (213) 443-4355
5   Facsimile:  (213) 443-4310

6   Attorneys for Defendants KIMBERLY-CLARK
    CORPORATION, a Delaware Corporation; and
7   HALYARD HEALTH, INC., a Delaware
    Corporation
8

9                   **UNITED STATES DISTRICT COURT**

10                  **CENTRAL DISTRICT OF CALIFORNIA**

11

12  HRAYR SHAHINIAN, M.D., F.A.C.S.    Case No. 2:14-cv-08390-DMG-PLA
    et al.;
13                                     **JOINT STATEMENT REGARDING**
    Plaintiffs,                        **DEFENDANTS KIMBERLY-**
14                                     **CLARK CORPORATION AND**
    v.                                 **HALYARD HEALTH, INC.'S**
15                                     **PROPOSED JURY**
    KIMBERLY-CLARK                     **INSTRUCTIONS WITH**
16  CORPORATION, a Delaware            **PLAINTIFF BAHAMAS SURGERY**
    Corporation; and HALYARD           **CENTER, LLC'S OBJECTIONS**
17  HEALTH, INC., a Delaware           **AND RESPONSES**
    Corporation,
18
              Defendants.
19

20

21

22

23

24

25

26

27

28

**INDEX OF DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

| No. | Title | Source | Page |
|-----|-------|--------|------|
| 1 | Claims and Defenses (Modified) | Ninth Circuit Manual of Model Jury Instructions 1.5 | 1 |
| 2 | Concealment (Modified) | CACI 1901 | 3 |
| 3 | Substantial Factor | CACI 430 | 5 |
| 4 | Presumption of Reliance – Repeat Purchases | *Chow v. Neutrogena Corp.*, 2013 U.S. Dist. LEXIS 17670, at *5 (C.D. Cal. Jan. 22, 2013); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 454 (S.D. Cal. 2014)l; *Krouch v. Wal-Mart Stores, Inc.*, 2014 U.S. Dist. LEXIS 152755, at *26 (N.D. Cal. Oct. 28, 2014); *Leong v. Square Enix of Am. Holdings, Inc.*, 2010 U.S. Dist. LEXIS 47296, at *3-4, *11 (C.D. Cal. Apr. 20, 2010) | 6 |
| 5 | Presumption of Reliance – Lack of Uniform Exposure | *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012); *Todd v. Tempur-Sealy Int'l, Inc.*, 2016 U.S. Dist. LEXIS 136135, at *37-40 (N.D. Cal. Sept. 30, 2016); *Mezzadri v. Medical Depot, Inc.*, 2016 WL 5107163, at *7 (S.D. Cal. May 12, 2016); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1108-11 (C.D. Cal. 2015); *McVicar v. Goodman Global, Inc.*, 2015 U.S. Dist. LEXIS 110432, at *32 (C.D. Cal. Aug. 20, 2015); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 920 (C.D. Cal. 2010); *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *Philips v. Ford Motor Co.*, 2016 WL 7428810, at *15 (N.D. Cal. Dec. | 10 |

i

| | | | | |
|---|---|---|---|---|
| 1 | | | 22, 2016) | |
| 3 | 6 | Presumption of Reliance - Preexisting Contracts | *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) | 14 |
| 5 | 7 | Duty to Disclose | 21 U.S.C. § 360k(a); 21 CFR § 7.41; 21 CFR § 878.4040; *Samet v. Procter & Gamble Co.*, 2013 WL 3124647, at *5–6 (N.D. Cal. June 18, 2013); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996) | 18 |
| 9 | 8 | Consensus Standards | *See* 21 U.S.C. § 360c(a)(1)(A)-(B), (f)(1)(A), (i)(1)(A); 21 C.F.R. § 807.92(a)(3); 21 C.F.R. § 878.4040; FDA, GUIDANCE FOR INDUSTRY AND STAFF, FREQUENTLY ASKED QUESTIONS ON RECOGNITION OF CONSENSUS STANDARDS 5, 9 (Sept. 2007) | 22 |
| 14 | 9 | Lack of Injury | *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014); *Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d 964, 976 (N.D. Cal. 2014); *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014); *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1166 N. 11 (C.D. Cal. 2011); *Myers-Armstrong v. Actavis Totowa, LLC*, 2009 WL 1082026, at *4 (N.D. Cal. Apr. 22, 2009), *aff'd*, 382 F. App'x 545 (9th Cir. 2010) | 25 |
| 23 | 10 | Class Action Standing | *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); NEWBERG ON CLASS ACTIONS § 2:3 (5th ed.); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976); *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1215 n.1 (9th Cir. 2008); *Kirola v. City and County of San* | 28 |

ii

| | | | |
|---|---|---|---|
| | | *Francisco*, 2014 WL 1729273, at *3 (N.D. Cal. Apr. 29, 2014); *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 644 (C.D. Cal. 2014) | |
| 11 | Knowledge of Lawsuit | *Krouch v. Wal-Mart Stores, Inc.*, 2014 U.S. Dist. LEXIS 152755, at *26 (N.D. Cal. Oct. 28, 2014); *Red v. Kraft Foods, Inc.*, 2011 U.S. Dist. LEXIS 116965, at *32-34 (C.D. Cal. Sept. 29, 2011) | 31 |
| 12 | Out of Pocket Rule (Modified) | CACI 1923; *See* Court's Order re: Plaintiff's Class Cert. Motion, Dkt. 270, at 29; *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (Cal. App. 2d Dist. 2009); *Ogden v. Bumble Bee Foods, LLC*, 2014 WL 27527, at *13 (N.D. Cal. Jan. 2, 2014); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 532 (N.D. Cal. 2012); *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 5794873, at *5 (N.D. Cal. Nov. 6, 2014); *Ivie v. Kraft Foods Glob., Inc.*, 2015 WL 183910, at *2 (N.D. Cal. Jan. 14, 2015); *Rahman v. Mott's LLP*, 2014 WL 6815779, at *8 (N.D. Cal. Dec. 3, 2014); *Khasin v. R. C. Bigelow, Inc.*, 2016 WL 1213767, at *3 (N.D. Cal. Mar. 29, 2016) | 34 |
| 13 | Damages - Mitigation | Ninth Circuit Manual of Model Jury Instructions 5.3 | 39 |

iii

**DEFENDANTS' INSTRUCTION NO. 1:**

**NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS 1.5:**

**CLAIMS AND DEFENSES (MODIFIED)**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

This civil case involves a class action lawsuit.

Plaintiff is Bahamas Surgery Center, LLC.  Defendants are Kimberly-Clark Corporation and Halyard Health, Inc. (collectively referred to as "Defendants"). Defendant Kimberly-Clark Corporation sold and manufactured MICROCOOL* Breathable High Performance Gowns until October 31, 2014.  Since then, the gowns have been manufactured and sold by Defendant Halyard Health, Inc., which was spun off from Kimberly-Clark Corporation on October 31, 2014.

Plaintiff asserts that from February 12, 2012 through January 11, 2015, Defendants failed to disclose certain information to the class allegedly showing that their MICROCOOL* Breathable High Performance Surgical Gowns did not meet the standard for barrier protection claimed on the gowns' label, and that, as a result, Plaintiff and class overpaid for the gowns.  Plaintiff has the burden of proving these claims.

Defendants deny those claims and maintain that the MICROCOOL* gowns provided the level of barrier protection represented and that neither Plaintiff nor the class suffered any damages. Defendants therefore deny liability, and deny that Plaintiff or the class members are entitled to any of the relief they seek.

1
2

## EXPLANATION FOR MODIFICATIONS TO NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS 1.5:

3    Added language "This civil case involves a class action lawsuit" for juror
4  clarity.

5

6

7  **Plaintiff's Objections and Responses:**

8    Plaintiff objects to this request and submits that Plaintiff's proposed
9  instruction more accurately inform the jury of the nature of this action.  For
10  example, it is not correct to characterize Plaintiff's allegations as limited solely to
11  the claim that they "overpaid" for the gowns at issue or that Plaintiff's claims are
12  dependent on the "gowns' label."  Rather, it is more accurate to state, as Plaintiff
13  has in its proposed instruction, "that between February 12, 2012 and January 11,
14  2015, Defendants knew, but fraudulently failed to disclose to Plaintiff," important
15  information "that would have influenced their decision to purchase the MicroCool
16  High Performance Gowns."

