1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11

BAHAMAS SURGERY CENTER, LLC,

Case No.: CV 14-8390-DMG (PLAx)

12

Plaintiff,

13

vs.

**AMENDED FINAL PRETRIAL CONFERENCE ORDER [336]**

14

KIMBERLY-CLARK  CORPORATION, a Delaware Corporation, and HALYARD HEALTH, INC., a Delaware Corporation,

15

16

17

Defendants.

18
19
20
21
22
23
24
25
26
27
28

## I.   THE PARTIES

The parties are:

Plaintiff Bahamas Surgery Center, LLC dba Bahamas Surgery Center, individually and on behalf of all others similarly situated (hereafter, "Plaintiff").

Defendant Kimberly Clark Corporation (hereafter, "Kimberly-Clark") and

Defendant Halyard Health, Inc. (hereafter, "Halyard").

Kimberly-Clark and Halyard shall collectively be referred to hereafter as "Defendants."

Each of these parties has been served and has appeared.  All other parties not identified in the preceding paragraphs are not a part of this action and are now dismissed if they were not already dismissed before.

The pleadings which raise the issues are: Second Amended Complaint and Defendants' Answer to Second Amended Complaint.

## II.   FEDERAL JURISDICTION AND VENUE

Federal jurisdiction and venue are invoked upon the following grounds:

Subject matter jurisdiction is proper pursuant to the Class Action Fairness Act of 2005 because there are over 100 members of the proposed class, at least one member of the proposed class (e.g., Plaintiff, a citizen of California) has a different citizenship from a defendant (e.g., Kimberly-Clark is a citizen of Texas and Delaware) and the total matter in controversy exceeds $5,000,000.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this Court is located in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## III.   TRIAL DURATION

The jury trial in this matter shall be concluded within nine court days.  Each side shall be allocated 12 hours for their case-in-chief, inclusive of cross-examination, but

**FINAL PRETRIAL CONFERENCE ORDER**

excluding voir dire, opening statements, and closing arguments.

## IV.   JURY OR NON-JURY TRIAL

All legal claims will be tried to the jury, but Plaintiff's claims for violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*., and request for injunctive relief are equitable in nature and will be tried to the Court if any issues of fact remain, immediately after the jury renders its verdict.  The jury will resolve factual disputes upon consideration of the legal claims and, to the extent the facts overlap as to the legal and equitable claims, this Court will thereafter be bound by the jury's implicit or explicit factual determinations.  *See, e.g.*, *Sanders v. City of Newport*, 657 F.3d 772, 782 (9th Cir. 2011); *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993); *Shum v. Intel Corp*., 630 F. Supp. 2d 1063, 1077-78 (N.D. Cal. 2009), *aff'd,* 633 F.3d 1067 (Fed. Cir. 2011), *cert. denied*, 132 S. Ct. 367 (2011); *see also Hoopes v. Dolan*, 168 Cal. App. 4th 146, 158 (2008).

## V.   ADMITTED FACTS

The following facts are admitted and require no proof:

1.   This case is a class action lawsuit brought by Plaintiff Bahamas Surgery Center, LLC (hereafter, "Plaintiff" or "Bahamas") on behalf of all entities and persons in California who purchased a medical gown manufactured by Defendants called the MICROCOOL* Breathable High Performance Surgical Gowns (hereafter, the "MicroCool Gowns") as end-purchasers between February 12, 2012 and January 11, 2015 (hereafter, the "Class Period").

2.   Defendant Kimberly-Clark Corporation (hereafter, "Kimberly-Clark") began manufacturing and selling the MicroCool Gowns on or about August 31, 2011 and continued selling the gowns until October 30, 2014.

3.     On October 31, 2014, a division of Kimberly-Clark known as Kimberly-Clark Health Care was "spun off" from Kimberly-Clark by the company and became a public traded company named Halyard Health, Inc. (hereafter, "Halyard"), one of the defendants in this case.   Since that date, Halyard has manufactured and sold the MicroCool Gowns.

