EAGAN AVENATTI, LLP
Michael J. Avenatti, State Bar No. 206929
mavenatti@eaganavenatti.com
Ahmed Ibrahim, State Bar No. 238739
aibrahim@eaganavenatti.com
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Telephone: 949.706.7000
Facsimile:  949.706.7050

Attorneys for Plaintiff, Individually and On Behalf of All Others Similarly Situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| BAHAMAS SURGERY CENTER, LLC, | CASE NO.: 14-CV-08390 DMG (PLA) |
|---|---|
| Plaintiff, | |
| vs. | **PLAINTIFF BAHAMAS SURGERY CENTER, LLC'S REPLY TO DEFENDANTS' RESPONSE TO POST-TRIAL BRIEF REGARDING ENTITLEMENT TO EQUITABLE RELIEF** |
| KIMBERLY-CLARK CORPORATION, a Delaware Corporation, and HALYARD HEALTH, INC., a Delaware Corporation, | |
| Defendants. | |

## I. DEFENDANTS HAVE WAIVED THEIR ARGUMENTS OPPOSING PLAINTIFF'S REQUESTED EQUITABLE RELIEF.

Most, if not all, of Defendants' arguments and defenses opposing the issuance of an injunction and other equitable relief have been waived because Defendants did not raise them in the Final Pretrial Conference Order. "A pretrial order generally supersedes the pleadings, and the parties are bound by its contents." Patterson v. Hughes Aircraft Co., 11 F.3d 948, 950 (9th Cir. 1993). Thus, "issues not preserved in the pretrial order have been eliminated from the action." S. California Retail Clerks Union & Food Employers Joint Pension Trust Fund v. Bjorklund, 728 F.2d 1262, 1264 (9th Cir. 1984); Pierce County Hotel Employees & Rest. Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450, 827 F.2d 1324, 1329 (9th Cir. 1987) (same).

Numerous courts, therefore, have likewise held that claims, defenses, or arguments omitted from a pretrial order are waived. See, e.g., Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 924 (9th Cir. 1988); In re Net-Velazquez, 625 F.3d 34, 40 (1st Cir. 2010) ("[C]laims or defenses omitted from the pretrial order are waived, whether or not properly raised in the pleadings."). Further, merely raising the defense in an answer does not save Defendants. See, e.g., Contreras v. City of Los Angeles, 603 F. App'x 530, 532 (9th Cir.), cert. denied sub nom. City of Los Angeles, Cal. v. Contreras, 136 S. Ct. 688, 193 L. Ed. 2d 519 (2015) (see below) (emphasis added). *In fact, it is an abuse of discretion for a court to decide an issue that is absent from the pretrial order.* See Patterson, 11 F.3d at 950.[1]

Here, *none* of Defendants' arguments against an injunction were raised in the Final

---

[1] Contreras is instructive. No. CV11-1480 SVW (SHX), 2012 WL 12886488 (C.D. Cal. June 22, 2012), aff'd, 603 F. App'x 530 (9th Cir. 2015). In that case, after the liability phase of a bifurcated trial, the defendant filed a motion to dismiss raising a statute of limitations defense. Id. at *1. Although omitted from the joint pretrial conference order, Defendants argued there was no waiver because they asserted it in their answer. See id. at *2. Because of their waiver, the court denied their motion. Id. at *3-4. The Ninth Circuit affirmed, explaining that "Defendants raised the statute of limitations as one of nine affirmative defenses in their answer to the complaint, they did not include the statute of limitations as a defense that they would pursue in the pretrial order, and they argued for the first time that the statute of limitations barred this action in a post-liability-verdict motion. Defendants thus waived this defense." Contreras, 603 F. App'x at 532.

Pretrial Conference Order. [See Dkt Nos. 336-1 & 414.] Defendants never asserted, for example, that an injunction should not be issued due to the doctrines of (1) adequacy of legal remedy, (2) lack of irreparable harm, (3) primary jurisdiction, (4) abstention, (5) federal preemption, or (6) the First Amendment. In fact, Defendants asserted only one affirmative defense in the Final Pretrial Conference Order: failure to mitigate damages (which Defendants then waived at trial). [Dkt No. 414 at 19.] Thus, the Court must disregard these arguments in considering Plaintiff's request for equitable relief.