17
18
19
20
21
22
23
24
25
26
27
28

2

## DEFENDANTS' INSTRUCTION NO. 2:

## JUDICIAL COUNCIL OF CALIFORNIA CIVIL JURY INSTRUCTIONS

## (CACI) 1901: CONCEALMENT (MODIFIED)

Plaintiff Bahamas Surgery Center claims that it was harmed because Defendants Kimberly-Clark and Halyard Health concealed certain information. To establish this claim, Plaintiff must prove all of the following:

1.     That Defendants disclosed some facts to Plaintiff but intentionally failed to disclose other facts, making the disclosure deceptive;

[or]

That Defendants intentionally failed to disclose certain facts that were known only to it and that Plaintiff could not have discovered;

[or]

That Defendants prevented Plaintiff from discovering certain facts;

2.     That Plaintiff did not know of the concealed facts;

3.     That Defendants intended to deceive Plaintiff by concealing the facts;

4.     That had the omitted information been disclosed, Plaintiff reasonably would have behaved differently;

5.     That Plaintiff was harmed; and

6.     That Defendants' concealment was a substantial factor in causing Plaintiff's harm.

3

1  **EXPLANATION FOR MODIFICATIONS TO JUDICIAL COUNCIL OF**
2  **CALIFORNIA CIVIL JURY INSTRUCTIONS (CACI) 1901**

3      Deleted bracketed language concerning an additional grounds for liability
4  where the parties are in a "fiduciary relationship," as Plaintiff has not alleged such
5  a fiduciary relationship.  Thus, this portion of the instruction could not apply here.
6

7  **Plaintiff's Objections and Responses:**

8      Plaintiff objects to this instruction in part.  As explained in Plaintiff's
9  proposed jury instructions, element No. 1 should be modified to add the word
10 "reasonably" before discovered.  See also Warner Construction Corp. v. City of
11 Los Angeles (1970) 2 Cal.3d 285, 294 ("In transactions which do not involve
12 fiduciary or confidential relations, a cause of action for non-disclosure of material
13 facts may arise in at least three instances: (1) the defendant makes representations
14 but does not disclose facts which materially qualify the facts disclosed, or which
15 render his disclosure likely to mislead; (2) the facts are known or accessible only to
16 defendant, and defendant knows they are not known to or **reasonably**
17 **discoverable** by the plaintiff; (3) the defendant actively conceals discovery from
18 the plaintiff.") (emphasis added).  This also makes this instruction consistent with
19 the standard CACI VF-1901 verdict, which uses the language "reasonably have
20 discovered" when posing the question corresponding to this element.
21
22
23
24
25
26
27
28

4

1    **DEFENDANTS' INSTRUCTION NO. 3:**

2    **JUDICIAL COUNCIL OF CALIFORNIA CIVIL JURY INSTRUCTIONS**

3    **(CACI) 430: SUBSTANTIAL FACTOR**

4    A substantial factor in causing harm is a factor that a reasonable person

5    would consider to have contributed to the harm. It must be more than a

6    remote or trivial factor. It does not have to be the only cause of the

7    harm.

8    Conduct is not a substantial factor in causing harm if the same harm

9    would have occurred without that conduct.

10

11   **Plaintiff's Objections and Responses:**

12   Plaintiff objects to this instruction in its entirety.  This CACI instruction is

13   offered in connection with negligence claims, not concealment.  The series of

14   CACI instructions addressed to Fraud or Deceit include no such instruction and it

15   is adequately addressed through the existing CACI instructions applicable to Fraud

16   or Deceit on this issue.  As such, it is inappropriate and need not be given.

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' INSTRUCTION NO. 4:

## PRESUMPTION OF RELIANCE - REPEAT PURCHASES

If you find that any class members made repeated purchases of MICROCOOL* gowns, you cannot presume that such class members reasonably relied on Defendants' alleged non-disclosure in deciding to purchase MICROCOOL* gowns. If Plaintiff Bahamas Surgery Center has not proven that each class member reasonably relied on Defendants' alleged non-disclosure in deciding to purchase MICROCOOL* gowns, you must find for Defendants.

**Defendants' Authority in Support:**

Under California law, there is no presumption of reliance if a purchaser, after having purchased and used a product the first time, purchases the product again. As one court has explained, in such a scenario, it is impossible "to distinguish between mere favorability toward products bearing the [Defendant's] brand name, for example, and reliance upon specific advertised benefits of the products in the case." *Chow v. Neutrogena Corp.*, No. CV 12-04624 R (JCx), 2013 U.S. Dist. LEXIS 17670, at *5 (C.D. Cal. Jan. 22, 2013). Moreover, it is impossible to "distinguish between repeat purchasers who actually received benefits from the product and repeat purchasers who were deceived again." *Id.*; *see also Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 454 (S.D. Cal. 2014) ("[I]t sounds in common sense that making repeat purchases indicates that the customer's expectations have been met and she was satisfied with the product."); *Krouch v. Wal-Mart Stores, Inc.*, No. 12-cv-02217-YGR, 2014 U.S. Dist. LEXIS 152755, at *26 (N.D. Cal. Oct. 28, 2014) ("On this and other occasions, even after accusing Walmart of providing misleading stickers in a letter and ultimately filing this lawsuit on that basis, Krouch continued to obtain oil changes from Walmart before reaching the 5,000-mile manufacturer service recommendation. This

6

1 | ongoing conduct . . . undercuts Krouch's claim that Walmart's representations
2 | were material to her decisions to obtain oil changes prematurely."); *Leong v.*
3 | *Square Enix of Am. Holdings, Inc.*, No. CV 09-4484 PSG (VBKx), 2010 U.S. Dist.
4 | LEXIS 47296, at *3-4, *11 (C.D. Cal. Apr. 20, 2010) (holding that plaintiff's
5 | continued payment of monthly subscription fees pursuant to a user agreement
6 | suggested that she did not consider a particular term of the agreement material and
7 | dismissing plaintiff's CLRA, UCL, and FAL claims).

8

9 | **Plaintiff's Objections and Responses:**

10 | Plaintiff objects to this instruction in its entirety.

11 | *First*, this jury instruction is premised on the notion that the jury will revisit
12 | this Court's class certification findings by deciding whether there is a presumption
13 | of reliance. Defendants are plainly wrong, and they cite no authority for such a
14 | reading of Rule 23. The Court decides—and in this case *has* decided—under Rule
15 | 23 whether one or more classes should be certified. See Fed. R. Civ. P.
16 | 23(c)(1)(A) (providing that "the court must determine by order whether to certify
17 | the action as a class action."). And the Court has already determined there is an
18 | inference of reliance that applies to this class. [See Dkt. No. 269 at 23.] In a class
19 | action, class members will "prevail or fail in unison. In no event will the
20 | individual circumstances of particular class members bear on the inquiry." <u>Amgen</u>
21 | <u>Inc. v. Connecticut Ret. Plans & Trust Funds</u>, 133 S. Ct. 1184, 1191 (2013).
22 | Indeed, there would be no point in certifying representative plaintiffs as typical and
23 | adequate if the trier of fact also had to analyze the individual circumstances of
24 | particular class members. Instead, Rule 23 is specifically "designed to ensure that
25 | 'the common bond between the class representatives' claims and those of the class
26 | is strong enough so that it is fair for the fortunes of the class members to rise or fall
27 | with the fortunes of the class representatives.'" <u>Cooper v. Southern Co.</u>, 390 F.3d

28

7

1  695, 713 (11th Cir. 2004) (citation omitted), overruled in part on other grounds by

2  Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006); see also Rubenstein et al.,

3  Newberg on Class Actions § 1:5 at 13 (5th ed. 2011) (noting that a "primary

4  purpose of the class suit is to promote efficiency by enabling *representatives* to

5  litigate") (emphasis added); Silberblatt v. Morgan Stanley, 524 F. Supp. 2d 425,

6  435 (S.D.N.Y. 2007) ("Absent class members are entitled to repose confidence and

7  trust in a class representative . . . . This confidence derives in large measure from

8  knowing that the class representative stands in the same shoes as all other members

9  of the class.").

10  *Second*, in a fraudulent concealment claim, involving the omission of

11  uniform, material facts, a plaintiff need not show uniform reliance as it would in an

12  affirmative misrepresentation claim.  See Tietsworth v. Sears, Roebuck and Co.,

13  720 F. Supp. 2d 1123, 1147 (N.D. Cal. 2010) ("[R]eliance . . . may be presumed in

14  the case of a material fraudulent omission.") (quoting Plascencia v. Lending 1st

15  Mortgage, 259 F.R.D. 437, 447 (N.D. Cal. 2009)); see Daniel v. Ford Motor Co.,

16  No. CIV. 2:11-02890 WBS, 2013 WL 2474934, at *4 (E.D. Cal. June 7, 2013),

17  rev'd in part, 806 F.3d 1217 (9th Cir. 2015) ("A plaintiff may invoke a presumption

18  or inference of reliance if the alleged omission was material."). The Court has

19  already rejected attempts by Defendants to argue that exposure to different

20  representations has any impact on fraudulent concealment claims.  [Dkt. No. 269

21  (Order re Plaintiff's Motion for Class Certification) at 23.]