## VI.   STIPULATED FACTS WITHOUT PREJUDICE TO EVIDENTIARY OBJECTION

The following facts, though stipulated, shall be without prejudice to any evidentiary objection:  None at this time.

## VII.   CLAIMS AND DEFENSES TO BE PRESENTED AT TRIAL

### Plaintiff:

(a)     Plaintiff plans to pursue the following claims against the following defendants:

(1)     **Claim 1 (individual claim)**:   Defendants Kimberly-Clark and Halyard committed fraud based on their affirmative misrepresentations.

(2)     **Claim 2 (class claim)**:   Defendants Kimberly-Clark and Halyard committed fraud based on their fraudulent concealment and/or non-disclosure of material facts.

(3)     **Claim 3 (individual claim)**:   Defendants Kimberly-Clark and Halyard violated the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*., based on their affirmative misrepresentations.

(4)     **Claim 4 (class claim)**:   Defendants Kimberly-Clark and Halyard violated the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*., based on their concealment and/or non-disclosure of facts.

(b)     The elements required to establish Plaintiff's claims are:

(1)   **Claim 1**:   To establish its claim for fraud based on affirmative misrepresentations, Plaintiff must generally prove the following:

1.   That Defendants represented to Plaintiff that a fact was true.

2.   That Defendants' representation was false.

3.   That Defendants knew that the representation was false when they made it, or that they made the representation recklessly and without regard for its truth.

4.   That Defendants intended that Plaintiff rely on the representation.

5.   That Plaintiff reasonably relied on Defendants' representation.

6.   That Plaintiff was harmed.

7.   That Plaintiff's reliance on Defendants' representation was a substantial factor in causing its harm.

*See* Judicial Council Of California Civil Jury Instruction (hereafter, "CACI") 1900.

(2)   **Claim 2**:   To establish its claim for fraud based on fraudulent concealment and/or non-disclosure of material facts, Plaintiff must generally prove the following:

1.   That Defendants did one or more of the following:

a.   Disclosed some facts to Plaintiff but intentionally failed to disclose other facts making the disclosure deceptive; or

b.   Intentionally failed to disclose certain facts that were known only to them and that Plaintiff could not have discovered; or

c.   Prevented Plaintiff from discovering certain facts.

2.   That Plaintiff did not know of the concealed facts (*note: this element need not be proven if the third option for element 1 is selected*);

3.   That Defendants intended to deceive Plaintiff by concealing the facts;

4.   These concealed or non-disclosed facts must be material.  In order to prove materiality, Plaintiff must show that a reasonable consumer would have attached importance to the concealed or non-disclosed information's existence or non-existence in determining his or her choice of action.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009);

5.   That Plaintiff was harmed; and

6.   That Defendants' concealment was a substantial factor in causing Plaintiff's harm.

*See* CACI 1901.

(3)   **Claim 3:**  To establish its claim for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.,* based on affirmative misrepresentations, Plaintiff must generally prove the following:

1.   **That Defendants engaged in "unfair competition" by engaging in a "fraudulent business act or practice."**  Cal. Bus. & Prof. Code § 17200.

2.   **That Plaintiff "has suffered injury in fact and has lost money or property as a result of the unfair competition."**  Cal. Bus. & Prof. Code § 17204.

3.   **Actual reliance on the misrepresentation by Plaintiff**.

(4)   **Claim 4:**   To establish its claim for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.,* based on concealment and/or non-disclosure of material facts, Plaintiff must generally prove the following:

1.   **That Defendants engaged in "unfair competition" by engaging in a "fraudulent business act or practice."**  Cal. Bus. & Prof. Code § 17200.

2.  **That Plaintiff "has suffered injury in fact and has lost money or property as a result of the unfair competition."**  Cal. Bus. & Prof. Code § 17204.