## II.   PLAINTIFF IS ENTITLED TO AN INJUNCTION.

### A.   State Law Governs Whether an Injunction Should Be Issued Under the UCL – Defendants Seek to Have the Court Apply the Wrong Standard.

Although Plaintiff should prevail under any particular standard that is applied, here, it must be emphasized first and foremost that state law governs whether an injunction should issue. California law is clear that the provisions for injunctive relief under the UCL "are *intended to permit courts to enjoin ongoing wrongful business conduct in whatever context such activity might occur*." California Serv. Station etc. Assn. v. Union Oil Co., 232 Cal.App.3d 44, 56 (1991) (emphasis added). As various commentators have observed, "courts have given a liberal reading to the remedial provisions of §§ 17200" – a reading that is "consistent with the 'cleansing power' purposes of the statute." William L. Stern, Business & Professions Code Section 17200 Practice, at ¶ 8:7 (The Rutter Group 2017). As such, injunctive relief *"is one of the principal remedies available for violations of §§ 17200*." Id. at ¶ 8:22 (emphasis added). Thus, it is not, as Defendants contend, drastic or unusual.

Federal law does not govern whether an injunction should issue here. "[I]f the remedy being sought is so inextricably interwoven with the substantive right being sued upon that a denial of that remedy would be tantamount to a denial of the state-created right, then state law should apply." Charles Alan Wright & Arthur R. Miller, 11A Fed. Prac. & Proc. Civ. § 2943 (3d ed.). The injunction sought here is "designed to enforce substantive rights" under state law. Sullivan By & Through Sullivan v. Vallejo City

Unified Sch. Dist., 731 F. Supp. 947, 956 (E.D. Cal. 1990).  "Where federal courts are called upon to adjudicate a claim predicated on state law, under either its diversity or pendent claim jurisdiction, there appears to be no question that the ultimate issue of whether injunctive relief may issue must be decided under applicable state law."  Id.  This is to be distinguished, therefore, from a request for an injunction under federal law because the Federal Rules of Civil Procedure "merely set[] forth the procedural terms for the issuance of injunctions and restraining orders and does not itself authorize injunctive relief."  Sims Snowboards, Inc. v. Kelly, 863 F.2d 643, 646 (9th Cir. 1988).

Defendants' arguments are erroneously premised on federal decisions interpreting entitlement to injunctive relief *under federal law*.  See, e.g., Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165 (2010) (decided under federal law).  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (emphasis added) (decided under federal Patent Act).  Importantly, *Defendants' discussion of standard of review fails to cite to a single case involving injunctive relief under the UCL*.[2]

### B.   Plaintiff and the Class Are Entitled to Injunctive Relief.

#### 1.   Absent Injunctive Relief, Plaintiff and the Class Will Suffer Irreparable Harm.

Defendants mischaracterize Plaintiff's argument regarding injunctive relief. Although the UCL looks primarily to whether a risk of further harm has been established, out of caution, Plaintiff did in fact argue *both* that Plaintiff lacked an adequate legal remedy and that Plaintiff would suffer irreparable harm without an injunction.  [See Dkt. No. 517 at 14:13-15:3.]  As Plaintiff argued, "[i]f there is the possibility of future wrongful conduct, *a legal remedy is inadequate*."  Valley View Health Care, Inc. v. Chapman, 992 F. Supp. 2d 1016, 1042 (E.D. Cal. 2014) (emphasis added); see also Shell Offshore, Inc. v. Greenpeace, Inc., 709 F.3d 1281, 1291 (9th Cir. 2013) ("We find it too plain for debate that such tactics at minimum pose a serious risk of harm to human life …

---

[2] Oracle USA does discuss a UCL cause of action, but the injunctive relief sought in that action was not premised on a violation of the UCL.  Oracle USA, Inc. v. Rimini St., Inc., 209 F. Supp. 3d 1200, 1207 (D. Nev. 2016).

and that such harm could find no adequate remedy at law."); Frankl v. HTH Corp., 650 F.3d 1334, 1362 (9th Cir. 2011). Consistent with this approach, the concern under the UCL is whether there is a risk of ongoing harm or deception and, if so, courts have the authority to "enjoin ongoing wrongful business conduct in whatever context such activity might occur." California Serv. Station, 232 Cal. App. 3d at 56.