22  *Third*, there is no legal basis for a presumption that because some class

23  members continued to purchase the MicroCool gowns, they cannot have

24  reasonably relied on Defendants' non-disclosure.  None of the cases Defendants

25  cite address a concealment scenario like the one in this case.  In fact, in two of the

26  cases, the Court was addressing the *plaintiff's* reliance, not the reliance of some

27  class members.  See Krouch v. Wal-Mart Stores, Inc., No. 12-cv-02217-YGR,

8

28

1  2014 U.S. Dist. LEXIS 152755, at *26 (N.D. Cal. Oct. 28, 2014); Square Enix of
2  Am. Holdings, Inc., No. CV 09-4484 PSG (VBKx), 2010 U.S. Dist. LEXIS 47296,
3  at *3-4, *11 (C.D. Cal. Apr. 20, 2010).  The other two cases are class certification
4  decisions and therefore inapplicable because the Court has already certified the
5  class.  See Chow v. Neutrogena Corp., No. CV 12-04624 R (JCx), 2013 U.S. Dist.
6  LEXIS 17670, at *5 (C.D. Cal. Jan. 22, 2013); Algarin v. Maybelline, LLC, 300
7  F.R.D. 444, 454 (S.D. Cal. 2014.).

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS WITH PLAINTIFF'S OBJECTIONS AND RESPONSES**

1  **DEFENDANTS INSTRUCTION NO. 5:**

2  **PRESUMPTION OF RELIANCE - LACK OF UNIFORM EXPOSURE**

3      If you find that members of the class were not uniformly exposed to the

4  same information before or at the time they decided to purchase MICROCOOL*

5  gowns, you cannot presume that all class members relied on Defendants' alleged

6  non-disclosure in deciding to purchase MICROCOOL* gowns.  If Bahamas has

7  not proven that each class member relied on Defendants' alleged non-disclosure in

8  deciding to purchase MICROCOOL* gowns, you must find for Defendants.

9

10  **Defendants' Authority in Support:**

11      The Ninth Circuit has held that in order to presume reliance in a fraudulent

12  omission case, the class must have been uniformly exposed to the same materials

13  from which the allegedly material information could have been omitted.  That is,

14  "[f]or everyone in the class to have been exposed to the omissions . . . it is

15  necessary for everyone in the class to have viewed the allegedly misleading

16  advertising." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012);

17  *see also Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984, 2016 U.S. Dist. LEXIS

18  136135, at *37-40 (N.D. Cal. Sept. 30, 2016) (collecting cases and explaining that,

19  with respect to a fraudulent omissions claim, even if a presumption of reliance

20  applied, "the need to individually decide whether class members had been exposed

21  to the alleged misrepresentation would dominate over other commonly shared

22  issues of law or fact"); *Mezzadri v. Medical Depot, Inc.*, No. 13-CV-2330-AJB-

23  DHB, 2016 WL 5107163, at *7 (S.D. Cal. May 12, 2016) (requiring a showing of

24  classwide exposure to allegedly misleading information); *In re NJOY, Inc.*

25  *Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1108-11 (C.D. Cal. 2015)

26  (denying certification of omission claim when advertising was "not sufficiently

27  substantial or pervasive to give rise to a presumption that all class members were

28

10

1 exposed to the advertisements"); *McVicar v. Goodman Global, Inc.*, No. SA CV
2 13-1223-DOC (RNBx), 2015 U.S. Dist. LEXIS 110432, at *32 (C.D. Cal. Aug. 20,
3 2015) ("In a case alleging fraudulent omissions, there must be some method to
4 conclude that there was exposure of *some* materials containing representations to
5 the class."); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 920 (C.D. Cal.
6 2010) (dismissing plaintiff's fraud by omission claims because plaintiff failed to
7 allege how he would have been aware of any disclosures that defendant could have
8 made). This is because omissions are actionable only if the plaintiff shows that
9 "had the omitted information been disclosed, [the purchaser] would have been
10 aware of it and behaved differently." *Mazza*, 666 F.3d at 596. This requirement is
11 not satisfied and "[a] presumption of reliance does not arise when class members
12 '[are] exposed to quite disparate information from various representatives of
13 defendant.'" *Id.* (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th
14 Cir. 2011)); *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir.
15 2015) (courts will presume reliance only when the plaintiff shows "that, had the
16 omitted information been disclosed, *one would have been aware of it and behaved*
17 *differently*" (emphasis added)); *Philips v. Ford Motor Co.*, No. 14-CV-02989-
18 LHK, 2016 WL 7428810, at *15 (N.D. Cal. Dec. 22, 2016) ("More generally, in
19 the context of a case involving both misleading statements and omissions, the
20 Ninth Circuit has held that if class members 'were exposed to quite disparate
21 information from various representatives of the defendant,' a presumption of
22 reliance may not be justified.").

23
24 **Plaintiff's Objections and Responses:**

Plaintiff objects to this instruction in its entirety.
25
26 *First*, this jury instruction is premised on the notion that the jury will revisit
27 this Court's class certification findings by deciding whether there is a presumption

28                                         11

1 | of reliance. Defendants are plainly wrong, and they cite no authority for such a

2 | reading of Rule 23. The Court decides—and in this case *has* decided—under Rule

3 | 23 whether one or more classes should be certified. See Fed. R. Civ. P.

4 | 23(c)(1)(A) (providing that "the court must determine by order whether to certify

5 | the action as a class action."). And the Court has already determined there is an

6 | inference of reliance that applies to this class. [See Dkt. No. 269 at 23.] In a class

7 | action, class members will "prevail or fail in unison. In no event will the

8 | individual circumstances of particular class members bear on the inquiry." Amgen

9 | Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1191 (2013).

10 | Indeed, there would be no point in certifying representative plaintiffs as typical and

11 | adequate if the trier of fact also had to analyze the individual circumstances of

12 | particular class members. Instead, Rule 23 is specifically "designed to ensure that

13 | 'the common bond between the class representatives' claims and those of the class

14 | is strong enough so that it is fair for the fortunes of the class members to rise or fall

15 | with the fortunes of the class representatives.'" Cooper v. Southern Co., 390 F.3d

16 | 695, 713 (11th Cir. 2004) (citation omitted), overruled in part on other grounds by

17 | Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006); see also Rubenstein et al.,

18 | Newberg on Class Actions § 1:5 at 13 (5th ed. 2011) (noting that a "primary

19 | purpose of the class suit is to promote efficiency by enabling *representatives* to

20 | litigate") (emphasis added); Silberblatt v. Morgan Stanley, 524 F. Supp. 2d 425,

21 | 435 (S.D.N.Y. 2007) ("Absent class members are entitled to repose confidence and

22 | trust in a class representative . . . . This confidence derives in large measure from

23 | knowing that the class representative stands in the same shoes as all other members

24 | of the class.").

25 |     *Second,* this argument has been rejected by the Court, most recently in

26 | connection with Defendants' motion to stay proceedings pending their Rule 23(f)

27 | Petition. [See Dkt. No. 277 at 2.] The Ninth Circuit also denied Defendants' Rule

28 | 

12

1   23(f) Petition in which Defendants raised similar arguments.   Plaintiff will not

2   reargue this point here and instead incorporates by reference the arguments made

3   in its opposition to Defendants' motion to stay.  [Dkt No. 274.]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS WITH PLAINTIFF'S OBJECTIONS AND
RESPONSES**

## DEFENDANTS' INSTRUCTION NO. 6:

## PRESUMPTION OF RELIANCE - PREEXISTING CONTRACTS

If you find that any class member purchased MICROCOOL* gowns before the addition of the "AAMI Level 4 (PB70:2003)" claim, and then continued to purchase MICROCOOL* gowns for the same price after the "AAMI Level 4 (PB:70:2003)" claim was added, you cannot presume that all class members relied on Defendants' alleged non-disclosure in deciding to purchase MICROCOOL* gowns. If Bahamas has not proven that each class member relied on Defendants' alleged non-disclosure in deciding to purchase MICROCOOL* gowns, you must find for Defendants.

**Defendants' Authority in Support:**

To prevail on their claims, the plaintiff and absent class members must show that they suffered "some form of economic injury" as a result of Defendants' alleged omission of material information. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). If a class member purchased the prior version of MICROCOOL* gowns at a particular price point, and continued to pay that same price for MICROCOOL* gowns after the "AAMI Level 4 (PB70:2003)" claim was added, that class member has not suffered any economic injury as a result of Defendants' alleged omission of material information. The class member has paid nothing more for a gown marketed as "AAMI Level 4 (PB70:2003)" than the class member paid for a gown that was not. Accordingly, this class member cannot be said to have presumptively relied on the "AAMI Level 4 (PB70:2003)" label in deciding to pay more for a surgical gown bearing the label, because it has not paid more for that gown. Under those circumstances, any presumption of reliance on

14

1 the claimed concealment is rebutted and members of the putative class must
2 individually prove reliance.