3.  **Materiality of the omission**.  Plaintiff must show that the omission or failure to disclose was material.  *See, e.g.*, *In re Tobacco II*, 46 Cal. 4th at 326-27; *cf. Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011).   In order to prove materiality, Plaintiff must show that a reasonable consumer would have attached importance to the concealed or non-dislcosed information's existence or nonexistence in determining his or her choice of action;

4.  **That Defendants had a duty to disclose the materials omitted.**  Such a duty exists where Defendants:

a.  Disclosed some facts to Plaintiff but intentionally failed to disclose other facts making the disclosure deceptive; or

b.  Intentionally failed to disclose certain facts that were known only to them and that Plaintiff could not have discovered; or

c.  Prevented Plaintiff from discovering certain facts.

d.  These concealed or non-disclosed facts must be material. *See* CACI 1901.

(c)  In brief, some of the key evidence that Plaintiff intends to rely on for each of the claims is summarized as follows:

(1)  **Claim 1:  Fraud Based on Affirmative Misrepresentations**

(i)  **Element 1:  That Defendants represented to Plaintiff that a fact was true.**

**Supporting Evidence for Element 1:**

- Evidence that Defendants labeled, advertised, marketed, and promoted the MicroCool Gowns as meeting the AAMI Level 4 standard for liquid barrier protection, and that the MicroCool Gowns pass the ASTM 1671 test.

- Evidence that the labeling of the MicroCool Gowns, and the claims regarding liquid barrier protection and passing industry standard tests, have remained consistent and uniform throughout the period between February 12, 2012 and January 11, 2015 (the "Class Period").

- Evidence that Defendants included a label with the AAMI Level 4 representation on the outside of every box containing non-sterile gowns shipped to CPT suppliers similar to the label placed on the sterile gown packages.

### (ii)     Element 2:  That Defendants' representation was false.

### Supporting Evidence for Element 2:

- Test reports revealing failing ASTM 1671 test results from independent testing labs of testing conducted on samples of sleeve seams from MicroCool Gowns.

- Test reports from monthly monitoring of the MicroCool Gowns Defendants received in 2012 also revealed consistent sleeve seam failures in 2012.

- Testimony of Defendants' employees and internal company documents confirming receipt of failing test results and the logging of the failing test results.

- Testimony of Defendants' current and former employees confirming that the company was well aware that the MicroCool Gowns failed AAMI Level 4 testing, were not compliant, had problems, and had quality issues.

- Testimony of a former employee of Kimberly-Clark describing a meeting convened by the President of Kimberly-Clark's Healthcare division about non-compliance and quality issues with the company's products, in which the President stated, among other things, that "she was sick and tired of all the noncompliance issues that . . . she had experienced for more than a decade, and she wanted me to fix it."

- Evidence from e-mails, internal documents, and testimony that Kimberly-Clark created a team to resolve the problems with the MicroCool Gowns and that the team confirmed that the MicroCool Gowns were non-compliant.

- Testimony of former employees of Kimberly-Clark stating that Kimberly-Clark consistently placed profits over compliance and that this was one of the reasons

7

why the MicroCool Gowns had problems and why the company continued to sell the gowns knowing about these problems.

• E-mail evidence and employee testimony of at least one instance where Defendants sought to find a pretext to retest the gowns to make sure they pass, even if the rationale or reason to retest was not a "proven reason."

• Evidence from Defendants' employees and contemporaneous e-mails and other correspondence demonstrating that the process Defendants were using to seal sleeves of MicroCool Gowns was not validated and was producing defective sleeve seams that leaked.

• Evidence that Kimberly-Clark convened a "Quality Review Board" (QRB) to track the progress of the MicroCool Gowns' quality issue and to determine whether or not to conduct a recall.

• Evidence from internal documents and employee testimony that Kimberly-Clark initiated a "Corrective and Preventative Action" (CAPA) in early February 2013 to resolve the known problems with the gowns.

• Evidence that in opening the CAPA, Defendants admitted that the "problem" was that the MicroCool Gowns "are not meeting the AAMI Standard requirement for barrier performance as required in ASTM 1670 and the 510(k)" and was caused because "[c]urrent Band [sic] Sealing technology of gown sleeves is inadequate to meet the AAMI requirement for barrier performance."

• Evidence from company documents, e-mails, and employee testimony that the CAPA remained open—meaning it remained unresolved—for at least another 18 months until January or February 2015.