Defendants take issue with the proposition that irreparable injury "is not an independent requirement" but is instead "only one basis for showing the inadequacy of the legal remedy." Cont'l Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1104 (9th Cir. 1994). Defendants' contention this is no longer good law in light of eBay is without merit. See Arizona Dream Act Coal. v. Brewer, 757 F.3d 1053, 1068 (9th Cir. 2014) ("Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages."); Charles Alan Wright & Arthur R. Miller, 11A Fed. Prac. & Proc. Civ. § 2944 (3d ed.) ("However, it should be noted that although a serious threat of irreparable injury usually must be shown on an application for a temporary-restraining order or a preliminary injunction, irreparable injury is not an independent requirement for obtaining a permanent injunction; it is only one basis for showing the inadequacy of the legal remedy.") (footnotes omitted).

Regardless, this dispute is not outcome determinative. Plaintiff argued and Defendants plainly understood that the risk of harm or safety risk at issue established irreparable harm in the absence of an injunction. Importantly, "the alleged [irreparable] harm need not be occurring or be certain to occur before a court may grant relief…" Michigan v. U.S. Army Corps of Engineers, 667 F.3d 765, 788 (7th Cir. 2011). Moreover, the harm need not be "extreme or very serious" to justify injunctive relief although in this case it very well might be. Arizona Dream Act Coal., 757 F.3d at 1068.

On this point, Defendants erroneously contend that there was no evidence of a safety risk. To the contrary, as Plaintiff demonstrated in its opening brief, throughout trial there *was* ample evidence of the considerable safety risk posed by the gowns. [See extensive evidence cited at Dkt. No. 517 at n.9.] *Importantly, much of this evidence came*

-4-
**PLAINTIFF'S REPLY IN SUPPORT OF ENTITLEMENT TO EQUITABLE RELIEF**

*from high-ranking, director level employees of the Defendants – Messrs. Edgett, Vezeau and Taylor.* [Dkt. No. 506 Ex. A at 2 (17:23-25); Ex. B at 3 (22:20-25); Ex. C at 1 (32:13-33:2).] Defendants attempt to trivialize this evidence, but this testimony clearly did not come from low level employees unqualified on this issue.

Defendants also argue that the fact that the MicroCool Gowns were represented to have a shelf life of five years is "irrelevant." [Dkt. No. 521 at 8.] However, Defendants plainly believe it is important for the gowns to have a shelf life of five years and, as argued, the expiration date appears on the packaging of each gown. [See Trial Ex. 203 (listing "Expiration Date" of "2019- 11" on label); Avenatti Decl., Ex. 3 (Apr. 6 Tr.) at 112:21-113:12.] Defendants assert there must be some evidence that class members buy the gowns in advance of their need to use the gowns.[3] [Dkt. No. 521 at 8.] But by definition, class members must purchase gowns in advance of needing them and, given the shelf life of the gowns, there can be no dispute that gowns may still be in the possession of class members. Otherwise, there would be no reason to convey to purchasers on the label that they must be used within five years.

### 2. Plaintiff and the Class Lack an Adequate Legal Remedy.

The adequacy of legal remedy and existence of irreparable harm inquiries overlap. See Arizona Dream Act Coal., 757 F.3d at 1068 ("Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages."). Furthermore, "[i]f there is the possibility of future wrongful conduct, *a legal remedy is inadequate*." Valley View, 992 F. Supp. 2d at 1042; see also Shell, 709 F.3d at 1291. Damages alone are inadequate because of the threat of future harm and violations regarding gowns that may still be in the possession of the Class.