3

4 **Plaintiff's Objections and Responses:**

5    Plaintiff objects to this instruction in its entirety.

6    *First*, Defendants are improperly rearguing the merits of class certification.
7 Defendant is plainly wrong, and it cites no authority for such a reading of Rule 23.
8 Defendants are plainly wrong, and they cite no authority for such a reading of Rule
9 23. The Court decides—and in this case *has* decided—under Rule 23 whether one
10 or more classes should be certified. See Fed. R. Civ. P. 23(c)(1)(A) (providing that
11 "the court must determine by order whether to certify the action as a class
12 action."). And the Court has already determined there is an inference of reliance
13 that applies to this class. [See Dkt. No. 269 at 23.] In a class action, class
14 members will "prevail or fail in unison. In no event will the individual
15 circumstances of particular class members bear on the inquiry." Amgen Inc. v.
16 Connecticut Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1191 (2013). Indeed, there
17 would be no point in certifying representative plaintiffs as typical and adequate if
18 the trier of fact also had to analyze the individual circumstances of particular class
19 members. Instead, Rule 23 is specifically "designed to ensure that 'the common
20 bond between the class representatives' claims and those of the class is strong
21 enough so that it is fair for the fortunes of the class members to rise or fall with the
22 fortunes of the class representatives.'" Cooper v. Southern Co., 390 F.3d 695, 713
23 (11th Cir. 2004) (citation omitted), overruled in part on other grounds by Ash v.
24 Tyson Foods, Inc., 546 U.S. 454 (2006); see also Rubenstein et al., Newberg on
25 Class Actions § 1:5 at 13 (5th ed. 2011) (noting that a "primary purpose of the
26 class suit is to promote efficiency by enabling *representatives* to litigate")
27 (emphasis added); Silberblatt v. Morgan Stanley, 524 F. Supp. 2d 425, 435

28

15

DEFENDANTS' PROPOSED JURY INSTRUCTIONS WITH PLAINTIFF'S OBJECTIONS AND RESPONSES

1   (S.D.N.Y. 2007) ("Absent class members are entitled to repose confidence and

2   trust in a class representative . . . . This confidence derives in large measure from

3   knowing that the class representative stands in the same shoes as all other members

4   of the class.").

5        *Second*, this is yet another attempt by Defendants to argue the issue of

6   standing which has been rejected by the Court at least *four* times and which the

7   Court reject again here.  [See Dkt No. 30 (Order Re Motion for Expedited

8   Discovery) at 1-2; Dkt No. 40 (Order on Motion to Dismiss) at 3-5; Dkt No. 270

9   (Class Certification Order) at 32 n.14; Dkt No. 271 (Summary Judgment Order) at

10  4-6.]  This Court has made clear that "California allows a cause of action for fraud

11  when a manufacturer of a product conceals material product information from

12  potential users regardless of whether the product has yet malfunctioned."  [Dkt No.

13  40 at 5 (quoting Nodine v. Shiley, Inc., 240 F.3d 1149, 1152-53 (9th Cir. 2001).]

14  Further, "the Ninth Circuit has held that plaintiffs who have "paid more for [a

15  product] than they otherwise would have paid, or bought it when they otherwise

16  would not have done so, because [the defendant] made deceptive claims and failed

17  to disclose the [product's] limitations . . . have suffered an injury in fact."  [Dkt

18  No. 40 at 5 (quoting Mazza v. Am. Honda Motor Co., 666 F.3d 581, 595 (9th Cir.

19  2012).]  Defendants' instruction is both inappropriate in this regard and incorrect

20  as a matter of law.  The issue is not whether they paid more than they would have

21  paid for a *different* product, but whether they paid more for a product they

22  purchased than they otherwise would have or bought the product when they

23  otherwise would not have.  [Id.]  As such, Defendants' proposed instruction would

24  instruct the jury erroneously as a matter of law and should not be given.  See, e.g.,

25  United States v. Serv. Deli Inc., 151 F.3d 938, 942 (9th Cir. 1998) (Jury instruction

26  was appropriately refused where it contain an "inaccurate statement of the law.");

27  Millenkamp v. Davisco Foods Int'l, Inc., 562 F.3d 971, 975 (9th Cir. 2009)

28

16

1  ("Davisco was not entitled to a jury instruction regarding Cargill's comparative

2  negligence, because negligence is not a defense to liability for breach of warranty

3  claims in Idaho.").

17

1
2

## DEFENDANTS' INSTRUCTION NO. 7:
## DUTY TO DISCLOSE

3    MICROCOOL* surgical gowns are classified as medical devices and are
4   subject to regulation under the Food, Drug, and Cosmetics Act ("FDCA"). The
5   FDCA and FDA regulations set forth specific criteria governing the decision by a
6   company to recall or take what is known as a "field action" with respect to a
7   potentially nonconforming medical device. Those criteria are:

8
9         (1) Whether any disease or injuries have already occurred from the
          use of the product.
10
11        (2) Whether any existing conditions could contribute to a clinical
          situation that could expose humans or animals to a health hazard.
12
13        (3) Assessment of hazard to various segments of the population, (e.g.,
          children, surgical patients, . . . etc., who are expected to be exposed to
14        the product being considered, with particular attention paid to the
          hazard to those individuals who may be at greatest risk.
15
16        (4) Assessment of the degree of seriousness of the health hazard to
          which the populations at risk would be exposed.
17
          (5) Assessment of the likelihood of occurrence of the hazard.
18
19        (6) Assessment of the consequences (immediate or long-range) of
          occurrence of the hazard.
20

21    If you find that Defendants fulfilled their obligations under the FDCA, you
22   must find that Defendants had no further duty to disclose information to Plaintiff or
23   the Class.

24
25   **Defendants' Authority in Support:**

26        *See* 21 U.S.C. § 360k(a); 21 CFR § 7.41; 21 CFR § 878.4040; *Samet v.*
27   *Procter & Gamble Co.*, No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *5–6

28

1   (N.D. Cal. June 18, 2013) (holding, as expressly preempted under analog to

2   Section 360k(a), claim alleging that packaging was misleading, because FDCA

3   governed and permitted the labeling in question and plaintiff was thus seeking to

4   impose requirement different from, or additional to the federal statutes and

5   regulations); *compare, e.g.*, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996)

6   (holding that the presence of a state-law damages remedy for violations of FDA

7   requirements does not impose an additional requirement upon medical device

8   manufacturers but "merely provides another reason for manufacturers to comply

9   with ... federal law").

10

11   **Plaintiff's Objections and Responses:**

12       Plaintiff objects to this instruction in its entirety.

13       *First,* for the reasons set forth in Plaintiff's Motion in Limine No. 3, issues

14   relating to FDA compliance, approval, or enforcement as they pertain to the

15   MicroCool Gowns are irrelevant to this case.

16       *Second*, the instruction misstates FDA law.   Whether Defendants were

17   required to perform a recall or take a field action is entirely unrelated to whether a

18   device is noncompliant with its labeling, misbranded or adulterated.  Recalls and

19   field actions are also entirely separate from the approval process of drugs.  Recalls

20   are simply a tool to remove defective devices before they can cause harm.  Even if

21   a device may be inconsistent with its labeling, adulterated, and misbranded, a recall

22   is not necessarily required.

23       *Third,* the portion of the instruction stating "[if]f you find that Defendants

24   fulfilled their obligations under the FDCA, you must find that Defendants had no

25   further duty to disclose information to Plaintiff or the Class" will confuse the jury.

26   Presumably, Defendants are referring to 510(k) approval.  However, obtaining

27   510(k) approval means very little as it relates to ongoing compliance of the

28

19

1  product and, more to the point, has nothing to do with any of the elements of
2  common law fraud or violation of the UCL.

3          The Supreme Court has explained that "[t]he 510(k) process is focused on
4  equivalence, not safety.   As a result, substantial equivalence determinations
5  provide little protection to the public.  These determinations simply compare a
6  post–1976 device to a pre–1976 device to ascertain whether the later device is no
7  more dangerous and no less effective than the earlier device.  If the earlier device
8  poses a severe risk or is ineffective, then the later device may also be risky or
9  ineffective." Medtronic, Inc. v. Lohr, 518 U.S. 470, 493 (1996) (quotations and
10  citations omitted); Riegel v. Medtronic, Inc., 552 U.S. 312, 343 (2008)
11  (preemption clause enacted in the Medical Device Amendments of 1976 (21
12  U.S.C. § 360k) does not bar common law claims challenging the safety and
13  effectiveness of a medical device given premarket approval by the FDA); Stengel
14  v. Medtronic, Inc., 704 F.3d 1224, 1231 (9th Cir. 2013) ("[T]he MDA [Medical
15  Device Act] does not preempt a state-law claim for violating a state-law duty that
16  parallels a federal-law duty under the MDA.").  In other words, the FDA does not
17  even conduct its own independent tests of the device to make sure a product
18  complies with the standards it is represented to comply with; instead, the FDA
19  merely takes the applicant at its word.  Allowing Defendants to tout this limited
20  approval as being the equivalent of the FDA's ongoing compliance with the
21  product or, worse yet, that the FDA certifies the product was functioning as
22  represented and safe during the class period, would be grossly misleading.