• Evidence of Defendants' receipt of complaints from customers about the MicroCool Gowns, including strikethrough and leaking in the sleeve area.

• Testimony from current and former employees, and internal documents, establishing that the MicroCool Gowns remained non-compliant until at least January 2015 while Defendants attempted to fix the problems with the sleeve seams by replacing their bar sealers with Bosch band sealers.

• Evidence of an internal "MicroCool Timeline" confirming there was, at a minimum, an 18-month "GAP IN SLEEVE SEAM PASSING ASTM."

• Evidence of an interview of Halyard's Chief Executive Officer relating to the MicroCool Gowns conducted by the television program *60 Minutes*.

- Evidence showing that after Cardinal Health, Kimberly-Clark's competitor and one its major distributors, shared test results of sleeve seams on the MicroCool Gowns failing at an alarming rate, Kimberly-Clark confidentially settled its then-long standing litigation with Cardinal in order to prevent public dissemination of the failing test results.

- Evidence that in connection with the Cardinal settlement, Kimberly-Clark's in-house lawyer admitted to the gown defects by agreeing to indemnify Cardinal "for any liability arising from any current AAMI IV product nonconformance."

- Evidence that Kimberly-Clark's lawyer acknowledged at the time that Kimberly-Clark had a "known quality issue, and it may continue during the [subsequent] 12 month period."

- Expert testimony that because of the known test failures and problems that had to be fixed with the gowns discussed above, labeling the gowns as AAMI Level 4 or representing that they meet the highest industry standards of liquid barrier protection would not be accurate.

- Evidence (testimony of Defendants' employees, expert testimony, Defendants' documents) describing the AAMI Level 4 certification and the industry tests and standards relating to the AAMI-4 certification and measuring liquid barrier protection in surgical gowns.

           **(iii)**    **Element 3:  That Defendants knew that the representation was false when they made it, or that they made the representation recklessly and without regard for its truth.**

          **Supporting Evidence for Element 3:**

- All Supporting Evidence for Element 2 listed above.

           **(iv)**    **Element 4:  That Defendants intended that Plaintiff rely on the representation.**

          **Supporting Evidence for Element 4:**

- Evidence from Defendants' employees (including the former President of the Healthcare division) that they understood purchasers of the MicroCool Gowns would rely on and "put stock" in the representation that the gowns met AAMI Level 4 standards.  Thus, whether gowns were AAMI Level 4, passed industry

standard tests, did not leak, provided barrier protection, and were safe, was all material information that would influence purchasing decisions.

- Evidence that Defendants put the AAMI Level 4 representation and the representation that the gowns pass the ASTM 1671 test on the label of the MicroCool Gowns.

- Evidence that Defendants aggressively marketed the MicroCool Gowns as meeting the standards for the highest level of barrier protection, and being safe and superior to rival gowns.

- Evidence that Defendants recommended to customers and the general public that the MicroCool Gowns were safe to use in connection with high risk and fluid intensive treatments, including in the treatment of the Ebola virus.

- Evidence from Defendants' own internal documents and marketing surveys showing they knew barrier protection was a key characteristic for gown selection.

- Testimony and internal documents, along with Defendants' internal surveys of potential buyers and Plaintiff's expert's survery, showing that whether the gowns were AAMI Level 4, passed industry standard tests, were safe, and provided fluid protection, were material information.

- Expert testimony that because surgical gowns such as the MicroCool Gowns are used by surgeons in fluid intensive procedures—i.e. procedures that possibly expose the surgeon to significant amounts of blood and pathogens—the most important aspect of these medical devices is liquid barrier protection.

- Evidence Defendants differentiated their gowns from competitor gowns based on the AAMI Level 4 certification, and sought FDA approval to be able to label the gowns as meeting the AAMI Level 4 liquid barrier standard.

- Evidence of a marketing survey of purchasers of the gowns conducted by Plaintiff's expert showing that purchasers considered it to be very important that surgical gowns meet current industry standards and safety requirements, provide a high level of fluid protection, and meet the AAMI level liquid barrier standard, and that they were not likely to purchase gowns represented as AAMI Level 4 if the manufacturer did not know whether the standard was actually met or if the gowns did not in fact meet the standard.