Defendants ignore the argument Plaintiff and the Class made regarding the need for corrective disclosures and California law on this issue under the UCL. See Consumers

---

[3] This argument is also a thinly disguised attempt to again argue that Plaintiff does not have standing to assert its claims for injunctive relief because it stopped buying the gowns and no longer possesses them. This Court has rejected this argument at least three times and should do so again here. [See Dkt No. 40 at 5-7; No. 269 at 32 n.14; No. 271 at 6-7.]

Union of U.S., Inc. v. Alta-Dena Certified Dairy, 4 Cal. App. 4th 963, 973 (1992) (noting that "[r]equiring affirmative disclosure of information as a remedy for consumer deception is not without precedent in California" and collecting cases); People v. Toomey, 157 Cal. App. 3d 1, 21 (1984) (affirming the issuance of a permanent injunction including "disclosure requirements" to, among other things, "deter appellant and others from future misconduct."). Corrective disclosures such as those requested serve multiple purposes including: preventing the risk of future harm, correcting past deceptive conduct, and deterring additional future misconduct. A legal remedy of damages alone does not and cannot satisfy all of these important interests.

### 3. The Balance of Hardships and Public Interest Favor Plaintiff.

The balance of hardships and public interest weigh strongly in favor of Plaintiff and granting injunctive relief. There is of course a "strong public interest in preventing consumer confusion and fraud" that "favors issuance of the requested injunctive relief." Paisa, Inc. v. N & G Auto, Inc., 928 F.Supp. 1009, 1013 (C.D. Cal. 1996). The very purpose of the UCL is to "protect the public from a wide spectrum of improper conduct…" Day v. AT & T Corp., 63 Cal.App.4th 325, 332 (1998). As such, the right to relief under the UCL and "the rules of unfair competition are based, not alone upon the protection of a property right existing in the complainants, *but also upon the right of the public to protection from fraud and deceit*." People ex rel. Mosk v. Nat'l Research Co. of Cal., 201 Cal.App.2d 765, 771 (1962) (emphasis added and internal quotation omitted).

As to the balance of hardships, generally speaking, "the real issue" is "the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is *improperly* granted or denied." Scotts Co. v. United Indus. Corp., 315 F.3d 264, 284 (4th Cir. 2002) (emphasis in original). Here, that is not a concern as the jury has found in favor of Plaintiff and the Class. The Court must now follow suit on the UCL claim. See, e.g., Sanders, 657 F.3d at 783. This is in sharp contrast to the more typical situation a court faces when deciding the appropriateness of a preliminary injunction.

Having been found to have committed fraud, Defendants cannot now be heard to

complain that taking the necessary action to remedy their deceptive conduct would be a burden.  See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 596 (3d Cir. 2002) ("[T]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself.").  Furthermore, if the harm faced by the party seeking an injunction is more permanent and the harm faced by the party opposing the injunction is more temporary, then the balance of equities tips in favor of an injunction.  See League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton, 752 F.3d 755, 765 (9th Cir. 2014).  That is the case here where Defendants' compliance with the injunction requires actions limited in duration and little financial expenditure.

### III. THE PROPOSED INJUNCTION IS PROPERLY TAILORED.

#### A. The Proposed Injunction Is Not Overbroad.

In deciding equitable claims, "'the Seventh Amendment requires the trial judge to follow the jury's *implicit* or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (emphasis added). There, the plaintiff was fired by the defendant police department.  The plaintiff sued and the jury awarded him $1 million in damages for the defendant conducting an unconstitutional administrative search.  The verdict form simply asked the jury whether it found damages for the violation and if so, to fill in the amount of damages for each defendant.  Id. at 1473.  The plaintiff then moved for equitable remedies of reinstatement and back pay based on the jury's implicit findings.  The district court denied the plaintiff's motion on the ground that he would have been fired irrespective of the search.  The Ninth Circuit *reversed.*  The Court explained that because there was no express finding by the jury, it had to "determine whether it can be inferred from the jury's verdict that it found that the improper subordination charge was the cause of [the plaintiff's] dismissal." Id. The Court thus examined the jury instruction on the improper subordination charge and concluded it "strongly suggests that having awarded a million dollars, the jury must have implicitly found that defendants failed to prove that they would have terminated [the

plaintiff] absent his refusal to obey the administrative warrant." Id. at 1474.