23          Recognizing this concern and potential prejudice to a product liability
24  plaintiff, the Fourth Circuit in the case of In re C.R. Bard, a design defect case,
25  affirmed the exclusion of evidence regarding 510(k) compliance of a product
26  because it could confuse the jury. In re C.R. Bard, Inc., MDL. No. 2187, Pelvic
27  Repair Sys. Prod. Liab. Litig., 810 F.3d 913, 922 (4th Cir. 2016).  The Court

28
20

1  explained that 510(k) compliance only means a device is "substantially
2  equivalent" to one that existed before 1976, not that the device is safe.  See id. at
3  921.  The Court in In re C.R. Bard explained that, as a consequence, "subjecting
4  the jury to many hours, and possibly days, of complex testimony about regulatory
5  compliance could lead jurors to *erroneously conclude that regulatory compliance*
6  *proved product safety*" as well as "inflate the perceived importance of compliance
7  and distract the jury from the central question" of whether the product design was
8  unreasonable.  810 F.3d at 922 (emphasis added).  Such a risk is present here if the
9  Court uses the jury instruction.

10  *Fourth*, there is no preemption issue in this case.  Plaintiff's argument is that
11  Defendants produced MicroCool gowns that did not in fact meet the AAMI Level 4
12  standard.  Therefore, they also violated their obligations under the FDCA.  The
13  case Defendants cite, Samet v. Procter & Gamble Co., No. 5:12-CV-01891 PSG,
14  2013 WL 3124647, at *5–6 (N.D. Cal. June 18, 2013), is irrelevant.  There, the
15  plaintiffs argued that the "Fruity Snacks" packaging was misleading because it
16  displayed pictures of fruit that the food was not made out of.  See id.  However, the
17  FDCA permitted labeling to include pictures of fruit provided the product was
18  labeled "artificially flavored."  Id.  Here, in contrast, the FDCA does not permit a
19  medical device to be sold with a false label asserting AAMI Level 4 compliance.
20  Instead it is misbranded or adulterated under 21 U.S. Code §§ 351 and 352.

21
22
23
24
25
26
27
28

21

1
2

## DEFENDANTS' INSTRUCTION NO. 8:

## CONSENSUS STANDARDS

3     Under FDA guidance, changes in a recognized consensus standard do not
4 retroactively affect a product's marketing clearance or approval status.
5 Accordingly, if FDA cleared a medical device for marketing under a previously
6 recognized standard and that standard is subsequently withdrawn or replaced by a
7 new standard, the device manufacturer may continue to lawfully market the device
8 under the previously recognized standard.

9
10 **Defendants' Authority in Support:**

11     *See* 21 U.S.C. § 360c(a)(1)(A)-(B), (f)(1)(A), (i)(1)(A); 21 C.F.R. §
12 807.92(a)(3); 21 C.F.R. § 878.4040; FDA, GUIDANCE FOR INDUSTRY AND STAFF,
13 FREQUENTLY ASKED QUESTIONS ON RECOGNITION OF CONSENSUS STANDARDS 5, 9
14 (Sept. 2007) ("Changes in a recognized standard do not retroactively affect a
15 product's clearance or approval status.... The cleared device remains legally
16 marketed and it remains eligible as a predicate device.").

17
18 **Plaintiff's Objections and Responses:**

19     Plaintiff objects to this instruction in its entirety.

20     *First,* for the reasons set forth in Plaintiff's Motion in Limine No. 3, issues
21 relating to FDA compliance, approval, or enforcement as they pertain to the
22 MicroCool Gowns are irrelevant to this case.

23     *Second,* the instruction incorrectly implies that the FDA actively approved of
24 the safety of the device under the previous consensus standard.

25     The Supreme Court has explained that "[t]he 510(k) process is focused on
26 equivalence, not safety.   As a result, substantial equivalence determinations
27 provide little protection to the public.  These determinations simply compare a

28

1  post–1976 device to a pre–1976 device to ascertain whether the later device is no
2  more dangerous and no less effective than the earlier device.  If the earlier device
3  poses a severe risk or is ineffective, then the later device may also be risky or
4  ineffective."  Medtronic, Inc. v. Lohr, 518 U.S. 470, 493 (1996) (quotations and
5  citations omitted); Riegel v. Medtronic, Inc., 552 U.S. 312, 343 (2008)
6  (preemption clause enacted in the Medical Device Amendments of 1976 (21
7  U.S.C. § 360k) does not bar common law claims challenging the safety and
8  effectiveness of a medical device given premarket approval by the FDA); Stengel
9  v. Medtronic, Inc., 704 F.3d 1224, 1231 (9th Cir. 2013) ("[T]he MDA [Medical
10  Device Act] does not preempt a state-law claim for violating a state-law duty that
11  parallels a federal-law duty under the MDA.").  In other words, the FDA does not
12  even conduct its own independent tests of the device to make sure a product
13  complies with the standards it is represented to comply with; instead, the FDA
14  merely takes the applicant at its word.  Allowing Defendants to tout this limited
15  approval as being the equivalent of the FDA's ongoing compliance with the
16  product or, worse yet, that the FDA certifies the product was functioning as
17  represented and safe during the class period, would be grossly misleading.

18        Recognizing this concern and potential prejudice to a product liability
19  plaintiff, the Fourth Circuit in the case of In re C.R. Bard, a design defect case,
20  affirmed the exclusion of evidence regarding 510(k) compliance of a product
21  because it could confuse the jury.  In re C.R. Bard, Inc., MDL. No. 2187, Pelvic
22  Repair Sys. Prod. Liab. Litig., 810 F.3d 913, 922 (4th Cir. 2016).  The Court
23  explained that 510(k) compliance only means a device is "substantially
24  equivalent" to one that existed before 1976, not that the device is safe.  See id. at
25  921.  The Court in In re C.R. Bard explained that, as a consequence, "subjecting
26  the jury to many hours, and possibly days, of complex testimony about regulatory
27  compliance could lead jurors to *erroneously conclude that regulatory compliance*

28

23

1  *proved product safety*" as well as "inflate the perceived importance of compliance
2  and distract the jury from the central question" of whether the product design was
3  unreasonable. 810 F.3d at 922 (emphasis added). Such a risk is present here if the
4  Court uses the jury instruction.

24

1 | **DEFENDANTS' INSTRUCTION NO. 9:**
2 | **LACK OF INJURY**

3 | If you find that the MICROCOOL* gowns Bahamas purchased performed as
4 | Bahamas expected they would, provided adequate liquid barrier protection, and did
5 | not otherwise manifest a defect, you must find for Defendants.

6 |

7 | **Defendants' Authority in Support:**

8 | Where an alleged misrepresentation or omission relates to the performance
9 | of a product, and the evidence shows that the product has performed consistently
10 | with the purchaser's expectations, the purchaser has not established that it suffered
11 | harm under state common law or otherwise suffered an injury-in-fact sufficient to
12 | support Article III standing as a matter of law. *Wallace v. ConAgra Foods, Inc.*,
13 | 747 F.3d 1025, 1030 (8th Cir. 2014) ("In the context of defective products, 'it is
14 | not enough' for a plaintiff 'to allege that a product line contains a defect or that a
15 | product is at risk for manifesting this defect; rather, the plaintiffs must allege that
16 | *their* product *actually exhibited* the alleged defect.'") (quoting *In re Zurn Pex
17 | Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011)); *Davidson v.
18 | Kimberly-Clark Corp.*, 76 F. Supp. 3d 964, 976 (N.D. Cal. 2014) ("[W]here—as
19 | here—a consumer fails to allege facts showing that he/she experienced any harm
20 | resulting from product use, the consumer has failed to allege damage under the
21 | UCL . . . or common law fraud."); *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F.
22 | Supp. 2d 962, 972 (C.D. Cal. 2014) ("In cases such as this one, where the alleged
23 | wrong stems from the assertion of insufficient performance of a product or its
24 | features, a plaintiff must alleged 'something more' than 'overpaying for a
25 | 'defective product' to support a claim."); *id.* ("There can be no serious dispute that
26 | a purchaser of a product who receives the benefit of his bargain has not suffered
27 | Article III injury-in-fact traceable to the defendant's conduct."); *In re Toyota*

28 |

25

DEFENDANTS' PROPOSED JURY INSTRUCTIONS WITH PLAINTIFF'S OBJECTIONS AND RESPONSES

1 | *Motor Corp.*, 790 F. Supp. 2d 1152, 1166 N. 11 (C.D. Cal. 2011) ("[W]hen the
2 | economic loss is predicated solely on how a product functions, and the product has
3 | not malfunctioned, . . . something more is required than simply alleging an
4 | overpayment for a 'defective' product."); *Myers-Armstrong v. Actavis Totowa,*
5 | *LLC*, No. C 08-04741 WHA, 2009 WL 1082026, at *4 (N.D. Cal. Apr. 22, 2009),
6 | *aff'd*, 382 F. App'x 545 (9th Cir. 2010) ("A plaintiff must allege an actual
7 | *manifestation* of a defect *that results in some injury or rational fear of future injury*
8 | in order to state cognizable claims.").