       **(v)**    **Element 5:**    **That Plaintiff reasonably relied on Defendants' representation.**

**Supporting Evidence for Element 5:**

- All Supporting Evidence for Element 4 listed above.

- Testimony from Plaintiff that it was critically important to Plaintiff that the representations made by Defendants as to safety and effectiveness of the MicroCool Gowns were accurate.

- Testimony from Plaintiff that because of fluid intensive procedures performed at Bahamas Surgery Center, it was critically important that the gowns did not leak, met industry standards relating to liquid barrier protection as represented by Defendants, did not pose an undisclosed safety risk, and were safe.

- Testimony from Plaintiff that Plaintiff was exposed to the representation that the MicroCool Gowns were labeled as meeting AAMI Level 4 prior to Plaintiff's purchase of the gowns.

- Testimony from Plaintiff that Plaintiff relied on Defendants' representations regarding the effectiveness of the MicroCool Gowns in making its decision whether to purchase Defendants' gowns.

### (vi)   Element 6:  That Plaintiff was harmed.

**Supporting Evidence for Element 6:**

- Evidence that Plaintiff paid money (over $14,000) to purchase more than 5,000 MicroCool Gowns during the Class Period, including testimony from Plaintiff, as well as Defendants' financial spreadsheets and Plaintiff's purchase documentation.

- Testimony of Plaintiff that it would not have purchased any MicroCool Gowns if it knew that Defendants' representations concerning the MicroCool Gowns were false, or if Defendants had disclosed the truth.

- Expert testimony from Plaintiff's economist and damage expert regarding damages to the class based on ~~a full refund approach and~~ a partial refund approach.

- Defendants' financial spreadsheets reflecting the purchase of MicroCool Gowns by class members during the Class Period.

- Expert testimony demonstrating that the testimony for AAMI Levels 1 to 3 differs from the testing required for Level 4, and that if a gown fails Level 4

testing, it does not nonetheless qualify as Level 1, 2, or 3, and cannot be designated as such.

- Expert testimony that once a sample lot of gowns has failed testing, it is not permissible to label any of the gowns as meeting AAMI Level 4.

- Expert testimony that there is no market for the sale of a mislabeled gown like the MicroCool Gowns here at issue.

- Expert testimony that it would be unlawful for a hospital to keep or use a mislabeled or adulterated device.

- Evidence that Defendants sell the MicroCool Gowns at a premium over non-AAMI rated or lesser AAMI-rated gowns.

- Evidence that had the truth been known, Defendants would not have been able to charge the same price for the MicroCool Gowns that they charged and that class members paid.

- Evidence of a marketing survey of purchasers of the gowns conducted by Plaintiff's expert showing that purchasers considered it to be very important that surgical gowns meet current industry standards and safety requirements, provide a high level of fluid protection, and meet the AAMI level liquid barrier standard, and that they were not likely to purchase gowns represented as AAMI Level 4 if the manufacturer did not know whether the standard was actually met or if the gowns did not in fact meet the standard.

**(vii) Element 7: That Plaintiff's reliance on Defendants' representation was a substantial factor in causing its harm.**

**<u>Supporting Evidence for Element 7:</u>**

- All Supporting Evidence for Elements 4, 5, and 6 listed above.

**(2) <u>Claim 2: Fraud Based on Fraudulent Concealment and/or Non-Disclosure of Material Facts</u>**

**(i) Element 1: That Defendants did one or more of the following:**

       **a.**     **Disclosed some facts to Plaintiff but intentionally failed to disclose other facts making the disclosure deceptive; or**

       **b.**     **Intentionally failed to disclose certain facts that were known only to them and that Plaintiff could not have discovered; or**

       **c.**     **Prevented Plaintiff from discovering certain facts.**

**<u>Supporting Evidence for Element 1:</u>**

- All Supporting Evidence for Element 2 listed above for Claim 1 (Fraud – Affirmative Misrepresentations).