Similarly, here, the jury *explicitly* found Defendants committed fraudulent concealment, and that their conduct was so reprehensible that they should be punished by having to pay punitive damages. These were not innocent omissions in the jury's view. The jury explicitly *and* implicitly found, based on the Concealment instruction, that Defendants intentionally failed to disclose "material" facts to Plaintiff and that Defendants "intended to deceive Plaintiff by concealing the facts." [Dkt No. 493 at 30.] Based on the evidence Plaintiff presented to the jury, and which the jury obviously found to be highly persuasive and thus accepted, the jury also implicitly found Defendants did not disclose the five things listed in the proposed injunction. Further, because the jury found Defendants liable and rendered an enormous damage award, the jury also necessarily *rejected* all of the contentions advanced by Defendants, including many of the same arguments made in their Response brief.

The contrary position argued by Defendants is without merit. If Defendants' argument were to be accepted, then it would follow that Plaintiff did not prove Defendants' fraudulent failure to disclose *any* of the five things set forth in the proposed injunction. This, of course, cannot be true. Therefore, at most, the proposed injunction could simply be modified to include the phrase "Kimberly-Clark/Halyard failed to disclose to purchasers *one or more* of the following" before listing the five items at issue.[4] [See Revised Exs. A & 1-2 (attached hereto).]

**B.    Plaintiff's Proposed Injunction Does Not Violate the First Amendment.**

Defendants attempt to create constitutional issues where none exist, as this case involves commercial speech. "[T]here can be no constitutional objection to the

---

[4] Defendants cite to pages 148 through 151 of the April 7 trial transcript to argue Plaintiff asked for a vague and open-ended instruction. It is unclear what the basis is for this argument because there is nothing on those cited pages relating to jury instructions. In any event, Defendants' contention is of no consequence because Plaintiff justifiably requested a concealment instruction that closely tracks the form CACI 1901 instruction. Moreover, the non-disclosures in the injunction track the same non-disclosures Ms. Campos was asked about during her direct examination and in her declaration supporting class certification. [Avenatti Decl., Ex. 1 at 123-124; Dkt No. 169-6 at ¶¶9-10.]

suppression of commercial messages that do not accurately inform the public about lawful activity." Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 563 (1980). First Amendment concerns are not implicated where the "commercial expression at issue is unlawful or misleading." Grolier Inc. v. F.T.C., 699 F.2d 983, 988 (9th Cir. 1983). Therefore, the government may prohibit "businessmen from making statements which, though literally true, are potentially deceptive." Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 68–69 (1976).

Defendants argue they cannot be made to admit to their past concealment, deception, and misconduct. But here, all the proposed injunction requires is for Defendants to make corrective disclosures to avoid future misconduct—disclosures that are reflective of what was proven at the trial.[5] Defendants also argue the injunction cannot prohibit them from undercutting this injunction.[6] But if Defendants were able to undercut the injunction, they would be able to defeat the purpose of requiring a corrective disclosure as part of an injunction in the first place, thus perpetuating the fraud.[7]

---

[5] Neither of the cases Defendants cite supports their argument. In Nat'l Ass'n of Manuf. v. S.E.C., 800 F.3d 518, 530 (D.C. Cir. 2015), the Court explained that the government could not require companies to identify their products as not being "conflict-free" because such a determination "was hardly 'factual and non-ideological.'" Id. at 530. Here, in contrast, Plaintiff's injunction merely requires Defendants to make statements of fact that track the elements of fraud. Likewise, R.J. Reynolds Tobacco Co. v. Food & Drug Admin., involved a requirement that cigarette packages bear graphic and emotional images designed to "browbeat consumers into quitting." 696 F.3d 1205, 1216 (D.C. Cir. 2012). The proposed injunction here is entirely factual and tied to Plaintiff's UCL claim.