9

10 | **Plaintiff's Objections and Responses:**

11 | Plaintiff objects to this instruction in its entirety. Through submission of
12 | this instruction, Defendants yet again seek to argue the issue of Article III standing
13 | – this time to the jury. Defendants' proposed instruction is neither warranted nor
14 | appropriate.

15 | *First*, this Court has rejected Defendants' arguments as to Article III
16 | standing at least *four* times and should do so again here. [See Dkt No. 30 (Order
17 | Re Motion for Expedited Discovery) at 1-2; Dkt No. 40 (Order on Motion to
18 | Dismiss) at 3-5; Dkt No. 270 (Class Certification Order) at 32 n.14; Dkt No. 271
19 | (Summary Judgment Order) at 4-6.] This Court has made clear that "California
20 | allows a cause of action for fraud when a manufacturer of a product conceals
21 | material product information from potential users *regardless of whether the*
22 | *product has yet malfunctioned.*" [Dkt No. 40 at 5 (quoting Nodine v. Shiley, Inc.,
23 | 240 F.3d 1149, 1152-53 (9th Cir. 2001) (emphasis added).] Further, "the Ninth
24 | Circuit has held that plaintiffs who have "paid more for [a product] than they
25 | otherwise would have paid, or bought it when they otherwise would not have done
26 | so, because [the defendant] made deceptive claims and failed to disclose the
27 | [product's] limitations . . . have suffered an injury in fact." [Dkt No. 40 at 5

28 |

1  (quoting Mazza v. Am. Honda Motor Co., 666 F.3d 581, 595 (9th Cir. 2012).]

2  Defendant should not be permitted to mislead the jury into deciding this case as a

3  personal injury case when it is very clear that this is an economic injury case.

4  There is no question that Plaintiff has demonstrated standing and there is no need

5  for this instruction.

6      *Second*, Defendants' effort to submit the issue of Article III standing to the

7  jury is erroneous for the additional reason that the determination of whether a party

8  has Article III standing is **not a jury question**.  On the contrary, Article III

9  standing is a question of law.  See Citizens for Better Forestry v. U.S. Dep't of

10 Agric., 341 F.3d 961, 969 (9th Cir. 2003) ("Standing and ripeness are questions of

11 law we review de novo.").  The question of Article III standing is "jurisdictional"

12 and it "precedes, and does not require, analysis of the merits" of the claims at

13 issue. Equity Lifestyle Properties, Inc. v. Cty. of San Luis Obispo, 548 F.3d 1184,

14 1189 n. 10 (9th Cir. 2008); see also Nike, Inc. v. Comercial Iberica de Exclusivas

15 Deportivas, S.A., 20 F.3d 987, 990 (9th Cir. 1994) ("The existence of subject

16 matter jurisdiction is a question of law...").  In sum, submission of the issue to the

17 jury is not appropriate and this instruction should not be given in any form.

18

19

20

21

22

23

24

25

26

27

28

27

DEFENDANTS' PROPOSED JURY INSTRUCTIONS WITH PLAINTIFF'S OBJECTIONS AND RESPONSES

1
2

### DEFENDANTS' INSTRUCTION NO. 10:
### CLASS ACTION STANDING

3     If you find that Bahamas did not suffer harm from Defendants' conduct, you

4  must find for Defendants as to the claims of a class as a whole, regardless of

5  whether you believe that other class members have been injured.

6

7  **Defendants' Authority in Support:**

8     A class representative cannot pursue claims on behalf of a class if the class

9  representative lacks Article III standing.  As the Supreme Court has held, "if none

10  of the named plaintiffs purporting to represent a class establishes the requisite of a

11  case or controversy with the defendants, none may seek relief on behalf of himself

12  or any other member of the class."  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

13  Thus, if the evidence shows that Bahamas was not injured as a result of

14  Defendants' conduct (*e.g.* if Bahamas did not pay a price premium for a gown

15  bearing the "AAMI Level 4 (PB70:2003)" label), Bahamas lacks standing to sue

16  both on its own behalf and on behalf of the class.  Whether absent class members

17  were injured is irrelevant to the question of Bahamas's standing.  "Class

18  representatives do not gain standing through injuries to class members."  NEWBERG

19  ON CLASS ACTIONS § 2:3 (5th ed.); *see also Simon v. E. Ky. Welfare Rights Org.*,

20  426 U.S. 26, 40 n.20 (1976) ("[N]amed plaintiffs who represent a class 'must

21  allege and show that they personally have been injured, not that injury has been

22  suffered by other, unidentified members of the class to which they belong and

23  which they purport to represent.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 502

24  (1975)); *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1215 n.1 (9th Cir. 2008)

25  ("In a class action, standing is satisfied if at least one named plaintiff meets the

26  requirements."); *Kirola v. City and County of San Francisco*, No. C 07-3685 SBA,

27  2014 WL 1729273, at *3 (N.D. Cal. Apr. 29, 2014) ("Standing is a threshold

28

28

DEFENDANTS' PROPOSED JURY INSTRUCTIONS WITH PLAINTIFF'S OBJECTIONS AND
RESPONSES

1 | jurisdictional issue that necessarily informs the issue of whether and/or to what
2 | extent [a plaintiff] may maintain [its] claims on a class and/or individual basis.");
3 | *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 644 (C.D. Cal. 2014) ("[A]s the
4 | evidence before the Court demonstrates that Plaintiff has not met the necessary
5 | reliance and causation requirements, the Court finds that Plaintiff has not
6 | demonstrated that he has standing to bring his CLRA or UCL claims on behalf of
7 | the class.").

8 |

9 | **Plaintiff's Objections and Responses:**

10 | Plaintiff objects to this instruction in its entirety.  Through submission of
11 | this instruction, Defendants yet again seek to argue the issue of Article III and class
12 | action standing – this time to the jury.  Defendants' proposed instruction is neither
13 | warranted nor appropriate.

14 | *First*, this Court has rejected Defendants' arguments as to Article III
15 | standing at least *four* times and should do so again here.  [See Dkt No. 30 (Order
16 | Re Motion for Expedited Discovery) at 1-2; Dkt No. 40 (Order on Motion to
17 | Dismiss) at 3-5; Dkt No. 270 (Class Certification Order) at 32 n.14; Dkt No. 271
18 | (Summary Judgment Order) at 4-6.]  This Court has made clear that "California
19 | allows a cause of action for fraud when a manufacturer of a product conceals
20 | material product information from potential users *regardless of whether the*
21 | *product has yet malfunctioned.*"  [Dkt No. 40 at 5 (quoting Nodine v. Shiley, Inc.,
22 | 240 F.3d 1149, 1152-53 (9th Cir. 2001) (emphasis added).]  Further, "the Ninth
23 | Circuit has held that plaintiffs who have "paid more for [a product] than they
24 | otherwise would have paid, or bought it when they otherwise would not have done
25 | so, because [the defendant] made deceptive claims and failed to disclose the
26 | [product's] limitations . . . have suffered an injury in fact."  [Dkt No. 40 at 5
27 | (quoting Mazza v. Am. Honda Motor Co., 666 F.3d 581, 595 (9th Cir. 2012).]

28 |

29

1  Defendant should not be permitted to mislead the jury into deciding this case as a

2  personal injury case when it is very clear that this is an economic injury case.

3  There is no question that Plaintiff has demonstrated standing and there is no need

4  for this instruction.