- Testimony of Plaintiff that Defendants never disclosed to Plaintiff that, among other things:  (1) the MicroCool Gowns did not consistently meet AAMI Level 4 standards; (2) Defendants were aware that the gowns failed industry tests relating to liquid barrier protection; (3) based on these failed tests, Defendants had reason to believe that the gowns did not provide liquid barrier protection to critical zones of the gowns; (4) Defendants had received complaints from other customers regarding strikethrough; (5) the gowns did not meet industry standards; and/or (6) that the gowns posed a safety risk.

- Defendants' admissions that they sold the MicroCool Gowns during the Class Period without disclosing on the label or packaging that:  (1) the MicroCool Gowns did not consistently meet AAMI Level 4 standards; (2) Defendants were aware that the gowns failed industry tests relating to liquid barrier protection; (3) based on these failed tests, Defendants had reason to believe that the gowns did not provide liquid barrier protection to critical zones of the gowns; (4) Defendants had received complaints from other customers regarding strikethrough; (5) the gowns did not meet industry standards; and/or (6) that the gowns posed a safety risk.

- Testimony of former employees that Kimberly-Clark took "extensive measures" to keep the problems with the MicroCool Gowns, including the fact that they did not consistently meet AAMI Level 4 standards and their inability to meet industry standards, concealed from purchasers and healthcare professionals.

- Testimony of former employees of Kimberly-Clark stating that Kimberly-Clark consistently placed profits over compliance and that this was one of the reasons why the MicroCool Gowns had problems and why the company continued to sell the gowns knowing about these problems.

**AMENDED FINAL PRETRIAL CONFERENCE ORDER**

- Evidence showing that after Cardinal Health, Kimberly-Clark's competitor and one its major distributors, shared test results of sleeve seams on the MicroCool Gowns failing at an alarming rate, Kimberly-Clark confidentially settled its then-long standing litigation with Cardinal in order to prevent public dissemination of the failing test results.

- Evidence that in connection with the Cardinal settlement, Kimberly-Clark's in-house lawyer admitted to the gown defects by agreeing to indemnify Cardinal "for any liability arising from any current AAMI IV product nonconformance."

- Evidence that Kimberly-Clark's lawyer acknowledged at the time that Kimberly-Clark had a "known quality issue, and it may continue during the [subsequent] 12 month period."

- Evidence that even after this lawsuit was filed in October 2014, with full knowledge that the gowns were still non-compliant and creating a safety risk, Defendants disseminated communications to customers falsely stating the gowns were compliant and were safe.

       **(ii)**    **Element 2:  That Plaintiff did not know of the concealed facts (*note:  this element need not be proven if the third option for element 1 is selected*).**

**<u>Supporting Evidence for Element 2:</u>**

- Testimony of Plaintiff that Defendants never disclosed to Plaintiff that (and that Plaintiff did not know that), among other things:  (1) the MicroCool Gowns did not consistently meet AAMI Level 4 standards; (2) Defendants were aware that the gowns failed industry tests relating to liquid barrier protection; (3) based on these failed tests, Defendants had reason to believe that the gowns did not provide liquid barrier protection to critical zones of the gowns; (4) Defendants had received complaints from other customers regarding strikethrough; (5) the gowns did not meet industry standards; and/or (6) that the gowns posed a safety risk.

- Defendants' admissions that they sold the MicroCool Gowns during the Class Period without disclosing on the label or packaging that:  (1) the MicroCool Gowns did not consistently meet AAMI Level 4 standards; (2) Defendants were aware that the gowns failed industry tests relating to liquid barrier protection; (3) based on these failed tests, Defendants had reason to believe that the gowns did not provide liquid barrier protection to critical zones of the gowns; (4)

Defendants had received complaints from other customers regarding strikethrough; (5) the gowns did not meet industry standards; and/or (6) that the gowns posed a safety risk.

**(iii)    Element 3:  That Defendants intended to deceive Plaintiff by concealing the facts.**

**<u>Supporting Evidence for Element 3:</u>**

- All Supporting Evidence for Elements 2 and 4 listed above for Claim 1 (Fraud – Affirmative Misrepresentations).