[6] Federal Trade Commission injunctions commonly require the defendants to stipulate that they do not deny the allegations in the complaint. See Fed. Trade Comm'n v. Nutraclick, LLC, No. CV166819DMGJPRX, 2016 WL 5329561, at *1 (C.D. Cal. Sept. 20, 2016); Fed. Trade Comm'n v. Good EBusiness, LLC, No. LACV161048ODWJPRX, 2016 WL 2851308, at *1 (C.D. Cal. May 13, 2016).

[7] None of the cases Defendants cite involve an analogous scenario. See Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 831 (1978) (newspaper accurately reported on investigation of state judge); Long Beach Area Peace Network v. City of Long Beach, 574 F.3d 1011, 1025 (9th Cir. 2009) (question of whether city's special events ordinance was overbroad for protests). In fact, in one of these cases, Quinstreet, Inc. v. Ferguson, the Court found that a court *can* prohibit speech critical of the court's actions. No. C08-5525RJB, 2008 WL 5146652, at *4 (W.D. Wash. Dec. 5, 2008) ("[T]o the extent that these postings are commercial speech, . . . pure commercial speech can be enjoined to the extent that it is fraudulent.") (quoting Cent. Hudson, 447 U.S. at 563-64).

## IV. THE DOCTRINES OF PRIMARY JURISDICTION AND ABSTENTION DO NOT APPLY TO THIS CASE.

Defendants waived their primary jurisdiction argument by failing to include it in the Pretrial Conference Order. Further, this is not a primary jurisdiction situation. There is no argument for a stay pending intervention by an administrative agency, Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1051 (9th Cir. 2009), and any such request for a stay to allow the FDA to intervene has long been waived. See Gross Common Carrier, Inc. v. Baxter Healthcare Corp., 51 F.3d 703, 706 (7th Cir. 1995). That the case involves a medical product regulated by the FDA does not mean that the primary jurisdiction doctrine applies. See, e.g., Kaiser v. CSL Plasma Inc., No. C15-0842RSM, 2017 WL 840198, at *6 (W.D. Wash. Mar. 2, 2017). Similarly, Plaintiff's injunction here is predicated on Defendants' violation of the UCL's fraud prong. See In re Toyota, 754 F. Supp. 1145, 1199 (C.D. Cal. 2010) (primary jurisdiction did not apply when claim arose under UCL, not federal statues or regulations).

On abstention, Plaintiff is not asking that the Court interfere with the FDA; it is "asking the court to perform an ordinary judicial function, namely, to grant relief under the UCL." Blue Cross of California, Inc. v. Superior Court, 180 Cal.App.4th 1237, 1258 (2009) (affirming trial court's decision to decline to abstain). If the Court "awards all of the relief sought, then that relief will in no way hinder [the FDA from using its own remedies on Defendants]. There is thus no conflict and no interference." Id. The proposed injunction here of requiring Defendants to make corrective disclosures does not interfere with any FDA field action. Further, as the court in Blue Cross recognized, abstention is inappropriate because Plaintiff "is asking for an injunction" which "does not impose on the court any active role in monitoring compliance." Id. at 1259.[8]

---

[8] Finally, Defendants' claim that their conduct was permissible under federal law has been dealt with countless times, including in the Order to Show Cause briefing shortly before trial. [See Dkt. No. 396.] The Court recognized that triable issues of fact existed, [Dkt. No. 403 at n. 1], Defendants (over Plaintiff's objection) were permitted to present argument and evidence supporting this argument at trial, and the jury resolved this issue of fact in Plaintiff's favor. Defendants' contention, therefore, is without merit.

| | |
|---|---|
| Dated: May 10, 2017 | EAGAN AVENATTI, LLP |
| | By: /s/ Michael J. Avenatti |
| | Michael J. Avenatti |
| | Ahmed Ibrahim |
| | Attorneys for Plaintiff and the Class |

**PLAINTIFF'S REPLY IN SUPPORT OF ENTITLEMENT TO EQUITABLE RELIEF**