5       *Second*, Defendants' effort to submit the issue of Article III standing to the

6  jury is erroneous for the additional reason that the determination of whether a party

7  has Article III standing is **not a jury question**.  On the contrary, Article III

8  standing is a question of law.  See Citizens for Better Forestry v. U.S. Dep't of

9  Agric., 341 F.3d 961, 969 (9th Cir. 2003) ("Standing and ripeness are questions of

10  law we review de novo.").  The question of Article III standing is "jurisdictional"

11  and it "precedes, and does not require, analysis of the merits" of the claims at

12  issue.  Equity Lifestyle Properties, Inc. v. Cty. of San Luis Obispo, 548 F.3d 1184,

13  1189 n. 10 (9th Cir. 2008); see also Nike, Inc. v. Comercial Iberica de Exclusivas

14  Deportivas, S.A., 20 F.3d 987, 990 (9th Cir. 1994) ("The existence of subject

15  matter jurisdiction is a question of law…").  In sum, submission of the issue to the

16  jury is not appropriate and this instruction should not be given in any form.

17

18

19

20

21

22

23

24

25

26

27

28

30

1

2

## DEFENDANTS' INSTRUCTION NO. 11:
## KNOWLEDGE OF LAWSUIT

3      If you find that any class member purchased MICROCOOL* gowns with

4   knowledge of the claims alleged in this lawsuit, then you must find that the "AAMI

5   Level 4 (PB70:2003)" claim was not material to that class member's decision to

6   purchase MICROCOOL* gowns.

7

8   **Defendants' Authority in Support:**

9      Continued purchases with knowledge of the allegations of deceptive conduct

10   of which the plaintiff complains "undercut[] [the plaintiff's] claim that [the

11   defendant's] representations were material to [the plaintiff's] decision[] [to

12   purchase the product]." *Krouch v. Wal-Mart Stores, Inc.*, No. 12-cv-02217-YGR,

13   2014 U.S. Dist. LEXIS 152755, at *26 (N.D. Cal. Oct. 28, 2014); *see also Red v.

14   Kraft Foods, Inc.*, No. CV 10-1028-GW (AGRx), 2011 U.S. Dist. LEXIS 116965,

15   at *32-34 (C.D. Cal. Sept. 29, 2011) (continued purchases after the lawsuit was

16   filed, with full knowledge of alleged misrepresentations, "destroy[s] the ability of

17   the class to ever establish reliance and/or materiality of the alleged

18   misrepresentations").

19

20   **Plaintiff's Objections and Responses:**

21      Plaintiff objects to the requested instruction in its entirety.

22      *First*, this jury instruction is premised on the notion that the jury will revisit

23   this Court's class certification findings by deciding whether there is a presumption

24   of reliance. Defendants are plainly wrong, and they cite no authority for such a

25   reading of Rule 23. The Court decides—and in this case *has* decided—under Rule

26   23 whether one or more classes should be certified. See Fed. R. Civ. P.

27   23(c)(1)(A) (providing that "the court must determine by order whether to certify

28
31

1  the action as a class action."). And the Court has already determined there is an

2  inference of reliance that applies to this class. [See Dkt. No. 269 at 23.] In a class

3  action, class members will "prevail or fail in unison. In no event will the

4  individual circumstances of particular class members bear on the inquiry." Amgen

5  Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1191 (2013).

6  Indeed, there would be no point in certifying representative plaintiffs as typical and

7  adequate if the trier of fact also had to analyze the individual circumstances of

8  particular class members. Instead, Rule 23 is specifically "designed to ensure that

9  'the common bond between the class representatives' claims and those of the class

10  is strong enough so that it is fair for the fortunes of the class members to rise or fall

11  with the fortunes of the class representatives.'" Cooper v. Southern Co., 390 F.3d

12  695, 713 (11th Cir. 2004) (citation omitted), overruled in part on other grounds by

13  Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006); see also Rubenstein et al.,

14  Newberg on Class Actions § 1:5 at 13 (5th ed. 2011) (noting that a "primary

15  purpose of the class suit is to promote efficiency by enabling *representatives* to

16  litigate") (emphasis added); Silberblatt v. Morgan Stanley, 524 F. Supp. 2d 425,

17  435 (S.D.N.Y. 2007) ("Absent class members are entitled to repose confidence and

18  trust in a class representative . . . . This confidence derives in large measure from

19  knowing that the class representative stands in the same shoes as all other members

20  of the class.").

21       *Second*, Defendants' instruction is based on an erroneous understanding of

22  the law. The allegations in a complaint are not deemed to provide notice to

23  putative class members. See, e.g., Allen v. Similasan Corp., No. 12CV376-BTM

24  JLB, 2014 WL 1672594, at *3 (S.D. Cal. Apr. 28, 2014) (finding the district court

25  may decide to certify a class including "individuals with claims that accrued after

26  the filing of the complaint"); see also Petrie v. Elec. Game Card, Inc., 308 F.R.D.

27  336, 346-47 (C.D. Cal. 2015) (class certified despite shareholder's purchase of

28

32

DEFENDANTS' PROPOSED JURY INSTRUCTIONS WITH PLAINTIFF'S OBJECTIONS AND
RESPONSES

1   additional stock in defendant corporation after corporation's first corrective

2   disclosure and after lawsuit filed).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **DEFENDANTS' INSTRUCTION NO. 12:**
2  **JUDICIAL COUNCIL OF CALIFORNIA CIVIL JURY INSTRUCTIONS**
3  **(CACI) 1923: OUT OF POCKET RULE (MODIFIED)**

4    If you decide that Plaintiff Bahamas Surgery Center has proved its claim
5  against Defendants, you also must decide how much money will reasonably
6  compensate Plaintiff and the Class for the harm. This compensation is called
7  "damages."

8    The amount of damages must include an award for all harm that Defendants
9  were a substantial factor in causing, even if the particular harm could not have
10  been anticipated.

11    Plaintiff must prove the amount of its damages and those of the Class.
12  However, Plaintiff does not have to prove the exact amount of damages that will
13  provide reasonable compensation for the harm. You must not speculate or guess in
14  awarding damages.

15    To decide the amount of damages you must determine the difference
16  between what Plaintiff and the Class paid for MICROCOOL* gowns and the value
17  of what Plaintiff and the Class received.  To demonstrate harm, Plaintiff must
18  prove the difference between the value of a MICROCOOL* gown and the value of
19  a comparable gown not marketed or sold as compliant with the AAMI Level 4
20  (PB70:2003) standard.

21
22
23
24
25
26
27
28

34

1  **EXPLANATION FOR MODIFICATIONS TO CALIFORNIA CIVIL JURY**
2  **INSTRUCTIONS (CACI) 1923**

3      Deleted final three paragraphs of instruction and added the following
4  language to track the applicable damage measure in this case: "To decide the
5  amount of damages you must determine the difference between what Plaintiff paid
6  for MICROCOOL* gowns and the value of what Plaintiff received.  To
7  demonstrate harm, Plaintiff must prove the difference between the value of a
8  MICROCOOL* gown and the value of a comparable gown not marketed or sold as
9  compliant with the AAMI Level 4 (PB70:2003) standard."

10

11  **Defendants' Authority in Support:**

12      *See* Court's Order re: Plaintiff's Class Cert. Motion, Dkt. 270, at 29 ("[T]he
13  partial refund models presents a viable method of measuring damages without
14  running afoul of *Comcast*.  This model assumes that buyers received a benefit
15  equal to the price of a non-AAMI rated gown.  Thus, the difference between the
16  following two variables would determine damages: (1) the MicroCool Gown's
17  purchase price and (2) the price of gowns with no AAMI rating."); *see also In re*
18  *Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (Cal. App. 2d Dist. 2009) ("The
19  difference between what the plaintiff paid and the value of what the plaintiff
20  received is a proper measure of restitution. In order to recover under this measure,
21  there must be evidence of the actual value of what the plaintiff received. When the
22  plaintiff seeks to value the product received by means of the market price of
23  another, comparable product, that *measure cannot be awarded without evidence*
24  *that the proposed comparator is actually a product of comparable value to what*
25  *was received*." (emphasis added)); *Ogden v. Bumble Bee Foods, LLC*, No. 5:12-
26  CV-01828-LHK, 2014 WL 27527, at *13 (N.D. Cal. Jan. 2, 2014) (granting
27  summary judgment where plaintiff "has not provided evidence of the price of any

28

35

1  comparable products that do not make the allegedly unlawful label statements, nor

2  has she offered any other evidence regarding the size of the price premium she

3  paid for [defendant's] product due to the allegedly unlawful label statements");

4  *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 532 (N.D. Cal. 2012) ("The

5  proper measure of the restitution to which plaintiffs may be entitled must be based

6  in evidence establishing the difference between the value of an AriZona Iced Tea

7  billed as all-natural and the value of a comparable beverage not marketed or sold at

8  a premium due to such claims."); *Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-

9  01831-LHK, 2014 WL 5794873, at *5 (N.D. Cal. Nov. 6, 2014) (finding that

10  "[t]he proper measure of restitution in a mislabeling case is the amount necessary

11  to compensate the purchaser for the difference between a product as labeled and

12  the product as received") (internal citations and quotation marks omitted); *Ivie v.*

13  *Kraft Foods Glob., Inc.*, No. 12-cv-02554-RMW, 2015 WL 183910, at *2 (N.D.