**(iv)    Element 4:    That had the omitted information been disclosed, a reasonable consumer would have attached importance to the concealed or non-dislcosed information's existence or nonexistence in determining his or her choice of action.**

**<u>Supporting Evidence for Element 4:</u>**

- All Supporting Evidence for Elements 4 and 5 listed above for Claim 1 (Fraud – Affirmative Misrepresentations).

- Testimony of Plaintiff that had Defendants disclosed the matters listed above (e.g., that the gowns failed industry tests, were not safe, etc.), it would not have purchased the MicroCool Gowns.

**(v)    Element 5:  That Plaintiff was harmed.**

**<u>Supporting Evidence for Element 5:</u>**

- All Supporting Evidence for Element 6 listed above for Claim 1 (Fraud – Affirmative Misrepresentations).

**(vi)    Element 6:    That Defendants' concealment was a substantial factor in causing Plaintiff's harm.**

**<u>Supporting Evidence for Element 6:</u>**

- All Supporting Evidence for Elements 4, 5, and 6 listed above for Claim 1 (Fraud – Affirmative Misrepresentations).

**AMENDED FINAL PRETRIAL CONFERENCE ORDER**

(3)     **Claim 3:  Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) Based on Affirmative Misrepresentations**

(i)     **Element 1: That Defendants engaged in "unfair competition" by engaging in a "fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.**

**Supporting Evidence for Element 1:**

- All Supporting Evidence for Elements 1, 2, 3, and 4 listed above for Claim 1 (Fraud – Affirmative Misrepresentations).

(ii)     **Element 2:  That Plaintiff "has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.**

**Supporting Evidence for Element 2:**

- All Supporting Evidence for Elements 4, 5, and 6 listed above for Claim 1 (Fraud – Affirmative Misrepresentations).

(iii)    **Element 3:  Actual reliance on the misrepresentation by Plaintiff (reliance inferred if misrepresentation material).**

**Supporting Evidence for Element 3:**

- All Supporting Evidence for Elements 4 and 5 listed above for Claim 1 (Fraud – Affirmative Misrepresentations).

(4)     **Claim 4:  Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) Based on Concealment and/or Non-Disclosure of Material Facts**

(i)     **Element 1: That Defendants engaged in "unfair competition" by engaging in a "fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.**

**Supporting Evidence for Element 1:**

**AMENDED FINAL PRETRIAL CONFERENCE ORDER**

- All Supporting Evidence for Elements 1, 2, 3, and 4 listed above for Claim 1 (Fraud – Affirmative Misrepresentations).

- All Supporting Evidence for Elements 1 and 2 listed above for Claim 2 (Fraud – Concealment and/or Non-Disclosure of Material Facts).

**(ii)    Element 2:  That Plaintiff "has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.**

**<u>Supporting Evidence for Element 2:</u>**

- All Supporting Evidence for Elements 4, 5, and 6 listed above for Claim 1 (Fraud – Affirmative Misrepresentations).

**(iii)    Element 3:  Materiality of the omission**

**<u>Supporting Evidence for Element 3:</u>**

- All Supporting Evidence for Elements 4 and 5 listed above for Claim 1 (Fraud – Affirmative Misrepresentations).

- All Supporting Evidence for Element 4 listed above for Claim 2 (Fraud – Concealment and/or Non-Disclosure of Material Facts).

**(iv)    Element 4:  That Defendants had a duty to disclose the materials omitted.  Such a duty exists where Defendants:**

        **a.    Disclosed some facts to Plaintiff but intentionally failed to disclose other facts making the disclosure deceptive; or**

        **b.    Intentionally failed to disclose certain facts that were known only to them and that Plaintiff could not have discovered; or**

        **c.    Prevented Plaintiff from discovering certain facts.**

**<u>Supporting Evidence for Element 4:</u>**

- All Supporting Evidence for Element 2 listed above for Claim 1 (Fraud – Affirmative Misrepresentations)

- All Supporting Evidence for Element 1listed above for Claim 2 (Fraud – Concealment and/or Non-Disclosure of Material Facts)

**Defendants:**

Defendants deny Plaintiff's allegations and will present substantial evidence to rebut Plaintiff's claims. Defendants also object to Plaintiff's characterization of its remaining legal claims in this case.  A discussion of Defendants' evidence, defenses, and objections can be found in Defendants' Memorandum of Contentions of Fact and Law Pursuant to Local Rule 16-4, filed on February 7, 2017.