14  Cal. Jan. 14, 2015) (concluding that "restitutionary damages [in a mislabeling case

15  should] be the price premium attributable to the offending labels, and no more");

16  *Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2014 WL 6815779, at *8 (N.D. Cal.

17  Dec. 3, 2014) (determining the appropriate amount of restitution under a quasi-

18  contract claim "will likely involve demonstrating what portion of the sale price

19  was attributable to the value consumers placed on the" allegedly misleading

20  labels); *Khasin v. R. C. Bigelow, Inc.*, No. 12-CV-02204-WHO, 2016 WL

21  1213767, at *3 (N.D. Cal. Mar. 29, 2016) ("[Plaintiff] must present a damages

22  model that can likely determine the price premium attributable only to

23  [defendant's] use of the allegedly misleading claim").

24

25  **Plaintiff's Objections and Responses:**

26      Plaintiff objects to this instruction and contends that Plaintiff's modified

27  instruction is more appropriately given for the reasons stated in Plaintiff's

28

36

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS WITH PLAINTIFF'S OBJECTIONS AND RESPONSES**

1  proposed instructions.     To the extent that the Court determines that it will not

2  offer Plaintiff's instruction, the Court should reject Defendant's proposed

3  modifications to CACI 1923 and instruct the jury without modifying CACI 1923.

4  Specifically, Defendants' final paragraph should be deleted and the final three

5  paragraphs from CACI 1923 re-inserted:

6
7             To decide the amount of damages you must determine the fair market
              value of what Plaintiff and the Class gave and subtract from that amount the
8             fair market value of what they received.

9             "Fair market value" is the highest price that a willing buyer would
10            have paid on the date of the transaction to a willing seller, assuming:
              1. That there is no pressure on either one to buy or sell; and
11            2. That the buyer and seller know all the uses and purposes for which
12            the gown is reasonably capable of being used.

13            Plaintiff and the Class may also recover amounts that they reasonably
14            spent in reliance on Defendants' failure to disclose if those amounts would
              not otherwise have been spent.

15     Defendants deviate significantly from the standard CACI instructions in

16  violation of the Court's instruction to the parties in the Scheduling and Case

17  Management Order.  [See Dkt No. 50.]  The jury will hear the competing evidence

18  in the case relating to damages and is capable of applying the standard CACI

19  instruction based on the evidence without the need to modify the instruction.

20     Defendants' proposed instruction impermissibly instructs the jury as to what

21  it must find is a comparable gown and does not reflect the law in that regard and as

22  reflected in CACI 1923.  Accordingly, Defendants are not entitled to the

23  instruction requested.  See, e.g., United States v. Serv. Deli Inc., 151 F.3d 938, 942

24  (9th Cir. 1998) (Jury instruction was appropriately refused where it contain an

25  "inaccurate statement of the law."); Millenkamp v. Davisco Foods Int'l, Inc., 562

26  F.3d 971, 975 (9th Cir. 2009) ("Davisco was not entitled to a jury instruction

27

28                                            37

1 | regarding Cargill's comparative negligence, because negligence is not a defense to
2 | liability for breach of warranty claims in Idaho.").

3 |      Moreover, the Court has not yet made a final ruling on the appropriate
4 | damage model to be applied at the trial.  Indeed, among other authority, the Ninth
5 | Circuit's decision in <u>Pulaski & Middleman, LLC v. Google, Inc.</u>, 802 F.3d 979
6 | (9th Cir. 2015), supports the application of a full refund model in this case.  There,
7 | the Court concluded that that a calculation for damages/restitution "*need not*
8 | *account for benefits received after purchase* because the focus is on the value of
9 | the service *at the time of purchase*."  <u>Id.</u> at 988-89 (emphasis added); <u>see</u> <u>also</u>
10 | <u>Abbit v. ING USA Annuity</u>, No. 13CV2310-GPC-WVG, 2015 WL 7272220, at *7
11 | (S.D. Cal. Nov. 16, 2015) ("Recently, the Ninth Circuit held that damages
12 | calculations in UCL and FAL actions need not account for benefits received after
13 | purchase of the service because the focus is on the value of the service at the time
14 | of purchase.").  In Plaintiff's view, the Court's determination at the class
15 | certification stage that the full refund model is not appropriate on the basis that the
16 | gowns have value because they were used by Plaintiff and class members *after*
17 | they were purchased is inconsistent with this authority.

18 |      Finally, Defendants' overreach is compounded by the fact that they claim
19 | they are applying the measure of damages from the Court's order, but they *change*
20 | *the language* used by the Court.  Compare proposed instruction "and the value of a
21 | comparable gown not marketed or sold as compliant with the AAMI Level 4
22 | (PB70:2003) standard" *with* Dkt. No. 269 (the price of gowns with no AAMI
23 | rating).

24 |
25 |
26 |
27 |
28 |

38

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS WITH PLAINTIFF'S OBJECTIONS AND RESPONSES**

**DEFENDANTS' INSTRUCTION NO. 13:**

**NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS 5.3:**

**DAMAGES—MITIGATION**

The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

1. that the plaintiff failed to use reasonable efforts to mitigate damages; and

2. the amount by which damages would have been mitigated.

**Plaintiff's Objections and Responses:**

Plaintiff does not believe that an instruction is required regarding mitigation of damages. Mitigation of damages requires that the plaintiff has discovered the fraud and is therefore aware that he or she has been damaged. By definition, Plaintiff cannot mitigate damages if Plaintiff is unaware it has suffered. Here, Defendants have never made an assertion in this case that they ever made Plaintiff aware of the problems with the MicroCool Gowns (i.e., that the gowns are not AAMI Level 4, did not meet industry standard tests, are unsafe, etc.). Defendants also have never asserted in this case that Plaintiff discovered the problems with the gowns on their own. Instead, Defendants seek a mitigation instruction as an end-run around the Court's rulings concluding that Plaintiff need not prove physical injury from use of the MicroCool Gowns in order to establish standing.

Further, Plaintiff's cause of action is based on state law. There is no applicable CACI instruction for mitigation of damages for fraud claims. For this additional reason, Plaintiff does not believe this instruction is applicable to Plaintiff's claims and, as such, Defendants' proposed instruction would instruct the

39

1  jury erroneously as a matter of law and should not be given. <u>See</u>, <u>e.g.</u>, <u>United</u>
2  <u>States v. Serv. Deli Inc.</u>, 151 F.3d 938, 942 (9th Cir. 1998) (Jury instruction was
3  appropriately refused where it contain an "inaccurate statement of the law.");
4  <u>Millenkamp v. Davisco Foods Int'l, Inc.</u>, 562 F.3d 971, 975 (9th Cir. 2009)
5  ("Davisco was not entitled to a jury instruction regarding Cargill's comparative
6  negligence, because negligence is not a defense to liability for breach of warranty
7  claims in Idaho.").

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

40

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS WITH PLAINTIFF'S OBJECTIONS AND RESPONSES**

1

2   Dated:  February 7, 2017                  EAGAN AVENATTI, LLP
                                             By:   /s/ Michael J. Avenatti
3                                            Michael J. Avenatti
                                             Ahmed Ibrahim
4                                            Attorneys for Plaintiff, Individually
5                                            and On Behalf of All Others Similarly
                                             Situated
6
    DATED:  February 6, 2017                     KING & SPALDING LLP
7

8                                            By: /s/ Chilton D. Varner
9                                               Alexander Calfo
                                                Julia Romano
10                                              633 W. 5th Street, Suite 1700
                                                Los Angeles, CA 90071
11                                              Telephone:  (213) 443-4355
                                                Facsimile :  (213) 443-4310
12
13                                              Chilton D. Varner
                                                (admitted *pro hac vice*)
14                                              Stephen B. Devereaux
                                                (admitted *pro hac vice*)
15                                              Madison H. Kitchens
                                                (admitted *pro hac vice*)
16                                              1180 Peachtree Street, N.E.
17                                              Atlanta, GA 30309-3521
                                                Telephone:  (404) 572-4600
18                                              Facsimile:  (404) 572-5100

19                                              Attorneys for Defendants
20                                              KIMBERLY-CLARK
                                                CORPORATION, a Delaware
21                                              Corporation; and HALYARD
                                                HEALTH, INC., a Delaware
22                                              Corporation

23

24

25

26

27
                                      41
28
    DEFENDANTS' PROPOSED JURY INSTRUCTIONS WITH PLAINTIFF'S OBJECTIONS AND
                                   RESPONSES