(a) Defendants plan to pursue the following affirmative defenses:

     1. Failure to Mitigate Damages

(b) The elements required to establish Defendants' affirmative defenses are:

     1. Failure to Mitigate Damages

- Bahamas failed to use reasonable efforts to mitigate damages; and,

- The amount by which damages would have been mitigated.

(c) In brief, the key evidence Defendants rely on for each affirmative defense is:

     1. Failure to Mitigate Damages

- Bahamas failed to notify Defendants of a single instance of any MicroCool gown it purchased failing to perform as expected and to the satisfaction of Bahamas and the healthcare worker who wore it.

- Bahamas failed to return any gown it considered to be defective and/or request refund and, instead, used each and every one of the gowns it purchased.

- Bahamas continued to purchase new gowns after each successful use of previously purchased gowns.

## VIII.  ISSUES WHICH REMAIN TO BE TRIED

In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried to the jury:

1.    Whether Plaintiff has met its burden of proving each element of its claim for affirmative misrepresentation.

2.    Whether Plaintiff has met its burden of proving each element of its claim for fraudulent concealment.

3.    Whether Plaintiff has met its burden of proving the amount of any damages it suffered.

4.    Whether Plaintiff has met its burden of proving by clear and convincing evidence that it is entitled to punitive damages and, if so, the amount of any such damages.

The following additional issue remains to be tried to the Court:

1.    Whether Plaintiff has met its burden of proving Defendants are liable for a violation of the Unfair Competition Law.

Defendants contend that the following additional issue remains to be tried:

1.    Whether Defendants have met their burden of proving that Plaintiff failed to mitigate its damages in whole or in part.

## IX.    DISCOVERY

The parties anticipate that all outstanding discovery will have been completed prior to the Final Pretrial Conference on February 28, 2017.

## X.    DISCLOSURES AND EXHIBITS

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

**AMENDED FINAL PRETRIAL CONFERENCE ORDER**

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1.  **Unless all parties agree that an exhibit shall be withdrawn, all exhibits as to which there was no timely objection interposed in the Pretrial Exhibit Stipulation [Doc. # 310] shall be admitted without objection at trial, provided that the exhibit is offered as evidence at trial either through a relevant witness or pursuant to the parties' stipulation for admission of the exhibit without witness testimony.**

## XI.   WITNESSES

Only the witnesses identified in the parties' witness lists will be permitted to testify (other than solely for impeachment).

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7.  For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:  Joanne Bauer, Judson Boothe, Ujjal Chakravarty, Keith Edgett, Kevin Friedman, Michael Groesbeck, Lori Hand, Jamie Handler, JD Hurdle, Susan Jacobson, Jerald Jascomb, Ross Mansbach, Joseph Palomo, Maria Pena, Lon Taylor, Wava Truscott, Bernard Vezeau, Keisha Weaver, Mary Weber, and the Rule 30(b)(6) corporate representative of Defendants relating to various documents and electronically stored information.

## XII.  LAW AND MOTION MATTERS

There are no law and motion matters pending.  The Court issued an order [Doc. # 403], dated March 7, 2017, resolving most of the parties' motions *in limine*.  A written order resolving the remaining motion *in limine* will be issued prior to trial.

## XIII. BIFURCATION

Bifurcation of the following issues for trial is ordered:  none.

**XIV.  PRETRIAL ORDER SUPERSEDES PLEADINGS**

  The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

DATED:  March 24, 2017

              _____

                 DOLLY M. GEE
           UNITED STATES DISTRICT JUDGE

**AMENDED FINAL PRETRIAL CONFERENCE ORDER**